IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Midwest Goods Inc., dba Midwest Distribution Illinois,<br><br>      Plaintiff,<br><br>    vs.<br><br>Breeze Smoke LLC,<br><br>      Defendant.<br><br>---<br><br>Breeze Smoke LLC,<br><br>      Counter-Claimant,<br><br>    vs.<br><br>Midwest Goods Inc., dba Midwest Distribution Illinois, Wisemen Wholesale, Inc., Speed Wholesale, Inc., World Wholesale, Inc., Light View LLC,<br><br>      Counterclaim Defendants. | CASE NO. 1:23-CV-05406<br><br>HONORABLE THOMAS M. DURKIN<br><br>JURY TRIAL DEMANDED |

## ANSWER AND COUNTERCLAIMS

Defendant Breeze Smoke LLC ("Breeze Smoke" or "Defendant") by its undersigned

counsel, for its Answer to the Complaint filed by Plaintiff Midwest Goods Inc., dba Midwest

Distribution Illinois ("Plaintiff" or "Midwest Goods") states as follows:

## PARTIES

1.     Midwest Goods is a corporation organized and existing under the laws of Illinois,

with its principal place of business at 1001 Foster Avenue, Bensenville, Illinois 60106. As is

relevant to this Complaint, Midwest Goods distributes vaping products that prominently bear the

brand "NORTH".

**ANSWER**: Breeze Smoke admits that Midwest Goods distributes vaping products that use the brand name "NORTH" ("NORTH Products"). Breeze Smoke lacks information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 1.

2. On information and belief, Defendant Breeze Smoke is a limited liability company organized and existing under the laws of the State of Michigan, with its principal place of business at 4654 Lilly Ct., West Bloomfield, Michigan 48323[1]. As is relevant to this Complaint, Defendant distributes vaping products under its own brands, and it has trademark registrations that include "BREEZE" with other words, such as "BREEZE PRO" and "BREEZE SMOKE". On information and belief, Defendant's members (owners) are citizens of Michigan and/or other states but are not citizens of Illinois for purposes of 28 U.S.C. § 1332.

**ANSWER**: Admitted.

3. On information and belief, Defendant sells goods to customers in Illinois, including, at least until recently, to Midwest Goods.

**ANSWER**: Admitted.

**NATURE OF THE SUIT**

4. This is a civil action arising, in part, out of Defendant's threatening and unjustified communications to Midwest Goods, and to Midwest Goods' customers, in violation of the federal and/or Illinois law. Defendant has willfully and falsely accused Midwest Goods of selling "copycat" products and infringing Defendant's federal trademark and other rights, even though there is no basis for such an allegation and Defendant has conceded as such.

---

[1] Alternatively, based on communications from Breeze Smoke LLC as discussed herein, it may have a business address at 1471 E. Nine Mile Rd, Unit 200, Hazel Park, MI 48030.

**ANSWER**: Breeze Smoke admits that this is a civil action and that Midwest Goods alleges purported violations of federal and/or Illinois law. Breeze Smoke denies all remaining allegations of Paragraph 4.

5.      Federal laws under which Midwest Goods seeks relief include the Lanham Act, 15 U.S.C. § 1051 et seq., and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

**ANSWER**: Breeze Smoke admits that Midwest Goods purports to seek relief under the Lanham Act, 15 U.S.C. § 1051 et seq. and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, but denies that Midwest Goods is entitled to any such relief. Except as expressly admitted herein, Breeze Smoke denies all remaining allegations of Paragraph 5.

6.      Illinois state laws under which Midwest Goods seeks relief include tortious interference, the Illinois Uniform Deceptive Trade Practices Act, and/or Illinois common law of disparagement.

**ANSWER**: Breeze Smoke admits that Midwest Goods purports to seek relief under Illinois state laws including tortious interference, the Illinois Uniform Deceptive Trade Practices Act, and/or Illinois common law of disparagement, but denies that Midwest Goods is entitled to any such relief. Except as expressly admitted herein, Breeze Smoke denies all remaining allegations of Paragraph 6.

## JURISDICTION AND VENUE

7.      This Court has federal subject-matter jurisdiction under 15 U.S.C. § 1121, 28 U.S.C. §§ 2201 and 2202, and 28 U.S.C. § 1331.

**ANSWER**: Breeze Smoke submits that the allegations contained in Paragraph 7 consist of legal conclusions to which no response is required. To the extent a response is required, Breeze

3

Smoke admits that this Court has subject matter jurisdiction. Breeze Smoke denies any remaining allegations in Paragraph 7.

8. This Court has federal diversity jurisdiction under 28 U.S.C. § 1332, as Midwest Goods and Defendant are citizens of different states, and Midwest Goods seeks relief in excess of $75,000 (not including fees and costs).

**ANSWER**: Breeze Smoke admits that Midwest Goods purports to seek relief in excess of $75,000, but denies that Midwest Goods is entitled to any such relief. Breeze Smoke submits that the remaining allegations contained in Paragraph 8 consist of legal conclusions to which no response is required. To the extent a response is required, Breeze Smoke responds that it lacks information sufficient to form a belief as to the citizenship of Midwest Goods. Breeze Smoke denies any remaining allegations of Paragraph 8.

9. This Court also has supplemental jurisdiction over Midwest Goods' common law and state law claims raised in this action pursuant to 28 U.S.C. § 1367 because they are so related to Midwest Goods' federal claims that they form part of the same case or controversy.

**ANSWER**: Breeze Smoke submits that the allegations contained in Paragraph 9 consist of legal conclusions to which no response is required. To the extent a response is required, Breeze Smoke denies the allegations in Paragraph 9.

10. The Court has personal jurisdiction over Defendant because Defendant does business in this District and/or has purposefully sent the Defendant's Demand Letter (hereinafter defined) to Midwest Goods in this District. Midwest Goods' claims arise, in whole or in part, out of Defendant's purposeful contacts with this District.

**ANSWER**: Breeze Smoke admits that it conducts business in this District and that, on or about July 31, 2023, counsel for Breeze Smoke transmitted a letter to Midwest Goods in the

4

state of Illinois. Breeze Smoke submits that the remaining allegations contained in Paragraph 10 consist of legal conclusions to which no response is required. To the extent a response is required, Breeze Smoke admits that personal jurisdiction is proper and denies all remaining allegations of Paragraph 10.

11. Venue also is proper in this District pursuant to applicable law.

**ANSWER**: Breeze Smoke submits that the allegations contained in Paragraph 11 consist of legal conclusions to which no response is required. To the extent a response is required, Breeze Smoke admits that venue is proper and denies any remaining allegations of Paragraph 11.

**ACTS IN SUPPORT OF**
**JURISDICTION/VENUE AND COUNTS**

12. Midwest Goods is, and has been for many years, a substantial and prominent distributor in the United Sates of various goods, including vapes and electronic cigarettes.

**ANSWER**: Breeze Smoke lacks information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 12.

13. Defendant sells various vapes, at least in the United States.

**ANSWER**: Admitted.

14. Beginning in or around June 20, 2023, Defendant launched a concerted effort to falsely claim that Midwest Goods distributed products that infringe Defendant's patent and/or trademark rights in order to extract competitive information from Midwest Goods, disparage Midwest Goods' distributed products, and unfairly gain a competitive advantage in the marketplace.

**ANSWER**: Denied.

15.     For example, on or about June 21, 2023, Defendant electronically communicated a message to a Midwest Goods' representative (the "Patent Threat Message"), a true and correct copy of which is shown below:



**ANSWER**:     Breeze Smoke admits that Mark Kareem communicated via text message with a representative of Midwest Goods on June 21, 2023 (the "June 21, 2023 text messages"). Breeze Smoke admits that the image shown in Paragraph 15 of the Complaint shows what appears to be a truncated portion of text messages exchanged between Mark Kareem and a representative of Midwest Goods on June 21, 2023. Except as expressly admitted herein, Breeze Smoke denies all remaining allegations in Paragraph 15.

16.     The Patent Threat Message purports to be sent from Defendant's representative, Mark Kareem. On information and belief, Mark Kareem is a person of influence and control for Defendant.

**ANSWER**: Breeze Smoke admits that the June 21, 2023 text messages were sent from Mark Kareem, who is a partial owner of Breeze Smoke. The remaining allegations in Paragraph 16 consist of legal conclusions to which no response is required. To the extent a response is required, Breeze Smoke denies all remaining allegations in Paragraph 16.

17. The Patent Threat Message depicts a vape product sold and distributed by Midwest Goods, and it uses and/or is associated with the prominently-emphasized brand "NORTH", as shown in the image depicted in paragraph 15.

**ANSWER**: Breeze Smoke admits that one of the June 21, 2023 text messages depict a vape product sold and distributed by Midwest Goods under the name "NORTH." Breeze Smoke denies that "NORTH" is a prominently-emphasized brand. Except as expressly admitted herein, Breeze Smoke denies all remaining allegations of Paragraph 17.

18. In the Patent Threat Message, Defendant alleged ownership of patent rights and requested remedial and cessation action by Midwest Goods.

**ANSWER**: Breeze Smoke admits that, in the June 21, 2023 text messages, Mark Kareem states "Please remove any post asap." Except as expressly admitted herein, Breeze Smoke denies the allegations of Paragraph 18.

19. On information and belief, notwithstanding the Patent Threat Message, Defendant does not currently own a U.S. patent in connection with Defendant's product branded with BREEZE PRO or any other BREEZE-inclusive trademark.

**ANSWER**: Breeze Smoke admits that it does not currently own a U.S. Patent in connection with its products marketed and sold under the mark BREEZE PRO or any other BREEZE-inclusive trademark. Except as expressly admitted herein, Breeze Smoke denies the allegations of Paragraph 19.

20.     On information and belief, Defendant offers its vape products for sale through its website, https://www.breezesmoke.com/.

**ANSWER**:     Defendant admits that in the past it has displayed and marketed its vape products on its website, https://www.breezesmoke.com/.   Defendant denies the remaining allegations of Paragraph 20.

21.     Defendant's website, https://www.breezesmoke.com/, identifies no U.S. patent number associated with Defendant's product branded with BREEZE PRO or any other BREEZE-inclusive trademark.

**ANSWER**:     Admitted.

22.     On information and belief, Defendant identifies no U.S. patent number on either the product, or product packaging, of Defendant's product branded with BREEZE PRO or any other BREEZE-inclusive trademark.

**ANSWER**:     Admitted.

23.     On or about July 31, 2023, counsel for Defendant, Jeffrey K. Lamb (of Honigman), transmitted via FedEx, to the address of Midwest Goods, in the state of Illinois, a cease and desist letter, a true and correct copy of which is attached hereto as Exhibit A ("Defendant's Demand Letter").

**ANSWER**:     Breeze Smoke admits that Jeffrey K. Lamb of Honigman is counsel for Breeze Smoke. Breeze Smoke further admits that, on or about July 31, 2023, counsel for Breeze Smoke transmitted, via FedEx, a letter to Midwest Goods in the State of Illinois (the "July 31, 2023 Letter"). Breeze Smoke further admits that Exhibit A purports to be a copy of the July 31, 2023 Letter. Except as expressly admitted herein, Breeze Smoke denies any remaining allegations of Paragraph 23.

24. Defendant's Demand Letter accuses Midwest Goods of, inter alia, "unlawful sale and offer for sale of obvious infringements of its [Defendant's] BREEZE PRO disposable e-cigarette products, trade dress and packaging."

**ANSWER**: Defendant admits that the July 31, 2023 Letter attached to the Complaint as Exhibit A states that Midwest Goods is engaged in, and requests that Midwest Goods cease, the "unlawful sale and offer for sale of obvious infringements of its [Defendant's] BREEZE PRO disposable e-cigarette products, trade dress and packaging." Defendant denies the remaining allegations of Paragraph 24.

25. Defendant's Demand Letter: (i) alleges numerous rights in various trademarks and "trade dress and packaging"; (ii) accuses Midwest Goods of promoting "infringing products"; (iii) threatens that Midwest Goods can "now avoid a similar lawsuit" as lawsuits Defendant contends it has brought against others; and (iv) enumerates five (5) demands, among other things, including that Midwest "[c]ease and desist all use, sales and offer for sale of the [allegedly] Infringing Products."

**ANSWER**: Defendant admits that the July 31, 2023 Letter attached to the Complaint as Exhibit A (i) alleges rights in certain trademarks and trade dress associated with certain of its products; (ii) states that Midwest Goods promotes infringing products; (iii) sets forth conditions under which Midwest Goods could avoid escalation similar to that Breeze Smoke was forced to bring against other third parties; and (iv) makes certain demands of Midwest Goods, including that it "[c]ease and desist all use, sales and offer for sale of the [allegedly] Infringing Products." Breeze Smoke denies the remaining allegations of Paragraph 25.

26. Notably, Defendant's Demand Letter makes no mention of Defendant's alleged patent rights, as asserted in Patent Threat Message.

9

**ANSWER**: Breeze Smoke admits that the July 31, 2023 Letter does not refer to any patent rights. Except as expressly admitted herein, Breeze Smoke denies the remaining allegations of Paragraph 26.

27. Defendant's Demand Letter provides "an example of [its] BREEZE PRO disposable e-cigarette", and a true and correct copy of the example as provided is shown below:



**ANSWER**: Breeze Smoke admits that the July 31, 2021 Letter provides "examples of [its] BREEZE PRO disposable e-cigarette" and that Paragraph 27 of the Complaint purports to show an example provided in the July 31, 2021 Letter. Except as expressly admitted herein, the remaining allegations of Paragraph 27 are denied.

28. Defendant's Demand Letter alleges that its "BREEZE PRO products are also marketed, offered and sold in a highly distinctive packaging that consumers associate exclusively with Breeze Smoke" and provides a single example, a true and correct image of which is shown below:



**ANSWER**: Breeze Smoke admits that Breeze Smoke's July 31, 2021 Letter states that "Breeze Smoke's BREEZE PRO products are also marketed, offered and sold in a highly distinctive packaging that consumers associate exclusively with Breeze Smoke." Breeze Smoke admits that Paragraph 28 purports to show an image of an example of a BREEZE PRO product that was provided in the July 31, 2023 Letter. Except as expressly admitted herein, all other allegations of Paragraph 28 are denied.

29. Defendant's Demand Letter attaches its own "EXHIBIT A" and "EXHIBIT B," purporting to be documents from two prior lawsuits brought by Defendant in a federal court sitting in Michigan (the "Two Prior BREEZE Lawsuits").

**ANSWER**: Breeze Smoke admits that the July 31, 2023 Letter attaches an EXHIBIT A consisting of documents from two different lawsuits brought by Breeze Smoke in the Eastern and Western Districts of Michigan. Breeze Smoke denies that the July 31, 2023 Letter attaches an EXHIBIT B. Except as expressly admitted herein, all other allegations in Paragraph 29 are denied.

30. In the Two Prior BREEZE Lawsuits, Defendant alleged BREEZE trademark rights against allegedly infringing products of third parties, all of which allegedly infringing products included some variation of the word BREEZE.

**ANSWER**: Defendant admits that in the cases captioned *Breeze Smoke LLC v. Farid Jarjess et al.*, Case No. 2:20-cv-13413-AJT-EAS (E.D. Mich.) and *Breeze Smoke LLC v. Yatin Enterprises Inc.*, Case No. 1:22-cv-1182 (W.D. Mich.), Breeze Smoke asserted trademark rights in BREEZE and brought various claims against the parties to those suits, including claims for trademark infringement. Defendant denies the remaining allegations of Paragraph 30.

31. While Defendant uses the Two Prior BREEZE Lawsuits as a part of its threats against Midwest Goods, the attachments Defendant provides from federal Michigan courts have no judicial (or jury) finding relating to the trade dress or product packaging that Defendant alleges is violated by Midwest. To the contrary, one such attachment is by *stipulation* of the parties, and the other provides a judicial opinion *inter alia* granting provisional injunctive relief that does not address any supposed trade dress or product packaging rights of Defendant. Defendant's counsel is counsel of record in both of the Two Prior BREEZE Lawsuits, and Defendant must know, or have reason to know, that the threats it makes against Midwest Goods are not justified in the manner emphatically expressed in Defendant's Demand Letter.

**ANSWER**: Breeze Smoke admits that that Jeffrey K. Lamb and Mary A. Hyde are among the counsel of record for Breeze Smoke in the cases captioned *Breeze Smoke LLC v. Farid Jarjess et al.*, Case No. 2:20-cv-13413-AJT-EAS (E.D. Mich.) and *Breeze Smoke LLC v. Yatin Enterprises Inc.*, Case No. 1:22-cv-1182 (E.D. Mich.). Breeze Smoke admits that the attachments to the July 31, 2023 Letter include a stipulated permanent injunction against certain defendants in the *Jarjess* case and an opinion and order granting Breeze Smoke a preliminary injunction in the

12

*Yatin* case. Except as expressly admitted herein, Defendant denies the remaining allegations of Paragraph 31.

32.     In Defendant's Demand Letter, there is no allegation by Defendant of any product promoted, sold, or distributed by Midwest Goods, that uses any form or variation of the word "BREEZE".[2]

**ANSWER**:     Breeze Smoke admits that the July 31, 2023 Letter does not allege that Midwest Goods promotes, sells, or distributes any product that uses any form or variation of the word "BREEZE." Breeze Smoke admits that Midwest Goods has purchased goods from Breeze Smoke in the past. Except as expressly admitted herein, Breeze Smoke denies the allegations of Paragraph 32.

33.     Defendant is well aware, and has conceded to Midwest Goods, that Midwest Goods' "NORTH" branded products (hereinafter referred to as "NORTH Products") do not infringe on Defendant's trademark rights. On or about July 10, 2023, Defendant electronically communicated a message to a Midwest Good's representative ("Defendant's Trademark Concession Message"), a true and correct copy of which is shown below:

---

[2] Midwest Goods has, in the past, purchased goods from Defendant that included a form of BREEZE and was thusly authorized to distribute said goods. At or around the time Midwest Goods received Defendant's Demand Letter, Defendant has been slow to ship product to Midwest Goods.



**ANSWER**: Breeze Smoke denies that Breeze Smoke ever conceded that Midwest Goods' NORTH Products do not infringe on Defendant's trademark rights. Breeze Smoke admits that, on or about July 10, 2023, Mark Kareem electronically communicated via text message with a Midwest Goods representative (the "July 10, 2023 text messages"). Breeze Smoke admits that Paragraph 33 of the Complaint purports to reflect a truncated portion of the July 10, 2023 text messages. Breeze Smoke denies any remaining allegations of Paragraph 33 of the Complaint.

34. Defendant's Trademark Concession Message purports to be provided from Mark Kareem. As per paragraph 16, on information and belief, Mark Kareem is a person of influence and control for Defendant.

**ANSWER**: Breeze Smoke admits that the July 10, 2023 text messages were sent from Mark Kareem, who is a partial owner of Breeze Smoke. The remaining allegations of Paragraph 34 consist of legal conclusions to which no response is required. To the extent a response is required, Breeze Smoke denies all remaining allegations in Paragraph 34.

35. As shown in paragraph 32, Midwest Goods responded to Defendant's Trademark Concession Message by indicating that the alleged product "doesn't say breeze or match shape or size or puff count" as compared to the BREEZE PRO vape sold by Defendant. Indeed, other differences also exist between the BREEZE PRO vape sold by Defendant and the vaping products that Midwest Goods distributes and that are labeled with a "NORTH" brand. First, the "NORTH"-branded product uses an excessively large and impressionistic font, as compared to the "BREEZE PRO"-branded vape product sold by Defendant, as shown below:





**ANSWER**: Breeze Smoke admits that Mark Kareem received a text message on or about July 10, 2023, purporting to be from a representative of Midwest Goods, which states: "it

doesn't say breeze or match shape or size or puff count, i dont [sic] understand." Breeze Smoke submits that the remaining allegations contained in Paragraph 35 consist of legal conclusions to which no response is required. To the extent a response is required, Breeze Smoke denies the remaining allegations in Paragraph 35.

36. Other differences between the "BREEZE PRO"-branded vape product sold by Defendant and the vaping products that Midwest Goods distributes and that are labeled with a "NORTH" brand include, without limitation: (i) the respective product designs, including size, width, and that the vape labeled with a "NORTH" brand has a more elliptical cross section and entirely flat base; (ii) the vape labeled with a "NORTH" brand is rechargeable (and has a visible recharging port on its base), whereas, on information and belief, the "BREEZE PRO"-branded vape product sold by Defendant is not; and (iii) the vape labeled with a "NORTH" brand has a battery light and e-juice indicator, whereas, on information and belief, the "BREEZE PRO"-branded vape product sold by Defendant has neither of these features/appearances.

**ANSWER**: Breeze Smoke admits that the BREEZE PRO vape does not have a recharging port and does not have a battery light and e-juice indicator. Defendant lacks information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 36.

37. As shown in paragraph 32, Defendant's Trademark Concession Message concedes there is "nothing wrong with it" [vaping products that Midwest Goods sells/distributes and that are labeled with a "NORTH" brand], and "I understand it's not the same."

**ANSWER**: Breeze Smoke admits that, on or about July 10, 2023, Mark Kareem delivered text messages to a representative of Midwest Smoke which state: "nothing wrong with it" and "I understand it's not the same," but denies that these text messages concede anything

16

regarding the vaping products sold by either Midwest Goods or Breeze Smoke. Except as expressly admitted herein, Breeze Smoke denies all remaining allegations of Paragraph 37.

38. Indeed, rather than make a case that Midwest Goods' products actually do infringe on Defendant's rights in some way, Defendant's Trademark Concession Message requests Midwest Goods to disclose Midwest Goods' proprietary information, namely, the source from which Midwest Goods purchases vaping products that Midwest Goods distributes and that are labeled with a "NORTH" brand.

**ANSWER**: Denied.

39. Defendant's Trademark Concession Message makes clear that Defendant has no good-faith belief that Midwest Goods is infringing on its rights in any way, but instead, Defendant is trying to leverage the threat of legal action in order to discover Midwest Goods' proprietary and competitive information.

**ANSWER**: Denied.

40. Despite the admissions in the Trademark Concession Message that there is "nothing wrong" with Midwest Goods' products and that they are "not the same" as Defendant's product, Defendant sent a letter to multiple Midwest Goods' customers on or about August 4, 2023, accusing Midwest Goods and others of selling "copycat vapes" and "holding themselves out to the public as being affiliated with and/or being the 'new Breeze'." ("Defendant's Disparaging Letter to Midwest Goods' Customers"). A true and correct copy of Defendant's Disparaging Letter to Midwest Goods' Customers is attached as Exhibit B.

**ANSWER**: Breeze Smoke admits that, on or about August 4, 2023, Breeze Smoke sent a letter to its customers ("August 4, 2023 Letter"). Breeze Smoke admits that Exhibit B to the Complaint purports to be a copy of this letter. Defendant admits that in the August 4, 2023 Letter

17

it lists certain vapes that copy its BREEZE products and indicates that the third party vapes listed are not affiliated with Breeze Smoke. Defendant denies the remaining allegations of Paragraph 40.

41. Defendant's Disparaging Letter to Midwest Goods' Customers identifies five different vapes, only one of which is associated with Midwest Goods – namely, vapes sold in connection with the "NORTH" brand.

**ANSWER**: Breeze Smoke admits that it identifies five vapes, including the North Products, in the August 4, 2023 Letter. Breeze Smoke lacks information sufficient to form a belief as to the remaining allegations in Paragraph 41.

42. Defendant's Disparaging Letter to Midwest Goods' Customers indicates that Defendant is "currently pursuing legal action against all those named in this letter." Contrary to that statement, to Midwest Goods' knowledge, Defendant has not filed any legal action against it [sic]

**ANSWER**: Breeze Smoke admits that, as of August 4, 2023, Breeze Smoke had not filed a civil complaint against Midwest Goods. Except as expressly admitted herein, all remaining allegations in Paragraph 42 are denied.

43. Defendant's statements in Defendant's Disparaging Letter to Midwest Goods' Customers are false and misleading, and, on information and belief, they are part of a scheme to disparage Midwest Goods' products and business in the marketplace and to provide Defendant with a competitive advantage.

**ANSWER**: Denied.

44. On information and belief, at least some of Midwest Goods' customers are influenced, to the detriment of Midwest Goods, by the allegations in Defendant's Disparaging

18

Letter to Midwest Goods' Customers.

**ANSWER**:     Denied.

**ADDITIONAL ALLEGATIONS COMMON
TO ALL COUNTS**

45.     Midwest Goods incorporates fully herein all factual allegations from the preceding paragraphs.

**ANSWER**:     Breeze Smoke incorporates its responses to the allegations in Paragraphs 1-45 of the Complaint as if fully set forth herein.

46.     Defendant's Demand Letter to Midwest identifies five federal trademark registrations – namely, U.S. Trademark Registration Numbers 6,296,005; 6,296,004, 6,992,438; 6,976,533 [sic, 6,976,563]3; and 6,770,534 (collectively, the "Alleged BREEZE trademarks"). True and correct copies of the Alleged BREEZE trademark registrations are included in Exhibit C.

**ANSWER**:     Breeze Smoke admits that the July 31, 2023 Letter identifies Federal Trademark Registration Numbers 6,296,005, 6,296,004, 6,992,438, and 6,770,534. Breeze Smoke admits that the July 31, 2023 Letter mistakenly identifies Federal Trademark Registration Number 6,976,533 and that the July 31, 2023 intended to identify Federal Trademark Registration Number 6,976,563. Breeze Smoke admits that Exhibit C to the Complaint purports to show copies of Federal Trademark Registration Numbers 6,296,005, 6,296,004, 6,992,438, 6,976,563, and 6,770,534 (the "Breeze Trademarks"). Except as expressly admitted herein, Breeze Smoke denies all remaining allegations of Paragraph 46 of the Complaint.

47.     Each of the file histories of the Alleged BREEZE trademarks, in the United States Trademark Office records, includes a respective registration of goods, some of which have nothing at all to do with vaping devices.

**ANSWER**: Denied.

48. In each of the file histories of the Alleged BREEZE trademarks, there is a sworn attestation to the date when the respective trademark was first used. Among the dates corresponding to the five Alleged BREEZE trademarks, the earliest date of first use anywhere is 02/04/2020, which is the file for registrations 6,296,005 and 6,296,004, neither of which recites any goods related to vaping devices. The earliest recited date of first trademark usage in the Alleged BREEZE trademarks, in connection with vaping devices, is for registration 6,976,563, which is for the trademark BREEZE SMOKE, and for registration 6,770,534, which is for the trademark BREEZE PLUS, and both of said registrations recite the goods of "disposable electronic cigarettes." The sworn date of first use of the trademark that is in those two registrations 6,976,563 and 6,770,534 is 03/01/2020. Accordingly, on information and belief based on the sworn statements in the registrations of the Alleged BREEZE trademarks, Defendant (or its assignor) has used not simply the word BREEZE, but the word BREEZE SMOKE and BREEZE PLUS, in connection with "disposable electronic cigarettes," for less than three and one-half years.

**ANSWER**: Breeze Smoke admits that the file histories for each of the Breeze Trademarks disclose that each Breeze Trademark was first used at least as early as the date specified therein. Breeze Smoke further admits that the file histories for the '004 and '005 Registrations disclose that the associated marks were first used at least as early as February 4, 2020. Breeze Smoke admits that the '004 and '005 Registrations cover goods in International Class 25, namely the following goods: beanies, hats, hooded sweatshirts, long-sleeved shirts, shirts, sweaters, tank tops, graphic t-shirts, short-sleeved or long-sleeved t-shirts, sweat shirts, t-shirts, tee shirts, and woolly hats. Breeze Smoke admits that the file histories for Federal Trademark Registration Numbers 6,976,563 (the "'563 Registration") and 6,976,564 (the "'564 Registration")

20

disclose that the associated marks were first used at least as early as March 1, 2020. Breeze Smoke admits that the '563 and '564 Registrations cover goods in International Class 34, namely disposable electronic cigarettes. Except as expressly admitted herein, all remaining allegations of Paragraph 48 are denied.

49. To the current date, Defendant does not identify, nor appear to own, a single United States federal trademark registration for the word "BREEZE" standing alone.

**ANSWER**: Denied.

50. Moreover, Defendant's claim that the alleged "similar design" of Midwest Goods' vape products infringes Defendant's rights ignores the multitude of similarly-shaped devices, dating back years, that were in the marketplace well before Defendant began distributing its products.

**ANSWER**: Denied.

51. In 1965, the United States Patent Office issued U.S. Patent 3,200,819, entitled "SMOKELESS NON-TOBACCO CIGARETTE." The U.S. Patent 3,200,819 states that its "invention relates to a smokeless non-tobacco cigarette and has for an object to provide a safe and harmless means for and method of smoking by replacing burning tobacco and paper with heated, moist, flavored air." A true and correct copy of U.S. Patent 3,200,819 is attached hereto as Exhibit D.

**ANSWER**: Breeze Smoke admits that, United States Patent and Trademark Office records reflect that in 1965, the United States Patent and Trademark Office issued U.S. Patent No. 3,200,819, entitled "SMOKELESS NON-TOBACCO CIGARETTE" and that U.S. Patent No. 3,200,819 states that "[t]he present invention relates to a smokeless non-tobacco cigarette and has for an object to provide a safe and harmless means for and method of smoking by replacing burning

21

tobacco and paper with heated, moist, flavored air." Breeze Smoke admits that Exhibit D to the Complaint purports to be a copy of U.S. Patent No. 3,200,819. Except as expressly admitted herein, all remaining allegations of Paragraph 51 are denied.

52. A true and correct copy of the smokeless non-tobacco cigarette, illustrated in the U.S. Patent 3,200,819, is as follows:



**ANSWER**: Breeze Smoke admits that Paragraph 52 to the Complaint purports to show an image reflecting figures provided in U.S. Patent No. 3,200,819. Except as expressly admitted herein, any remaining allegations of Paragraph 52 are denied.

53. The U.S. Patent 3,200,819 identifies various parts in its apparatus shown in paragraph 52, to include: (i) a flavored cartridge 20; (ii) a mouthpiece 24; and (iii) an external tube 15.

**ANSWER**: Paragraph 53 of the Complaint consists of legal conclusions to which no response is required. To the extent any response is required, Paragraph 53 of the Complaint purports to characterize and summarize in part the disclosure of U.S. Patent No. 3,200,819 and

22

Breeze Smoke respectfully refers the Court to U.S. Patent No. 3,200,819 attached to the Complaint as Exhibit D, and denies the allegations of Paragraph 53 to the extent inconsistent therewith.

54. A true and correct copy of U.S. Patent D891,691, filed September 5, 2018, is attached here to as Exhibit E.

**ANSWER**: Breeze Smoke admits that U.S. Patent No. D891,691 was filed on September 5, 2019. Breeze Smoke admits that Exhibit E to the Complaint purports to reflect a copy of U.S. Patent No. D891,691. Except as expressly admitted herein, any remaining allegations of Paragraph 54 are denied.

55. A true and correct copy of the electronic cigarette, illustrated in the U.S. Patent D891,691, is as follows:



FIG. 17

**ANSWER**: Breeze Smoke admits that Paragraph 55 purports to show an image of a figure provided in the disclosure of U.S. Patent D891,691. Except as expressly admitted herein, any remaining allegations of Paragraph 55 are denied.

56. A true and correct copy of U.S. Patent D863,665, filed April 12, 2018, is attached here to as Exhibit F.

**ANSWER**: Breeze Smoke admits that U.S. Patent No. D863,665 was filed on April 12, 2018. Breeze Smoke admits that Exhibit F to the Complaint purports to reflect a copy of U.S.

Patent No. D863,665. Except as expressly admitted herein, any remaining allegations of Paragraph 56 are denied.

57.     A true and correct copy of the electronic cigarette, illustrated in the U.S. Patent D863,665, is as follows:



FIG.1

**ANSWER**:     Breeze Smoke admits that Paragraph 57 purports to show an image of a figure provided in the disclosure of U.S. Patent D863,665. Except as expressly admitted herein, any remaining allegations of Paragraph 57 are denied.

58.     A true and correct copy of U.S. Patent D865,276, filed April 2, 2018, is attached hereto as Exhibit G.

**ANSWER**:     Breeze Smoke admits that U.S. Patent No. D865,276 was filed on April 2, 2018. Breeze Smoke admits that Exhibit G to the Complaint purports to reflect a copy of U.S. Patent No. D865,276. Except as expressly admitted herein, any remaining allegations of Paragraph 58 are denied.

59.     A true and correct copy of the electronic cigarette, in the U.S. Patent D865,276, is as follows:



FIG. 8

**ANSWER**: Breeze Smoke admits that Paragraph 59 purports to show an image of a figure provided in the disclosure of U.S. Patent D865,276. Except as expressly admitted herein, any remaining allegations of Paragraph 59 are denied.

60. A true and correct copy of U.S. Patent D762,003, filed July 25, 2014, is attached here to as Exhibit H.

**ANSWER**: Breeze Smoke admits that U.S. Patent No. D865,276 was filed on July 25, 2014. Breeze Smoke admits that Exhibit H to the Complaint purports to reflect a copy of U.S. Patent No. D762,003. Except as expressly admitted herein, any remaining allegations of Paragraph 60 are denied.

61. A true and correct copy of the electronic cigarette, illustrated in the U.S. Patent D761,003, is as follows:



FIG. 1

25

**ANSWER**: Breeze Smoke admits that Paragraph 61 purports to show an image of a figure provided in the disclosure of U.S. Patent D761,003. Except as expressly admitted herein, any remaining allegations of Paragraph 61 are denied.

62. A true and correct copy of U.S. Patent D759,303, filed February 19, 2015, is attached here to as Exhibit I.

**ANSWER**: Breeze Smoke admits that U.S. Patent No. D759,303 was filed on February 19, 2015. Breeze Smoke admits that Exhibit I to the Complaint purports to reflect a copy of U.S. Patent No. D759,303. Except as expressly admitted herein, any remaining allegations of Paragraph 62 are denied.

63. A true and correct copy of the electronic cigarette, illustrated in the U.S. Patent D759,303, is as follows:



**ANSWER**: Breeze Smoke admits that Paragraph 63 purports to show an image of a figure provided in the disclosure of U.S. Patent D759,303. Except as expressly admitted herein, any remaining allegations of Paragraph 63 are denied.

64. A true and correct copy of U.S. Patent D757,353, filed July 16, 2014, is attached here to as Exhibit J.

**ANSWER**: Breeze Smoke admits that U.S. Patent No. D757,353 was filed on July 16, 2014. Breeze Smoke admits that Exhibit J to the Complaint purports to reflect a copy of U.S. Patent No. D757,353. Except as expressly admitted herein, any remaining allegations of Paragraph 64 are denied.

65. A true and correct copy of the electronic cigarette, in the U.S. Patent D757,353, is as follows:



**ANSWER**: Breeze Smoke admits that Paragraph 65 purports to show an image of a figure provided in the disclosure of U.S. Patent D757,353. Except as expressly admitted herein, any remaining allegations of Paragraph 65 are denied.

66. A true and correct copy of U.S. Patent D756,031, filed August 18, 2014, is attached here to as Exhibit K.

**ANSWER**: Breeze Smoke admits that U.S. Patent No. D756,031 was filed on August 18, 2014. Breeze Smoke admits that Exhibit K to the Complaint purports to reflect a copy of U.S. Patent No. D756,031. Except as expressly admitted herein, any remaining allegations of Paragraph 66 are denied.

67. A true and correct copy of the electronic cigarette, illustrated in the U.S. Patent

D756,031, is as follows:



FIG. 7

**ANSWER**:    Breeze Smoke admits that Paragraph 67 purports to show an image of a figure provided in the disclosure of U.S. Patent D756,031. Except as expressly admitted herein, any remaining allegations of Paragraph 67 are denied.

68.    On information and belief, a vaping product under the brand of SEA pads was publicly displayed prior to March of 2020, and a true and correct image representing said display is as follows:



**ANSWER**:    Breeze Smoke lacks information sufficient to form a belief as to the allegations in Paragraph 68.

69. On information and belief, a vaping product under the brand of VAPORTECH 18 VAPO was publicly displayed prior to March of 2020, and a true and correct image representing said display is as follows:



**ANSWER**: Breeze Smoke lacks information sufficient to form a belief as to the allegations in Paragraph 69.

70. On information and belief, a vaping product under the brand of zalt was publicly displayed prior to March of 2020, and a true and correct image representing said display is as follows:



**ANSWER**: Breeze Smoke lacks information sufficient to form a belief as to the allegations in Paragraph 70.

71. On information and belief, a vaping product under the brand of Air Bar was publicly displayed prior to March of 2020, and a true and correct image representing said display is as follows:



**ANSWER**: Breeze Smoke lacks information sufficient to form a belief as to the allegations in Paragraph 71.

72.     Contemporary websites offer vaping goods for sale into the United States, illustrative of the common themes among some vaping devices, shapes, containers, use of fonts, colors, and the like, all overwhelmingly demonstrate that Defendant either has no distinctiveness in any of such attributes – other than potentially in the words "BREEZE PRO" and "BREEZE SMOKE" – or that if Defendant's legal threats are to be given any weight, then Defendant is likewise infringing the rights of numerous other brands. Representative examples are shown below:

























35







**ANSWER**: Breeze Smoke admits that "BREEZE PRO" and "BREEZE SMOKE" are distinctive. Breeze Smoke submits that Paragraph 72 states legal conclusions to which no response is required. To the extent a response is required and to the extent not expressly admitted herein, all other allegations of Paragraph 72 are denied.

73. Defendant's Demand Letter also refers to the "look and feel of the design of the packaging for the" Midwest Goods product. An even cursory review of the marketplace, going back years to the present, reveals myriad market usage of the very features Defendant now claims to have proprietary rights regarding, precluding any notion that the look and feel of Defendant's products could be regarded as distinctive.

**ANSWER**: Breeze Smoke admits that the July 31, 2023 Letter states that the packaging of the products identified in the July 31, 2023 Letter "have the same overall look and feel." Breeze Smoke submits that the remaining allegations in Paragraph 73 consist of legal conclusions to which no response is required. To the extent a response is required and to the extent not expressly admitted herein, all other allegations of Paragraph 73 are denied.

74.    For example, Defendant references its container – which is a clear parallelepiped. However, such clear packaging has been around for decades, including, for example, as shown below:



Top 10 Packages of the 90's | Dieline - Design, Branding & Packaging Inspiration    Visit

**ANSWER**:    Breeze Smoke admits that the July 31, 2023 Letter refers to the packaging for the BREEZE PRO product. Except as expressly admitted herein, all other allegations of Paragraph 74 are denied.

75.    The marketplace features contemporary vaping replete with clear packaging, with examples shown below, and numerous others in the earlier paragraph 72:



**ANSWER**: Breeze Smoke admits that Paragraphs 72 and 75 purport to show images of vaping products. Except as expressly admitted herein, all other allegations of Paragraph 75 are denied.

76. Indeed, the vaping marketplace includes vendors offering entire lines of clear vape packaging:



**ANSWER**: Breeze Smoke lacks information sufficient to form a belief as to the allegations in Paragraph 76.

77. Moreover, a comparison of Defendant's packaging box to that of the packaging in which the "NORTH"-branded vape products are sold shows stark differences:

| Defendant's packaging | NORTH-branded vape packaging |
|---|---|
| | |

**ANSWER**: Breeze Smoke admits that Paragraph 77 purports to show an image of the packaging for a Breeze Smoke product and an image of the packaging for a NORTH Product. Except as expressly admitted herein, the allegations of Paragraph 77 are denied.

## COUNT I

### Declaration that Defendant Does Not Own a Protectable Interest in Its Asserted Trade Dress and Product Packaging

78. Midwest Goods repeats and re-alleges the allegations from the preceding paragraphs as if fully set forth herein.

**ANSWER**: Breeze Smoke incorporates its responses to the allegations in Paragraphs 1-77 of the Complaint as if fully set forth herein.

79. Notwithstanding that Defendant has no patent indication on its website, its product, nor its product packaging, Defendant has demanded that Midwest Goods take remedial action based on purported patent rights of Defendant.

**ANSWER**: Denied.

41

80. Notwithstanding that Defendant identifies no promotion or sale by Midwest Goods, of any unauthorized product with the word BREEZE, or any variation thereof, both Defendant directly, and through its counsel, have demanded that Midwest Goods take remedial action based on purported trademark rights of Defendant.

**ANSWER**: Breeze Smoke admits that it made Midwest Goods aware of its ownership of the Breeze Trademarks and that Breeze Smoke requested that Midwest Goods cease its sales of products that infringe Breeze Smoke's trade dress. Except as expressly admitted herein, the remaining allegations of Paragraph 80 are denied.

81. Notwithstanding that the vaping architecture has been around since at least as early as 1965, that Patent Office records are replete with illustrated designs of various generally rectangular stick-shaped or cylindrical-shaped form-factor designs for electronic cigarettes, that the vaping industry (and others) has for years used utilitarian clear packaging permitting consumers to view goods therethrough, and representative colors for flavors (*e.g.*, yellow for lemon, red for strawberry, *etc*.), both Defendant directly, and through its counsel, have demanded that Midwest Goods take remedial action based on purported trade dress and product packaging rights of Defendant, with no evidence that such purported rights have secondary meaning and are not utilitarian.

**ANSWER**: Breeze Smoke admits that it requested that Midwest Goods cease its sales of products that infringe Breeze Smoke's trade dress. Except as expressly admitted herein, the remaining allegations of Paragraph 81 are denied.

82. The elements asserted as comprising Defendant's trade dress for the packaging of its BREEZE electronic cigarette, apart from certain trademarks that include the word, but not solely the word, "BREEZE", do not constitute protectable rights and do not signify Defendant as the

source of the goods.

**ANSWER**: Breeze Smoke submits that the allegations contained in Paragraph 82 consist of legal conclusions to which no response is required. To the extent a response is required, Breeze Smoke denies the allegations of Paragraph 82.

83. Defendant has threatened and communicated with Midwest Goods and with Midwest Goods' customers such threats and false claims.

**ANSWER**: Breeze Smoke admits that it has communicated to Midwest Goods that certain products sold by Midwest Goods infringe Breeze Smoke's trade dress. Breeze Smoke admits that, on August 4, 2023, Breeze Smoke sent a communication to its customers that refers to the NORTH Products. Except as expressly admitted herein, all other allegations of Paragraph 83 are denied.

84. Defendant's assertions that the products distributed by Midwest Goods under the "NORTH" brand are violating Defendant's rights irreparably injure and adversely affect Midwest Goods, and, unless prevented by this Court, will continue to so affect Midwest Goods' business and investments made into its own business and attendant goodwill.

**ANSWER**: Breeze Smoke submits that the allegations contained in Paragraph 84 consist of legal conclusions to which no response is required. To the extent a response is required, Breeze Smoke denies the allegations of Paragraph 84.

85. Therefore, as a result of Defendant's threats, demands, and disparaging statements regarding Midwest Goods and its products, there is an actual, substantial controversy between the parties, which is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

**ANSWER**: Breeze Smoke submits that the allegations contained in Paragraph 85

43

consist of legal conclusions to which no response is required. To the extent a response is required, Breeze Smoke denies the allegations of Paragraph 85.

86.  To resolve the legal and factual questions raised by Defendant concerning its rights in and to various forms of trade dress and product packaging alleged to subsist in its BREEEZE-inclusive electronic cigarettes, and to afford relief from the uncertainty and controversy which Defendant's assertions have precipitated, Midwest Goods is entitled to a declaratory judgment that Defendant does not have protectable intellectual property rights in patents, trade dress, and/or packaging of such products.

**ANSWER**:  Breeze Smoke admits that Midwest Goods purports to seek a declaratory judgment that Defendant does not have protectable intellectual property rights in patents, trade dress, and/or packaging, but denies that Midwest Goods is entitled to any such relief. Except as expressly admitted herein, all other allegations of Paragraph 86 are denied.

## COUNT II

### Declaration of Trade Dress/Product Packaging Non-Infringement

87.  Midwest Goods repeats and re-alleges the allegations in the preceding paragraphs as if fully set forth herein.

**ANSWER**:  Breeze Smoke incorporates its responses to the allegations in Paragraphs 1-86 of the Complaint as if fully set forth herein.

88.  In addition or in the alternative, to the extent Defendant is entitled to any protection in the trade dress and/or packaging of its BREEZE-inclusive electronic cigarettes, Midwest Goods is entitled to a declaratory judgment of its rights, namely that it is not in violation of Defendant's rights, including, without limitation, any rights Defendant may have in the BREEZE-inclusive trademarks, or trade dress/product packaging of electronic cigarettes with which the BREEZE-

inclusive trademarks are used or associated, under 15 U.S.C. §§ 1114 or 1125, at common law, or under any applicable state trademark law.

**ANSWER**:     Breeze Smoke admits that Midwest Goods is seeking a declaratory judgment that it is not in violation of Breeze Smoke's rights, but denies that Midwest Goods is entitled to any such relief. Except as expressly admitted herein, all other allegations of Paragraph 88 are denied.

## COUNT III

### Declaration of Trademark Non-Infringement

89.     Midwest Goods repeats and re-alleges the allegations in the preceding paragraphs as if fully set forth herein.

**ANSWER**:     Breeze Smoke incorporates its responses to the allegations in Paragraphs 1-88 of the Complaint as if fully set forth herein.

90.     To resolve the legal and factual questions raised by Defendant concerning its rights in and to BREEEZE-inclusive trademarks relating to electronic cigarettes, and to afford relief from the uncertainty and controversy which Defendant's assertions have precipitated, Midwest Goods is entitled to a declaratory judgment that that there is no likelihood of confusion as between Defendant's BREEZE-inclusive trademarks and the branding of "NORTH" on products distributed and/or sold by Midwest Goods.

**ANSWER**:     Breeze Smoke admits that Midwest Goods purports to seek a declaratory judgment that there is no likelihood of confusion as between Breeze Smoke's Breeze Trademarks and the branding of "NORTH" on products distributed and/or sold by Midwest Goods, but denies that Midwest Goods is entitled to any such relief. Except as expressly admitted herein, all other allegations of Paragraph 90 are denied.

**COUNT IV**

**Federal Unfair Competition Under the Lanham Act, 15 U.S.C. § 1125 (a)**

91.     Midwest Goods repeats and re-alleges the allegations in the preceding paragraphs as if fully set forth herein.

**ANSWER**:     Breeze Smoke incorporates its responses to the allegations in Paragraphs 1-90 of the Complaint as if fully set forth herein.

92.     Defendant made false and misleading descriptions and representations of fact that misrepresent the nature, characteristics, and qualities of its goods and rights, and of "NORTH"-branded goods distributed/sold by Midwest Goods. Among other things, Defendant falsely stated or misrepresented: (i) Defendant has unspecified patent rights that are somehow infringed by "NORTH"-branded goods distributed by Midwest Goods; (ii) "NORTH"-branded goods distributed/sold by Midwest Goods are "copycats"; and (iii) Defendant has trade dress or product configuration rights in attributes of its products that are protectable.

**ANSWER**:     Denied.

93.     By making these and other false or misleading statements of fact in its communications to Midwest Goods and Midwest Goods' customers, Defendant caused and is likely to cause competitive and commercial injury to Midwest Goods in an amount to be determined at trial.

**ANSWER**:     Denied.

**COUNT V**

**Tortious Interference with Business Expectancy**

94.     Midwest Goods repeats and re-alleges the allegations in the preceding paragraphs as if fully set forth herein.

46

**ANSWER**: Breeze Smoke incorporates its responses to the allegations in Paragraphs 1-93 of the Complaint as if fully set forth herein.

95. Prior to Defendant sending out Defendant's Disparaging Letter to Midwest Goods' Customers, Midwest Goods had a reasonable expectancy of entering into valid business relationships with many of the customers who received the Defendant's Disparaging Letter to Midwest Goods' Customers. Many of the recipients of Defendant's Disparaging Letter to Midwest Goods' Customers had purchased products from Midwest Goods in the past, and Midwest Goods anticipated they would continue to buy its goods in the future.

**ANSWER**: Breeze Smoke lacks information sufficient to form a belief as to the truth of the allegations in Paragraph 95.

96. Defendant had knowledge of these relationships and of Midwest Goods' expectancy of future business because Defendant's Disparaging Letter to Midwest Goods' Customers is purposefully directed to customers who might be inclined to purchase the alleged "copycat" products, including from Midwest Goods.

**ANSWER**: Denied.

97. Defendant has intentionally interfered with this expectancy and has, on information and belief, prevented the realization of this business expectancy, by making false and disparaging statements and warning customers not to purchase alleged "copycat" products, including "NORTH"-brand products distributed by Midwest Goods. This interference is not justified because, as detailed above, Defendant has no protectable interest in its asserted trade dress and packaging, and, even if it did, Defendant has essentially acknowledged that Midwest Goods is not infringing.

**ANSWER**: Denied.

98. Defendant's intentional interference has resulted in damages to Midwest Goods in an amount to be determined by the jury that is believed to exceed $75,000, exclusive of costs and fees.

**ANSWER**: Denied.

### COUNT VI

### Violation of the Deceptive Trade Practices Act

99. Midwest Goods repeats and re-alleges the allegations in the preceding paragraphs as if fully set forth herein.

**ANSWER**: Breeze Smoke incorporates its responses to the allegations in Paragraphs 1-98 of the Complaint as if fully set forth herein.

100. Defendant's actions have violated the Illinois Uniform Deceptive Trade Practices Act (815 ILCS 510/2) because, in the course of Defendant's business, Defendants have (1) disparaged the goods, services, or business of Midwest Goods in Illinois and elsewhere by false or misleading representations of fact; *i.e.*, that Midwest Goods' products are "copycat" products and/or infringe the rights of Defendant; and (2) engaged in conduct which creates a likelihood of confusion or misunderstanding in Illinois and elsewhere; *i.e.*, with regard to whether Midwest Goods' products are "copycat" products and/or infringe the rights of Defendant. On information and belief, these false statements are part of a scheme by Defendant to disparage Midwest Goods' products and business in Illinois and other marketplaces and to provide Defendant with a competitive advantage.

**ANSWER**: Denied.

101. Midwest Goods is likely to be damaged by Defendant's conduct because, on information and belief, at least some of Midwest Goods' Illinois and other customers are

influenced, to the detriment of Midwest Goods, by the disparaging allegations in Defendant's Disparaging Letter to Midwest Goods' Customers.

**ANSWER**:   Denied.

102.   On information and belief, Defendant will continue to spread false allegations of infringement and disparage Midwest Goods in Illinois and other marketplaces if Defendant is not restrained and/or enjoined from doing so as requested herein.

**ANSWER**:   Denied.

103.   Midwest Goods has no adequate legal remedy for the injuries that have and will be incurred because, *inter alia*, the total amount of lost customers and revenues resulting from Defendant's wrongful conduct, and the damage to Midwest Goods' reputation and goodwill, will be difficult, if not impossible, to calculate.

**ANSWER**:   Denied.

104.   Midwest Goods therefore seeks injunctive relief pursuant to 815 ILCS 510/3, enjoining Defendant from continuing to make false and disparaging statements about Midwest Goods or its products.

**ANSWER**:   Breeze Smoke admits that Midwest Goods purports to seek injunctive relief, but denies that Midwest Goods is entitled to any such relief. Except as expressly admitted herein, all other allegations in Paragraph 104 are denied.

105.   As evidenced by the Trademark Concession Message, as well as the obvious lack of infringement, Defendant is willfully engaging in a deceptive trade practice. Midwest Goods is, therefore, entitled to recover its costs and attorneys' fees under 815 ILCS 510/3.

**ANSWER**:   Denied.

## COUNT VII

### Common Law Disparagement

106.    Midwest Goods repeats and re-alleges the allegations in the preceding paragraphs as if fully set forth herein.

**ANSWER**:    Breeze Smoke incorporates its responses to the allegations in Paragraphs 1-105 of the Complaint as if fully set forth herein.

107.    Defendant's conduct described above also constitutes common law disparagement under Illinois law because Defendant has made false and demeaning statements regarding the quality of Midwest Goods' distributed products.

**ANSWER**:    Denied.

108.    Midwest Goods seeks damages in an amount to be determined by the jury that is believed to exceed $75,000, exclusive of costs and fees.

**ANSWER**:    Denied.

### JURY DEMAND

Breeze Smoke demands a jury trial on all claims and issues so triable.

### PRAYER FOR RELIEF

Breeze Smoke denies that Midwest Goods is entitled to any relief whatsoever, including the relief requested in Plaintiff's prayer for relief.

WHEREFORE, Breeze Smoke prays that this Court enter a judgment denying Midwest Goods' claims in their entirety and for such other relief as the Court deems just and proper.

### AFFIRMATIVE AND OTHER DEFENSES

Without assuming any burden of proof or persuasion that rests with Plaintiff, Breeze Smoke hereby asserts the following affirmative defenses. Breeze Smoke hereby gives notice that

it intends to rely upon other defenses that may become available or appear during the discovery proceedings in this case and reserves the right to amend their Answer and Affirmative Defenses to assert any such defense.

**First Affirmative Defense**

1. Midwest Goods's claims are barred in whole or in part because the Complaint fails to state a claim upon which relief can be granted.

2. Midwest Goods supports the allegations in its Complaint with conclusory statements.

**Second Affirmative Defense**

3. Breeze Smoke reincorporates by reference paragraphs 1-2 of its Affirmative Defenses above as if fully stated herein.

4. Midwest Goods's claims are barred in whole or in part because it has infringed and continues to infringe Breeze Smoke's trade dress by making, using, selling, and/or offering for sale it's NORTH Products in the United States.

5. Breeze Smoke's rights in its BREEZE PRO Product Packaging Trade Dress are valid and enforceable.

6. The BREEZE PRO Product Packaging Trade Dress is not functional as it is not utilitarian and does not affect the cost or quality of the article.

7. The BREEZE PRO Product Packaging Trade Dress serves to identify to the consumer the source of the product as Breeze Smoke.

8. Many alternative designs exist for product packaging for vaping devices.

9. The BREEZE PRO Product Design Trade Dress also is not functional as it is not utilitarian and does not affect the cost or quality of the article.

10. Many alternative product designs exist for vaping devices.

11. The BREEZE PRO Product Packaging Trade Dress is inherently distinctive as the combination of elements is arbitrary.

12. The Breeze Smoke IP has acquired secondary meaning because of its commercial success, the amount of advertising done by Breeze Smoke and third parties to promote BREEZE Goods and Services, widespread consumer recognition, and because there are numerous intentional copiers on the market, like the Infringing Products.

13. The Infringing Product's packaging and design is substantially similar to the Breeze Smoke IP.

**Third Affirmative Defense**

14. Breeze Smoke reincorporates by reference paragraphs 1-13 of its Affirmative Defenses above as if fully stated herein.

15. Midwest Goods's claims are barred in part or in full because the alleged damages are speculative.

16. On information and belief, Midwest Goods has not lost sales or customers due to any action by Breeze Smoke.

**Fourth Affirmative Defense**

17. Breeze Smoke reincorporates by reference paragraphs 1-16 of its Affirmative Defenses above as if fully stated herein.

18. Midwest Goods's claims are barred in part or in full because the alleged actions of Breeze Smoke were not the proximate cause of any loss or damages to Midwest Goods.

19. On information and belief, Midwest Goods has not lost sales or customers due to any action by Breeze Smoke.

20. On information and belief, Midwest Goods intentionally chose to sell a product with identical product packaging and design to the Breeze Smoke IP.

21. After receiving notice of its infringement, Midwest Goods intentionally chose to continue selling the Infringing Product.

22. Midwest Goods's own actions are intervening factors of the alleged harm to Midwest Goods.

### Fifth Affirmative Defense

23. Breeze Smoke reincorporates by reference paragraphs 1-22 of its Affirmative Defenses above as if fully stated herein.

24. Midwest Goods's claims are barred in part or in full failed to mitigate damages, if any.

25. On information and belief, Midwest Goods has not lost sales or customers due to any action by Breeze Smoke.

26. On information and belief, Midwest Goods intentionally chose to sell a product with identical product packaging and design to the Breeze Smoke IP.

27. After receiving notice of its infringement, Midwest Goods intentionally chose to continue selling the Infringing Product.

### Sixth Affirmative Defense

28. Breeze Smoke reincorporates by reference paragraphs 1-27 of its Affirmative Defenses above as if fully stated herein.

29. Midwest Goods's claims are barred in whole or in part because Breeze Smoke at all times was reasonable in it conduct and its actions were undertaken in good faith to advance legitimate business interests and protect its rights.

30. Breeze Smoke is the owner of valid trade dress rights in its BREEZE PRO Product Packaging and BREEZE PRO Product Design Trade Dress.

31. These rights predate any sale of the Infringing Product.

32. The Infringing Product's packaging and design is substantially similar to the Breeze Smoke IP.

33. Breeze Smoke exercised its lawful right to enforce its trade dress against Midwest Goods, a junior user of the Breeze Smoke IP.

## COUNTERCLAIMS

1. Defendant/Counterclaim Plaintiff Breeze Smoke, LLC ("Counterclaim Plaintiff" or "Breeze Smoke") by way of Counterclaims against Midwest Goods Inc., dba Midwest Distribution Illinois ("Midwest Goods"), Wisemen Wholesale, Inc. ("Wisemen"), Speed Wholesale, Inc. ("Speed"), World Wholesale Inc. ("World"), and Light View LLC ("Light View") states as follows.

2. The Counterclaims asserted herein in no way constitute any waiver of any defense asserted by Breeze Smoke.

3. Breeze Smoke incorporates by reference its responses to the Complaint as if fully set forth herein.

## PARTIES

4. Breeze Smoke is a limited liability company organized and existing under the laws of the State of Michigan, with its principal place of business at 4654 Lilly Ct., West Bloomfield, Michigan 48323.

5. Upon information and belief, Plaintiff/Counterclaim Defendant Midwest Goods is a corporation organized and existing under the laws of Illinois, with its principal place of business at 1001 Foster Avenue, Bensenville, Illinois 60106.

6. Upon information and belief, Counterclaim Defendant Wiseman is a corporation organized and existing under the laws of Illinois, with its principal place of business at 857 Industrial Drive, Bensenville, IL 60106.

7. Upon information and belief, Counterclaim Defendant Speed is a corporation organized and existing under the laws of Illinois, with its principal place of business at 400 North York Road, Bensenville, IL 60106.

8. Upon information and belief, Counterclaim Defendant World is a corporation organized and existing under the laws of Illinois, with its principal place of business at 845 North Larch Avenue, Suite 3, Elmhurst, IL 60126.

9. Upon information and belief, Counterclaim Defendant Light View is a corporation organized and existing under the laws of Illinois, with its principal place of business at 845 North Larch Avenue, Suite 3, Elmhurst, IL 60126.

10. Collectively, Midwest Goods, Wisemen, Speed, World, and Light View shall referred to herein as "Counterclaim Defendants."

11. Upon information and belief, Counterclaim Defendants are all in the business of marketing, advertising, promoting, distributing, offering, and selling various goods and services related to electronic cigarettes, including vaping devices.

**JURISDICTION AND VENUE**

12. Personal jurisdiction over Counterclaim Defendants is appropriate because Counterclaim Defendants are organized in and have their principal places of business within this State and this District.

13. These Counterclaims allege trade dress infringement and unfair competition in violation of the Lanham Act, 15 U.S.C. § 1125, common law trade dress infringement, unfair competition, and deceptive trade practices under Illinois law.

14. This Court has subject matter jurisdiction pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338 because this case arises under the Lanham Act (15 U.S.C. § 1051, *et seq.*).

15. Pursuant to 28 U.S.C. § 1367(a), this Court has supplemental jurisdiction over Breeze Smoke's state law claims because all of Breeze Smoke's claims arise out of a common nucleus of operative facts.

16. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events, acts, and/or omissions giving rise to Breeze Smoke's claims occurred in this district.

**BACKGROUND**

*Breeze Smoke's BREEZE Marks*

17. Breeze Smoke is engaged in the business of manufacturing and selling a variety of tobacco and vaping products, including disposable electronic vaping devices, under marks consisting of or containing the term "BREEZE."

18. Breeze Smoke sells both nicotine and nicotine-free disposable vaping products using its BREEZE marks.

19.    Disposable vaping products are an innovative part of the vaping and tobacco industry and very popular with consumers.  Disposable vaping devices are relatively inexpensive and allow consumers to simply throw away the devices when they are finished rather than having to buy a more expensive device that requires additional purchases of cartridges.

20.    Breeze Smoke's disposable vaping products are closed-systems meaning that the consumer cannot add other liquids or cartridges to them.  As a result, Breeze Smoke's nicotine-free disposable vaping products are not intended or reasonably expected to be used with or for the consumption of a tobacco product.

21.    For years, Breeze Smoke has continuously used its BREEZE trademarks in connection with electronic cigarettes, vaping products, including disposable vaping products and related products in Illinois and throughout the United States.

22.    By itself and through its predecessors in interest, Breeze Smoke has offered and sold certain vaping products in connection with its BREEZE trademarks since at least 2014.

23.    Examples showing Breeze Smoke's use of its BREEZE marks are shown below:





24.   In addition to its widespread and continuous use of the BREEZE trademarks, Breeze Smoke owns several United States Trademark Registrations for its BREEZE marks, as set forth on the following chart:

| | Mark | Reg. No. | Reg./App. Date(s) | Goods |
|---|---|---|---|---|
| 1 | BREEZE PLUS | 6,770,534 | Filed: October 10, 2020<br><br>Registered: June 28, 2022<br><br>First Use Date: at least as early as March 1, 2020 | Class 34:  Disposable Electronic Cigarettes |
| 2 | BREEZE | 6,296,005 | Filed: June 6, 2019<br><br>Registered: March 16, 2021<br><br>First Use Date: at least as early as April 6, 2020 | Class 25:  Beanies; hats; hooded sweatshirts; long-sleeved shirts; shirts; sweaters; tank tops; graphic T-shirts; short-sleeved or long-sleeved T-shirts; sweat shirts; T-shirts; tee shirts; woolly hats |

| | Mark | Reg. No. | Reg./App. Date(s) | Goods |
|---|---|---|---|---|
| 3 | BREEZE | 6,296,004 | Filed: June 6, 2019<br><br>Registered: March 16, 2021<br><br>First Use Date: at least as early as April 6, 2020 | Class 25: Beanies; hats; hooded sweatshirts; long-sleeved shirts; shirts; sweaters; tank tops; graphic T-shirts; short-sleeved or long-sleeved T-shirts; sweat shirts; T-shirts; tee shirts; woolly hats |
| 4 | BREEZE SMOKE | 6,976,563 | Filed: June 20, 2020<br><br>Registered: February 14, 2023<br><br>First Use Date: at least as early as March 1, 2020 | Class 34: Disposable Electronic Cigarettes |
| 5 | BREEZE PRO | 6,992,438 | Filed: March 2, 2021<br><br>Registered: February 28, 2023<br><br>First Use Date: at least as early as August 18, 2021 | Class 34: Disposable Electronic Cigarettes |

25. Copies of the foregoing United States Trademark Registrations and accompanying TESS pages reflecting their current status are attached hereto as **Exhibit 1** and incorporated herein by reference.

26. Breeze Smoke also owns numerous pending United States Trademark Applications for its BREEZE marks, as set forth on the below chart.

|  | Mark | Reg./App. No. | Reg./App. Date(s) | Goods |
|---|---|---|---|---|
| 1 | BREEZE SMOKE | 97/697,754 | Filed: November 30, 2022 | Class 34: Pre-rolled hemp cones and hemp wraps for smoking, all of the foregoing containing CBD derived from natural, organic hemp with a delta-9 tetrahydrocannabinol concentration of not more than 0.3 percent on a dry weight basis. |
| 2 | BREEZE PALM | 90/650,997 | Filed: April 16, 2021<br><br>Notice of Allowance Issued: November 1, 2022 | Class 34: cigarette wraps; cigarette rolling papers; wraps in the nature of tobacco wraps; tobacco wraps; pre-rolled smoking cones; rolling paper cones |
| 3 | BREEZE PRIME | 97/839842 | Filed: March 15, 2023 | Class 34: Disposable Electronic Cigarettes |
| 4 | BREEZE | 90/256,675 | Filed: October 15, 2020 | Class 34: Ashtrays for smokers; Lighters for smokers; Tobacco grinders |
| 5 | BREEZE | 90/292,552 | Filed: November 2, 2020 | Class 14: Ornamental lapel pins<br><br>Class 16: Decals; Posters; Stickers; Plastic food storage bags for household use<br><br>Class 18: Handbags; Wallets; Backpacks; Book bags; Sports bags; All-purpose reusable carrying bags |

| | Mark | Reg./App. No. | Reg./App. Date(s) | Goods |
|---|---|---|---|---|
| | | | | Class 21:  Containers for household use; Insulating sleeve holders for beverage cans; Plastic storage containers for domestic use; Plastic storage containers for household use; Portable coolers, non-electric<br><br>Class 34:  Cigarette rolling papers; Smokers' rolling trays |
| 6 | **BREEZE** | 90/292,558 | Filed: November 2, 2020 | Class 14:  Ornamental lapel pins<br><br>Class 16:  Decals; Posters; Stickers; Plastic food storage bags for household use<br><br>Class 18:  Handbags; Wallets; Backpacks; Book bags; Sports bags; All-purpose reusable carrying bags<br><br>Class 21:  Containers for household use; Insulating sleeve holders for beverage cans; Plastic storage containers for domestic use; Plastic storage containers for household use; Portable coolers, non-electric<br><br>Class 34:  Cigarette |

| | Mark | Reg./App. No. | Reg./App. Date(s) | Goods |
|---|---|---|---|---|
| | | | | rolling papers; Smokers' rolling trays |
| 7 | BREEZE | 90/292,573 | Filed: November 2, 2020 | Class 7:  Vacuum packaging machines<br><br>Class 30:  Candy; Candy bars<br><br>Class 32:  Bottled water |
| 8 | BRE≋ZE | 90/292,568 | Filed: November 2, 2020 | Class 7:  Vacuum packaging machines<br><br>Class 30:  Candy; Candy bars<br><br>Class 32:  Bottled water |
| 9 | BREEZE | 90/292,582 | Filed: November 2, 2020 | Class 3:  Electronic cigarette liquid comprised of essential oils; to the extent any of the foregoing involves use of cannabis, such cannabis shall have a delta-9 THC concentration of not more than 0.3% on a dry weight basis<br><br>Class 5:  Plant extracts for pharmaceutical purposes, namely, for the treatment of nausea, anxiety, pain, glaucoma, seizures, multiple sclerosis and Crohn's Disease; to the extent any of the foregoing involves |

| | Mark | Reg./App. No. | Reg./App. Date(s) | Goods |
|---|---|---|---|---|
| | | | | cannabis, such cannabis shall have a delta-9 THC concentration of not more than 0.3% on a dry weight basis<br><br>Class 34: Electronic cigarette liquids comprised of flavoring in liquid form, other than essential oils, used to refill electronic cigarette cartridges; to the extent any of the foregoing involves use of cannabis, such cannabis shall have a delta-9 THC concentration of not more than 0.3% on a dry weight basis; smoking pipes; smoking pipe cleaners; electronic smoking pipes; oral vaporizers for smokers |
| 10 | BREEZE | 90/292,579 | Filed: November 2, 2020 | Class 3: Electronic cigarette liquid comprised of essential oils; to the extent any of the foregoing involves use of cannabis, such cannabis shall have a delta-9 THC concentration of not more than 0.3% on a dry weight basis<br><br>Class 5: Plant extracts for pharmaceutical |

| | Mark | Reg./App. No. | Reg./App. Date(s) | Goods |
|---|---|---|---|---|
| | | | | purposes, namely, for the treatment of nausea, anxiety, pain, glaucoma, seizures, multiple sclerosis and Crohn's Disease; to the extent any of the foregoing involves cannabis, such cannabis shall have a delta-9 THC concentration of not more than 0.3% on a dry weight basis<br><br>Class 34:  Electronic cigarette liquids comprised of flavoring in liquid form, other than essential oils, used to refill electronic cigarette cartridges; to the extent any of the foregoing involves use of cannabis, such cannabis shall have a delta-9 THC concentration of not more than 0.3% on a dry weight basis; smoking pipes; smoking pipe cleaners; electronic smoking pipes; oral vaporizers for smokers |
| 11 | BREEZE LIFE | 97/926,736 | Filed: May 9, 2023 | Class 34:  Battery performance monitors sold as a component of electronic disposable cigarettes |

| | Mark | Reg./App. No. | Reg./App. Date(s) | Goods |
|---|---|---|---|---|
| 12 | **BREEZE** —SMOKE— | 97/900,128 | Filed: April 21, 2023 | Class 34: Disposable electronic cigarettes |
| 13 | BREEZE ELITE | 98/146,073 | Filed: August 23, 2023 | Class 34: Electronic disposable cigarettes |
| 14 | BREEZE ODOR | 97/010,691 | Filed: September 3, 2021 | Class 4: Candles |

27. Copies of the foregoing applications, along with printouts of the accompanying TESS pages reflecting their status, are attached hereto as **Exhibit 2** and incorporated herein by reference.

28. Breeze Smoke also owns Michigan State Trademark Registrations 802,511,431 and 802,511,553 for BREEZE.

29. The Michigan BREEZE registrations were registered on August 13, 2020 and assert use in commerce since at least as early as February 4, 2020.

30. Breeze Smoke also owns Florida State Trademark Registrations T21000000916 and T21000000917 for BREEZE LABS.

31. The Florida BREEZE LABS registrations assert use in commerce since at least as early as December 31, 2014.

32. Collectively, Breeze Smoke's foregoing BREEZE registrations and applications and its longstanding common law rights in the BREEZE marks shall be referred to herein as the "BREEZE Marks."

33. Collectively, the products and services in connection with which Breeze Smoke uses its BREEZE Marks, including the goods and services identified in the foregoing applications and registrations shall be referred to herein as the "BREEZE Goods and Services."

34. The BREEZE Goods and Services sold in connection with the BREEZE Marks are promoted, offered and sold through online retail platforms as well as at a substantial number of bricks-and-mortar locations throughout Illinois and the United States.

35. Breeze Smoke has spent significant time, effort, and resources establishing its BREEZE Marks in the minds of its customers and the public via advertisements and promotions—including through online advertising and promotion—as representative of Breeze Smoke's BREEZE Goods and Services, including but not limited to, its high quality tobacco-related and vaping products.

36. Breeze Smoke has generated substantial revenue through its offer and sale of the BREEZE Goods and Services.

37. As a result of Breeze Smoke's continuous use, extensive sales, advertising, and promotion of its BREEZE Marks, the BREEZE Marks enjoy widespread recognition and an excellent reputation, and are recognized by the public as emanating exclusively from Breeze Smoke and representative of Breeze Smoke's high quality BREEZE Goods and Services.

38. As a result of Breeze Smoke's efforts and commercial success in advertising, marketing and promoting the BREEZE Goods and Services, Breeze Smoke has generated substantial and valuable goodwill in the BREEZE Marks, and the BREEZE Marks have become intangible assets of substantial commercial value to Breeze Smoke.

***Breeze Smoke's Highly Distinctive BREEZE PRO Product Design Trade Dress and
BREEZE PRO Product Packaging Trade Dress***

39.     Since at least as early as August 2021, Breeze Smoke has used a highly distinctive product packaging trade dress in connection with its BREEZE PRO products.

40.     Breeze Smoke's BREEZE PRO product packaging trade dress is comprised of the overall look and feel of the BREEZE PRO product packaging and features, among others things, the following distinctive, non-functional elements:

  a.    A rectangular clear plastic outer box ("rectangular box");

  b.    A large, cardboard label that wraps around the rectangular box ("wraparound label"), wherein the back of the wraparound label extends the full length of the rectangular box and the front of the wraparound label extends only part of the length of the rectangular box, such that the top portion of the vaping device and the vertically aligned product branding is visible from the front and sides of the rectangular box;

  c.    On the front side of the cardboard label:

    i.    The wording "BREEZE," a word mark identifying the product, appears at the top in large white all capital letters;

    ii.   A second line of text appears underneath the wording "BREEZE" in a smaller, less emphasized font;

    iii.  The flavor of the vape is printed underneath the word mark and second line of text; and

  d.    The nicotine warning is at the bottom of the front side of the cardboard label in a white box; and

  e.    The flavor of the product and the number of puffs are displayed on both sides of the wraparound label

 (hereinafter, the "BREEZE PRO Packaging Trade Dress").

41.     Examples showing Breeze Smoke's use of its highly distinctive BREEZE PRO Packaging Trade Dress are shown below:



42. The BREEZE PRO Packaging Trade Dress is highly inherently distinctive.

43. The BREEZE PRO Packaging Trade Dress has acquired secondary meaning in the minds of consumers.

44. The BREEZE PRO Packaging Trade Dress is non-functional.

45. Since at least as early as August 2021, Breeze Smoke has also marketed and sold its BREEZE PRO device using a highly distinctive product design trade dress that consumers instantly recognize and associate exclusively with Breeze Smoke.

46. Breeze Smoke's BREEZE PRO product design trade dress consists of the overall look and feel of the BREEZE PRO product design and features, among others things, the following distinctive, non-functional elements:

a. a black body that resembles an rectangular cylinder having rounded corners, a flattened front and back sides, and a flat bottom;

b. the top end of the body comprises the mouthpiece that is curved, has an opening for inhalation, narrows toward the opening, and has a concave region on the front side;

c. the front and back of the device exhibit a rounded rectangular silhouette;

d. the bottom end of the body has a flat rectangular shaped surface having rounded corners;

e. a rectangular label featuring a wavy design colored to match the flavor of the vape device;

f. the wording "BREEZE," a word mark identifying the product, printed in bold, white, all-capital typeface is vertically aligned on the label nearer to the mouthpiece than the bottom

g. an additional smaller white print element appears immediately above the word mark; and

h. the vaping device flavor appears on the label near the bottom end of the vape device in a smaller, white, all-capital typeface vertically aligned on the label.

(hereinafter, the "BREEZE PRO Product Design Trade Dress").

47. Examples showing Breeze Smoke's use of its highly distinctive BREEZE PRO Product Design Trade Dress are shown below:




48. The BREEZE PRO Product Design Trade Dress is highly distinctive and has acquired secondary meaning in the minds of consumers.

49. The BREEZE PRO Product Design Trade Dress is non-functional.

50. The BREEZE Goods and Services sold in connection with the BREEZE PRO Packaging Trade Dress and BREEZE PRO Product Design Trade Dress also come in a number of highly distinctive flavor combinations including but not limited to "LUSH ICE," "GUM MINT," "CHERRY LEMON," "VANILLA TOBACCO," and "TROPICAL SUMMER."

51. Consumers and the relevant public recognize these distinctive flavor combinations and associate them exclusively with Breeze Smoke.

52. The BREEZE Goods and Services sold in connection with the BREEZE PRO Packaging Trade Dress and BREEZE PRO Product Design Trade Dress are promoted, offered and sold through online retail platforms as well as at a substantial number of bricks-and-mortar locations throughout Illinois and the United States.

53. Breeze Smoke has spent significant time, effort, and resources establishing the BREEZE PRO Packaging Trade Dress and BREEZE PRO Product Design Trade Dress in the minds of its customers and the public via advertisements and promotions—including through online advertising and promotion—as representative of Breeze Smoke's BREEZE Goods and Services, including but not limited to, its high quality tobacco-related and vaping products.

54. Breeze Smoke has generated substantial revenue through its offer and sale of the BREEZE Goods and Services using the BREEZE PRO Packaging Trade Dress and BREEZE PRO Product Design Trade Dress.

55. As a result of Breeze Smoke's continuous use, extensive sales, advertising, and promotion, the BREEZE PRO Packaging Trade Dress and BREEZE PRO Product Design Trade Dress enjoy widespread recognition and an excellent reputation, and is recognized by the public as emanating exclusively from Breeze Smoke and representative of Breeze Smoke's high quality BREEZE Goods and Services.

56. As a result of Breeze Smoke's efforts and commercial success in advertising, marketing and promoting the BREEZE Goods and Services, Breeze Smoke has generated substantial and valuable goodwill in the BREEZE PRO Packaging Trade Dress and BREEZE PRO Product Design Trade Dress, and the BREEZE PRO Packaging Trade Dress and BREEZE PRO Product Design Trade Dress have become an intangible assets of substantial commercial value to Breeze Smoke.

57. In or around July 2023, Breeze Smoke became aware that Midwest Goods had begun marketing, promoting, advertising, offering, distributing, and selling disposable vaping products under the name "NORTH" using product packaging and a product design that are highly similar to the BREEZE PRO Packaging Trade Dress and BREEZE PRO Product Design Trade Dress (the "Infringing Products").

58. Breeze Smoke became aware that Wisemen, Speed, World and Light View had begun marketing, promoting, advertising, offering, distributing, and selling the Infringing Products in or around September 2023.

59. Examples of the Infringing Products next to examples showing the BREEZE PRO Packaging Trade Dress and BREEZE PRO Product Design Trade Dress are shown below:

**BREEZE PRO Product**                    **Infringing Product**




**BREEZE PRO Product**                       **Infringing Product**

 

**BREEZE PRO Product**          **Infringing Product**

 

 

| **BREEZE PRO Product** | **Infringing Product** |
| :---: | :---: |

 

**BREEZE PRO Product**　　　　　　**Infringing Product**





**BREEZE PRO Product**          **Infringing Product**







**BREEZE PRO Product**          **Infringing Product**




**BREEZE PRO Product**

**Infringing Product**





60.     Additional examples displaying Counterclaim Defendants' infringing uses are attached hereto as **Exhibit 3** and incorporated herein by reference.

61.     The Infringing Products' product packaging is identical or virtually identical to the BREEZE PRO Packaging Trade Dress in its overall look and feel and includes at least the following overlapping elements:

a.      A rectangular clear plastic outer box ("rectangular box");

b.      A large, cardboard label that wraps around the rectangular box ("wraparound label"), wherein the back of the wraparound label extends the full length of the rectangular box and the front of the wraparound label extends only part of the length of the rectangular box, such that the top portion of the vaping device and the vertically aligned product branding is visible from the front and sides of the rectangular box;

c.      On the front side of the cardboard label:

    i.      The wording "NORTH," a word mark identifying the product, appears at the top in large white all capital letters;

    ii.     A second line of text appears underneath the wording "NORTH" in a smaller, less emphasized font;

    iii.    The flavor of the vape is printed underneath the word mark and second line of text; and

d.      The nicotine warning is at the bottom of the front side of the cardboard label in a white box; and

e.      The flavor of the product and the number of puffs are displayed on both sides of the wraparound label.

62.     The Infringing Product's product design is identical or virtually identical to the BREEZE PRO Product Design Trade Dress in its overall look and feel and includes at least the following overlapping elements:

a.      a black body that resembles a rectangular cylinder having rounded corners, a flattened front and back sides, and a flat bottom;

b. the top end of the body comprises the mouthpiece, that is curved, has an opening for inhalation, narrows toward the opening, and has a concave region on the front;

c. the front and back exhibit a rounded rectangular silhouette;

d. the bottom end of the body has a flat rectangular shaped surface having rounded corners;

e. a rectangular label featuring a wavy design colored to match the flavor of the vape device;

f. the wording "NORTH," a word mark identifying the product, printed in bold, white, all-capital typeface is vertically aligned on the label nearer to the mouthpiece than the bottom

g. an additional smaller white print element appears immediately above the word mark; and

h. the vaping device flavor appears on the label near the bottom end of the vape device in a smaller, white, all-capital typeface vertically aligned on the label.

63. As shown in the above examples set forth in Paragraph 51 as well as the additional examples set forth in Exhibit 3, the Infringing Products deliberately copy every, or virtually every, element of the BREEZE PRO Packaging Trade Dress and the BREEZE PRO Product Design Trade Dress. Counterclaim Defendants deliberately copied these elements in a concerted effort to trade off of the enormous goodwill that Breeze Smoke has developed in connection with its BREEZE Goods and Services.

64. As shown in the above examples set forth in Paragraph 51 as well as the additional examples set forth in Exhibit 3, Counterclaim Defendants even went so far as to directly copy Breeze Smoke's highly distinctive flavor combinations—including but not limited to "LUSH ICE," "GUM MINT," "CHERRY LEMON," "VANILLA TOBACCO," and "TROPICAL SUMMER"—for use in connection with the Infringing Products. In fact, all but two of the flavor combinations for the Infringing Products are exactly the same as flavor combinations offered by

Breeze Smoke. Counterclaim Defendants copied Breeze Smoke's highly distinctive flavor combinations in a concerted effort to unfairly trade off of the enormous goodwill that Breeze Smoke has developed in connection with its BREEZE Goods and Services.

65. Counterclaim Defendants are directly competing with Breeze Smoke in that they are marketing, promoting, advertising, offering, distributing and selling virtually identical or closely similar disposable vaping products using a product packaging and product design that is virtually identical to the BREEZE PRO Packaging Trade Dress and BREEZE PRO Product Design Trade Dress to the same customers or the same or similar classes of customers as Breeze Smoke.

66. Breeze Smoke has not licensed or otherwise authorized Counterclaim Defendants to use its highly valuable and well-established BREEZE Trade Dress and BREEZE PRO Trade Dress in any manner whatsoever, except in connection with the authorized offer and sale of BREEZE Goods and Services.

67. Counterclaim Defendants knew of Breeze Smoke's prior use of the BREEZE PRO Packaging Trade Dress and BREEZE PRO Product Design Trade Dress, and were well aware of the goodwill and market value of the BREEZE PRO Packaging Trade Dress and BREEZE PRO Product Design Trade Dress, as each of them has offered, distributed and sold Breeze Smoke's BREEZE products for years and since well prior to any sales of the Infringing Products.

68. Counterclaim Defendants intentionally chose to use and to trade off the goodwill associated with the BREEZE PRO Packaging Trade Dress and BREEZE PRO Product Design Trade Dress to suggest a false affiliation between Breeze Smoke and its goods and services on the one hand and Counterclaim Defendants and their goods and services on the other, or to deliberately mislead and confuse customers about the source of the parties' respective goods.

69. Through their unauthorized and infringing uses of the BREEZE PRO Packaging Trade Dress and BREEZE PRO Product Design Trade Dress, Counterclaim Defendants are deliberately and improperly capitalizing upon the goodwill that Breeze Smoke has built up in the BREEZE PRO Packaging Trade Dress and BREEZE PRO Product Design Trade Dress.

70. Counterclaim Defendants' unauthorized, unlawful, and intentional use of the BREEZE PRO Packaging Trade Dress and BREEZE PRO Product Design Trade Dress has caused, and will continue to cause, a likelihood of confusion among consumers and potential consumers as to the source or origin of the Infringing Products and the sponsorship or endorsement of those goods and services by Breeze Smoke.

71. As a direct and proximate result of Plaintiff's unauthorized conduct, Breeze Smoke has been and will continue to be damaged by likely and actual confusion among consumers and potential consumers as to Breeze Smoke's association or connection with, or endorsement or authorization of, Counterclaim Defendants and/or the Infringing Products, at least in part in ways that cannot be adequately measured or fully remedied by monetary damages.

72. As a result of their intentional misappropriation of the BREEZE PRO Packaging Trade Dress and BREEZE PRO Product Design Trade Dress for use in connection with the Infringing Products, Counterclaim Defendants have caused, and will continue to cause, irreparable injury to Breeze Smoke and have substantially damaged the value of the BREEZE PRO Packaging Trade Dress and BREEZE PRO Product Design Trade Dress.

73. Counterclaim Defendants have unjustly enriched themselves at Breeze Smoke's expense by displaying, marketing, advertising, promoting, distributing, offering to sell, and selling the Infringing Products. Among the benefits that Counterclaim Defendants have gained from its unlawful and willful conduct are increased revenues from the sale of the Infringing Products.

86

74.     In July 2023, Breeze Smoke contacted Midwest Goods by letter to provide notice of its unlawful infringement and to demand that Midwest Goods cease any further marketing, offering, and selling of the Infringing Products and immediately remove such products from their stores and distribution channels. A copy of this letter is attached to Plaintiff's Complaint as Exhibit A and is incorporated herein by reference.

75.     In September 2023, Breeze Smoke contacted Wisemen by letter to provide notice of its unlawful infringement and to demand that it cease any further marketing, offering, and selling of the Infringing Products and immediately remove such products from their stores and distribution channels. A copy of this letter is attached hereto as **Exhibit 4** and is incorporated herein by reference.

76.     In October 2023, Breeze Smoke contacted Speed by letter to provide notice of its unlawful infringement and to demand that it cease any further marketing, offering, and selling of the Infringing Products and immediately remove such products from their stores and distribution channels. A copy of this letter is attached hereto as **Exhibit 5** and is incorporated herein by reference

77.     In September 2023, Breeze Smoke contacted World and Light View by letter to provide notice of their unlawful infringement and to demand that they cease any further marketing, offering, and selling of the Infringing Products and immediately remove such products from their stores and distribution channels. A copy of this letter is attached hereto as **Exhibit 6** and is incorporated herein by reference.

78.     To date, Counterclaim Defendants have not ceased selling or offering to sell the Infringing Products and continue to still offer and sell the Infringing Products.

79.     With every day that passes, Counterclaim Defendants' sale of the Infringing Products compounds the irreparable harm to Breeze Smoke.

## FIRST COUNTERCLAIM

### FEDERAL TRADE DRESS INFRINGEMENT UNDER 15 U.S.C. § 1125
### (*The BREEZE PRO Packaging Trade Dress*)

80.     Breeze Smoke realleges and reincorporates by reference the allegations contained in the preceding paragraphs as is fully set forth herein.

81.     Breeze Smoke owns valid and enforceable rights in the BREEZE PRO Packaging Trade Dress.

82.     The rights of Breeze Smoke in the BREEZE PRO Packaging Trade Dress pre-date any use by Counterclaim Defendants.

83.     The BREEZE PRO Packaging Trade Dress is non-functional.

84.     The BREEZE PRO Packaging Trade Dress is highly inherently distinctive.

85.     The BREEZE PRO Packaging Trade Dress is firmly associated in the minds of consumers and the general public with Breeze Smoke and its high quality goods and therefore has acquired secondary meaning.

86.     Despite Breeze Smoke's well known prior rights in its highly distinctive BREEZE PRO Packaging Trade Dress, Counterclaim Defendants have used and continue to use in commerce without the consent of Breeze Smoke, the BREEZE PRO Packaging Trade Dress or copies, reproductions, or colorable imitations thereof in connection with the sale, offering for sale, distribution, and/or advertising of vaping devices. Such use is likely to cause confusion, mistake, or deception among consumers.

87. Counterclaim Defendants' actions constitute willful infringement of Breeze Smoke's exclusive rights in its trade dress in violation of 15 U.S.C. § 1125.

88. This is an exceptional case within the meaning of 15 U.S.C. § 1117(a). Counterclaim Defendants' use of the BREEZE PRO Packaging Trade Dress has been and continues to be done with the intent to cause confusion, mistake, and to deceive customers concerning the source and/or sponsorship of Counterclaim Defendants' goods and services.

89. As a direct and proximate result of Counterclaim Defendants' conduct, Breeze Smoke has suffered irreparable harm to the valuable BREEZE PRO Packaging Trade Dress and to Breeze Smoke's reputation, and other damages in an amount to be proved at trial. Unless Counterclaim Defendants are restrained from further infringement of the BREEZE PRO Packaging Trade Dress, Breeze Smoke will continue to be irreparably harmed.

90. Breeze Smoke has no adequate remedy at law that will compensate for the continued and irreparable harm it will suffer if Plaintiff's acts are allowed to continue.

## SECOND COUNTERCLAIM

### FEDERAL TRADE DRESS INFRINGEMENT UNDER 15 U.S.C. § 1125
(*The BREEZE PRO Product Design Trade Dress*)

91. Breeze Smoke realleges and reincorporates by reference the allegations contained in the preceding paragraphs as is fully set forth herein.

92. Breeze Smoke owns valid and enforceable rights in the BREEZE PRO Product Design Trade Dress.

93. The rights of Breeze Smoke in the BREEZE PRO Product Design Trade Dress pre-date any use by Counterclaim Defendants.

94. The BREEZE PRO Product Design Trade Dress is non-functional.

95. The BREEZE PRO Product Design Trade Dress is highly distinctive and firmly associated in the minds of consumers and the general public with Breeze Smoke and its high quality goods and therefore has acquired secondary meaning.

96. Despite Breeze Smoke's well known prior rights in its highly distinctive BREEZE PRO Product Design Trade Dress, Counterclaim Defendants have used and continue to use in commerce without the consent of Breeze Smoke, the BREEZE PRO Product Design Trade Dress or copies, reproductions, or colorable imitations thereof in connection with the sale, offering for sale, distribution, and/or advertising of vaping devices. Such use is likely to cause confusion, mistake, or deception among consumers.

97. Counterclaim Defendants' actions constitute willful infringement of Breeze Smoke's exclusive rights in its trade dress in violation of 15 U.S.C. § 1125.

98. This is an exceptional case within the meaning of 15 U.S.C. § 1117(a). Counterclaim Defendants' use of the BREEZE PRO Product Design Trade Dress has been and continues to be done with the intent to cause confusion, mistake, and to deceive customers concerning the source and/or sponsorship of Counterclaim Defendants' goods and services.

99. As a direct and proximate result of Counterclaim Defendants' conduct, Breeze Smoke has suffered irreparable harm to the valuable BREEZE PRO Product Design Trade Dress and to Breeze Smoke's reputation, and other damages in an amount to be proved at trial. Unless Counterclaim Defendants are restrained from further infringement of the BREEZE PRO Product Design Trade Dress, Breeze Smoke will continue to be irreparably harmed.

100. Breeze Smoke has no adequate remedy at law that will compensate for the continued and irreparable harm it will suffer if Plaintiff's acts are allowed to continue

### THIRD COUNTERCLAIM

90

## ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT
### (815 ILCS 510/1 *et seq.*)

101. Breeze Smoke repeats and re-alleges the allegations in the preceding paragraphs as if fully set forth herein.

102. Counterclaim Defendants' actions have violated the Illinois Uniform Deceptive Trade Practices Act (815 ILCS 510/2) because Counterclaim Defendants have knowingly used and continue to use in commerce the BREEZE Packaging Trade Dress and BREEZE PRO Product Design Trade Dress or reproductions, copies, or colorable imitations thereof, in connection with the goods and services that Plaintiff manufactures, advertises, promotes, and sells.

103. Counterclaim Defendants' use of the BREEZE Packaging Trade Dress and BREEZE PRO Product Design Trade Dress as alleged above is likely to confuse, mislead, or deceive customers, purchasers, and members of the general public as to the origin, source, sponsorship, or affiliation of Counterclaim Defendants and Breeze Smoke and/or the parties' respective goods and services, and is likely to cause such people to believe in error that Counterclaim Defendants' goods and services have been authorized, sponsored, approved, endorsed, or licensed by Breeze Smoke or that Counterclaim Defendants are in some way affiliated with Breeze Smoke.

104. Upon information and belief, Counterclaim Defendants are all longtime distributors of Breeze Smoke's products and therefore knew of Breeze Smoke's prior use of the BREEZE Packaging Trade Dress and BREEZE PRO Product Design Trade Dress, and were well aware of the goodwill and market value of the BREEZE Packaging Trade Dress and BREEZE PRO Product Design Trade Dress.

105. Upon information and belief, Counterclaim Defendants intentionally chose to use and to trade off the goodwill associated with the BREEZE Packaging Trade Dress and BREEZE

PRO Product Design Trade Dress to suggest a false affiliation between Breeze Smoke and its goods and services on the one hand and Counterclaim Defendants and their goods and services on the other, or to deliberately mislead and confuse customers about the source of the parties' respective goods. Counterclaim Defendants are therefore willfully engaging in a deceptive trade practice and Breeze Smoke is entitled to recover its costs and attorneys' fees under 815 ILCS 510/3. By reason of Counterclaim Defendants' actions, Breeze Smoke has suffered irreparable harm to its valuable BREEZE Packaging Trade Dress and BREEZE PRO Product Design Trade Dress. Unless Counterclaim Defendants are restrained from their actions, Breeze Smoke will continue to be irreparably harmed.

106. Breeze Smoke has no remedy at law that will compensate it for the continued and irreparable harm that will be caused if Counterclaim Defendants' acts are allowed to continue.

107. As a direct and proximate result of Counterclaim Defendants' conduct, Breeze Smoke has suffered damages to the valuable BREEZE Packaging Trade Dress and BREEZE PRO Product Design Trade Dress, and other damages in an amount to be proved at trial.

**FOURTH COUNTERCLAIM**

**UNJUST ENRICHMENT**

108. Breeze Smoke repeats and realleges the allegations of the foregoing paragraphs, which are incorporated herein by reference.

109. By misappropriating Breeze Smoke's valuable goodwill and reputation through the improper use of the BREEZE Packaging Trade Dress and BREEZE PRO Product Design Trade Dress, Counterclaim Defendants have been unjustly enriched to the material detriment of Breeze Smoke.

110. Counterclaim Defendants are realizing profit and will continue to realize a profit from its improper use of the BREEZE Packaging Trade Dress and BREEZE PRO Product Design Trade Dress.

111. Counterclaim Defendants' actions have directly and proximately caused irreparable harm to Breeze Smoke and its valuable goodwill and reputation, and will continue to harm Breeze Smoke unless enjoined.

112. An award of money damages alone cannot fully compensate Breeze Smoke for its injuries, and Breeze Smoke has no adequate remedy at law.

113. Breeze Smoke is entitled to compensatory damages in the form of restitution and such other and further relief as the Court deems equitable and just.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Breeze Smoke demands a trial by jury on all issues present in this civil action.

## PRAYER FOR RELIEF

WHEREFORE, Breeze Smoke respectfully requests and prays that the Court:

A. Enter judgment in Breeze Smoke's favor and against Counterclaim Defendants on all counts of the Complaint and on all counterclaims;

B. Determine that Counterclaim Defendants willfully violated the Lanham Act, that Breeze Smoke has been damaged by such violations, and that Counterclaim Defendants are liable to Breeze Smoke for such violations;

C. Determine that Counterclaim Defendants have willfully engaged in deceptive trade practices within the meaning of the Illinois Uniform Deceptive Trade Practices Act and that Counterclaim Defendants are liable to Breeze Smoke for such willful violations;

D. Determine that this case is "exceptional" within the meaning of 15 U.S.C. § 1117(a);

E.   Under all claims for relief, issue a preliminary and permanent injunction enjoining Counterclaim Defendants and any of their officers, employees, agents, successors and assigns, and all those in active concert and participation with Counterclaim Defendants, and each of them who receives notice directly or otherwise of such injunctions:

1.   from using in any manner the BREEZE PRO Packaging Trade Dress and BREEZE PRO Product Design Trade Dress and any variations thereof, or any other name, term, phrase, mark, design, device or symbol which so resembles or is similar to the BREEZE PRO Packaging Trade Dress and BREEZE PRO Product Design Trade Dress as to be likely to cause confusion, mistake or deception as to source, origin, sponsorship, approval, affiliation or the like;

2.   from further unlawfully trading upon and misappropriating the goodwill and reputation of Breeze Smoke and competing unfairly with Breeze Smoke;

3.   from inducing, encouraging, aiding, abetting, or contributing to any of the aforesaid acts; and

4.   from making any false or misleading descriptions of fact or false or misleading representations of fact in their commercial advertising or promotion about the nature, characteristics, or qualities of their products or related commercial activities.

F.   Order Counterclaim Defendants' to deliver up for destruction all products, labels, signs, prints, packages, wrappers, receptacles, advertisements, or other materials in their possession, custody or control, and in the possession, custody or control of those in active concert or participation or otherwise in privity with them, which display or contain the BREEZE PRO Packaging Trade Dress and BREEZE PRO Product Design Trade Dress, or any variations thereof, or which constitute and/or bear any other device, representation or statement in violation of the injunction herein requested by Breeze Smoke, and that Counterclaim Defendants be ordered to deliver up for destruction all means of making the same;

G.   Order Counterclaim Defendants to file with the Court and serve on Breeze Smoke, within thirty (30) days after service on it of such injunction (or such extended period as the Court may direct), a report in writing and under oath, setting forth in detail the manner and form in which Counterclaim Defendants have complied with the injunction;

H.   In accordance with 15 U.S.C. § 1118, order Counterclaim Defendants to deliver to Breeze Smoke, at Counterclaim Defendants' expense, for destruction or other disposition, all products, including, without limitation, all labels, packaging, signs, prints, advertisements, promotional, and other materials, incorporating, bearing, or displaying a the BREEZE PRO Packaging Trade Dress and BREEZE PRO Product

Design Trade Dress in the possession, custody, or control of Counterclaim Defendants, as well as any reproduction, counterfeit, copy, or colorable imitation thereof, and all other materials or means of making the same;

I.      Order that Counterclaim Defendants account for and pay over to Breeze Smoke all gains, profits, and advantages derived from its violation of 15 U.S.C. § 1125(a) and the common law, and also pay to Breeze Smoke the damages which Breeze Smoke has sustained by reason of such violations, together with legal interest from the date of accrual thereof;

J.      Because of the willful nature of said violations and pursuant to 15 U.S.C. § 1117(a), order that Counterclaim Defendants be required to pay over to Breeze Smoke enhanced damages;

K.     Order that Counterclaim Defendants be required to pay Breeze Smoke's reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1117(a);

L.     Award interest, including pre-judgment interest on the foregoing sums;

M.    Award Breeze Smoke an amount of money to undertake corrective advertising; and

N.    Grant Breeze Smoke any other relief as the Court deems necessary and proper.

Dated:  October  13, 2023

Respectfully submitted,

By:  /s/ *Mary A. Hyde*
Mary A. Hyde
HONIGMAN LLP
660 Woodward Ave., Suite 2290
Detroit, MI 48226
Telephone: (313) 465-7000
mhyde@honigman.com

Jeffrey K. Lamb
William B. Berndt
Jenna E. Saunders
David Roulo
HONIGMAN LLP
155 North Wacker Dr., Suite 3100
Chicago, IL 60606
Telephone:  (312) 701-9360
jlamb@honigman.com
wberndt@honigman.com
droulo@honigman.com
jsaunders@honigman.com

*Attorneys for the Defendant/Counterclaim Plaintiff*

# CERTIFICATE OF SERVICE

I hereby certify that on October 13, 2023, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

/s/ Mary A. Hyde
Mary A. Hyde

*One of the attorneys for Defendant/Counterclaimant Breeze Smoke LLC*