**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| Midwest Goods Inc., dba Midwest Distribution Illinois,<br><br>       Plaintiff,<br><br>  vs.<br><br>Breeze Smoke LLC,<br><br>       Defendant.<br><br>────────────────────<br><br>Breeze Smoke LLC,<br><br>       Counter-Claimant,<br><br>  vs.<br><br>Midwest Goods Inc., dba Midwest Distribution Illinois, Wisemen Wholesale, Inc., Speed Wholesale, Inc., World Wholesale, Inc., Light View LLC,<br><br>       Counterclaim Defendants. | CASE NO. 1:23-CV-05406<br><br>HONORABLE THOMAS M. DURKIN<br><br>JURY TRIAL DEMANDED |

## DECLARATION OF STEVEN HADDAD

1.      My name is Steven Haddad and I am a Managing Member of Breeze Smoke LLC. I have personal knowledge of all facts contained herein.

2.      Breeze Smoke is a market leader and highly reputable company in the vaping industry.

3.      Breeze Smoke manufactures, markets, and sells a variety of vaping products, including disposable electronic vaping devices, under its BREEZE trademarks and trade dress.

4.      Breeze Smoke sells nicotine and nicotine-free disposable vaping products.

5. Disposable vaping products are an innovative part of the vaping and tobacco industry and very popular with consumers. Disposable vaping devices are relatively inexpensive and allow adult consumers to simply throw away the devices when they are finished rather than having to buy a more expensive device that requires additional purchases of cartridges.

6. Breeze Smoke's disposable vaping products are closed-systems, meaning that the consumer cannot add other liquids or cartridges to them. As a result, Breeze Smoke's nicotine-free disposable vaping products are not intended or reasonably expected to be used with or for the consumption of a tobacco product.

7. For years and since well-prior to Midwest Goods Inc.'s ("Midwest") use, Breeze Smoke has continuously used its BREEZE trademarks and trade dress in connection with electronic cigarettes and vaping products, including disposable vaping products and related products, in Illinois and throughout the United States.

8. By itself and through its predecessors in interest, Breeze Smoke has offered and sold certain vaping-related products in connection with its BREEZE trademarks since at least 2014.

9. Examples showing Breeze Smoke's use of its BREEZE trademarks on nicotine and nicotine-free products are shown below:





10.     In addition to its widespread and continuous use of the BREEZE trademarks, Breeze Smoke owns several United States Trademark Registrations for its BREEZE marks, as set forth on the following chart:

| | Mark | Reg. No. | Reg./App. Date(s) | Goods |
|---|---|---|---|---|
| 1 | BREEZE PLUS | 6,770,534 | Filed: October 10, 2020<br><br>Registered: June 28, 2022<br><br>First Use Date: at least as early as March 1, 2020 | Class 34:  Disposable Electronic Cigarettes |
| 2 | BREEZE | 6,296,005 | Filed: June 6, 2019<br><br>Registered: March 16, 2021<br><br>First Use Date: at least as early as April 6, 2020 | Class 25:  Beanies; hats; hooded sweatshirts; long-sleeved shirts; shirts; sweaters; tank tops; graphic T-shirts; short-sleeved or long-sleeved T-shirts; sweat shirts; T-shirts; tee shirts; woolly hats |
| 3 | BREEZE | 6,296,004 | Filed: June 6, 2019<br><br>Registered: March 16, 2021 | Class 25: Beanies; hats; hooded sweatshirts; long-sleeved shirts; shirts; sweaters; tank tops; graphic T-shirts; short-sleeved or long-sleeved T- |

| | Mark | Reg. No. | Reg./App. Date(s) | Goods |
|---|---|---|---|---|
| | | | First Use Date: at least as early as April 6, 2020 | shirts; sweat shirts; T-shirts; tee shirts; woolly hats |
| 4 | BREEZE SMOKE | 6,976,563 | Filed: June 20, 2020<br><br>Registered: February 14, 2023<br><br>First Use Date: at least as early as March 1, 2020 | Class 34: Disposable Electronic Cigarettes |
| 5 | BREEZE PRO | 6,992,438 | Filed: March 2, 2021<br><br>Registered: February 28, 2023<br><br>First Use Date: at least as early as August 18, 2021 | Class 34: Disposable Electronic Cigarettes |

Copies of the foregoing United States Trademark Registrations are attached to Breeze Smoke's Counterclaims in this case as Exhibit 1 (Doc. 9-2) and incorporated by reference herein.

11. Breeze Smoke also owns numerous pending United States Trademark Applications for its BREEZE marks, as set forth on the below chart.

| | Mark | Reg./App. No. | Reg./App. Date(s) | Goods |
|---|---|---|---|---|
| 1 | BREEZE SMOKE | 97/697,754 | Filed: November 30, 2022 | Class 34: Pre-rolled hemp cones and hemp wraps for smoking, all of the foregoing containing CBD derived from natural, organic hemp with a delta-9 tetrahydrocannabinol concentration of not more |

|  | Mark | Reg./App. No. | Reg./App. Date(s) | Goods |
|---|---|---|---|---|
|  |  |  |  | than 0.3 percent on a dry weight basis. |
| 2 | BREEZE PALM | 90/650,997 | Filed: April 16, 2021  Notice of Allowance Issued: November 1, 2022 | Class 34: cigarette wraps; cigarette rolling papers; wraps in the nature of tobacco wraps; tobacco wraps; pre-rolled smoking cones; rolling paper cones |
| 3 | BREEZE PRIME | 97/839842 | Filed: March 15, 2023 | Class 34: Disposable Electronic Cigarettes |
| 4 | BREEZE | 90/256,675 | Filed: October 15, 2020 | Class 34: Ashtrays for smokers; Lighters for smokers; Tobacco grinders |
| 5 | BREEZE | 90/292,552 | Filed: November 2, 2020 | Class 14: Ornamental lapel pins  Class 16: Decals; Posters; Stickers; Plastic food storage bags for household use  Class 18: Handbags; Wallets; Backpacks; Book bags; Sports bags; All-purpose reusable carrying bags  Class 21: Containers for household use; Insulating sleeve holders for beverage cans; Plastic storage containers for domestic use; Plastic storage containers for household use; Portable coolers, non-electric |

| | Mark | Reg./App. No. | Reg./App. Date(s) | Goods |
|---|---|---|---|---|
| | | | | Class 34: Cigarette rolling papers; Smokers' rolling trays |
| 6 | **BR≋≋ZE** | 90/292,558 | Filed: November 2, 2020 | Class 14: Ornamental lapel pins<br><br>Class 16: Decals; Posters; Stickers; Plastic food storage bags for household use<br><br>Class 18: Handbags; Wallets; Backpacks; Book bags; Sports bags; All-purpose reusable carrying bags<br><br>Class 21: Containers for household use; Insulating sleeve holders for beverage cans; Plastic storage containers for domestic use; Plastic storage containers for household use; Portable coolers, non-electric<br><br>Class 34: Cigarette rolling papers; Smokers' rolling trays |
| 7 | BREEZE | 90/292,573 | Filed: November 2, 2020 | Class 7: Vacuum packaging machines<br><br>Class 30: Candy; Candy bars<br><br>Class 32: Bottled water |
| 8 | **BR≋≋ZE** | 90/292,568 | Filed: November 2, 2020 | Class 7: Vacuum packaging machines |

| | Mark | Reg./App. No. | Reg./App. Date(s) | Goods |
|---|------|---------------|-------------------|-------|
| | | | | Class 30:  Candy; Candy bars<br><br>Class 32:  Bottled water |
| 9 | BREEZE | 90/292,582 | Filed: November 2, 2020 | Class 3:  Electronic cigarette liquid comprised of essential oils; to the extent any of the foregoing involves use of cannabis, such cannabis shall have a delta-9 THC concentration of not more than 0.3% on a dry weight basis<br><br>Class 5:  Plant extracts for pharmaceutical purposes, namely, for the treatment of nausea, anxiety, pain, glaucoma, seizures, multiple sclerosis and Crohn's Disease; to the extent any of the foregoing involves cannabis, such cannabis shall have a delta-9 THC concentration of not more than 0.3% on a dry weight basis<br><br>Class 34:  Electronic cigarette liquids comprised of flavoring in liquid form, other than essential oils, used to refill electronic cigarette cartridges; to the extent any of the foregoing involves use of cannabis, such cannabis shall have a delta-9 THC concentration of not more than 0.3% on a dry weight |

| | Mark | Reg./App. No. | Reg./App. Date(s) | Goods |
|---|---|---|---|---|
| | | | | basis; smoking pipes; smoking pipe cleaners; electronic smoking pipes; oral vaporizers for smokers |
| 10 | BREΞZE | 90/292,579 | Filed: November 2, 2020 | Class 3: Electronic cigarette liquid comprised of essential oils; to the extent any of the foregoing involves use of cannabis, such cannabis shall have a delta-9 THC concentration of not more than 0.3% on a dry weight basis<br><br>Class 5: Plant extracts for pharmaceutical purposes, namely, for the treatment of nausea, anxiety, pain, glaucoma, seizures, multiple sclerosis and Crohn's Disease; to the extent any of the foregoing involves cannabis, such cannabis shall have a delta-9 THC concentration of not more than 0.3% on a dry weight basis<br><br>Class 34: Electronic cigarette liquids comprised of flavoring in liquid form, other than essential oils, used to refill electronic cigarette cartridges; to the extent any of the foregoing involves use of cannabis, such cannabis shall have a delta-9 THC concentration of not more |

| | Mark | Reg./App. No. | Reg./App. Date(s) | Goods |
|---|---|---|---|---|
| | | | | than 0.3% on a dry weight basis; smoking pipes; smoking pipe cleaners; electronic smoking pipes; oral vaporizers for smokers |
| 11 | BREEZE LIFE | 97/926,736 | Filed: May 9, 2023 | Class 34: Battery performance monitors sold as a component of electronic disposable cigarettes |
| 12 | BREEZE SMOKE | 97/900,128 | Filed: April 21, 2023 | Class 34: Disposable electronic cigarettes |
| 13 | BREEZE ELITE | 98/146,073 | Filed: August 23, 2023 | Class 34: Electronic disposable cigarettes |
| 14 | BREEZE ODOR | 97/010,691 | Filed: September 3, 2021 | Class 4: Candles |

Copies of the foregoing applications, along with printouts of the accompanying TESS pages reflecting their status, are attached to Breeze Smoke's Counterclaims in this case as Exhibit 2 (Doc. 9-3) and incorporated by reference herein.

12. Breeze Smoke also owns Michigan State Trademark Registrations 802,511,431 and 802,511,553 for BREEZE.

13. The Michigan BREEZE registrations were registered on August 13, 2020 and assert use in commerce since at least as early as February 4, 2020.

14. Breeze Smoke also owns Florida State Trademark Registrations T21000000916 and T21000000917 for BREEZE LABS.

15. The Florida BREEZE LABS registrations assert use in commerce since at least as early as December 31, 2014.

16.     Collectively, Breeze Smoke's foregoing BREEZE registrations and applications and its longstanding common law rights in the BREEZE marks shall be referred to herein as the "BREEZE Marks."

17.     Collectively, the products and services in connection with which Breeze Smoke uses its BREEZE Marks, including the goods and services identified in the foregoing applications and registrations shall be referred to herein as the "BREEZE Goods and Services."

18.     Since at least as early as August 2021, Breeze Smoke has used a highly distinctive product packaging trade dress and product design trade dress in connection with its BREEZE PRO products that consumers instantly recognize and associate exclusively with Breeze Smoke.

19.     Breeze Smoke's BREEZE PRO product packaging features, among others things, the following distinctive, non-functional elements:

a.     A rectangular clear plastic outer box ("rectangular box");

b.     A large, cardboard label that wraps around the rectangular box ("wraparound label"), wherein the back of the wraparound label extends the full length of the rectangular box and the front of the wraparound label extends only part of the length of the rectangular box, such that the top portion of the vaping device and the vertically aligned product branding is visible from the front and sides of the rectangular box;

c.     On the front side of the cardboard label:

<ol type="i">
<li>The wording "BREEZE," a word mark identifying the product, appears at the top in large white all capital letters;</li>
<li>A second line of text appears underneath the wording "BREEZE" in a smaller, less emphasized font;</li>
<li>The flavor of the vape is printed underneath the word mark and second line of text; and</li>
</ol>

<ol type="a" start="4">
<li>The nicotine warning is at the bottom of the front side of the cardboard label in a white box; and</li>
<li>The flavor of the product and the number of puffs are displayed on both sides of the wraparound label.</li>
</ol>

(hereinafter, the "BREEZE PRO Packaging Trade Dress")

20. Examples of Breeze Smoke's highly distinctive product packaging are seen below:



21. Additional examples of Breeze Smoke's highly distinctive product packaging are shown in Paragraphs 41 and 59 to Breeze Smoke's Counterclaims in this case.

22.     Breeze Smoke's BREEZE PRO product design trade dress features, among others things, the following distinctive, non-functional elements:

a.      a black body that resembles a rectangular cylinder having rounded corners, a flattened front and back sides, and a flat bottom

b.      the top end of the body comprises the mouthpiece that is curved, has an opening for inhalation, narrows toward the opening, and has a concave region on the front side;

c.      the front and back of the device exhibit a rounded rectangular silhouette;

d.      the bottom end of the body has a flat rectangular shaped surface having rounded corners;

e.      a rectangular label featuring a wavy design colored to match the flavor of the vape device;

f.      the wording "BREEZE,"  a word mark identifying the product, printed in bold, white, all-capital typeface is vertically aligned on the label nearer to the mouthpiece than the bottom

g.      an additional smaller white print element appears immediately above the word mark; and

h.      the vaping device flavor appears on the label near the bottom end of the vape device in a smaller, white, all-capital typeface vertically aligned on the label.

(hereinafter, the "BREEZE PRO Product Design Trade Dress").

23.     Examples of Breeze Smoke's highly distinctive product design are seen below:

 

24. Additional examples of Breeze Smoke's highly distinctive product design are shown in Paragraphs 47 and 59 of Breeze Smoke's Counterclaims in this case.

25. Collectively, the BREEZE PRO Packaging Trade Dress and BREEZE PRO Product Design Trade Dress are referred to herein as the "Breeze Smoke Trade Dress."

26. The Breeze Smoke Trade Dress is not functional.

27. The BREEZE PRO Packaging Trade Dress was designed to allow the consumer to instantly recognize the device as being a BREEZE Good and Service emanating exclusively from Breeze Smoke.

28. The BREEZE PRO Product Design Trade Dress was designed to give the BREEZE PRO a distinctive and unique look that was not available on the market.

29. I have personal knowledge of several varieties of disposable e-cigarette designs available to consumers, available in an endless variety of packaging. Examples of such product designs and packaging are attached hereto as **Exhibit A** and **Exhibit B** and incorporated by reference herein.

30. The Breeze Smoke Trade Dress has become an intangible asset of substantial commercial value to Breeze Smoke.

31. Breeze Smoke's BREEZE Goods and Services are promoted, offered, and sold through online retail platforms as well as at a substantial number of brick-and-mortar locations throughout Illinois and the United States.

32. Breeze Smoke has spent significant time, effort, and resources establishing its Breeze Smoke Trade Dress in the minds of its customers and the public via advertisements and promotions, including through online advertising and promotion, as representative of Breeze

13

Smoke and its high quality tobacco and vaping goods and services. Examples of such advertisements are attached hereto as **Exhibit C** and incorporated by reference herein.

33. Through its continuous use, extensive sales, advertising and promotion of the Breeze Smoke Trade Dress, Breeze Smoke has built significant goodwill in the Breeze Smoke Trade Dress.

34. The public recognizes the Breeze Smoke Trade Dress as emanating exclusively from Breeze Smoke and emblematic of its high quality products and services.

35. Consumers know and expect that Breeze Smoke's BREEZE Goods and Services are safe for use and of the highest quality.

36. The BREEZE Goods and Services undergo rigorous quality control measures, including but not limited to Breeze Smoke's high standards for manufacturing and product testing.

37. Breeze Smoke has also submitted Pre-Market Tobacco Product Applications ("PMTA") for its BREEZE disposable vape products in an effort to comply with applicable FDA regulations. Breeze Smoke has incurred millions of dollars in costs to date (and counting) to prepare and submit its PMTAs.

38. I have personal knowledge that third party retailers often advertise that they carry the BREEZE Goods and Services alongside images displaying the Breeze Smoke Trade Dress. Examples of such advertisements are attached hereto as **Exhibit D** and incorporated by reference herein.

39. Third party retailers repeatedly tout "the Breeze Pro's new elegant design" as a selling point. Examples of such statements are attached hereto as **Exhibit E** and incorporated by reference herein.

40. Breeze Smoke representatives regularly attend trade shows nationwide and internationally to promote the BREEZE Goods and Services and prominently display images showing the Breeze Smoke Trade Dress at such shows. Examples of Breeze Smoke's tradeshow displays are attached hereto as **Exhibit F** and incorporated by reference herein.

41. I have personal knowledge of an article by Reuters identifying Breeze Smoke as owning "two of the top-selling e-cigarette brands" and listing the BREEZE PRO product as one of the top ten selling brands in the United States. The Reuters article is attached hereto as **Exhibit G** and incorporated by reference herein.

42. I have personal knowledge that consumers often demonstrate their love for the BREEZE brand in creative ways. Examples of consumer recognition of the BREEZE brand including the Breeze Smoke Trade Dress are attached hereto as **Exhibit H** and include a photo showing customized BREEZE vapes that a couple gave as gifts at their wedding; a person wearing a BREEZE vape Halloween costume; and a person with a BREEZE vape tattoo.

43. To date, Breeze Smoke, by itself and through its distributors, has spent millions of dollars on advertising and marketing the BREEZE Goods and Services bearing the Breeze Smoke Trade Dress.

44. Breeze Smoke's BREEZE disposable vaping pens sell to consumers for approximately $11 to $20 each.

45. It is my understanding and experience that consumers of disposable vaping pens do not exhibit a high degree of care when purchasing such products because they are not particularly expensive.

46. Breeze Smoke has generated substantial revenue from the sale of the BREEZE Goods and Services. To date, Breeze Smoke has generated hundreds of millions of dollars in revenue from the sale of its BREEZE-branded disposable vaping pens.

47. The overwhelming majority of consumers of BREEZE disposable vaping pens are satisfied with the product's performance and give the product high praise. True and accurate screenshots from various websites showing overwhelming positive reviews of the BREEZE disposable vaping pens, including the Breeze Pro, are attached hereto as **Exhibit I** and incorporated by reference herein.

48. The Breeze Smoke Trade Dress have become intangible assets of substantial commercial value to Breeze Smoke.

49. Unfortunately, the immense success of Breeze Smoke's BREEZE brand has given rise to a number of copycats.

50. As a result, Breeze Smoke has been forced a number of times to seek immediate injunctive relief against infringers seeking to capitalize on the goodwill of its BREEZE Marks and trade dress. Breeze Smoke successfully obtained temporary restraining orders and/or preliminary injunctions in those prior cases. *See* February 8, 2021 Order, Case No. 5:20-cv-12944-JEL-EAS (E.D. Mich.) (Levy, J.); February 23, 2021 Order, Case No. 2:20-cv-13413-AJT-EAS (E.D. Mich.) (Tarnow, J.); May 16, 2923 Preliminary Injunction Order, Case No. 1:22-cv-01182-HYJ-SJB (W.D. Mich.) (Jarbou, C.J.). These orders are attached hereto as **Exhibit J** and incorporated by reference herein.

51. Breeze Smoke is currently in the process of enforcing its rights in the Breeze Smoke Trade Dress against a number of copycat products, such as B-FREEZE, VIP FREEZE, and

FREEZE. Examples of these copycat products are attached hereto as **Exhibit K** and incorporated by reference herein.

52. Since early 2021, Plaintiff/Counterclaim Defendant Midwest has been a significant distributor of Breeze Smoke products, including products that use the Breeze Smoke Trade Dress. For example, since January 2022, Midwest has purchased over 100,000 units of BREEZE PRO products from Breeze Smoke, with total purchase prices exceeding $13,000,000. Midwest has also purchased hundreds of BREEZE PRO displays—which prominently market and display the BREEZE PRO Trade Dress—from Breeze Smoke, with total purchase prices exceeding $200,000.

53. In July 2023, Breeze Smoke learned that Midwest had begun marketing, promoting, advertising, offering, distributing, and selling disposable vaping products using the mark "NORTH" and product packaging and a product design that is nearly identical to the Breeze Smoke Trade Dress (the "Infringing Products").

54. True and accurate screenshots showing examples of Midwest's marketing, promotion, and offer of the Infringing Products are attached hereto as **Exhibit L** and incorporated by reference herein.

55. A side-by-side comparison of the BREEZE Goods and Services bearing the Breeze Smoke Trade Dress and the Infringing Products is shown below and in Paragraph 59 of Breeze Smoke's Counterclaims in this case, as well as Exhibit 3 (Doc. 9-4) to Breeze Smoke's Counterclaims in this case. Both Paragraph 59 and Exhibit 3 (Doc. 9-4) to Breeze Smoke's Counterclaims in this case are incorporated by reference herein.

| **BREEZE PRO Product** | **Infringing Product** |
|:---:|:---:|

| BREEZE PRO Product | Infringing Product |
|---|---|
|  |  |

19

| **BREEZE PRO Product** | **Infringing Product** |
|---|---|
| | |

| BREEZE PRO Product | Infringing Product |
|:---:|:---:|
|  |  |

| **BREEZE PRO Product** | **Infringing Product** |
|---|---|
|  |  |

| **BREEZE PRO Product** | **Infringing Product** |
|---|---|
|  |  |

23

| **BREEZE PRO Product** | **Infringing Product** |
|---|---|
|  |  |

| BREEZE PRO Product | Infringing Product |
|:---:|:---:|
|  |  |

| **BREEZE PRO Product** | **Infringing Product** |
|---|---|
|  |  |

| **BREEZE PRO Product** | **Infringing Product** |
|---|---|
|  |  |

27

56. In July 2023, Breeze Smoke contacted Midwest by letter to provide notice of its unlawful infringement and to demand that Midwest cease any further marketing, offering, and selling of the Infringing Products and immediately remove such products from their stores and distribution channels. That letter is attached to Midwest's Complaint in this case as Exhibit A and incorporated by reference herein.

57. To date, Midwest is still selling the Infringing Products.

58. To my knowledge, the Infringing Products did not exist prior to, and were introduced to the market in or around, July 2023.

59. Based on my experience in the industry and Midwest's experience as a high-volume distributor of BREEZE PRO vapes, I believe that Midwest chose to design and sell the Infringing Products in an attempt to capitalize on the success and consumer recognition of the Breeze Smoke Trade Dress.

60. I have personal knowledge that wholesalers are incorrectly informing customers that the Infringing Products are the "new breeze." Examples of the dissemination of this incorrect information are attached hereto as **Exhibit M** and incorporated by reference herein. Those wholesalers are either confused themselves because of the Infringing Products' similarity to BREEZE products or they have been directed or encouraged by Midwest to mislead customers that Midwest's inferior, untested NORTH products are affiliated with BREEZE.

61. I have personal knowledge that when a consumer searches for the BREEZE Goods and Services on Midwest's website, the site automatically redirects the consumer to the product page for the Infringing Products instead of showing the consumer BREEZE products. A video showing Midwest's website redirection is attached hereto as **Exhibit N** and incorporated by reference herein.

62.     I have personal knowledge that Midwest is intentionally trying to divert BREEZE PRO customers by stating that "North is similar." An example of Midwest making this statement is attached hereto as **Exhibit O**.

63.     Based on my experience in the vaping industry and marketplace and conversations with customers, I believe that consumers are highly likely to be confused, and already are confused, between Breeze Smoke's BREEZE Goods and Services and the Infringing Products.

64.     I have personal knowledge of consumers associating the Infringing Products with the Breeze Smoke Trade Dress.  Examples of association of the Breeze Smoke Trade Dress with the Infringing Products is attached hereto as **Exhibit P** and incorporated by reference herein. Examples of actual confusion between the Infringing Products and the Breeze Smoke Trade Dress are attached hereto as **Exhibit Q** and incorporated by reference herein.

65.     The Infringing Products have not undergone Breeze Smoke's quality control processing and therefore Breeze Smoke cannot vouch for the safety or quality of the Infringing Products.

66.     In my experience, vaping products that do not undergo rigorous testing and quality control procedures such as those Breeze Smoke has in place can pose substantial safety risks for consumers.

67.     To my knowledge, Midwest has not even attempted to comply with FDA regulations in connection with its "NORTH" products through, *inter alia*, submission of a PMTA.

68.     Midwest is directly competing with Breeze Smoke's distributors and ultimately depriving Breeze Smoke of sales of its products by selling nearly identical vaping products to the same or similar classes of customers as Breeze Smoke.

69.     The Infringing Products are in no way affiliated with Breeze Smoke but yet use the Breeze Smoke Trade Dress.

70.     Breeze Smoke has not licensed or otherwise authorized Midwest to use its highly valuable and well-established Breeze Smoke Trade Dress in any manner whatsoever.

71.     Breeze Smoke has invested substantially in its BREEZE brand, intends to continue developing its BREEZE brand and selling its BREEZE Goods and Services, and also expects to expand its business by making new products in the vaping space, including disposable vaping products, to maintain its market share and stay ahead of the competition.

72.     Midwest's unauthorized use of the Breeze Smoke Trade Dress in connection with its Infringing Products has already caused substantial confusion in the marketplace, and that confusion continues to grow as Midwest expands its NORTH sales footprint across the United States.

73.     Because of this customer confusion, Breeze Smoke's customer goodwill has been substantially and irreparably harmed. Breeze Smoke stands not only to continue losing its customer goodwill but also a substantial amount of its business if Midwest continues to infringe its Breeze Smoke Trade Dress.

74.     The damage to Breeze Smoke from Midwest's unlawful actions cannot be quantified and cannot be fully compensated by money alone.

All statements made herein of my own knowledge are true, and all statements made on information and belief are believed to be true. I declare under penalty of perjury that the foregoing is true and correct.

Dated: November 2, 2023

By: _____

Steven Haddad
Breeze Smoke LLC

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

Midwest Goods Inc., dba Midwest Distribution Illinois,

      Plaintiff,

      vs.

Breeze Smoke LLC,

      Defendant.

Breeze Smoke LLC,

      Counter-Claimant,

      vs.

Midwest Goods Inc., dba Midwest Distribution Illinois, Wisemen Wholesale, Inc., Speed Wholesale, Inc., World Wholesale, Inc., Light View LLC,

      Counterclaim Defendants.

CASE NO. 1:23-CV-05406

HONORABLE THOMAS M. DURKIN

JURY TRIAL DEMANDED

## INDEX OF EXHIBITS TO DECLARATION OF STEVEN HADDAD

| Exhibit | Description |
|---------|-------------|
| A | Examples of Various Alternative Designs for Vape Device Product Design |
| B | Examples of Various Alternative Designs for Vape Device Product Packaging |
| C | Examples of Breeze Smoke's Advertisements |
| D | Screenshot of E-Commerce Sites Discussing Breeze Pro Product Features |
| E | Examples of Third Party Retailers Discussing the Breeze Pro's Elegant Design |
| F | Examples of Breeze Smoke's Attendance at Trade Shows |
| G | Reuters Article Describing the Breeze Pro as a Top Seller |
| H | Examples of Consumer Recognition and Fandom of Breeze Smoke's Goods and Services |

| Exhibit | Description |
|---|---|
| I | Examples of Positive Consumer Reviews of the Breeze Goods and Services |
| J | Orders Granting Previous Preliminary Injunctions in Favor of Breeze Smoke |
| K | Examples of Copycat Products |
| L | Examples of Midwest's Marketing, Promotion, and Offer for Sale of the Infringing Products |
| M | Wholesalers Referring to Infringing Products as the "New Breeze" |
| N | Video Showing Midwest's Website Redirection |
| O | Text Message of Midwest Comparing NORTH to the BREEZE PRO |
| P | Examples of Associating Infringing Products with the Breeze Smoke IP |
| Q | Examples of Consumer Confusion |

Dated**:** November 2, 2023

Respectfully submitted,

By: /s/ *Mary A. Hyde_____*

William B. Berndt (Attorney No. 6269408)
Mary A. Hyde (Attorney No. 6322004)
David J. Roulo (Attorney No. 6342637)
Jenna E. Saunders (Attorney No. 6340287)
Honigman LLP
155 N. Wacker Drive
Suite 3100
Chicago, IL 60606-1734
Telephone:  312-701-9300
Facsimile:  312-701-9335
mhyde@honigman.com
droulo@honigman.com
jsaunders@honigman.com

Jeffery K. Lamb (Attorney No. 6289998)
Honigman LLP
2290 First National Building
660 Woodward Avenue
Detroit, MI 48226-3506
Telephone:  313-465-7000
Facsimile:  313-465-8000
jlamb@honigman.com