**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

MIDWEST GOODS INC., DBA MIDWEST
DISTRIBUTION ILLINOIS,

        Plaintiff,

    vs.

BREEZE SMOKE, LLC,

        Defendant.

---

Breeze Smoke LLC,

        Counter-Claimant,

    vs.

Midwest Goods Inc., dba Midwest Distribution
Illinois, Wisemen Wholesale, Inc., Speed
Wholesale, Inc., World Wholesale, Inc., Light
View LLC,

        Counterclaim Defendants.

CASE NO. 1:23-CV-05406

HONORABLE THOMAS M. DURKIN

JURY TRIAL DEMANDED

## MEMORANDUM IN SUPPORT OF BREEZE SMOKE'S RENEWED MOTION FOR PRELIMINARY INJUNCTION

# TABLE OF CONTENTS

I. INTRODUCTION .................................................................................................... 1

II. STATEMENT OF FACTS ....................................................................................... 2

    A.    BREEZE SMOKE'S PRODUCTS AND SERVICES ..................................... 2

    B.    BREEZE SMOKE'S TRADE DRESS ........................................................... 2

    C.    THE PROMOTION AND CONSUMER RECOGNITION OF BREEZE SMOKE'S TRADE DRESS ........................................................... 4

    D.    BREEZE SMOKE'S DESIGN PATENT ...................................................... 5

    E.    COUNTER DEFENDANT'S INTENTIONAL INFRINGING CONDUCT .................................................................................................. 5

III. ARGUMENT .......................................................................................................... 7

    A.    LEGAL STANDARD ................................................................................... 7

    B.    BREEZE SMOKE WILL SUCCEED ON THE MERITS OF ITS LANHAM ACT CLAIMS. ............................................................................ 8

        1.    The Breeze Smoke Trade Dress is Valid and Protectable. .................. 8

        2.    The Breeze Smoke Trade Dress is Not Functional. ........................... 11

        3.    There is a Likelihood of Confusion Between the Breeze Smoke Trade Dress and the Infringing Products. ............................. 12

    C.    BREEZE SMOKE WILL SUCCEED ON THE MERITS OF ITS PATENT CLAIMS. ....................................................................................... 15

        4.    The D'573 Patent is valid. .................................................................. 15

        5.    The Infringing Product Infringes the D'573 Patent. .......................... 16

    D.    BREEZE SMOKE WILL SUFFER IRREPARABLE INJURY IF AN INJUNCTION IS NOT ISSUED. ........................................................... 18

    E.    THE BALANCE OF HARMS FAVORS AN INJUNCTION. ...................... 20

    F.    THE PUBLIC INTEREST FAVORS AN INJUNCTION. ........................... 20

G.     BREEZE SMOKE SHOULD NOT BE REQUIRED TO POST A BOND. ...................................................................................21

IV.     CONCLUSION .................................................................................22

**PAGE(S)**

**CASES**

*Anderson v. Larry*,
2021 WL 4745390 (N.D. Ill. Oct. 12, 2021) ................................................................ 21

*Autozone, Inc. v. Strick,*
543 F.3d 923 (7th Cir. 2008) ...................................................................... 13, 15

*Badger Meter, Inc. v. Grinnel Corp.,*
13 F.3d 1145 (7th Cir. 1994) ........................................................................... 11

*Bodum USA, Inc. v. A Top New Casting Inc.,*
927 F.3d 486 (7th Cir. 2019) ......................................................................... 8, 12

*CAE, Inc. v. Clean Air Engineering, Inc.,*
267 F.3d 660 (7th Cir. 2001) ........................................................ 12, 13, 14, 15

*Celsis In Vitro, Inc. V. Cellzdirect, Inc.,*
664 F.3d 922 (Fed. Cir. 2012) ...................................................................... 20

*Columbia Sportswear North America, Inc. v. Seirus Innovative Accessories, Inc.,*
80 F.4th 1363 (Fed. Cir. 2023) ................................................................ 16, 17

*Computer Care v. Service Systems Enterprises, Inc.,*
982 F.2d 1063 (7th Cir. 1992) .......................................................... 8, 9, 12, 14

*Foster v. Kusper,*
587 F.Supp. 1191 (N.D. Ill. 1984) ............................................................... 22

*Gorham v. White,*
81 U.S. 511 (1871) ...................................................................................... 16

*Habitat Education Center v. United States Forest Service,*
607 F.3d 453 (7th Cir. 2010) ........................................................................ 21

*Health o Meter, Inc. v. Terraillon Corp.,*
873 F. Supp. 1160 (N.D. Ill. 1995) .............................................................. 11

*Kellytoy Worldwide, Inc. V. Ty, Inc.,*
2020 WL 5026255 (N.D. Ill. Aug. 25, 2020) ....................................... 18, 20, 21

*L.A. Gear, Inc. v. Thom Mcan Shoe Co.,*
988 F.2d 1117 (Fed. Cir. 1993) ................................................................... 16

*Lorillard Tobacco Co. v. Van Dyke Liquor Market, Inc.,*
471 F. Supp. 2d 822 (E.D. Mich. 2007) ................................................................. 13

*Payless Shoesource, Inc. v. Reebok Intern. Ltd.,*
998 F.2d 985 (Fed. Cir. 1993) ..................................................................... 16, 17

*Promatek Indus., Ltd. v. Equitrac Corp.,*
300 F.3D 808 (7th Cir.2002) ............................................................................ 7

*Purdue Pharma L.P. v. Boehringer Ingelheim GMBH,*
237 F.3D 1359 (Fed. Cir. 2001) ..................................................................... 19

*Qualitex Co. v. Jacobson Prods. Co.,*
514 U.S. 159 (1995) .................................................................................. 9, 11

*Reebok Intern. Ltd. V. J. Baker, Inc.,*
32 F.3d 1552 (Fed. Cir. 1994) ......................................................................... 19

*Roulo v. Russ Berrie & Co., Inc.,*
886 F.2d 931 (7th Cir. 1989) .......................................................................... 8, 9

*Sanofi-Synthelabo v. Apotex, Inc.,*
470 F.3d 1368 (Fed. Cir. 2006) ........................................................................ 20

*Scherr v. Volpe,*
466 F.2d 1027 (7th Cir. 1972) ......................................................................... 21

*Schwinn Bicycle Co. V. Ross Bicycles, Inc.,*
870 F.2d 1176 (7th Cir. 1989) ..................................................................... 10, 11

*Spigen Korea Co., Ltd. v. Ultraproof, Inc.,*
955 F.3d 1379 (Fed. Cir. 2020) ........................................................................ 15

*Thomas & Betts Corp. V. Panduit Corp.,*
138 F.3d 277 (7th Cir. 1998) .................................................................. 9, 10, 12

*Tinnus Enterprises, LLC v. Telebrands Corp.,*
846 F.3D 1190 (FED. CIR. 2017) .................................................................. 7, 18

*Ty, Inc. V. Jones Group, Inc.,*
237 F.3d 891 (7th Cir. 2001) ............................................................................ 7

*Univ. City Studios, Inc.v. Montgomery Ward & Co., Inc.,*
207 U.S.P.Q. 852, 1980 WL 30333 (N.D. Ill. May 9, 1980) ......................... 10, 11

*Wal-Mart Stores, Inc. v. Samara Bros., Inc.,*
529 U.S. 205 (2000) .......................................................................................... 8

*Wayne Chemical, Inc. v. Columbus Agency Service Corp.*,
567 F.2d 692 (7th Cir. 1977) ..................................................................... 21

*Weber-Stephen Prods. LLC v. Sears Holding Corp.*,
2015 WL 5161347 (N.D. Ill. Sept. 1, 2015) ............................................... 10

*Weber-Stephen Prods. LLC v. Sears Holding Corp.*,
2015 WL 9304343 (N.D. Ill. Dec. 22, 2015) .............................................. 15

**STATUTES**

15 U.S.C. § 1116(a) ................................................................................... 7, 18

35 U.S.C. § 283 ............................................................................................... 7

35 U.S.C. § 289 .............................................................................................. 16

## I.    **<u>INTRODUCTION</u>**

Breeze Smoke, LLC ("Breeze Smoke") moves for a preliminary injunction to immediately stop Counterclaim Defendants Midwest Goods Inc.'s ("Midwest"), Wisemen Wholesale, Inc.'s ("Wisemen"), and World Wholesale, Inc.'s ("World") (collectively "Counterclaim Defendants") willful infringement of Breeze Smoke's well-known trade dress and design patent for its incredibly popular BREEZE PRO vape pens (also known as Electronic Nicotine Delivery Systems or "ENDS"). Counterclaim Defendants previously sold millions of dollars of the BREEZE PRO as distributors for Breeze Smoke.  Now, they are intentionally trading off of the enormous goodwill Breeze Smoke has built up in its BREEZE PRO brand by selling ENDS products called "NORTH" that utilize a packaging and product design that are virtually identical to Breeze Smoke's highly distinctive BREEZE PRO trade dress and design patent.

The evidence shows that the NORTH product is a virtually identical copycat of the BREEZE PRO, and very much intentionally so. Lead Counterclaim Defendant Midwest—which previously sold millions of dollars of Breeze Pro— actively diverted BREEZE PRO customers to NORTH by stating that "North is similar" to the BREEZE PRO, and by redirecting customers searching for "Breeze" on its website to its own NORTH products instead.  Midwest's wholesalers are also misrepresenting that the NORTH products are from the same source as BREEZE PRO by falsely telling customers that the NORTH products are the "new breeze." These unfair tactics have been highly successful: Midwest boasts that it "switched i [sic] would say 80% of our Breeze customers to North."

Counterclaim Defendants' deliberate misconduct is causing rampant consumer confusion around the country, irreparably harming Breeze Smoke, and posing a threat to the public interest. Breeze Smoke has spent millions of dollars to ensure that its products are safe and to apply for FDA approval for BREEZE PRO; Counterclaims Defendants have taken *no* such steps for

NORTH. Breeze Smoke also has been repeatedly forced to secure injunctions from multiple federal courts against other infringers like Counterclaim Defendants hawking inferior, copycat BREEZE products. Breeze Smoke respectfully requests that this Court likewise stop Counterclaim Defendants' willful infringement and grant Breeze Smoke's Motion for a preliminary injunction.

## II.     STATEMENT OF FACTS

### A.  BREEZE SMOKE'S PRODUCTS AND SERVICES

Breeze Smoke manufactures and sells a variety of vaping products using its "BREEZE" family of trademarks (the "BREEZE Marks"), including its popular BREEZE PRO vape pens, throughout the United States. Decl. of Steven Haddad ("Haddad Decl."), ¶¶ 2-3, 7-11, 31. The products and services sold in connection with the BREEZE Marks are referred to herein as the "BREEZE Goods and Services."

Consumers know and expect that Breeze Smoke's BREEZE Goods and Services are safe for use and of the highest quality. *See id*. ¶¶ 34-36, 67-68. The BREEZE Goods and Services undergo rigorous quality control measures, including but not limited to Breeze Smoke's high standards for manufacturing and product testing. *Id.*, ¶ 36. Breeze Smoke has also timely submitted Pre-Market Tobacco Product Applications ("PMTA") for its BREEZE disposable vape products in an effort to comply with applicable FDA regulations, incurring millions of dollars to date (and counting) to do so. *Id.*, ¶ 37. Midwest has not bothered even to ***attempt*** to comply with FDA regulations regarding its inferior NORTH products. *Id.*, ¶ 69.

### B.  BREEZE SMOKE'S TRADE DRESS

Since at least as early as August 2021, Breeze Smoke has used a highly distinctive product packaging trade dress and product design trade dress for its BREEZE PRO products. *Id.*, ¶ 17. Breeze Smoke's BREEZE PRO product packaging trade dress consists of the overall look and feel of the packaging and features, among others things, the following distinctive, non-functional

elements:

    a.      A rectangular clear plastic outer box ("rectangular box");

    b.      A large, cardboard label that wraps around the rectangular box ("wraparound label"), wherein the back of the wraparound label extends the full length of the rectangular box and the front of the wraparound label extends only part of the length of the rectangular box, such that the top portion of the vaping device and the vertically aligned product branding is visible from the front and sides of the rectangular box;

    c.      On the front side of the cardboard label:

        i.   The wording "BREEZE," a word mark identifying the product, appears at the top in large white all capital letters;

        ii.  A second line of text appears underneath the wording "BREEZE" in a smaller, less emphasized font;

        iii. The flavor of the vape is printed underneath the word mark and second line of text; and

    d.      The nicotine warning is at the bottom of the front side of the cardboard label in a white box; and

    e.      The flavor of the product and the number of puffs are displayed on both sides of the wraparound label.

(hereinafter, the "BREEZE PRO Packaging Trade Dress"). *Id.*, ¶ 18. Breeze Smoke's BREEZE

PRO product design trade dress features the following distinctive, non-functional elements:

    a.      a black body that resembles a rectangular cylinder having rounded corners, a flattened front and back sides, and a flat bottom

    b.      the top end of the body comprises the mouthpiece that is curved, has an opening for inhalation, narrows toward the opening, and has a concave region on the front side;

    c.      the front and back of the device exhibit a rounded rectangular silhouette;

    d.      the bottom end of the body has a flat rectangular shaped surface having rounded corners;

    e.      a rectangular label featuring a wavy design colored to match the flavor of the vape device;

3

f.  the wording "BREEZE," a word mark identifying the product, printed in bold, white, all-capital typeface is vertically aligned on the label nearer to the mouthpiece than the bottom

g.  an additional smaller white print element appears immediately above the word mark; and

h.  the vaping device flavor appears on the label near the bottom end of the vape device in a smaller, white, all-capital typeface vertically aligned on the label.

(hereinafter, the "BREEZE PRO Product Design Trade Dress"). *Id.*, ¶ 21. Examples showing Breeze Smoke's use of its highly distinctive BREEZE PRO Packaging Trade Dress and BREEZE PRO Product Design Trade Dress (referred to collectively as the "Breeze Smoke Trade Dress") are shown in Breeze Smoke's First Amended Counterclaims, Dkt. No. 37, ¶¶ 42, 52, 75; *see also* Haddad Decl. ¶¶ 19, 22, 57.

### C.  THE PROMOTION AND CONSUMER RECOGNITION OF BREEZE SMOKE'S TRADE DRESS

The Breeze Smoke Trade Dress is of substantial commercial value to Breeze Smoke. *Id.*, ¶ 30. Breeze Smoke has devoted significant resources to establishing the Breeze Smoke Trade Dress in the minds of its customers and the public via advertisements and promotions. *Id.* at ¶¶ 32-33, 40, Exs. A, C. To date, Breeze Smoke has spent millions of dollars advertising and marketing its Breeze Smoke Trade Dress. *Id.*, ¶ 43. Through its continuous use, extensive sales, advertising and promotion of the Breeze Smoke Trade Dress, Breeze Smoke has amassed significant goodwill in the Breeze Smoke Trade Dress. *See id.*, ¶¶ 32-34, 38-39, 40-42, 47, Exs. A-F; Dkt No. 37-6. Third party retailers often advertise that they carry BREEZE Goods and Services through promotions and advertisements that prominently display the Breeze Smoke Trade Dress. *Id.*, ¶ 38, Ex. B. As a result of these efforts the public recognizes the Breeze Smoke Trade Dress as emanating exclusively from Breeze Smoke and emblematic of its high quality products and services. *Id.*, ¶ 34. For example, third party retailers tout "the Breeze Pro's new elegant design" as

a selling point, and Breeze Smoke has been recognized as a top seller of e-cigarettes. *Id.*, ¶¶ 39, 41 Ex. D; Dkt. No. 37-6. Breeze Smoke has also generated over one billion dollars from the sale of products and services using its Breeze Smoke Trade Dress. *Id.*, ¶ 46.

Over the past three years, numerous bad actors have attempted to capitalize on Breeze Smoke's goodwill by manufacturing and selling products that use Breeze Smoke's trademarks and the Breeze Smoke Trade Dress, forcing Breeze Smoke to seek immediate injunctive relief against those infringers. *See id.*, ¶ 50, Ex. G. Breeze Smoke has successfully secured temporary restraining orders and/or preliminary injunctions in those prior cases. *See id.*

### D.  BREEZE SMOKE'S DESIGN PATENT

On November 21, 2023, the U.S. Patent and Trademark Office duly issued Breeze Smoke's U.S. Design Pat. No. D1,005,573 (the D'573 Patent) for an ornamental design for a disposable e-cigarette. *Id.* at ¶ 76; Dkt. No. 37-8. This patent claims priority to Breeze Smoke's U.S. Application No. 29/791,735 filed on February 3, 2022. *Id.* at ¶ 77. Breeze Smoke owns all rights to the D'573 Patent. *Id.* at ¶ 78. Breeze Smoke's BREEZE PRO product is the commercial embodiment of the D'573 Patent. *Id.*, at ¶ 80. Breeze Smoke has not licensed or otherwise authorized Counterclaim Defendants to practice the D'573 Patent, except to sell the BREEZE PRO. *Id.*, at ¶ 81.

### E.  COUNTER DEFENDANTS' INTENTIONAL INFRINGING CONDUCT

Midwest makes and distributes various goods, including vapes and electronic cigarettes. *See id.*, ¶¶ 52, 55-56, Ex. H. Likewise, Wisemen and World sell various goods, including vapes and electronic cigarettes. *Id.* at ¶ 54-57, Ex. H. Counterclaim Defendants have distributed Breeze Smoke products in the past, including the BREEZE PRO and other products that use the Breeze Smoke Trade Dress and embody the D'573 Patent, purchasing over $18 million worth of Breeze Goods and Services. *Id.*, ¶ 52-54. In late 2023, Breeze Smoke learned that Counterclaim Defendants had begun marketing, promoting, advertising, offering, distributing, and selling

disposable vaping products named "NORTH," using product packaging and a product design that are nearly identical to the Breeze Smoke Trade Dress and then later the D'573 Patent (once it issued) (the "Infringing Products"). *Id.*, ¶¶ 55-57, 82. Breeze Smoke promptly sent cease and desist letters to Counterclaim Defendants demanding that they immediately stop promoting and selling the Infringing Products. *Id.*, ¶ 58. In response, Counterclaim Defendants continued to sell the Infringing Products and encouraged their customers and distributors to falsely associate the Infringing Products with BREEZE PRO. *Id.*, ¶¶ 56, 59-64, Exs. H-K

Due to the near identity between the appearances of the respective products, customers unsurprisingly associate the Infringing Products with Breeze Smoke, stating in comments on social media that the Infringing Products are "just like Breeze Pro" and "[l]iterally just a breeze pro but different name." *See id.*, ¶ 66; Dkt. No. 37-9.  Side-by-sides demonstrate this virtual identity:

| **BREEZE PRO** | **Infringing Product** | **BREEZE PRO** | **Infringing Product** |
|---|---|---|---|





The Haddad Declaration provides several additional images of the Breeze Pro Packaging Trade Dress side-by-side with samples of the Infringing Product's packaging trade dress, as well as images of the Breeze Pro Product Design Trade Dress side-by-side with samples of the Infringing Products. *Id.*, ¶ 57. The Haddad Declaration also provides images of the Infringing Product side-by-side with the claim of the D'573 Patent. *Id.*, ¶ 82. These side-by-side images show that the Infringing Product packaging and design use a nearly identical combination of elements as that comprising both the Breeze Smoke Trade Dress and the D'573 Patent.

Because the Infringing Products have not undergone Breeze Smoke's quality control processing, Breeze Smoke cannot vouch for their safety or quality. *Id.*, ¶¶ 66-67. And vaping products that do not undergo rigorous testing and quality control procedures like the ones Breeze Smoke has in place can pose substantial safety risks for consumers. *See id.*

## III.    ARGUMENT

### A.  LEGAL STANDARD

This Court has broad discretion under the Lanham Act and the Patent Act to issue preliminary injunctive relief. *See* 15 U.S.C. § 1116(a); 35 U.S.C. § 283. The party moving for a preliminary injunction must show that it has a likelihood of success on the merits, that it has no adequate remedy at law, and that it will suffer irreparable harm if the injunction is not granted. *Promatek Indus., Ltd. v. Equitrac Corp.,* 300 F.3d 808, 811 (7th Cir. 2002); *see also Tinnus Enterprises, LLC v. Telebrands Corp.*, 846 F.3d 1190, 1202-03 (Fed. Cir. 2017) (same). If this threshold showing is made, the court then weighs the parties' respective harms on a sliding scale. *Id.* Finally, the court must also "consider any consequences to the public from granting or denying an injunction." *Id.* At the preliminary injunction stage, the plaintiff must only show that "it has a '***better than negligible***' chance of succeeding on the merits so that injunctive relief would be justified." *Ty, Inc. v. Jones Group, Inc.*, 237 F.3d 891, 897 (7th Cir. 2001) (emphasis added).

**B. BREEZE SMOKE WILL SUCCEED ON THE MERITS OF ITS LANHAM ACT CLAIMS.**

Trade dress refers to "the total image of a product, including features such as size, shape, color or color combinations, texture, graphics, or even particular sales techniques." *Computer Care v. Service Systems Enterprises, Inc.*, 982 F.2d 1063, 1067 (7th Cir. 1992) (internal quotations omitted). To prove a claim for trade dress infringement, a party must demonstrate that it owns a valid trade dress, the trade dress is not functional, and that the infringing trade dress is likely to cause confusion as to its source. *Bodum USA, Inc. v. A Top New Casting Inc.*, 927 F.3d 486, 491 (7th Cir. 2019). Breeze Smoke satisfies each of these elements.

**1. The Breeze Smoke Trade Dress is Valid and Protectable.**

To establish a valid and protectable trade dress in product packaging, the party seeking protection must show either that the trade dress is inherently distinctive or that the trade dress has developed secondary meaning. *Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 210, 212 (2000). A party asserting product design trade dress must show that the trade dress has developed secondary meaning. *See id*. The Breeze Pro Packaging Trade Dress is both inherently distinctive and has developed secondary meaning. The Breeze Pro Product Design Trade Dress has developed secondary meaning. Therefore, the Breeze Smoke Trade Dress is distinctive.

Trade dress is inherently distinctive if it allows consumers to identify the product from the trade dress. *Computer Care*, 982 F.2d at 1069. To be inherently distinctive, the trade dress must be either arbitrary or suggestive, rather than generic or descriptive. *Id.* This does not require that each individual element of the trade dress be arbitrary or suggestive. Rather, the question is whether the combination of elements is "sufficiently unique to warrant trade-dress protection." *Roulo v. Russ Berrie & Co., Inc.*, 886 F.2d 931, 936 (7th Cir. 1989).

The Breeze Pro Packaging Trade Dress is inherently distinctive because it allows the

consumer to instantly recognize the product as a Breeze Smoke Good or Service. *See* Haddad Decl., ¶¶ 27-28. The particular configuration of the wraparound label and rectangular box is arbitrary. Furthermore, "the overall combination of these elements" is arbitrary, and therefore inherently distinctive." *Computer Care*, 982 F.2d at 1069 ("Where the plaintiff's overall trade dress is distinctive, the fact that it uses descriptive (or generic) elements does not render it nonprotectable"); *see also Roulo*, 886 F.2d at 936 (finding that the fact that the product incorporated common, indistinct elements did not "refute the fact that Roulo's combination of these elements was sufficiently unique to warrant trade-dress protection").

Additionally, the Breeze Smoke Trade Dress has acquired secondary meaning. "[S]econdary meaning is acquired when in the 'minds of the public, the primary significance of a product feature . . . is to identify the source of the product rather than the product itself.'" *Thomas & Betts Corp. v. Panduit Corp.*, 138 F.3d 277, 291 (7th Cir. 1998) (quoting *Qualitex Co. v. Jacobson Prods. Co.*, 514 U.S. 159, 163 (1995)). Secondary meaning can be established through proof of intentional copying, consumer testimony, consumer surveys, length and manner of use, amount and manner of advertising, volume of sales, and place in the market. *Id.*

Breeze Smoke has spent significant amounts of money advertising the Breeze Smoke Trade Dress and generated hundreds over one billion dollars in sales from the underlying product. Haddad Decl., ¶¶ 32-33, 40, 43, 46; Exs. A, C. This has led to widespread recognition of the Breeze Smoke Trade Dress. *See id.*, ¶¶ 33-35, 42, 47; Exs. E, F. Third party retailers frequently advertise that they carry Breeze Smoke's BREEZE Goods and Services alongside images displaying the Breeze Smoke Trade Dress. *Id.*, ¶ 38, Ex. B. Third party retailers also regularly advertise the BREEZE PRO Product Design and tout "the Breeze Pro's new elegant design" as a selling point. *See id.*, ¶ 39; Dkt. No. 37-6; *see also Roulo* 886 F.2d at 936-37 (noting that evidence that consumers identify a party's trade dress with the source supports a finding of secondary meaning).

Consumers also demonstrate their love for the BREEZE brand in creative, publicly visible ways, such as offering BREEZE vapes in lieu of cigars at celebrations, donning BREEZE vape costumes at Halloween, and making songs about BREEZE vapes. *Id.*, ¶ 42, 47, Exs. E, F. As a result of this widespread adulation for the Breeze Smoke Trade Dress, customers readily associate copycat products with Breeze Smoke ***even when the copycat product does not display the word "Breeze."*** *See id.*, ¶ 66; Dkt. No. 37-9 (examples of customers associating the Infringing Products with Breeze Smoke).

In view of Breeze Smoke's enormous success, Reuters has recognized the BREEZE PRO Product to be one of the top-ten selling flavored disposable e-cigarettes. *Id.*, ¶ 41, Ex. D. And Breeze Smoke's industry leading sales is indicative of the Breeze Smoke Trade Dress's secondary meaning. *Id.*, ¶ 46; *See Thomas & Betts Corp.* 138 F.3d at 291.

Counterclaim Defendants' "intent in misappropriating [the Breeze Smoke Trade Dress] is also probative evidence of secondary meaning since there is no plausible reason for such conduct 'save an attempt to realize upon a secondary meaning that is in existence.'" *Univ. City Studios, Inc. v. Montgomery Ward & Co., Inc.*, 207 U.S.P.Q. 852, 1980 WL 30333, at *6 (N.D. Ill. May 9, 1980); *see also Schwinn Bicycle Co. v. Ross Bicycles, Inc.*, 870 F.2d 1176, 1182 n.13 (7th Cir. 1989) ("Proof of intentional copying is probative evidence of 'secondary meaning.'"); *Weber-Stephen Prods. LLC v. Sears Holding Corp.*, Case No. 13 C 01686, 2015 WL 5161347, at *1 (N.D. Ill. Sept. 1, 2015) ("Evidence of intentional copying is a well-established basis to prove secondary meaning.").

The evidence shows that the Infringing Product is an intentional copycat of the Breeze Smoke Trade Dress. At least one Counterclaim Defendant, Midwest, is deliberately trying to divert BREEZE PRO customers by stating that "North is similar" to the BREEZE PRO," *see* Haddad Decl., ¶ 64, Ex. K, and by redirecting customers searching for "Breeze" on its website to Midwest's

NORTH products instead. *See id.*, ¶ 63, Ex. J. Midwest's wholesalers are also misrepresenting that the Infringing Products are from the same source as BREEZE PRO, by falsely telling customers that the Infringing Products are the "new breeze." *See id.*, ¶ 62, Ex I. Finally, Midwest has crowed about the success of its unfair tactics, stating that Midwest has "switched i [sic] would say 80% of our Breeze customers to North." *Id.* ¶ 64, Ex. K.

Courts can presume intentional copying from knowledge and access. *See Health o meter, Inc. v. Terraillon Corp.*, 873 F. Supp. 1160, 1173 (N.D. Ill. 1995). Here, Counterclaim Defendants' have purchased over $18 million in authorized products bearing the Breeze Smoke Trade Dress from Breeze Smoke over the past three years. Haddad Decl., ¶¶ 52-54. As such, Counterclaim Defendants' knowledge and access to the Breeze Smoke Trade Dress, and then intentionally decided to sell a product with a virtually identical design and packaging. This is strong evidence of secondary meaning. *See, e.g.*, *Schwinn Bicycle Co.* 870 F.2d at 1182, n.13.

The evidence further shows that sellers of other inferior products copy the Breeze Smoke Trade Dress. *See* Haddad Decl. ¶¶ 49-51, Ex. G; Dkt. No. 37-4. Breeze Smoke is in the process of enforcing its rights in the Breeze Smoke Trade Dress against a number of other copycat products, such as B-FREEZE and VIP FREEZE. *See* Haddad Decl., ¶ 51. These copycats further establish the Breeze Smoke Trade Dress has acquired distinctiveness. *See Univ. City Studios*, 1980 WL 30333, at *6.

### 2. The Breeze Smoke Trade Dress is Not Functional.

Trade dress is functional if "it is essential to the use or purpose of the article or if it affects the cost or quality of the article, that is, if exclusive use of the feature would put competitors at a significant non-reputation-related disadvantage." *Qualitex Co.*, 514 U.S. at 165 (internal citations and quotations omitted). Trade dress can be protectable even where it contains non-protectable functional elements if the combination of elements is not functional. *See, e.g.*, *Badger Meter, Inc.*

*v. Grinnel Corp.*, 13 F.3d 1145, 1154 (7th Cir. 1994).

Midwest's own Complaint and marketplace realities establish that there are ***endless*** varieties of vape packaging and vape designs on the market, demonstrating that competitors do not need to be able to use the Breeze Smoke Trade Dress in order to compete effectively. *See* Dkt. No. 1 at ¶¶ 68-72; *see also* Haddad Decl., ¶ 29, Dkt. No. 37-7 (providing examples of other product designs), Dkt. No. 37-5 (providing examples of other packaging designs). *See Bodum*, 927 F.3d at 492 (stating that a party "merely need[s] to prove that preventing competitors from copying [its] particular design would not significantly disadvantage them.").

Furthermore, the Breeze Smoke Trade Dress is purely ornamental: Breeze Smoke designed the BREEZE PRO Packaging Trade Dress to have a unique, distinctive design and to enable consumers to instantly recognize the product as a BREEZE Good and Service. *See* Haddad Decl. at ¶¶ 27-28. There was no functional reason for the design. *See id.*, ¶ 26; *see also Thomas & Betts Corp.*, 138 F.3d at 297 (a feature is not functional if it is "ornamental, fanciful, decorative").

### 3. There is a Likelihood of Confusion Between the Breeze Smoke Trade Dress and the Infringing Products.

Once a trade dress is found to warrant protection, the plaintiff must establish that defendant's trade dress is sufficiently similar to create a likelihood of confusion. *CAE, Inc. v. Clean Air Engineering, Inc.*, 267 F.3d 660, 673-74 (7th Cir. 2001).[1] This is "an equitable balancing test. No single factor is dispositive." *Id.* at 678 (internal citations and quotations omitted). Breeze Smoke has established likely confusion.

---

[1] The likelihood of confusion factors include: (1) similarity of the trade dresses; (2) similarity of the products; (3) area and manner of concurrent use; (4) degree of care likely to be exercised by consumers; (5) strength of the plaintiff's trade dress; (6) whether actual confusion exists; and (7) whether the defendant intended to palm off his product as that of the plaintiff. *Id.* at 677-78.

(1) Similarity of the trade dresses

"[C]lose similarity between the parties' trade dresses in side-by-side comparison is [] a factor to be considered in evaluating the likelihood of confusion." *Computer Care*, 982 F.2d at 1070. As discussed in Section II, a side-by-side comparison of the Infringing Product packaging and product design demonstrates that the Infringing Product packaging and design is virtually identical to the Breeze Smoke Trade Dress. *See also* Haddad Decl. ¶ 57.

(2) Similarity of the products

The Infringing Products are the same as Breeze Smoke's products embodying the Breeze Smoke Trade Dress; this factor favors a likelihood of confusion. *See, e.g.*, *CAE, Inc.*, 267 F.3d at 679-80 (finding this factor favored likely confusion where the products were closely related).

(3) The area and manner of concurrent use

This factor assesses whether there is a relationship "in use, promotion, distribution, or sales between the goods or services of the parties." *CAE, Inc.*, 267 F.3d at 681. Counterclaim Defendants have sold both products using the Breeze Smoke Trade Dress and the Infringing Products and Counterclaim Defendants and Breeze Smoke market and sell to the same consumers: users and sellers of vaping products. *See* Haddad Decl., ¶¶ 52-56. Accordingly, this factor favors finding a likelihood of confusion. *See AutoZone, Inc. v. Strick*, 543 F.3d 923, 932 (7th Cir. 2008) (finding this factor supported likelihood of confusion where a "substantial congruence exists between the potential customer base").

(4) The degree of care likely to be exercised by consumers

"[T]he more widely accessible and inexpensive the products and services, the more likely that consumers will exercise a lesser degree of care and discrimination in their purchases." *AutoZone*, 543 F.3d at 933. As in *AutoZone*, the products in this case are inexpensive and consumers of disposable vaping products typically do not exercise a high degree of care in making

their purchases.  *See* Haddad Decl., ¶¶ 44-45; *see also Lorillard Tobacco Co. v. Van Dyke Liquor Market, Inc.*, 471 F. Supp. 2d 822, 830 (E.D. Mich. 2007) (finding that cigarette buyers use a low degree of care). This factor weighs in favor of Breeze Smoke.

(5) The strength of the Breeze Smoke Trade Dress

The Breeze Smoke Trade Dress is strong for the same reasons identified above. As described in Section III.B.1, *supra*, the Breeze Smoke Trade Dress enjoys widespread consumer recognition and, as a result, Breeze Smoke has been recognized as a top seller of disposable e-cigarettes and over one billion dollars in revenue from its products. *See* Haddad Decl. ¶¶ 41, 46, Ex. D. Consumers associate the Breeze Smoke Trade Dress with the BREEZE Goods and Services, as evidenced by the fact that consumers associate the Infringing Products with Breeze Smoke— even though the Infringing Products do not display "Breeze," or "Breeze Smoke." *Id.*, ¶ 66; Dkt. Nos. 37-9, 37-10. This factor favors Breeze Smoke. *See CAE, Inc.*, 267 F.3d at 684.

(6) Whether actual confusion exists

Evidence of actual confusion "is entitled to substantial weight in the . . . analysis." *CAE, Inc.*, 267 F.3d at 685. Here there are ***numerous*** instances of actual confusion and mistake. *See* Haddad Decl. ¶ 66; Dkt. No. 37-10.   For example, one customer messaged Breeze Smoke asking "we were informed that the new North Bar is made by you? Is this the new Breeze unit?" *Id.* Another customer emailed Breeze Smoke asking "Do y'all [sic] make the North 5,000 disposables? They seem to have the same flavors and packaging." *Id.*  Breeze Smoke's retailers are even confused. One sent a picture of the Infringing Products and asked "Brother is this the new breeze? Customers are asking." *Id.* Another sent a picture of the Infringing Products and said "You can't tell me that isn't Breeze." *Id.*

14

(7) Counterclaim Defendants' intent in selecting the mark.

**Deliberate copying is "an important factor** bearing on the likelihood of confusion." *Computer Care*, 982 F.2d at 1070 (internal quotations omitted) (emphasis added). As discussed in Section II.B.1, the overwhelming evidence in this case—including evidence that at least Midwest is intentionally attempting to divert BREEZE PRO customers to the Infringing Products—demonstrates that the Infringing Product is a deliberate copycat of the Breeze Smoke Trade Dress. *See* Haddad Decl., ¶¶ 61-65, Exs. I-K.

Furthermore, an intent to confuse can be "reasonably inferred from the similarity of the marks where the senior mark has attained great notoriety" or where the "marketing and business presence of the senior mark is nearly ubiquitous in the geographic area where the junior mark competes." *AutoZone*, 543 F.3d at 934. Here, Breeze Smoke is a leading brand and has extensively marketed in the same channels as Counterclaim Defendants. In fact, Counterclaim Defendants have sold Breeze Smoke products in the past. *See* Haddad Decl. ¶ 52-54. Accordingly, it can be inferred that Counterclaim Defendants are selling the Infringing Products with the intent to deceive customers into falsely associating a relationship between the Breeze Smoke products and the Infringing Products. *See AutoZone*, 543 F.3d at 934.

Because Breeze smoke has demonstrated that six of the seven likelihood of confusion factors favor a finding of likelihood of confusion and that one factor is neutral, there is a high likelihood of consumer confusion. *See, e.g.*, *CAE, Inc.*, 267 F.3d at 678.

### C. BREEZE SMOKE WILL SUCCEED ON THE MERITS OF ITS PATENT CLAIMS.

#### 1. The D'573 Patent is valid.

By virtue of its issuance, the D'573 Patent is presumed valid and any party seeking to challenge its validity carries a heavy burden. "Design patents are presumed valid." *Spigen Korea*

*Co., Ltd. v. Ultraproof, Inc.*, 955 F.3d 1379, 1383 (Fed. Cir. 2020); *Weber-Stephen Prods. LLC v. Sears Holding Corp.*, No. 13 C 01686, 2015 WL 9304343, at *16 (N.D. Ill. Dec. 22, 2015) ("A patent shall be presumed valid. And to overcome the presumption of validity, the party asserting invalidity must show it by clear and convincing evidence") (internal citation omitted).

## 2. The Infringing Product Infringes the D'573 Patent.

A defendant infringes a design patent by "appl[ying] the patented design, or any colorable imitation thereof, to any article of manufacture for the purpose of sale, or [by] sell[ing] or expos[ing] for sale any article of manufacture to which such design or colorable imitation has been applied." 35 U.S.C. § 289. The test for design patent infringement is the ordinary observer test. *See Columbia Sportswear North America, Inc. v. Seirus Innovative Accessories, Inc.*, 80 F.4th 1363, 1369 (Fed. Cir. 2023). An accused product infringes "if, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other." *Id.* (internal citation omitted).

Further, "the patented design is viewed in its entirety, as it is claimed" and "the ultimate question requires determining whether 'the effect of the whole design is substantially the same.'" *L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1125 (Fed. Cir. 1993) (quoting *Gorham v. White*, 81 U.S. 511, 530 (1871)). "[M]inor differences between the patented design and the accused article's design cannot, and shall not, prevent a finding of infringement." *Payless Shoesource, Inc. v. Reebok Intern. Ltd.*, 998 F.2d 985, 991 (Fed. Cir. 1993). Additionally, "[i]f the accused design has copied a particular feature of the claimed design that departs conspicuously from the prior art, the accused design is naturally more likely to be regarded as deceptively similar to the claimed design, and thus infringing." *Columbia Sportswear North America, Inc.*, 80 F.4th at 1369.

Here, the Infringing Product has the same overall design as the claims of the D'573 Patent and are therefore substantially similar, as seen below. *See also* Haddad Decl., at ¶ 82.



An ordinary observer would recognize that the Infringing Product has the same overall shape and structure of the D'573 Patent. "Minor differences" are not enough to support a finding of non-infringement. *See Payless Shoesource, Inc.*, 998 F.2d at 991 (finding that the only difference between the patented design and accused product was the "heel pieces" which were minor and did not support a non-infringement finding); *see also Jun Lu v. Device X*, Case No. 23-cv-4282, Dkt. No. 27, at 9-11 (N.D. Ill. September 14, 2023) (granting a preliminary injunction for design patent infringement because the minor differences between the patent and accused product "do not sufficiently diminish the overall similarity"). Furthermore, as seen by the endless varieties of other potential designs available, including some that Counterclaim Defendant Midwest Plaintiff itself cited in its Complaint, Dkt. No. 37-7; Dkt. No. 1, ¶¶ 52-72,  the overall design of the D'573 Patent "departs conspicuously from the prior art." *See Columbia Sportswear North America, Inc.*, 80 F.4th at 1369. Below are examples of art that all look different than the D'573 Patent, yet Counterclaim Defendant Midwest chose to copy the design embodied by the D'573 Patent instead of these other options, even though Midwest knew about some of these alternatives, going so far as to cite several in its Complaint. Likewise, Wisemen and World had knowledge of the various vape design options, and still chose to sell a product substantially similar to the D'573 Patent.



Dkt. No. 37-7;



Dkt. No. 1, ¶¶ 52-72. The ordinary observer would recognize the D'573 Patent as a unique vape design and therefore would view the Infringing Product, overall, as having substantially the same design.

### D. BREEZE SMOKE WILL SUFFER IRREPARABLE INJURY IF AN INJUNCTION IS NOT ISSUED.

The Lanham Act entitles Breeze Smoke to a rebuttable presumption of irreparable harm upon finding a likelihood of success on the merits. 15 U.S.C. § 1116(a); *see also Kellytoy Worldwide, Inc. v. Ty, Inc.*, 2020 WL 5026255, at \*10 (N.D. Ill. Aug. 25, 2020) ("The Seventh Circuit has applied a presumption of irreparable harm in trade dress suits."). Further, irreparable harm in trademark cases can arise from the plaintiff's inability to control the nature and quality of the defendant's goods. *Id.* In patent cases "[e]vidence of consumer confusion, harm to reputation, and loss of goodwill pre-dating the patent is, at the very least, circumstantial evidence demonstrating the possibility of identical harms once the patent issues." *Tinnus Enterprises, LLC*,

846 F.3d at 1207.

As discussed above, Breeze Smoke is unable to confirm that the Infringing Products undergo the quality control measures that Breeze Smoke's products do. Haddad Decl., ¶¶ 67-69. Without this control, Breeze Smoke cannot protect its reputation as a provider of high quality and safe products. *See id.* Accordingly, Breeze Smoke is likely to suffer irreparable harm in the form of harm to its reputation and goodwill, necessitating a preliminary injunction. *See id.*, ¶¶ 68-75; *see also Reebok Intern. Ltd. v. J. Baker, Inc.,* 32 F.3d 1552, 1558 (Fed. Cir. 1994) ("Harm to reputation resulting from confusion between an inferior accused product and a patentee's superior product is a type of harm that is often not fully compensable by money because the damages caused are speculative and difficult to measure").

Additionally, the sale of the Infringing Product is damaging Breeze Smoke's goodwill and is harming its reputation. At least one Counterclaim Defendant, Midwest, is actively emphasizing the similarities between the Infringing Products to Breeze Smoke's products in an effort to sell the Infringing Products to Breeze Smoke customers. *See* Haddad Decl., ¶¶ 62-65, Ex. I-K; *see also Purdue Pharma L.P. v. Boehringer Ingelheim GMBH*, 237 F.3d 1359, 1368 (Fed. Cir. 2001) (finding "loss of market position" to be an irreparable harm). Midwest states "North is similar" to the BREEZE PRO to customers in an attempt to divert sales away from Breeze Smoke. Haddad Decl., ¶ 64, Ex. K. Further, Midwest's website redirected customers searching for "Breeze" to the landing page for the Infringing Products. *Id.* at ¶ 63, Ex. J. Even Midwest's wholesalers misrepresent that the Infringing Products are from the same source as BREEZE PRO, by falsely telling customers that the Infringing Products are the "new breeze." *See id.*, ¶ 62, Ex I. Finally, Midwest boasts that it "switched . . . 80% of our Breeze customers to North." *Id.* ¶ 64, Ex. K.. This has caused consumers to associate the Infringing Product with BREEZE. *See id.*, ¶ 64, Dkt. Nos. 37-9, 37-10.

There is also evidence that customers think the Infringing Products are Breeze Smoke products. *Id*. Breeze Smoke customers ask, "we were informed that the new North Bar is made by you? Is this the new Breeze unit?" and "Do y'all [sic] make the North 5,000 disposables? They seem to have the same flavors and packaging." *Id*. Breeze Smoke' retailers even ask if the Infringing Products are "the new breeze" and if "north disposable [is] made by the same factory who's making breeze?" *Id.* Overall, Counter Defendant's trade dress and patent infringement are causing and will continue to cause irreparable harm to Breeze Smoke.

### E.  THE BALANCE OF HARMS FAVORS AN INJUNCTION.

The balance of harms also favors an injunction. *See Kellytoy Worldwide, Inc.*, 2020 WL 5026255, at \*10  ("In balancing the harms, the court weighs the irreparable harm that the moving party would endure without the protection of the preliminary injunction against any irreparable harm the nonmoving party would suffer if the court were to grant the requested relief.")  Here, Counterclaim Defendants sell other products besides the Infringing Products. By immediately ceasing marketing and sales of the Infringing Products, Counterclaim Defendants will not be prevented from continuing non-infringing aspects of their business.  On the other hand, without an injunction, Breeze Smoke will suffer a loss of its consumer goodwill that will be nearly impossible to recover and that courts in this District frequently recognize as irreparable harm. *See id.* This factor favors Breeze Smoke.

### F.  THE PUBLIC INTEREST FAVORS AN INJUNCTION.

Finally, an injunction best serves the public interest by protecting a trademark holder's interest in its mark and by preventing consumer confusion. *See id.* at \*11. Likewise, "the public interest favors the enforcement of [Patentee's] patent rights here." *Celsis In Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 922, 931 (Fed. Cir. 2012); *see also Sanofi-Synthelabo v. Apotex, Inc.*,

20

470 F.3d 1368, 1383 (Fed. Cir. 2006) ("We have long acknowledged the importance of the patent system in encouraging innovation").

Protecting Breeze Smoke and the public from confusion over the source of electronic cigarettes serves the public interest. *See id.* at \*11 ("The public interest is served in granting injunctions against likely infringers because enforcement of the trademark laws prevents consumer confusion."). Customer confusion is particularly critical here, where customers have come to expect safety and quality from the BREEZE Smoke Goods and Services, and Breeze Smoke cannot vouch that the Infringing Products follow the same rigorous quality standards. Haddad Decl., ¶ 67-69. Unlike Breeze Smoke, which has invested millions in safety and compliance efforts, Midwest has made ***no effort whatsoever*** to comply with FDA regulations, putting the public at risk. *Id.*, ¶ 69. Likewise, an injunction serves the public interest by encouraging innovation through participation in the patent system. Thus, an injunction should immediately be issued to ensure the public's trust in the vaping products they purchase.

### G. BREEZE SMOKE SHOULD NOT BE REQUIRED TO POST A BOND.

"Under appropriate circumstances bond may be excused." *Wayne Chemical, Inc. v. Columbus Agency Service Corp.*, 567 F.2d 692, 701 (7th Cir. 1977); *Anderson v. Larry*, Case No. 21-cv-944, 2021 WL 4745390, at \*16 (N.D. Ill. Oct. 12, 2021) (same); *see also Scherr v. Volpe*, 466 F.2d 1027, 1035 (7th Cir. 1972). One such circumstance is when there is "no danger that the opposing party will incur any damages from the injunction." *Anderson,* 2021 WL 4745390, at \*16 (quoting *Habitat Education Center v. United States Forest Service*, 607 F.3d 453, 458 (7th Cir. 2010)). Additionally, where there is a "strong likelihood of success on the merits . . . the district court did not abuse its discretion in failing to require the plaintiffs to post a security." *Scherr*, 466 F.2d at 1035.

Here, a preliminary injunction would inflict little to no damage on the Counterclaim

Defendants. They sell other products besides the Infringing Products which would mitigate or eliminate any potential loss of sales they may suffer from not selling the Infringing Products. Further, if an injunction here is in error – it is not – then the Counterclaim Defendants could restart selling the Infringing Products, and reclaim that revenue. But most importantly, because Breeze Smoke has shown a strong likelihood of success on the merits, it is proper to not require a bond here. *Foster v. Kusper*, 587 F.Supp. 1191, 1194 (N.D. Ill. 1984) (not requiring a bond where there is a "substantial likelihood of success on the merits").

## IV.  **<u>CONCLUSION</u>**

For all the reasons stated, Breeze Smoke requests that the Court grant its motion and enter an order enjoining Counterclaim Defendants Midwest, Wisemen, and World from selling the Infringing Products.

Dated**:** December 21, 2023

Respectfully submitted,

By: /s/ *Mary A. Hyde*

William B. Berndt (Attorney No. 6269408)
Mary A. Hyde (Attorney No. 6322004)
Vikram A. Mathrani (Attorney No. 6318690)
Jenna E. Saunders (Attorney No. 6340287)
David J. Roulo (Attorney No. 6342637)
HONIGMAN LLP
155 N. Wacker Drive
Suite 3100
Chicago, IL 60606-1734
Telephone:  312-701-9300
wberndt@honigman.com
mhyde@honigman.com
vmathrani@honigman.com
jsaunders@honigman.com
droulo@honigman.com

Jeffrey K. Lamb (Attorney No. 6289998)
HONIGMAN LLP
2290 First National Building
660 Woodward Avenue

Detroit, MI 48226-3506
Telephone:  313-465-7000
[jlamb@honigman.com](mailto:jlamb@honigman.com)

## CERTIFICATE OF SERVICE

I certify that on December 21, 2023 a copy of the foregoing was electronically filed with the Clerk of Court using the ECF system which will send notification to all counsel of record. Further, a copy of the foregoing and all documents in support thereof was or shall be served upon the Plaintiff.


*/s/ Mary A. Hyde*

*One of the Attorneys for Breeze Smoke LLC*