**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

MIDWEST GOODS INC., DBA MIDWEST
DISTRIBUTION ILLINOIS,

        Plaintiff,

    vs.

BREEZE SMOKE, LLC,

        Defendant.

---

Breeze Smoke LLC,

        Counter-Claimant,

    vs.

Midwest Goods Inc., dba Midwest Distribution
Illinois, Wisemen Wholesale, Inc., Speed
Wholesale, Inc., World Wholesale, Inc., Light
View LLC,

        Counterclaim Defendants.

CASE NO. 1:23-CV-05406

HONORABLE THOMAS M. DURKIN

JURY TRIAL DEMANDED

## <u>MEMORANDUM IN SUPPORT OF BREEZE SMOKE'S RESPONSE TO MIDWEST'S MOTION TO DISMISS</u>

# TABLE OF CONTENTS

I.  INTRODUCTION ...................................................................................................1

II.  STATEMENT OF FACTS .....................................................................................2

    A.  BREEZE SMOKE'S TRADE DRESS .........................................................2

    B.  THE PROMOTION AND CONSUMER RECOGNITION OF BREEZE SMOKE'S TRADE DRESS ...........................................................4

    C.  BREEZE SMOKE'S DESIGN PATENT.......................................................4

    D.  SELLERS' INTENTIONAL INFRINGING CONDUCT..............................4

III.  ARGUMENT..........................................................................................................5

    A.  LEGAL STANDARD....................................................................................5

    B.  BREEZE SMOKE HAS PLED ITS TRADE DRESS CLAIMS ...................6

        1.  Breeze Smoke Sufficiently Pled The Elements And Description Of Its Trade Dresses.........................................................7

        2.  The Breeze Smoke Trade Dress is Not Functional............................8

        3.  The Breeze Smoke Trade Dress Is Distinctive. .................................9

        4.  There is a Likelihood of Confusion Between the Breeze Smoke Trade Dress and the Infringing Products. ..............................11

    C.  BREEZE SMOKE HAS PLED ITS PATENT CLAIMS.............................13

        1.  The D'573 Patent is presumed valid.................................................13

        2.  The Infringing Product Infringes the D'573 Patent. .........................14

    D.  BREEZE SMOKE HAS PLED ITS STATE LAW CLAIMS.......................15

IV.  CONCLUSION.....................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arlington Specialties, Inc. v. Urban Aid, Inc.*,
847 F.3d 415 (7th Cir. 2017) ..................................................................................8

*AutoZone, Inc. v. Strick*,
543 F.3d 923 (7th Cir. 2008) ............................................................................12, 13

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)...........................................................................................5, 6

*Bodum USA, Inc. v. A Top New Casting Inc.*,
927 F.3d 486 (7th Cir. 2019) ..................................................................................7

*CAE, Inc. v. Clean Air Engineering, Inc.*,
267 F.3d 660 (7th Cir. 2001) ..........................................................................11, 12, 13

*Chattanoga Mfg. v. Nike, Inc.*,
140 F.Supp.2d 917 (N.D. Ill. 2001) .........................................................................9

*Clamp Mfg. Co. v. Enco Mfg. Co.*
(C.D. Cal. 1987), aff'd, 870 F.2d 512 (9th Cir. 1989) ...............................................8

*Columbia Sportswear North America, Inc. v. Seirus Innovative Accessories, Inc.*,
80 F.4th 1363 (Fed. Cir. 2023) ...............................................................................14

*Computer Care v. Service Sys. Enterprises, Inc.*,
982 F.2d 1063 (7th Cir. 1992) .........................................................................9, 10, 13

*David White Instruments, LLC v. TLZ, Inc.*,
No. 02 C 7156, 2003 WL 21148224 (N.D. Ill. May 16, 2003) ................................6

*Digital Control, Inc. v. Charles Mach. Works*,
437 F.3d 1309 (Fed. Cir. 2006)...............................................................................14

*Dynamic Fluid Control (PTY) Ltd. v. Int'l Valve Mfg., LLC*,
790 F.Supp.2d 732 (N.D. Ill. 2011) .........................................................................7

*Firestone Fin. Corp. v. Meyer*,
796 F.3d 822 (7th Cir. 2015) ..................................................................................6

*G.G. v. Salesforce.com, Inc.*,
76 F.4th 544 (7th Cir. 2023) ..................................................................................6

*Independent Trust Corp. v. Stewart Information Serv. Corp.*,
  665 F.3d 930 (7th Cir. 2012) ..............................................................................................6, 11

*Logan Graphic Prods., Inc. v. Textus USA, Inc.*,
  Case No. 02-c-1823, 2003 WL 21011746 (N.D. Ill. May 5, 2003) ...........................................8

*Logan Graphics Prods., Inc. v. Textus USA, Inc*,
  No. 02-c-1823, 2002 WL 31870549 (N.D. Ill. Dec. 23, 2002)..................................................11

*Mackie v. Awtry*
  Case No. 14-cv-09206, 2016 WL 5391182 (N.D. Ill. Sept. 27, 2016) ......................................9

*Mighty Deer Lick, Inc. v. Morton Salt, Inc.*,
  Case No. 17-cv-05875, 2020 WL 635904 (N.D. Ill. Feb. 11, 2020) .........................................8

*MJ & Partners Restaurant Ltd. Partnership v. Zadikoff*,
  10 F. Supp. 2d 922 (N.D. Ill. 1998) ........................................................................................15

*In re Morton-Norwich Products, Inc.*,
  671 F.2d 1332 (C.C.P.A. 1982) .................................................................................................9

*Parker v. Kimberly-Clark Corp.*,
  Case No. 11-c-5658, 2012 WL 74855 (N.D. Ill. Jan. 10, 2012)..............................................15

*Payless Shoesource, Inc. v. Reebok Intern. Ltd.*,
  998 F.2d 985 (Fed. Cir. 1993)..................................................................................................14

*Plum Markets LLC v. Compass Grp. USA, Inc.*,
  Case No. 20-c-6759, 2021 WL 323791 .....................................................................................7

*Reger Dev., LLC v. Nat'l City Bank*,
  592 F.3d 759 (7th Cir. 2010) .....................................................................................................6

*Republic Tech. (NA), LLC v. Nur Trading, Inc.*
  Case No. 20-c-461, 2021 WL 1293832 (N.D. Ill. April 7, 2021).........................................6, 11

*Scandia Down Corp. v. Euroquilt, Inc.*,
  772 F.2d 1423 (7th Cir. 1985) .................................................................................................11

*Sorensen v. WD-40 Co.*,
  792 F.3d 712 (7th Cir. 2015) ...................................................................................................11

*Specht v. Google Inc.*,
  758 F.Supp.2d 570 (N.D. Ill. 2010) .........................................................................................11

*Specialized Seating, Inc. v. Greenwich Indus., LP*,
  616 F.3d 722 (7th Cir. 2010) .....................................................................................................8

*Spigen Korea Co., Ltd. v. Ultraproof, Inc.*,
955 F.3d 1379 (Fed. Cir. 2020)......................................................................................13

*Tamayo v. Blagojevich*,
526 F.3d 1074 (7th Cir. 2008) ..........................................................................................6

*Think Green Ltd. v. Medela AG*,
Case No. 21-c-5445, 2022 WL 6123348 (N.D. Ill. Oct. 7, 2022) ............................................8

*Thomas & Betts Corp. v. Panduit Corp.*,
138 F.3d 277 (7th Cir. 1998) ..........................................................................................10

*Topps Co. Inc. v. Gerrit J. Verburg Co.*,
1996 WL 719381 (S.D.N.Y. 1996)......................................................................................9

*Two Pesos, Inc. v. Taco Cabana, Inc.*,
505 U.S. 763 (1992)......................................................................................................10

*Wal-Mart Stores, Inc. v. Samara Bros., Inc.*,
529 U.S. 205 (2000).......................................................................................................7

*Weber-Stephen Prod. LLC v. Sears Holding Corp.*,
No. 13-CV-01686, 2013 WL 5782433 (N.D. Ill. Oct. 25, 2013) ..........................................6, 7

*Weber-Stephen Prods. LLC v. Sears Holding Corp.*,
No. 13 C 01686, 2015 WL 9304343 (N.D. Ill. Dec. 22, 2015) .............................................13

**Statutes**

35 U.S.C. §§ 102, 103........................................................................................................14

Lanham Act § 43...............................................................................................................10

**Other Authorities**

1 McCarthy on Trademarks and Unfair Competition § 8:16 (5th ed.) .........................................11

Rule 12(b)(6)...................................................................................................................14

## I. **INTRODUCTION**

Midwest Goods Inc.'s ("Midwest"), Wisemen Wholesale, Inc.'s ("Wisemen"), and World Wholesale, Inc.'s ("World") (collectively "Counterclaim Defendants" or "Sellers") Motion to Dismiss Breeze Smoke's First Amended Counterclaim ("FAC") is plainly an improper attempt to secure summary judgment by arguing numerous facts, all of which are in dispute. Regardless, Breeze Smoke plausibly pled its Counterclaims, and Sellers' Motion should be denied.

*First*, Breeze Smoke's Counterclaim put Sellers on notice of its rights by including detailed descriptions of Breeze Smoke's trade dresses, including written descriptions and several images. This is enough to plausibly plead existence of Breeze Smoke's trade dresses.

*Second*, Breeze Smoke plausibly pleads non-functionality by including examples of endless varieties of vape packages and devices, demonstrating that there is not a competitive necessity for the Sellers to use Breeze Smoke's trade dresses.

*Third*, Breeze Smoke specifically pled that its trade dresses have inherent and acquired distinctiveness, Breeze Smoke attached to its FAC examples of copycat products and third party advertisements that praise its trade dress, thereby more than plausibly pleading the distinctiveness of its trade dress. Breeze Smoke also alleged numerous facts demonstrating that Sellers intentionally copied Breeze Smoke's trade dress, further establishing secondary meaning.

*Fourth*, Breeze Smoke comprehensively pled likelihood of confusion by including factual allegations of the likelihood of confusion factors, including side-by-side images of its trade dress and Sellers' infringing products to show similarity. Breeze Smoke also included evidence of actual confusion in its FAC, like these customer quotes:

> [W]e were informed that the new North Bar is made by you? Is this the new Breeze unit?

> Do y'all [sic] make the North 5,000 disposables? They seem to have the same flavors and packaging.

1

*Fifth*, the U.S. Patent Office issued Breeze Smoke's design patent, and it is presumed valid. Breeze Smoke thus plausibly alleged a valid patent, and Sellers present no counter-argument.

*Sixth*, Breeze Smoke's FAC details side-by-side images of its patent and Sellers' product. The similarities are clear and Breeze Smoke has plausibly alleged patent infringement.

For these reasons and others stated below, this Court should deny Sellers' Motion.

## II.  STATEMENT OF FACTS

### A.  BREEZE SMOKE'S TRADE DRESS

Breeze Smoke manufactures and sells a variety of vaping products including its popular BREEZE PRO vape pens, throughout the United States ("BREEZE Goods and Services"). Doc. 37, PageID.1261, ¶18.

Since at least August 18, 2021, Breeze Smoke has used a highly distinctive product packaging trade dress and product design trade dress for its BREEZE PRO products. *Id.*, PageID.1272, ¶40. The BREEZE PRO product packaging trade dress consists of the overall look and feel of the packaging, including the following distinctive, non-functional elements:

a.  A rectangular clear plastic outer box ("rectangular box");

b.  A large, cardboard label that wraps around the rectangular box ("wraparound label"), wherein the back of the wraparound label extends the full length of the rectangular box and the front of the wraparound label extends only part of the length of the rectangular box, such that the top portion of the vaping device and the vertically aligned product branding is visible from the front and sides of the rectangular box;

c.  On the front side of the cardboard label:

    i.  The wording "BREEZE," a word mark identifying the product, appears at the top in large white all capital letters;

    ii.  A second line of text appears underneath the wording "BREEZE" in a smaller, less emphasized font;

    iii.  The flavor of the vape is printed underneath the word mark and second line of text; and

2

d.     The nicotine warning is at the bottom of the front side of the cardboard label in a white box; and

e.     The flavor of the product and the number of puffs are displayed on both sides of the wraparound label.

(hereinafter, the "BREEZE PRO Packaging Trade Dress"). *Id.*, PageID.1272, ¶41. Breeze Smoke's

BREEZE PRO product design trade dress features the following distinctive, non-functional

elements:

a.     a black body that resembles a rectangular cylinder having rounded corners, a flattened front and back sides, and a flat bottom

b.     the top end of the body comprises the mouthpiece that is curved, has an opening for inhalation, narrows toward the opening, and has a concave region on the front side;

c.     the front and back of the device exhibit a rounded rectangular silhouette;

d.     the bottom end of the body has a flat rectangular shaped surface having rounded corners;

e.     a rectangular label featuring a wavy design colored to match the flavor of the vape device;

f.     the wording "BREEZE," a word mark identifying the product, printed in bold, white, all-capital typeface is vertically aligned on the label nearer to the mouthpiece than the bottom

g.     an additional smaller white print element appears immediately above the word mark; and

h.     the vaping device flavor appears on the label near the bottom end of the vape device in a smaller, white, all-capital typeface vertically aligned on the label.

(hereinafter, the "BREEZE PRO Product Design Trade Dress"). *Id.*, PageID.1274-75, ¶51.

Examples showing Breeze Smoke's use of its highly distinctive BREEZE PRO Packaging Trade

Dress and BREEZE PRO Product Design Trade Dress (referred to collectively as the "Breeze

Smoke Trade Dress") are shown in the FAC. Doc. 37, ¶¶42, 52, 75.

3

**B. THE PROMOTION AND CONSUMER RECOGNITION OF BREEZE SMOKE'S TRADE DRESS**

Breeze Smoke has devoted significant resources to establishing the Breeze Smoke Trade Dress in the minds of its customers and the public via advertisements and promotions. *Id.*, PageID.1276-77, ¶63. Breeze Smoke has earned substantial revenue though sales of products bearing the Breeze Smoke Trade Dress. *Id.*, PageID.1277, ¶64. Breeze Smoke amassed significant goodwill in the Breeze Smoke Trade Dress through its continuous use, extensive sales, and advertising of its trade dresses. *Id.*, PageID.1277, ¶65-66. As a result of these efforts the public recognizes the Breeze Smoke Trade Dress as emanating exclusively from Breeze Smoke and emblematic of its high quality products and services. *See id.*, PageID.1273-75, ¶¶45, 50, 54. For example, third party retailers tout "the Breeze Pro's new elegant design" as a selling point. *Id.*, PageID.1275, ¶55. Breeze Smoke pled all these facts in detail in its FAC.

**C. BREEZE SMOKE'S DESIGN PATENT**

On November 21, 2023, the U.S. Patent and Trademark Office duly issued Breeze Smoke's U.S. Design Pat. No. D1,005,573 (the D'573 Patent) for an ornamental design for a disposable e-cigarette. *Id.*, PageID.1277, ¶68; Doc. 37-8. Breeze Smoke's BREEZE PRO product is the commercial embodiment of the D'573 Patent. *Id.*, PageID.1278, ¶72.

**D. SELLERS' INTENTIONAL INFRINGING CONDUCT**

In late 2023 Breeze Smoke learned that Sellers were selling vaping products under the name "NORTH" using a product packaging and design highly similar to the Breeze Smoke Trade Dress (the "Infringing Products"). *Id.*, PageID.1278, ¶¶73-74. Sellers distributed Breeze Smoke products in the past, including the BREEZE PRO. *Id.*, PageID.1291, ¶83. Breeze Smoke sent cease and desist letters to Sellers demanding that they immediately stop promoting and selling the Infringing Products. *Id.*, PageID.1293, ¶¶ 92-95. Sellers ignored the letters. *Id.*, PageID.1294, ¶96.

Due to the near identity between the appearances of the respective products, customers associate the Infringing Products with Breeze Smoke, stating in comments on social media that the Infringing Products are "just like Breeze Pro" and "[l]iterally just a breeze pro but different name." Doc. 37-9. The FAC shows side-by-side comparisons of the BREEZE Goods and Services, the D'573 Patent, and the Infringing Products, like the examples below.

| **BREEZE PRO** | **Infringing Product** | **BREEZE PRO** | **Infringing Product** |



Doc. 37 PageID.1279-89, ¶¶ 75-76; PageID.1294-1300, ¶99; Doc. 37-11.

Additionally, Breeze Smoke has evidence that at least Midwest intentionally copied the Breeze Smoke Trade Dress. *See* Doc. 54-9 (Midwest referring to the Infringing Products as the "new breeze"); Doc 55 (Midwest's webpage redirecting customers to the Infringing Products upon searching "Breeze"); Doc 54-10 (Midwest saying "North is similar" to Breeze Smoke). [1]

## III. ARGUMENT

### A. LEGAL STANDARD

To survive a motion to dismiss, Breeze Smoke must plead factual allegations sufficient "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007). This low bar requires Breeze Smoke to plead facts in "enough detail to give [counterclaim

---

[1] This evidence was filed as exhibits to Steven Haddad's Declaration in Support of Breeze Smoke's Renewed Motion for a Preliminary Injunction.

defendants] fair notice of what the claim is and the grounds upon which it rests, and, through his allegations, show that it is plausible, rather than merely speculative, that he is entitled to relief." *Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 764 (7th Cir. 2010) (quoting *Tamayo v. Blagojevich*, 526 F.3d 1074 (7th Cir. 2008)). "This pleading standard is not demanding, asking that plaintiffs allege 'only enough facts' to 'nudge[] their claims across the line from conceivable to plausible.'" *G.G. v. Salesforce.com, Inc.*, 76 F.4th 544, 551 (7th Cir. 2023) (quoting *Twombly*, 550 U.S. at 570); *see also Independent Trust Corp. v. Stewart Information Serv. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012) ("a plaintiff's claim need not be probable, only plausible"); *Republic Tech. (NA), LLC v. Nur Trading, Inc.* Case No. 20-c-461, 2021 WL 1293832, at *2 (N.D. Ill. April 7, 2021) ("the Court's role at this stage is simply to assess whether Plaintiffs have plead facts that plausibly could result in a successful outcome").

The court accepts as true all well-pleaded factual allegations and views them in the light most favorable to the counter-claimant. *Weber-Stephen Prod. LLC v. Sears Holding Corp.*, No. 13-CV-01686, 2013 WL 5782433, at *1 (N.D. Ill. Oct. 25, 2013). The court should not consider questions of fact on a motion to dismiss. *David White Instruments, LLC v. TLZ, Inc.*, No. 02 C 7156, 2003 WL 21148224, at *8 (N.D. Ill. May 16, 2003). The moving party bears the burden of establishing the insufficiency of the allegations in the counterclaim. *Firestone Fin. Corp. v. Meyer*, 796 F.3d 822, 827 (7th Cir. 2015). "[A] complaint should survive a motion to dismiss even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Salesforce.com, Inc.*, 76 F.4th at 551.

### B. BREEZE SMOKE HAS PLED ITS TRADE DRESS CLAIMS

Sellers incorrectly attempt to require Breeze Smoke to prove its case at the pleadings stage. All Breeze Smoke needs to do is plausibly allege that (1) it owns a valid trade dress, (2) its trade dress is not functional, and (3) consumers are likely to confuse the Infringing Products with the

BREEZE Goods and Services. *See Bodum USA, Inc. v. A Top New Casting Inc.*, 927 F.3d 486, 491 (7th Cir. 2019). Breeze Smoke has more than plausibly alleged each element.

**1. Breeze Smoke Sufficiently Pled The Elements And Description Of Its Trade Dresses.**

Sellers contend that Breeze Smoke only has one trade dress, but that is contrary to law and fact. *See Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 215 (2000) (distinguishing between product packaging trade dress and product design trade dress). Additionally Sellers state that "it cannot identify, nor can it defend against" Breeze Smoke's trade dress claim, despite Breeze Smoke clearly identifying its trade dresses. *See* Doc. No. 58, PageID.2227.

Sellers are wrong on both counts, as Breeze Smoke details its two trade dresses. Breeze Smoke lists each element of its product packaging trade dress and product design trade dress and shows images. Doc 37, PageID.1272-75. Describing the trade dress and providing photographs is enough to plausibly plead a valid and protectable BREEZE PRO product packaging trade dress and BREEZE PRO product design trade dress. *See Dynamic Fluid Control (PTY) Ltd. v. Int'l Valve Mfg., LLC*, 790 F.Supp.2d 732, 737 (N.D. Ill. 2011) (finding elements of the trade dress with photographs "is sufficient to put Defendants on notice as to what [Plaintiff] believes is protected"); *Weber-Stephen*, 2013 WL 5782433, at *4 (pleading "two factual allegations" of the elements of a trade dress gave "the Court a sufficient basis to determine whether [plaintiff] plausibly pled" a trade dress). Furthermore, by pleading the elements ***and*** including images, Breeze Smoke makes clear that it is seeking to enforce its ***trade dress*** rights, not its trademark rights. Sellers' assertion to the contrary is without merit when viewed in conjunction with the FAC. *See* Doc. 37, PageID.1301-02.

Additionally Sellers' alleged authority is distinguishable. *See id*. In *Plum Market*, the plaintiff merely gave generic descriptions of restaurant space, which was insufficient. *Plum*

*Markets LLC v. Compass Grp. USA, Inc.*, Case No. 20-c-6759, 2021 WL 323791, at *2. Likewise, in *Mighty Deer Lick, Inc.*, the plaintiff merely stated that it "created a uniquely designed product" and nothing more. *Mighty Deer Lick, Inc. v. Morton Salt, Inc.*, Case No. 17-cv-05875, 2020 WL 635904, at *8 (N.D. Ill. Feb. 11, 2020). Therefore Breeze Smoke plausibly pled the elements of its trade dresses with sufficient detail to put Sellers on notice.

### 2. The Breeze Smoke Trade Dress is Not Functional.

Breeze Smoke adequately pleads in its FAC that the Breeze Smoke Trade Dress is not functional. Trade dress is functional if "it is essential to the use or purpose of the article or if it affects the cost or quality of the article, that is, if exclusive use of the feature would put competitors at a significant non-reputation-related disadvantage." Midwest's own Complaint establishes that there are ***endless*** varieties of vape packaging and vape designs on the market, demonstrating that competitors do not need to use the Breeze Smoke Trade Dress to compete effectively. *See* Doc. 1, ¶¶68-75. Furthermore, Breeze Smoke pleads that there are "endless varieties" of vape packages and designs. Doc. 37, PageID.1274, 1276, ¶¶49, 59; Doc 37-7 (providing examples of other product designs); Doc. 37-5 (providing examples of other packaging designs). Availability of alternative designs means competitors have no disadvantage. *Logan Graphic Prods., Inc. v. Textus USA, Inc.*, Case No. 02-c-1823, 2003 WL 21011746, at *4 (N.D. Ill. May 5, 2003).

Furthermore, "[f]unctionality certainly isn't an issue of law; it represents a fact-specific conclusion" *Specialized Seating, Inc. v. Greenwich Indus., LP*, 616 F.3d 722, 726 (7th Cir. 2010). Even Sellers' own authority considers functionality ***at the summary judgment stage***, not on a motion to dismiss. *See Think Green Ltd. v. Medela AG*, Case No. 21-c-5445, 2022 WL 6123348, at *7 (N.D. Ill. Oct. 7, 2022); *Arlington Specialties, Inc. v. Urban Aid, Inc.*, 847 F.3d 415, 417 (7th Cir. 2017). Additionally, other courts have given trade dress protection to designs that seem arguably functional. *See, e.g.*, *Clamp Mfg. Co. v. Enco Mfg. Co.*, (C.D. Cal. 1987), aff'd, 870 F.2d

512 (9th Cir. 1989) (the shape of a C-clamp tool was nonfunctional, distinctive and infringed));
*see also Computer Care v. Service Sys. Enterprises, Inc.*, 982 F.2d 1063, 1071 (7th Cir. 1992).

Finally, courts hold that a design patent creates a presumption of non-functionality. *See e.g.*, *Topps Co. Inc. v. Gerrit J. Verburg Co.*, 1996 WL 719381, *9 (S.D.N.Y. 1996) ("[A] design patent . . . 'presumptively[] indicates that the design at issue is not *de jure* functional'") (quoting *In re Morton-Norwich Products, Inc.*, 671 F.2d 1332, 1342 n.3 (C.C.P.A. 1982) (same).

### 3. The Breeze Smoke Trade Dress Is Distinctive.

Sellers argue that the Breeze Smoke Trade Dress is not distinctive and attempt to require Breeze Smoke to ***prove*** its distinctiveness rather than just plausibly allege it. Sellers' gambit is improper. The distinctiveness of trade dress is a question of fact. *Mackie v. Awtry* Case No. 14-cv-09206, 2016 WL 5391182, at *3 (N.D. Ill. Sept. 27, 2016) (citing *Chattanoga Mfg. v. Nike, Inc.*, 140 F.Supp.2d 917, 923-24 (N.D. Ill. 2001)). When a pleading "explicitly alleges that a [trade dress] is distinctive, that customers identify it with Plaintiffs, and that they can identify it with [the product]," then the claim "***cannot be dismissed at the pleadings stage***." *Id* (emphasis added).

Here Breeze Smoke alleged that the BREEZE PRO product packaging trade dress and BREEZE PRO product design trade dress are "highly distinctive," "inherently distinctive," "arbitrary," "has acquired secondary meaning" and "[are] recognized by the public as emanating exclusively from Breeze Smoke." *See* Doc. 37, PageID.1272-76; *see also Computer Care*, 982 F.2d at 1069. These allegations plausibly plead distinctiveness.

Additionally, Breeze Smoke alleged specific facts to support its claims of distinctiveness, including secondary meaning. Secondary meaning can be established through proof of intentional copying, consumer testimony, consumer surveys, length and manner of use,[2] amount and manner

---

[2] In a footnote, Sellers claim that because Breeze Smoke has not used the Breeze Smoke Trade

of advertising, volume of sales, and place in the market. *Thomas & Betts Corp. v. Panduit Corp.*, 138 F.3d 277, 291 (7th Cir. 1998). Breeze Smoke alleged proof of intentional copying of the Breeze Smoke Trade Dress by including an exhibit with examples of the FREEZE BAR, B-FREEZE, and VIP FREEZE products. *See* Doc. 37, PageID.1273, 1276, ¶¶46, 56; Doc. 37-4. Furthermore, in its Preliminary Injunction brief, Breeze Smoke submitted evidence of intentional copying by Midwest. *See* Doc. 54-9 (Midwest referring to NORTH as the "new breeze"); Doc 55 (Midwest's webpage redirecting customers to the NORTH page when they search "Breeze"); Doc 54-10 (Midwest saying "North is similar" to Breeze Smoke). Further, Breeze Smoke provided an exhibit showing that third party retailers advertise the BREEZE Goods and Services, including touting "Breeze Pro's new elegant design." Doc. 37, PageID.1275, ¶55; Doc. 37-6. Breeze Smoke also alleges that it has spent "substantial time, effort, and resources" advertising and promoting the BREEZE Goods and Services and has generated "substantial revenue." Doc. 37, PageID.1276-77, ¶¶63-64.  Breeze Smoke has plausibly alleged secondary meaning.

Sellers allege that the Breeze Smoke Trade Dress is not distinctive because of alleged prior uses by third parties. But this is a highly factual inquiry, improper for a motion to dismiss.  Further, Sellers' proffered third party uses are not persuasive. None of Sellers' alleged prior third party uses contains all the elements of the Breeze Smoke Trade Dress; many are vastly different in shape and style.  It is the total image of a product that matters in trade dress analysis. *Computer Care*, 982 F.2d at 1067. Breeze Smoke's trade dress, **as alleged in its FAC**, consists of much more than the few isolated elements and vague descriptions Sellers point to.  Doc 37, PageID.1272-75. There

---

Dress for five years, it would not be entitled to a presumption of secondary meaning during the registration process.  But that is wrong because (1) the Lanham Act protects unregistered trade dress and (2) Breeze Smoke has plausibly alleged facts to support a finding of secondary meaning. *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 776 (1992) (finding that § 43 of the Lanham Act protects unregistered trade dress).

are also differences between the BREEZE PRO product packaging trade dress and the alleged prior use packaging, including the width of the package, the information contained on the wraparound label and the placement of the wraparound label. *Compare* Doc. 37, PageID.1272-73, *with* Doc. 58, PageID.2238-40. Likewise, there are several differences between the BREEZE PRO produce design trade dress and the alleged prior use examples including width, the shape of the mouthpiece, and the shape of the bottom, to name just a few. *Compare* Doc. 37, PageID.1274-75, *with* Doc. 58, PageID.2238-40. These prior alleged uses are not a basis to dismiss.

### 4. There is a Likelihood of Confusion Between the Breeze Smoke Trade Dress and the Infringing Products.

Sellers incorrectly assert that the NORTH label prevents a likelihood of confusion. "The majority of cases hold that labeling an otherwise infringing look-alike product does not prevent infringement." 1 McCarthy on Trademarks and Unfair Competition § 8:16 (5th ed.); *see also e.g.*, *Logan Graphics Prods., Inc. v. Textus USA, Inc,* No. 02-c-1823, 2002 WL 31870549, at \*7 (N.D. Ill. Dec. 23, 2002) ("different labels is also not enough to prevent confusion").

Also, likelihood of confusion is a highly fact dependent inquiry. *See Specht v. Google Inc.*, 758 F.Supp.2d 570, 584 (N.D. Ill. 2010) ("The Seventh Circuit treats likelihood of confusion as a question of fact") (citing *Scandia Down Corp. v. Euroquilt, Inc.*, 772 F.2d 1423, 1428 (7th Cir. 1985)); *Republic Tech.*, 2021 WL 1293832, at \*2. Sellers' authority says this too. *Sorensen v. WD-40 Co.*, 792 F.3d 712, 726 (7th Cir. 2015) (addressing likelihood of confusion on **summary judgment**). Here, Breeze Smoke must only **plausibly** allege confusion, not show that confusion is probable (though it clearly is). *See* Doc. 58, PageID.2230; *Independent Trust Corp. v. Stewart Information Serv. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012); *CAE, Inc. v. Clean Air Engineering, Inc.*, 267 F.3d 660, 677-78 (7th Cir. 2001) (listing likelihood of confusion factors).

**Similarity of the trade dresses.** Breeze Smoke's FAC included side-by-side images of the

Breeze Smoke Trade Dress with the packaging and design of the Infringing Product, both of which show striking similarities, and listed elements of the Infringing Product's design and packaging. Doc. 37, PageID.1278-89; Doc 37-11; Doc. 37, PageID.1289-90.

**Similarity of the products.** Breeze Smoke alleged that the Infringing Products are the same as Breeze Smoke's products embodying the Breeze Smoke Trade Dress. *See* Doc. 37, PageID.1278, 1291, ¶¶73, 81; *see, e.g.*, *CAE, Inc.*, 267 F.3d at 679-80 (finding this factor favored likely confusion where the products were closely related).

**The area and manner of concurrent use.** Breeze Smoke alleged and showed that Sellers and Breeze Smoke sell vaping products. *See* Doc 37, PageID.1291, ¶83; Doc 37-12, 37-13, 37-14; *see AutoZone, Inc. v. Strick*, 543 F.3d 923, 932 (7th Cir. 2008) (finding support for likelihood of confusion where a "substantial congruence exists between the potential customer base").

**The strength of the Breeze Smoke Trade Dress.** Breeze Smoke pled the strength of the Breeze Smoke Trade Dress with the same allegations that it alleged for secondary meaning. *See* Doc. 37, PageID.1273-77; Doc. 37-4; Doc. 37-6.

**Whether actual confusion exists.** Evidence of actual confusion receives substantial weight. *CAE, Inc.*, 267 F.3d at 685. Breeze Smoke alleges ***numerous*** instances in the FAC. Doc. 37-10. For example, one customer asked Breeze Smoke "we were informed that the new North Bar is made by you? Is this the new Breeze unit?" *Id.* Another customer asked Breeze Smoke, "Do y'all [sic] make the North 5,000 disposables? They seem to have the same flavors and packaging." *Id.* Retailers are also confused. One sent a picture of the Infringing Products and asked "Brother is this the new breeze? Customers are asking." *Id.* Another sent a picture of the Infringing Products and said "You can't tell me that isn't Breeze." *Id.* This evidence, ***included in the FAC***, plausibly alleges actual confusion.

**Sellers' intent in selecting the mark.** *Deliberate copying is "an important factor* bearing on the likelihood of confusion." *Computer Care*, 982 F.2d at 1070 (internal quotations omitted) (emphasis added). Breeze Smoke alleges that "[Sellers] intentionally chose to use and to trade off the goodwill" of the Breeze Smoke Trade Dress. Doc. 37, PageID.1291, ¶84. Intent to confuse can be "reasonably inferred from the similarity of the marks where the senior mark has attained great notoriety" or where the "marketing and business presence of the senior mark is nearly ubiquitous in the geographic area where the junior mark competes." *AutoZone*, 543 F.3d at 934. Breeze Smoke is a leading brand and Sellers have sold millions of dollars of Breeze Smoke products in the past. *See* Doc. 37, PageID.1291, ¶83; Doc 37-12, 37-13, 37-14.The only logical inference from Seller's awareness of Breeze Smoke is that Sellers developed and are selling the Infringing Products—which are almost identical in appearance to Breeze Smoke's BREEZE PRO products–with the express intent to confuse customers as to the source of the Infringing Products. *See AutoZone*, 543 F.3d at 934.

Additionally, Breeze Smoke has evidence of intentional copying by Midwest. *See* Doc. 54-9 (Midwest referring to the Infringing Products as the "new breeze"); Doc 55 (Midwest's webpage redirecting customers to the NORTH page when they search "Breeze"); Doc 54-10 (Midwest saying "North is similar" to Breeze Smoke). Because Breeze Smoke alleged, and included facts, regarding at least six of the seven likelihood of confusion factors, it has plausibly pled likelihood of confusion. *See, e.g.*, *CAE, Inc.*, 267 F.3d at 678.

### C.  BREEZE SMOKE HAS PLED ITS PATENT CLAIMS.

#### 1.  The D'573 Patent is presumed valid.

Breeze Smoke plausibly alleged a valid patent because "[d]esign patents are presumed valid" and any party seeking to challenge its validity carries a heavy burden. *Spigen Korea Co., Ltd. v. Ultraproof, Inc.*, 955 F.3d 1379, 1383 (Fed. Cir. 2020); *Weber-Stephen Prods. LLC v. Sears*

*Holding Corp.*, No. 13 C 01686, 2015 WL 9304343, at \*16 (N.D. Ill. Dec. 22, 2015) ("[T]o overcome the presumption of validity, the party asserting invalidity must show it by clear and convincing evidence") (internal citation omitted).

Sellers offer no theory of patent invalidity; they merely allege some prior art, including art that the patent examiner already considered when deciding to grant the patent. Sellers' invalidity "arguments" should be rejected because they are wholly unclear: it is unknown whether Sellers believe the D'573 Patent is invalid as anticipated or obvious under 35 U.S.C. § 102 (novelty), § 103 (obviousness), or some other theory. Furthermore, Sellers cite no cases dismissing a complaint under Rule 12(b)(6) for patent infringement for invalidity under §§ 102 or 103. As to Sellers' alleged prior art, there are clear differences between them and the design of the D'573 Patent. *See* Doc. 58, PageID.2241-42. These differences present questions of fact that cannot be resolved at this stage. *Digital Control, Inc. v. Charles Mach. Works*, 437 F.3d 1309, 1319 (Fed. Cir. 2006) ("the scope and content of prior art and what the prior art teaches are questions of fact").

### 2. The Infringing Product Infringes the D'573 Patent.

Breeze Smoke alleged design patent infringement by including a side-by-side comparison of the claim of the D'573 Patent with the Infringing Product. Doc. 37, PageID.1294-1300, ¶99. These images show a plausibility of infringement. An accused product infringes "if, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other." *See Columbia Sportswear North America, Inc. v. Seirus Innovative Accessories, Inc.*, 80 F.4th 1363, 1369 (Fed. Cir. 2023) (internal citation omitted). "[M]inor differences between the patented design and the accused article's design cannot, and shall not, prevent a finding of infringement." *Payless Shoesource, Inc. v. Reebok Intern. Ltd.*, 998 F.2d 985, 991 (Fed. Cir. 1993).

Sellers cite *Parker v. Kimberly-Clark Corp.*, alleging that images can be used to justify a dismissal of this claim. Doc. 58, PageID.2231. This case is distinguishable. The designs in *Parker* were entirely different shapes. *Parker v. Kimberly-Clark Corp.*, Case No. 11-c-5658, 2012 WL 74855, at *2 (N.D. Ill. Jan. 10, 2012). Here, the D'573 Patent and Infringing Product are an identical, rounded rectangular shape. Doc. 37, PageID.1295. The images below show the designs in *Parker* (right) and the designs here (left).




Thus, any challenge to the scope of the claim is not proper at this stage.

### D. BREEZE SMOKE HAS PLED ITS STATE LAW CLAIMS.

Sellers do not explain why Breeze Smoke's state law claims should be dismissed. But, because Breeze Smoke plausibly alleged its claims for trade dress infringement, it likewise plausibly alleged its state law claims. *See MJ & Partners Restaurant Ltd. Partnership v. Zadikoff*, 10 F. Supp. 2d 922, 929 (N.D. Ill. 1998) (finding claims arising under state law unfair competition and the Illinois Deceptive Trade Practices Act "must rise or fall based on the Lanham Act claim").

## IV.　　CONCLUSION

For all the reasons stated, this Court should deny Sellers' Motion to Dismiss.

Dated**:** January 23, 2024　　　　　　　Respectfully submitted,

By: /s/ *Mary A. Hyde*

William B. Berndt (Attorney No. 6269408)
Mary A. Hyde (Attorney No. 6322004)
Vikram A. Mathrani (Attorney No. 6318690)

Jenna E. Saunders (Attorney No. 6340287)
David J. Roulo (Attorney No. 6342637)
HONIGMAN LLP
155 N. Wacker Drive
Suite 3100
Chicago, IL 60606-1734
Telephone:  312-701-9300
wberndt@honigman.com
mhyde@honigman.com
vmathrani@honigman.com
jsaunders@honigman.com
droulo@honigman.com

Jeffrey K. Lamb (Attorney No. 6289998)
HONIGMAN LLP
2290 First National Building
660 Woodward Avenue
Detroit, MI 48226-3506
Telephone:  313-465-7000
jlamb@honigman.com

## CERTIFICATE OF SERVICE

I certify that on January 23, 2024 a copy of the foregoing was electronically filed with the Clerk of Court using the ECF system which will send notification to all counsel of record. Further, a copy of the foregoing and all documents in support thereof was or shall be served upon the Plaintiff.

*/s/ Mary A. Hyde*

*One of the Attorneys for Breeze Smoke LLC*