**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| Midwest Goods Inc., dba Midwest Distribution Illinois, | |
| Plaintiff, | Case No. 1:23-cv-05406 |
| vs. | Honorable Thomas M. Durkin |
| Breeze Smoke LLC, | Honorable Beth W. Jantz |
| Defendant. | |
| Breeze Smoke LLC, | |
| Counterclaim Plaintiff, | |
| vs. | |
| Midwest Goods Inc., dba Midwest Distribution Illinois, Wisemen Wholesale, Inc., Speed Wholesale, Inc., World Wholesale, Inc., Light View LLC, | |
| Counterclaim Defendants. | |

## MIDWEST GOODS INC.'S MOTION FOR ENTRY OF PROPOSED ORDER FOR DISCOVERY OF ELECTRONICALLY STORED INFORMATION

COMES NOW Plaintiff/Counterclaim Defendant Midwest Goods Inc., dba Midwest Distribution Illinois ("Midwest Goods"), by and through its undersigned counsel, and moves the Court to enter the proposed Order for Discovery of Electronically Stored Information ("Proposed Order") substantially in the form that is attached hereto as **Exhibit 1** (and submitted to the Court separately in Word format), stating in support of this motion the following:

1.      The parties have met-and-conferred in an attempt to agree on a proposed order addressed to procedures to be followed and production formats to be used with respect to the collection, review and production of electronically stored information ("ESI") and related matters.

1

2. As a result of the parties' good-faith, diligent efforts, they have been able to resolve many of their disagreements regarding ESI-related discovery.

3. However, one principal area of disagreement between Midwest Goods and Defendant/Counterclaim Plaintiff Breeze Smoke LLC ("Breeze") remains regarding proposed limitations on the number of custodians from whom ESI is to be collected and the number of search terms to be applied to those custodians' data.

4. More particularly, consistent with the rules respecting discovery relating to ESI that are included in the Local Patent Rules that have been promulgated by the Northern District of Illinois (a copy of which is attached for the Court's reference as **Exhibit 2** hereto), and consistent with the proportionality that is required by Federal Rule of Civil Procedure 26(b)(2)(C), Midwest Goods believes that the number of individual custodians[1] from whom ESI is to be collected, and the number of search terms used to collect potentially responsive ESI, should be limited for each party due to the disproportionate burden and expense ESI discovery otherwise could pose for Midwest Goods (and, it believes, other parties).

5. Specifically, Midwest Goods proposes that the number of individual custodians from whom ESI is collected be limited to five custodians, which may be increased to a total of ten custodians by order of the Court (or agreement of the parties). (*See* Ex. 1, Proposed Order ¶ 5.a.) Similarly, Midwest Goods proposes that the number of search terms to be applied be limited to five per custodian, which, once again, may be increased to a total of ten terms by order of the Court

---

[1] Certain ESI, such as business sales and financial records, are not stored in personal files maintained by individual custodians, and thus such ESI is not subject to the custodial limitations being proposed by Midwest Goods here, which limitations are addressed to individual custodian files, including email, and other forms of electronic communication. Moreover, as Midwest Goods advised Breeze, it is proceeding to collect, review and produce such ESI before entry of the Proposed Order given the parties' agreements on other matters such as production format, etc.

(or agreement of the parties). (*See* Ex. 1, Proposed Order ¶ 5.b.)

6. While the Court previously has ruled that the Local Patent Rules are not applicable to this case (which involves a design patent that is not subject to such rules), that does not mean that the concerns that led to custodial and search term limitations incorporated in the Local Patent Rules are not present in this case. To the contrary, this case involves patent infringement claims asserted by Breeze (which are, by their nature, costly claims to litigate) along with trade dress infringement claims, and balance struck by this Court in providing default custodian limits in complex patent cases should be applied in the present case for the same reasons to achieve the proportionality required by Rule 26(b)(2)(c).

7. By way of example and not limitation, Midwest Goods has approximately twenty individuals involved in sales, each of whom is believed to have two company/business phones and one or more computers from which ESI could be collected. Thus, the costs to collect ESI from this group of custodians alone (which is not the only group of custodians that may have responsive ESI) likely would reach six figures, not to mention then the substantial costs to process, store, and review many gigabytes (and likely terabytes) of such ESI.

8. Moreover, in the Rule 26(a)(1) disclosures that Breeze issued, it identified by name only three current owners or managers of Midwest Goods and one former employee of Midwest Goods (as well as other unspecified current or former Midwest Goods employees, agents or representatives) as individuals believed to have discoverable information that might support Breeze's claims or defenses. Similarly, Midwest Goods' Rule 26(a)(1) disclosures identified by name only two current managers of Midwest Goods (who also were identified in Breeze's disclosures) as individuals believed to have discoverable information that might support Midwest Goods' claims or defenses.

9. Additionally, Breeze's Rule 26(a)(1) disclosures identified by name only three current Members (owners) of Breeze (as well as other unspecified current or former Breeze employees, agents, or representatives) as individuals likely to have discoverable information that might support Breeze's claims or defenses. And similarly, Midwest Goods' Rule 26(a)(1) disclosures identified by name only two Breeze owners or employees (one of whom also was identified by Breeze in its disclosures) as individuals likely to have discoverable information that might support Midwest Goods' claims or defenses.

10. Accordingly, based on the parties' Rule 26(a)(1) disclosures, it is unclear why ESI needs to be collected from more than five custodians for each party, and why as many as ten custodians should not be more than sufficient in this case.

11. Moreover, consistent with the last paragraph of the Proposed Order (*see* Ex. 1, Proposed Order ¶ 7), a party can petition the Court to modify the Proposed Order and increase beyond ten the number of custodians or search terms, provided such a party can demonstrate good cause for the same and subject to any cost-shifting that may be imposed as a condition of such an enlargement.

12. In addition, if, based on discovery completed, Breeze believes it has good cause to seek an increase to the number of custodians or search terms beyond the limits prescribed in the Proposed Order and seek a modification of the Proposed Order on the grounds of the same, then at that juncture these disputes will not be abstract and hypothetical; they will be concrete. A specific number of custodians, and a more precise estimates of the costs and burdens associated with the same, can then be identified, appropriate cost-shifting can be discussed, and all of this can be presented to the Court at an appropriate juncture to resolve any such concrete disputes if that is required.

WHEREFORE, for the reasons set forth above, and other grounds Midwest Goods will be prepared to discuss with the Court (Hon. Beth W. Jantz) at the status conference that has been calendared for March 7, 2024 at 1:30 PM (*see* Dkt. No. 70). Midwest Goods respectfully requests that the Court enter the Proposed Order or a substantially similar Proposed Order.

Dated: March 6, 2024                                   Respectfully submitted,

                                            */s/ Drew G.A. Peel*
Drew G.A. Peel (ARDC# 6209713)
**RACHLIS DUFF & PEEL, LLC**
542 South Dearborn Street, Suite 900
Chicago, IL 60605
Tel: (312) 275-0337
Fax: (312) 733-3952
dpeel@rdaplaw.net

Stephen L. Levine (admitted *pro hac vice*)
Kelli M. Hinson (admitted *pro hac vice*)
Mark C. Howland (admitted *pro hac vice*)
**CARRINGTON, COLEMAN, SLOMAN & BLUMENTHAL, L.L.P.**
901 Main St., Suite 5500
Dallas, TX 75202
Tel: (214) 855-3000
slevine@ccsb.com
khinson@ccsb.com

*Attorneys for Midwest Goods*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 6, 2024, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

*/s/ Drew G.A. Peel*
Drew G.A. Peel

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| Midwest Goods Inc., dba Midwest Distribution Illinois,<br><br>   Plaintiff,<br><br>  vs.<br><br>Breeze Smoke, LLC,<br><br>   Defendant. | Case No. 1:23-cv-05406<br><br>Honorable Thomas M. Durkin<br><br>Honorable Beth W. Jantz |
| Breeze Smoke LLC,<br><br>   Counterclaim Plaintiff,<br><br>  vs.<br><br>Midwest Goods Inc., dba Midwest Distribution Illinois, Wisemen Wholesale, Inc., Speed Wholesale, Inc., World Wholesale, Inc., Light View LLC,<br><br>   Counterclaim Defendants. | |

## ORDER FOR DISCOVERY OF ELECTRONICALLY STORED INFORMATION

The Court enters this Order for the purposes of assisting in the administration of Federal Rule of Civil Procedure ("FRCP") 1 in this case, so as to secure the just, speedy, and inexpensive determination of this civil case, and to promote, whenever possible, the early resolution of disputes regarding the discovery of electronically stored information ("ESI") without Court intervention.

1. **Definitions:**

  a. **Party.** "Party" or "Parties" means a named party or parties in this case.

  b. **Electronically Stored Information.** "Electronically Stored Information" or "ESI" means and refers to computer generated information or data of any kind, stored in or on any storage media located on computers, file servers, disks, tape, or other real

1

Exhibit

1

exhibitsticker.com

or virtual devices or media. It is all-encompassing and refers to all sources of data, including but not limited to mobile devices, cloud / network file locations, and personal devices of each custodian. Notwithstanding the foregoing, the definition of ESI shall ***not*** include the following:

    i.    "deleted," "slack," "fragmented," or "unallocated" data on hard drives;

    ii.    random access memory (RAM) or other such ephemeral data;

    iii.    on-line access data such as temporary internet files, history, cache, cookies, etc.;

    iv.    data in metadata fields that are frequently updated automatically, such as last-opened dates;

    v.    backup data that is substantially duplicative of data that is more accessible elsewhere; and

    vi.    other forms of ESI whose preservation requires extraordinary affirmative measures that are not utilized in the ordinary course of business, except that insofar as a party is not collecting and reviewing ESI that falls into this category, then that party shall notify the requesting party of the same and provide sufficient information regarding the form of ESI in question to establish that it falls within this subcategory, and, insofar as there is a dispute about whether ESI properly is categorized as falling into this subcategory, then that dispute shall be raised with the Court after the parties meet-and-confer in the same manner that other disputes regarding ESI are raised with the Court.

c. **Native Format.** "Native format" means and refers to the format of ESI in which a particular file was generated and/or used by the producing Party in the usual course of its business and in its regularly conducted activities.

d. **Metadata.** "Metadata" means and refers to information about information or data about data, and includes without limitation (1) information embedded in or associated with a native file that is not ordinarily viewable or printable from the application that generated, edited, or modified such native file which describes the characteristics, origins, usage, and/or validity of the electronic file and/or (2) information generated automatically by the operation of a computer or other information technology system when a native file is created, modified, transmitted, deleted, or otherwise manipulated by a user of such system.

e. **Production Media.** Documents shall be produced by FTP, secure file transfer, or electronic media. All transmissions and/or media shall be encrypted with the password or encryption key sent under separate cover.

2. **<u>Cooperation</u>:** Counsel shall cooperate in all aspects of seeking and responding to discovery requests. The failure of counsel or a Party to cooperate in facilitating and reasonably limiting discovery requests and responses will be considered in cost-shifting determinations. If the Court determines that any counsel or Party has failed to cooperate and participate in good faith in the meet-and-confer process or is impeding the purposes for which this Order is being entered, then the Court may impose sanctions, if appropriate.

3.      **Privilege and Waiver:**

   a.      Pursuant to Federal Rule of Evidence 502(d), the production of a privileged or work product protected ESI is not a waiver in the pending case or in any other federal or state proceeding.

   b.      The mere production of ESI as part of a mass production shall not itself constitute a waiver for any purpose.

   c.      A producing party that requests the return or destruction of ESI on the ground that it is privileged or work product protected must provide the receiving party with the information required by FRCP 26(b)(5)(A) within 7 days of the request for return.

   d.      The receiving party must return, sequester, or destroy ESI that the producing party claims is privileged or work product protected as provided in FRCP 26(b)(5)(B) and may use such ESI only to challenge the claim of privilege or protection.

4.      **Format of ESI Production:**

   a.      Other than as set forth below in paragraph g, the Parties will produce ESI as set forth below.  Productions shall be formatted to provide images, text, native files (as set forth herein), and certain metadata conveyed in load files. .DAT and .OPT file formats shall be used for the metadata and text/native load files. To the extent reasonably feasible to do so, passwords and encryption should be removed from individual documents before production.

   i.  **Native File Format.** The Parties agree to produce documents in native or TIFF image file format, as detailed below.  If particular documents warrant a different format, the Parties will cooperate regarding the mutually acceptable production of such documents in an alternative format.

4

The Parties shall produce files that do not convert to image format, including but not limited to Excel (*e.g.*, .xls or .xlsx), CSV, PowerPoint, audio files, video files, and files too voluminous to convert to TIFF format plus searchable .txt files, in native format. The Parties shall also produce PowerPoint files in TIFF image (full slide view). Native files will be named with the corresponding production "bates" number assigned to them and produced with their metadata and text link included in the .DAT file. A production placeholder, stating "Produced in Native Format," with a Bates stamp and appropriate confidentiality designation, shall be included in TIFF production folders. Files to be produced in native form but requiring redactions shall be produced as TIFFs with redactions, unless the Producing Party uses a Native File Redaction Platform allowing for natives to be produced in redacted form. Documents containing redactions shall be produced in TIFF format with OCR text. All other file types shall be produced in TIFF format unless otherwise agreed upon.

If a Party seeks the native file associated with a TIFF image (including a TIFF image with redactions), it may request that native file in writing by providing the Bates number(s) and describe the particular need for native production from the appropriate Party. The producing Party shall either provide the native file or, if it objects to such production, meet and confer to discuss the request within a reasonable time. Wholesale requests for native production are deemed invalid.

The Parties agree to continue to meet and confer about the production of ESI as necessary.

ii. **Document Images.** All files not requiring a native file format for production shall be converted to black and white Group IV TIFF image files or color JPG files, as set forth herein, or produced as .pdfs (as discussed below). If a party believes it needs a document produced in color, it may request the producing party re-produce the specific document in color. All images shall have a minimum dots per inch (dpi) setting of 300 dpi.

iii. **Document Text.** Each file shall be produced with an associated text (.TXT) file at the document level. Redacted files will be converted to text using optical character recognition (OCR) to convey non-redacted text. The link to the text shall be included in the .DAT file for each production.

iv. **Text Messages.** To the extent a response to a discovery request requires production of cellular or mobile phone text messages, or messaging app messages, they shall be collected by extracting such information from the phone using forensic means, except that the Parties may, at their election, collect by exporting the text messages using a utility program (*e.g.* iMazing, CoolMuster, or similar program agreed upon by the Parties) designed for that purpose. The Parties agree they will not produce screenshots of text messages. Text messages may be produced, at the election of the producing Party, in native Excel. If so produced, the Excel file must at a minimum identify (i) the custodian of the phone, (ii) the parties participating in the message or message chain by name (if saved as part of the collection) and mobile number, (iii) the message type (*e.g.* SMS), (iv) the date and time of the message, (v) the Mobile Folder, if applicable, and (vi) the text of the message. Alternatively, the Parties may produce a conversation in the graphic "chat bubble" format that is

exported using a utility program and is not screenshots taken on the phone. The chat bubble format shall include messages for a period of time or otherwise consolidate a whole or partial conversation. As discussed below, the Parties shall be limited as to the number of custodians and number of search terms to be applied in collecting and reviewing the aforementioned phone and messaging application data.

v. **Production Folder**. Each production of ESI shall include a standalone folder or directory entitled "IMAGES" that contains each TIFF image and native document being produced, which folder or directory may also include subfolders.

vi. **Metadata Load File (.DAT).** Information for all files will be produced in the standard .DAT file format.

1. **Bates Numbering.** Each party shall assign a unique identifying number to each image page and each native document. Each party will use a prefix to identify files they produce and shall number files consecutively through this matter.

   In the case of confidential materials as defined in the Agreed Confidentiality Order that was entered by the Court on February 20, 2024 (Dkt# 71), or materials redacted in accordance with applicable rules, law or Court order, a designation may be "branded" onto the document's image at a location that does not obliterate or obscure any information from the source document.

2. **Processing Time Zone setting.** The Parties acknowledge that the custodians of ESI involved in this matter reside and/or work in multiple

7

time zones, including time zones across the international dateline. Accordingly, as to each custodian from whom ESI is collected and produced by a Party, the Party shall identify in what time zone the custodian resides and/or works.

3. **Metadata.** Each Party, except where producing documents in PDF form according to paragraph g, shall provide the following metadata fields for each file produced to the extent reasonably accessible and available for any documents produced and not unduly burdensome to provide:

**Bates Begin**
**Bates End**
**Bates Begin Attach**
**Bates End Attach**
**Email To**
**Email From**
**Email cc**
**Email bcc**
**Email Subject**
**Confidentiality Designation**
**Redacted** – Yes/[blank]
**All Custodians**
**Author** (Parties acknowledge that the Author field may not actually reflect the author of the document.)
**Document Title**
**File Name**
**File Extension**
**Original Folder Path**
**Date Created** – MM/DD/YYYY format (Parties acknowledge that the Date Created field may not actually reflect the date the file was created, due to the ease of change to that field and the technical definition of the field (*e.g.*, the created date and time reflects the date when the file was created in that particular location on the computer or on the other storage device location))
**Time Created** – (HH:MM) format (Parties acknowledge that the Time Created field may not actually reflect the time the file was created, due to the ease of change to that field and the technical definition of the field (*e.g.*, the created date and time reflects the time when the file was created in that particular location on the computer or on the other storage device location))
**Last Modified Date** – MM/DD/YYYY format
**Last Time Modified** – (HH:MM) format

8

**Date Sent** – MM/DD/YYYY format
**Time Sent**– (HH:MM) format
**Received Date** – MM/DD/YYYY format
**Received Time** – (HH:MM) format
**File Size**
**MD5 Hash**
**Production Volume Name,** *e.g.* ABC001
**Text File Path**
**Native File Path**
**Foreign Language –** Yes/[blank]
**Message ID**

** As it relates to the All Custodians metadata field above, the producing Party reserves the right to produce in multiple fields (*e.g.*, Custodian + All Custodian) since the metadata may already be exported and logged as such.

** Same is true with all Date and Time Fields. These fields can be provided in separate fields or be combined into a single field as long as the required information is produced in the load file.

4. Nothing in this Order shall require any Party to create or manufacture data or ESI where it does not already exist. Notwithstanding the foregoing, the Parties shall confer if responsive ESI is stored in a database or database system that can be produced by querying the database for discoverable information, resulting in a report or a reasonably usable and exportable electronic file for review by the requesting Party.

5. Each party shall retain native source docs for all ESI and shall preserve metadata as of time of original production should metadata review be necessary.

b. **Attachments.** Email attachments and embedded files must be mapped to their parent by the Begin Bates number. The "BeginAttach" and "EndAttach" fields shall designate the page ranges for all attachments.

c. **Production of Physical Documents.** Except where produced as documents in PDF form according to subparagraph g., hard copy files shall be converted to a single

9

page TIFF file and produced following the same protocols set forth herein or otherwise agreed to by the Parties. Document metadata should be produced in .DAT format for paper files, including: bates numbers (doc and attachments) and custodian.

For hard copy files, each page of a document shall be electronically saved as an image file. Hard copy documents shall be physically unitized to maintain the organization of their original paper versions. If a document consists of more than one page, the unitization of the document and any attachments and/or affixed notes shall be maintained as it existed in the original when creating image files.

d.      **Duplicates.** Removal of duplicate documents should only be done on exact duplicate documents at the family level (based on MD5 or SHA-1 hash values or near duplicate analysis where documents are 100% textual matches but due to underlying data sources or differences in processing over time the hash values do not match). Attachments should not be eliminated as duplicates for purposes of production, unless the parent e-mail and all attachments are also duplicates. When applying global deduplication, metadata identifying all custodians in possession of each document that is removed as a duplicate must be provided in the All Custodians metadata field subject to any exceptions provided in this Stipulation. Paper documents shall not be eliminated as duplicates of responsive ESI.

e.      **Redactions.** The producing Party can redact documents for privilege.

f.      **Other Data.** To the extent a response to a non-objectionable discovery request requires production of discoverable ESI contained in a database or other structured data format or otherwise requires sophisticated methods of retrieval or collection,

10

the Parties agree to meet and confer to discuss the specifications for collection, review, and production of such data.

g.  **PDF Production.** Notwithstanding the foregoing, a producing Party is permitted to produce documents in PDF format without metadata, as long as the producing Party represents in writing to the requesting Party, upon request from the requesting Party, that the producing Party cannot produce such documents in the formats elsewhere prescribed by this Order because the producing Party is not in possession, custody or control of ESI data that would permit production in a different format. All documents produced in a PDF format shall be Bates stamped by the Parties.

5.  **Limitations on Email/Phone Collection and Production:**

a.  Each requesting Party who makes a request for emails and similar electronic forms of communication constituting ESI is limited to a total of five custodians per producing Party for all such requests.

i.  The Parties may agree to increase the number of custodians, and, if they so agree, then no permission from the Court is required to proceed with such discovery and no modification of this Order shall be required. If a Party requests that the number of custodians collected from, searched, and produced from be increased beyond the five prescribed by default herein, then the producing party shall communicate in writing to the Party making such request basic information respecting the number of custodians, devices, and projected costs that would potentially be encompassed by such an enlargement, and, thereafter, the requesting Party and producing Party shall meet-and-confer in an attempt to reach agreement on any enlargement

11

respecting the number of custodians (including, but not limited to, any cost-shifting that may be requested in connection with the enlargement in question).

ii. If the Parties are unable to agree on an increase of the number of custodians beyond the five custodians provided for above, then a Party may ask the Court to increase the number of custodians to no more than a total of ten custodians, upon showing a distinct need for the same based on the size, complexity, and issues of this specific case. Should a Party disregard limits on the number of custodians imposed by this Order or set by the Court, then such a Party shall be responsible for all costs and fees a responding Party incurs relating to such discovery and any motion for protective order that may be filed in connection with the same. Further, nothing herein prevents a Party burdened by an increase in the number of custodians from seeking appropriate cost reimbursement in connection with the same.

b. Each Party shall limit the number of search terms to be applied to its requests seeking emails and other forms of electronic communication constituting ESI to a total of five search terms per custodian for all of the requests.

i. The Parties may agree to increase the number of search terms, and, if they so agree, then no permission from the Court is required to proceed with such discovery and no modification of this Order shall be required.

ii. If the Parties are unable to agree on an increase of the number of search terms beyond the five provided for above, then a Party may ask the Court to increase the number of search terms to no more than a total of ten search terms, upon showing a distinct need for the same based on the size, complexity, and issues of this specific case. Should a Party disregard limits on the number of search terms imposed by this

Order or set by the Court, then such a Party shall be responsible for all costs and fees a responding Party incurs relating to such discovery and any motion for protective order that may be filed in connection with the same. Further, nothing herein prevents a Party burdened by an increase in the number of search terms from seeking appropriate cost reimbursement in connection with the same.

c. In addition to the foregoing, all search terms that are utilized shall be narrowly tailored to particular issues in this case.

    **i.** Indiscriminate search terms, such as the producing company's name or its product name, are inappropriate unless combined with narrowing search criteria that sufficiently reduce the responsive data and risk of overcollection and overproduction.

    **ii.** A conjunctive combination of multiple words or phrases (*e.g.*, "computer" and "systems") narrows the search and shall count as a single search term.

    **iii.** A disjunctive combination of multiple words or phrases (*e.g.*, "computer" or "system") broadens the search, and thus each word or phrase shall count as a separate search terms unless they are variants of the same word.

    **iv.** Use of narrowing criteria (*e.g.*, "and," "but not," "w/x") is encouraged to limit the production and shall be considered when determining whether to shift costs for disproportionate discovery.

    **v.** If search terms are used, the mere fact that a document is hit or captured by the application of such search terms does not mean that such document is necessarily responsive to any propounded discovery request or is otherwise relevant to this

13

litigation. Determinations of discoverability, responsiveness, and privilege shall be made by the producing Party.

vi. In the event of any dispute regarding the number or content of search terms, a requesting Party agrees to consider in good faith any search term revisions as may be proposed by a producing Party. If a proposed search term or protocol revision is rejected by the producing Party on the basis of the undue burden of the proposal, the producing Party will produce hit counts or other relevant data to substantiate the burdensome objection. If the Parties are unable to resolve such disputes, then the Party seeking to have the search terms applied (or increased beyond the five provided by default by this Order) shall have the responsibility to raise the issue with the Court by means of an appropriate motion.

6. **Cooperation:** The Parties shall continue to meet and confer regarding any ESI or other discovery issues as necessary and appropriate. Nothing in this Order shall prevent a party from also searching for and producing documents in another manner reasonable under the circumstances, nor shall it relieve the party of the obligation of producing requested documents or information that are known to the party and reasonably available, regardless of whether they are ESI or contain one or more applicable search terms.

7. **Modification:** Any of the Parties may petition the Court at any time to modify the terms of this Order upon a showing of good cause.

Dated:

_____
Hon. Beth W. Jantz
United States Magistrate Judge

14

## Northern District of Illinois

## Local Patent Rules for Electronically Stored Information

**LPR ESI 1.1 (Purpose)**

These Local Patent Rules for Electronically Stored Information ("Rules") supplement all other discovery rules and orders. The purpose of these Rules is to assist courts in the administration of Federal Rule of Civil Procedure 1, to secure the just, speedy, and inexpensive determination of every civil case, and to promote, whenever possible, the early resolution of disputes regarding the discovery of electronically stored information ("ESI") without Court intervention.

**LPR ESI 1.2 (Cooperation)**

(a) Counsel shall cooperate in all aspects of seeking and responding to discovery requests.

(b) The failure of counsel or the parties to litigation to cooperate in facilitating and reasonably limiting discovery requests and responses will be considered in cost-shifting determinations.

**LPR ESI 1.3 (Discovery Plan)**

The standard set forth in Fed. R. Civ. P. 26(b)(2)(C) should be applied in each case when formulating a discovery plan. To further the application of the standard set forth in Fed. R. Civ. P. 26(b)(2)(C) in discovery, requests for production of ESI and related responses should be reasonably targeted, clear, and as specific as practicable.

**LPR ESI 1.4 (Privilege and Waiver)**

(a) Pursuant to Federal Rule of Evidence 502(d), the production of a privileged or work product protected ESI is not a waiver in the pending case or in any other federal or state proceeding.

(b) The mere production of ESI in a litigation as part of a mass production shall not itself constitute a waiver for any purpose.

(c) A producing party that requests the return of ESI on the ground that it is privileged or work product protected must provide the receiving party with the information required by Federal Rule of Civil Procedure 26(b)(5)(A) within 7 days of the request for return.

(d) The receiving party must return, sequester, or destroy ESI that the producing party

1

claims is privileged or work product protected as provided in Rule 26(b)(5)(B) and may use such ESI only to challenge the claim of privilege or protection.

**LPR ESI 2.1 (Duty to Meet and Confer on Discovery and to Identify Disputes for Early Resolution)**

(a)  Prior to the initial status conference with the Court, counsel shall meet and discuss the application of the discovery process set forth in the Federal Rules of Civil Procedure and these Rules to their specific case.

(b)  If the parties have disputes regarding ESI that counsel for the parties are unable to resolve, the parties shall present those disputes to the Court at the initial status conference pursuant to Fed. R. Civ. P. Rule 16(b), or as soon as possible thereafter.

(c)  Prior to the presentation of disputes to the court, each party shall designate an individual as e-discovery liaison.  The e-discovery liaison shall participate in the meet and confer held to resolve the dispute.  Regardless of whether the e-discovery liaison(s) is an attorney (in-house or outside counsel), a third party consultant, or an employee of the party, the e-discovery liaison(s) must:

    1.    be prepared to participate in e-discovery dispute resolution;

    2.    be knowledgeable about the party's e-discovery efforts;

    3.    be, or have reasonable access to those who are, familiar with the party's electronic systems and capabilities in order to explain those systems and answer relevant questions; and be, or have reasonable access to those who are, knowledgeable about the technical aspects of e-discovery, including electronic document storage, organization, and format issues, and relevant information retrieval technology, including search methodology.

(d)  The Court may modify the obligations and deadlines of these Rules based on the circumstances of any particular case.  The parties shall jointly submit any proposed modifications within 30 days after the Federal Rule of Civil Procedure 16 conference.  If the parties cannot resolve their disagreements regarding these modifications, the parties shall submit their competing proposals and a summary of their dispute.

(e)  If the Court determines that any counsel or party in a case has failed to cooperate and participate in good faith in the meet and confer process or is impeding the purpose of these Rules, the Court may require additional discussions prior to the commencement of discovery, and may impose sanctions, if appropriate.

**LPR ESI 2.2 (Preservation Requests and Orders)**

(a) Appropriate preservation requests and preservation orders further the goals of these Rules. Vague and overly broad preservation requests do not further the goals of these Rules and are therefore disfavored. Vague and overly broad preservation orders should not be sought or entered. The information sought to be preserved through the use of a preservation letter request or order should be reasonable in scope and mindful of the factors set forth in Rule 26(b)(2)(C).

(b) To the extent counsel or a party requests preservation of ESI through the use of a preservation letter, such requests should attempt to ensure the preservation of relevant and discoverable information and to facilitate cooperation between requesting and receiving counsel and parties by transmitting specific and useful information. Examples of such specific and useful information include, but are not limited to:

 (1) names of the parties;

 (2) factual background of the potential legal claim(s) and identification of potential cause(s) of action;

 (3) names of potential witnesses and other people reasonably anticipated to have relevant evidence;

 (4) relevant time period; and

 (5) other information that may assist the responding party in assessing what information to preserve.

(c) If the recipient of a preservation request chooses to respond, that response should provide the requesting counsel or party with useful information regarding the preservation efforts undertaken by the responding party. Examples of such useful and specific information include, but are not limited to, information that:

 (1) identifies what information the responding party is willing to preserve and the steps being taken in response to the preservation letter;

 (2) identifies any disagreement(s) with the request to preserve; and;

 (3) identifies any further preservation issues that were not raised.

(d)   Nothing in these Rules shall be construed as requiring the sending of a preservation request or requiring the sending of a response to such a request.

**LPR ESI 2.3 (Scope of Preservation)**

(a)   Every party to litigation and its counsel are responsible for taking reasonable and proportionate steps to preserve relevant and discoverable ESI within its possession, custody or control.  Determining which steps are reasonable and proportionate in particular litigation is a fact specific inquiry that will vary from case to case.  The parties and counsel should address preservation issues at the outset of a case, and should continue to address them as the case progresses and their understanding of the issues and the facts improves.

(b)   Discovery concerning the preservation and collection efforts of another party may be appropriate but, if used unadvisedly, can also contribute to the unnecessary expense and delay and may inappropriately implicate work product and attorney-client privileged matter.  Accordingly, prior to initiating such discovery a party shall confer with the party from whom the information is sought concerning: (i) the specific need for such discovery, including its relevance to issues likely to arise in the litigation; and (ii) the suitability of alternative means for obtaining the information.  Nothing herein exempts deponents on merits issues from answering questions concerning the preservation and collection of their documents, ESI, and tangible things.

(c)   The parties and counsel should come to the meet and confer conference prepared to discuss the claims and defenses in the case including specific issues, time frame, potential damages, and targeted discovery that each anticipates requesting.  In addition, the parties and counsel should be prepared to discuss reasonably foreseeable preservation issues that relate directly to the information that the other party is seeking.  The parties and counsel need not raise every conceivable issue that may arise concerning their preservation efforts; however, the identification of any such preservation issues should be specific.

(d)   The following categories of ESI generally are not discoverable in most cases, and if any party intends to request the preservation or production of these categories, then that intention should be discussed at the meet and confer or as soon thereafter as practicable:

(1)   "deleted," "slack," "fragmented," or "unallocated" data on hard drives;

(2)   random access memory (RAM) or other ephemeral data;

(3)   on-line access data such as temporary internet files, history, cache, cookies, etc.;

(4)   data in metadata fields that are frequently updated automatically, such as last-

opened dates;

(5)     backup data that is substantially duplicative of data that is more accessible elsewhere; and

(6)     other forms of ESI whose preservation requires extraordinary affirmative measures that are not utilized in the ordinary course of business.

(e)  If there is a dispute concerning the scope of a party's preservation efforts, the parties or their counsel must meet and confer and fully explain their reasons for believing that additional efforts are, or are not, reasonable and proportionate, pursuant to Rule 26(b)(2)(C).  If the parties are unable to resolve a preservation issue, then the issue should be raised promptly with the Court.

**LPR ESI 2.4 (Identification of ESI)**

(a) At the Rule 26(f) conference or as soon thereafter as possible, counsel or the parties shall discuss potential methodologies for identifying ESI for production.

(b)  Topics for discussion may include, but are not limited to, any plans to:

(1)     eliminate duplicative ESI and whether such elimination will occur only within each particular custodian's data set or whether it will occur across all custodians;

(2)     filter data based on file type, date ranges custodian, search terms, or other similar parameters; and

(3)     use keyword searching, mathematical or thesaurus-based topic or concept clustering, or other advanced culling technologies.

**LPR ESI 2.5 (Production Format)**

(a) At the Rule 26(f) conference, counsel and the parties should make a good faith effort to agree on the format(s) for production of ESI (whether native or some other reasonably usable form).  If counsel or the parties are unable to resolve a production format issue, then the issue should be raised promptly with the Court.

(b) The parties should confer on whether ESI stored in a database or a database management system can be produced by querying the database for discoverable information, resulting in a report or a reasonably usable and exportable electronic file for review by the

requesting counsel or party.

(c) The general presumption is that meta-data is not requested and need not be produced, unless a special request is made.

(d) ESI and other tangible or hard copy documents that are not text-searchable need not be made text-searchable.

(e) If a party requests production in a format other than the one most convenient for the producing party, the requesting party is responsible for the incremental cost of creating its copy of requested information. Counsel or the parties are encouraged to discuss cost sharing for optical character recognition (OCR) or other upgrades of paper documents or non-text-searchable electronic images that may be contemplated by each party.

**LPR ESI 2.6 (Email Production Requests)**

(a) General ESI production requests under Federal Rules of Civil Procedure 34 and 45 shall not include email or other forms of electronic correspondence (collectively "email"). To obtain emails parties must propound specific email production requests.

(b) Email production requests shall be phased to occur after the parties have exchanged initial disclosures and basic documentation about the patents, the prior art, the accused instrumentalities, and the relevant finances. While this provision does not require the production of such information, the Court encourages prompt and early production of this information to promote efficient and economical streamlining of the case.

(c) Email production requests shall identify the custodian, search terms, and time frame. The parties shall cooperate to identify the proper custodians, proper search terms and proper timeframe.

(d) Each requesting party shall limit its email production requests to a total of five custodians per producing party for all such requests. The parties may jointly agree to modify this limit without the Court's leave. The Court shall consider contested requests for up to five additional custodians per producing party, upon showing a distinct need based on the size, complexity, and issues of this specific case. Should a party serve email production requests for additional custodians beyond the limits agreed to by the parties or granted by the Court pursuant to this paragraph, the requesting party shall bear all reasonable costs caused by such additional discovery.

(e) Each requesting party shall limit its email production requests to a total of five search terms per custodian per party. The parties may jointly agree to modify this limit without the

Court's leave.  The Court shall consider contested requests for up to five additional search terms per custodian, upon showing a distinct need based on the size, complexity, and issues of this specific case.  The search terms shall be narrowly tailored to particular issues.  Indiscriminate terms, such as the producing company's name or its product name, are inappropriate unless combined with narrowing search criteria that sufficiently reduce the risk of overproduction.  A conjunctive combination of multiple words or phrases (e.g., "computer" and "system") narrows the search and shall count as a single search term.  A disjunctive combination of multiple words or phrases (e.g., "computer" or "system") broadens the search, and thus each word or phrase shall count as a separate search term unless they are variants of the same word.  Use of narrowing search criteria (e.g., "and," "but not," "w/x") is encouraged to limit the production and shall be considered when determining whether to shift costs for disproportionate discovery.  Should a party serve email production requests with search terms beyond the limits agreed to by the parties or granted by the Court pursuant to this paragraph, the requesting party shall bear all reasonable costs caused by such additional discovery.