# Exhibit 1

| | |
|---|---|
| MIDWEST GOODS INC., DBA MIDWEST DISTRIBUTION ILLINOIS, <br><br> Plaintiff, <br><br> vs. <br><br> BREEZE SMOKE, LLC, <br><br> Defendant. | CASE NO. 1:23-CV-05406 <br><br> HONORABLE THOMAS M. DURKIN <br><br> HONORABLE BETH W. JANTZ |
| Breeze Smoke LLC, <br><br> Counter-Claimant, <br><br> vs. <br><br> Midwest Goods Inc., dba Midwest Distribution Illinois, Wisemen Wholesale, Inc., Speed Wholesale, Inc., World Wholesale, Inc., Light View LLC, <br><br> Counterclaim Defendants. | |

## [PROPOSED] ORDER FOR DISCOVERY OF ELECTRONICALLY STORED INFORMATION

The Court enters this Order for the purposes of assisting in the administration of Federal Rule of Civil Procedure (FRCP) 1 in this case, so as to secure the just, speedy, and inexpensive determination of this civil case, and to promote, whenever possible, the early resolution of disputes regarding the discovery of electronically stored information ("ESI") without Court intervention.

1. **Definitions:**

    a. **Party.** "Party" or "Parties" means a named party or parties in this case.

b. **Electronically Stored Information.** "Electronically Stored Information" or "ESI" means and refers to computer generated information or data of any kind, stored in or on any storage media located on computers, file servers, disks, tape, or other real or virtual devices or media. It is all-encompassing and refers to all sources of data, including but not limited to mobile devices, cloud / network file locations, and personal devices of each custodian. Notwithstanding the foregoing, the definition of ESI shall ***not*** include the following:

    i.    "deleted," "slack," "fragmented," or "unallocated" data on hard drives;

    ii.    random access memory (RAM) or other such ephemeral data;

    iii.    on-line access data such as temporary internet files, history, cache, cookies, etc.;

    iv.    data in metadata fields that are frequently updated automatically, such as last-opened dates;

    v.    backup data that is substantially duplicative of data that is more accessible elsewhere; and

    vi.    other forms of ESI whose preservation requires extraordinary affirmative measures that are not utilized in the ordinary course of business, except that insofar as a party is not collecting and reviewing ESI that falls into this category, then that party shall notify the requesting party of the same and provide sufficient information regarding the form of ESI in question to establish that it falls within this subcategory, and, insofar as there is a dispute about whether ESI properly is categorized as falling into this subcategory, then that dispute shall be raised with the Court after the parties

meet-and-confer in the same manner that other disputes regarding ESI are raised with the Court.

c. **Native Format.** "Native format" means and refers to the format of ESI in which a particular file was generated and/or used by the producing Party in the usual course of its business and in its regularly conducted activities.

d. **Metadata.** "Metadata" means and refers to information about information or data about data, and includes without limitation (1) information embedded in or associated with a native file that is not ordinarily viewable or printable from the application that generated, edited, or modified such native file which describes the characteristics, origins, usage, and/or validity of the electronic file and/or (2) information generated automatically by the operation of a computer or other information technology system when a native file is created, modified, transmitted, deleted, or otherwise manipulated by a user of such system.

e. **Production Media.** Documents shall be produced by FTP, secure file transfer, or electronic media. All transmissions and/or media shall be encrypted with the password or encryption key sent under separate cover.

2. **Cooperation:** Counsel shall cooperate in all aspects of seeking and responding to discovery requests. The failure of counsel or a Party to cooperate in facilitating and reasonably limiting discovery requests and responses will be considered in cost-shifting determinations. If the Court determines that any counsel or Party has failed to cooperate and participate in good faith in the meet-and-confer process or is impeding the purposes for which this Order is being entered, then the Court may impose sanctions, if appropriate.

3. **Privilege and Waiver:**

a. Pursuant to Federal Rule of Evidence 502(d), the production of a privileged or work product protected ESI is not a waiver in the pending case or in any other federal or state proceeding.

b. The mere production of ESI as part of a mass production shall not itself constitute a waiver for any purpose.

c. A producing party that requests the return or destruction of ESI on the ground that it is privileged or work product protected must provide the receiving party with the information required by FRCP 26(b)(5)(A) within 7 days of the request for return.

d. The receiving party must return, sequester, or destroy ESI that the producing party claims is privileged or work product protected as provided in FRCP 26(b)(5)(B) and may use such ESI only to challenge the claim of privilege or protection.

4. **Format of ESI Production:**

a. Other than as set forth below in paragraph g, the Parties will produce ESI as set forth below. Productions shall be formatted to provide images, text, native files (as set forth herein), and certain metadata conveyed in load files. .DAT and .OPT file formats shall be used for the metadata and text/native load files. To the extent reasonably feasible to do so, passwords and encryption should be removed from individual documents before production.

i. **Native File Format.** The Parties agree to produce documents in native or TIFF image file format, as detailed below. If particular documents warrant a different format, the Parties will cooperate regarding the mutually acceptable production of such documents in an alternative format.

The Parties shall produce files that do not convert to image format, including but not limited to Excel (e.g., .xls or .xlsx), CSV, PowerPoint, audio files, video files, and files too voluminous to convert to TIFF format plus searchable .txt files, in native format. The Parties shall also produce Powerpoint files in TIFF image (full slide view). Native files will be named with the corresponding production "bates" number assigned to them and produced with their metadata and text link included in the .DAT file. A production placeholder, stating "Produced in Native Format," with a Bates stamp and appropriate confidentiality designation, shall be included in TIFF production folders. Files to be produced in native form but requiring redactions shall be produced as TIFFs with redactions, unless the Producing Party uses a Native File Redaction Platform allowing for natives to be produced in redacted form. Documents containing redactions shall be produced in TIFF format with OCR text. All other file types shall be produced in TIFF format unless otherwise agreed upon.

If a Party seeks the native file associated with a TIFF image (including a TIFF image with redactions), it may request that native file in writing by providing the Bates number(s) and describe the particular need for native production from the appropriate Party. The producing Party shall either provide the native file or, if it objects to such production, meet and confer to discuss the request within a reasonable time. Wholesale requests for native production are deemed invalid.

The Parties agree to continue to meet and confer about the production of ESI as necessary.

ii. **Document Images.** All files not requiring a native file format for production shall be converted to black and white Group IV TIFF image files or color JPG files, as set forth herein, or produced as .pdfs (as discussed below). If a party believes it needs a document produced in color, it may request the producing party re-produce the specific document in color. All images shall have a minimum dots per inch (dpi) setting of 300 dpi.

iii. **Document Text.** Each file shall be produced with an associated text (.TXT) file at the document level. Redacted files will be converted to text using optical character recognition (OCR) to convey non-redacted text. The link to the text shall be included in the .DAT file for each production.

iv. **Text Messages.** To the extent a response to a discovery request requires production of cellular or mobile phone text messages, or messaging app messages, they shall be collected by extracting such information from the phone using forensic means, except that the Parties may, at their election, collect by exporting the text messages using a utility program (e.g. iMazing, CoolMuster, or similar program agreed upon by the Parties) designed for that purpose. The Parties agree they will not produce screenshots of text messages. Text messages may be produced, at the election of the producing Party, in native Excel. If so produced, the Excel file must at a minimum identify (i) the custodian of the phone, (ii) the parties participating in the message or message chain by name (if saved as part of the collection) and mobile number, (iii) the message type (e.g. SMS), (iv) the date and time of the message, (v) the Mobile Folder, if applicable, and (vi) the text of the message. Alternatively, the Parties may produce a conversation in the graphic "chat bubble" format that is

exported using a utility program and is not screenshots taken on the phone. The chat bubble format shall include messages for a period of time or otherwise consolidate a whole or partial conversation.

v. **Production Folder**. Each production of ESI shall include a standalone folder or directory entitled "IMAGES" that contains each TIFF image and native document being produced, which folder or directory may also include subfolders.

vi. **Metadata Load File (.DAT).** Information for all files will be produced in the standard .DAT file format.

> 1. **Bates Numbering.** Each party shall assign a unique identifying number to each image page and each native document. Each party will use a prefix to identify files they produce and shall number files consecutively through this matter.
>
> In the case of confidential materials as defined in the Agreed Confidentiality Order that was entered by the Court on February 20, 2024 (Dkt# 71), or materials redacted in accordance with applicable rules, law or Court order, a designation may be "branded" onto the document's image at a location that does not obliterate or obscure any information from the source document.
>
> 2. **Processing Time Zone setting.** The Parties acknowledge that the custodians of ESI involved in this matter reside and/or work in multiple time zones, including time zones across the international dateline. Accordingly, as to each custodian from whom ESI is collected and produced

by a Party, the Party shall identify in what time zone the custodian resides and/or works.

3. **Metadata.** Each Party, except where producing documents in PDF form according to paragraph g, shall provide the following metadata fields for each file produced to the extent reasonably accessible and available for any documents produced and not unduly burdensome to provide:

**Bates Begin**
**Bates End**
**Bates Begin Attach**
**Bates End Attach**
**Email To**
**Email From**
**Email cc**
**Email bcc**
**Email Subject**
**Confidentiality Designation**
**Redacted** – Yes/[blank]
**All Custodians**
**Author** (Parties acknowledge that the Author field may not actually reflect the author of the document.)
**Document Title**
**File Name**
**File Extension**
**Original Folder Path**
**Date Created** – MM/DD/YYYY format (Parties acknowledge that the Date Created field may not actually reflect the date the file was created, due to the ease of change to that field and the technical definition of the field (e.g., the created date and time reflects the date when the file was created in that particular location on the computer or on the other storage device location))
**Time Created** – (HH:MM) format (Parties acknowledge that the Time Created field may not actually reflect the time the file was created, due to the ease of change to that field and the technical definition of the field (e.g., the created date and time reflects the time when the file was created in that particular location on the computer or on the other storage device location))
**Last Modified Date** – MM/DD/YYYY format
**Last Time Modified** – (HH:MM) format
**Date Sent** – MM/DD/YYYY format
**Time Sent**– (HH:MM) format
**Received Date** – MM/DD/YYYY format
**Received Time** – (HH:MM) format

**File Size**
**MD5 Hash**
**Production Volume Name,** e.g. ABC001
**Text File Path**
**Native File Path**
**Foreign Language –** Yes/[blank]
**Message ID**

** As it relates to the All Custodians metadata field above, the producing Party reserves the right to produce in multiple fields (e.g., Custodian + All Custodian) since the metadata may already be exported and logged as such.

** Same is true with all Date and Time Fields. These fields can be provided in separate fields or be combined into a single field as long as the required information is produced in the load file.

4. Nothing in this Order shall require any Party to create or manufacture data or ESI where it does not already exist. Notwithstanding the foregoing, the Parties shall confer if responsive ESI is stored in a database or database system that can be produced by querying the database for discoverable information, resulting in a report or a reasonably usable and exportable electronic file for review by the requesting Party.

5. Each party shall retain native source docs for all ESI and shall preserve metadata as of time of original production should metadata review be necessary.

b. **Attachments.** Email attachments and embedded files must be mapped to their parent by the Begin Bates number. The "BeginAttach" and "EndAttach" fields shall designate the page ranges for all attachments.

c. **Production of Physical Documents.** Except where produced as documents in PDF form according to subparagraph g., hard copy files shall be converted to a single page TIFF file and produced following the same protocols set forth herein or otherwise agreed to by the Parties. Document metadata should be produced in

.DAT format for paper files, including: bates numbers (doc and attachments) and custodian.

For hard copy files, each page of a document shall be electronically saved as an image file. Hard copy documents shall be physically unitized to maintain the organization of their original paper versions. If a document consists of more than one page, the unitization of the document and any attachments and/or affixed notes shall be maintained as it existed in the original when creating image files.

d. **Duplicates.** Removal of duplicate documents should only be done on exact duplicate documents at the family level (based on MD5 or SHA-1 hash values or near duplicate analysis where documents are 100% textual matches but due to underlying data sources or differences in processing over time the hash values do not match). Attachments should not be eliminated as duplicates for purposes of production, unless the parent e-mail and all attachments are also duplicates. When applying global deduplication, metadata identifying all custodians in possession of each document that is removed as a duplicate must be provided in the All Custodians metadata field subject to any exceptions provided in this Stipulation. Paper documents shall not be eliminated as duplicates of responsive ESI.

e. **Redactions.** The producing Party can redact documents for privilege.

f. **Other Data.** To the extent a response to a non-objectionable discovery request requires production of discoverable ESI contained in a database or other structured data format or otherwise requires sophisticated methods of retrieval or collection, the Parties agree to meet and confer to discuss the specifications for collection, review, and production of such data.

g. **PDF Production.** Notwithstanding the foregoing, a producing Party is permitted to produce documents in PDF format without metadata, as long as the producing Party represents in writing to the requesting Party, upon request from the requesting Party, that the producing Party cannot produce such documents in the formats elsewhere prescribed by this Order because the producing Party is not in possession, custody or control of ESI data that would permit production in a different format. All documents produced in a PDF format shall be Bates stamped by the Parties.

5. **Cooperation:** The Parties shall continue to meet and confer regarding any ESI or other discovery issues as necessary and appropriate. Nothing in this Order shall prevent a party from also searching for and producing documents in another manner reasonable under the circumstances, nor shall it relieve the party of the obligation of producing requested documents or information that are known to the party and reasonably available, regardless of whether they are ESI or contain one or more applicable search terms.

If a requesting Party requests that a producing Party run or consider specific search terms, then the producing Party shall consider those search terms and will communicate which search terms will be used. The Parties will meet and confer regarding the same, to the extent necessary. If search terms are used, the mere fact that a document is hit or captured by the application of such search terms does not mean that such document is necessarily responsive to any propounded discovery request or is otherwise relevant to this litigation. Determinations of discoverability, responsiveness, and privilege shall be made by the producing Party.

6. **Modification:** Any of the Parties may petition the Court at any time to modify the terms of this Order upon a showing of good cause.

Dated:

                            _____

Hon. Beth W. Jantz
United States Magistrate Judge