| | |
|---|---|
| MIDWEST GOODS INC., dba MIDWEST DISTRIBUTION ILLINOIS,<br><br>**Plaintiff,**<br><br>v.<br><br>BREEZE SMOKE LLC,<br><br>**Defendant.** | CASE NO: 1:23-CV-05406<br><br>HONORABLE THOMAS M. DURKIN, PRESIDING<br><br>HONORABLE BETH W. JANTZ, PRESIDING<br><br>JURY TRIAL DEMANDED |
| BREEZE SMOKE LLC,<br><br>**Counterclaim Plaintiff,**<br><br>v.<br><br>MIDWEST GOODS INC., dba MIDWEST DISTRIBUTION ILLINOIS, WISEMAN WHOLESALE, INC., SPEED WHOLESALE, INC., WORLD WHOLESALE, INC., LIGHT VIEW LLC,<br><br>**Counterclaim Defendants.** | |

## JOINT STATUS REPORT OF THE PARTIES

COMES NOW Plaintiff/Counterclaim Defendant Midwest Goods Inc., d/b/a Midwest Distribution Illinois ("Midwest"), Defendant/Counterclaim Plaintiff Breeze Smoke LLC ("Breeze"), Counterclaim Defendants Wiseman Wholesale, Inc. ("Wiseman"), World Wholesale, Inc. ("World"), and Light View LLC ("Light View"), who are the only parties to this action who have entered appearances of counsel to date (the "Parties"), by and through their undersigned attorneys, and pursuant to Magistrate Judge Jantz's Order of April 15, 2024 (Dkt. No. 86) and applicable Rules, hereby state the following:

1

**I.      Midwest's Position Regarding Discovery[1]**

**A.      Midwest And Breeze Have Met-And-Conferred Several Times.**

1.      Midwest's and Breeze's counsel met-and-conferred telephonically on April 11, 2024 for more than an hour to discuss certain discovery disputes raised by the parties in earlier correspondence.

2.      On April 15, 2024, Midwest served its responses and objections to Breeze's second set of production requests (and it served a corrected version of the same the following day, April 16, 2024).

3.      On April 17, 2024, Midwest's counsel sent Breeze's counsel a brief summary of the April 11, 2024 discussions, including follow-up items for each party, and inviting Breeze's counsel to identify any inaccuracies or additions that were needed.

4.      On the same date, Breeze's counsel requested a meet-and-confer regarding Midwest's objections to producing documents responsive to Breeze requests for documents relating to the "SOUTH" vaping device (*i.e.*, Request Nos. 70-79; the "SOUTH Requests"). While to date Breeze has asserted that Midwest's NORTH vape devices infringe Breeze's alleged trade dress and design patent, to date Breeze has not asserted a claim that the SOUTH vape devices infringe either Breeze's alleged trade dress or its design patent (although it has asserted this in communications addressed to a third party Breeze recently has served with a subpoena, which discovery there is a dispute regarding, as discussed below).

---

[1] After Midwest's counsel had begun drafting a proposed joint status report, it received an email from Breeze's counsel at 8:37 PM on Wednesday, May 8, 2024, suggesting that the parties submit a report with Midwest and Breeze each including a section setting forth their respective discovery positions, which is the format that the instant report follows.

5. On April 23, 2024, in follow-up from the April 11, 2024 meet-and-confer, Midwest's counsel sent Breeze's counsel a letter, identifying certain prior art that in the first instance Breeze should address in its supplemental responses to Midwest's interrogatories addressed to Breeze's infringement contentions.

6. On April 24, 2024, Midwest's counsel and Breeze's counsel had a telephone conference to discuss Midwest's objections and responses to the SOUTH Requests, and there was also discussion during the call as to other disputed discovery matters.

7. On April 26, 2024, Breeze's counsel emailed Midwest's counsel and advised, *inter alia*, that Breeze was standing on certain objections raised with respect to requests seeking information about Capital Sales and KMT. Capital Sales and KMT are entities that appear to have material personnel that serve roles for both Breeze and one or both of these other entities, and both Capital Sales and KMT has sold Breeze products, including KMT sales and communications directly with Midwest in the past. The email further indicated that Breeze's counsel could accept subpoenas addressed to Capital Sales and KMT (while noting that they likely would object to producing any documents). Breeze further advised that it had and would collect ESI from only four custodians previously agreed upon (omitting one custodian Midwest had requested be included and who was referenced in the Complaint and Midwest's Rule 26 disclosures), and apparently refusing to provide additional custodial information that Midwest had requested (similar to information that Midwest already had provided to Breeze). Finally, Breeze advised that it would supplement its patent-related interrogatory responses by June 24, 2024 in response to Midwest's letter of April 23, 2024, but limiting its supplements only to its patent claims, not its trade dress claims.

8. Additionally, following up on the April 11, 2024 and April 24, 2024 telephone conferences, on April 26, 2024, Breeze's counsel separately emailed Midwest's counsel to confirm the parties were at an impasse with respect to four categories of information concerning both NORTH and SOUTH vape devices, and asking Midwest's counsel to advise on or before April 30, 2024 as to any further responses regarding the same.

9. On April 30, 2024, Midwest's counsel sent a follow-up letter to Breeze's counsel, responding to the April 26, 2024 email as well as following up on prior communications and discussions. (A copy of Midwest's April 30, 2024 letter is being attached hereto as **Exhibit A** for the Court's reference, which Midwest is attaching because it believes Breeze has mischaracterized the same below.)

10. Thereafter, on May 8, 2024, and in follow-up to the parties' meet-and-confer communications, Midwest served Breeze with supplemented responses to Interrogatory No. 7 and Requests For Production Nos. 34 and 35. Similarly, on May 9, 2024, and in follow-up to the parties' meet-and-confer communications, Midwest served Breeze with a supplemental responses to Interrogatory No. 12.

11. To date, including following the Judge's April 15, 2024 Order (Dkt. No. 86), Breeze has produced no evidence or summaries respecting its sales of the BREEZE PRO products whose trade dress (or allegedly counterpart design patent) is allegedly infringed by the NORTH vape devices, nor has Breeze produced any documents beyond its first production of documents, or supplemented any of its written discovery responses. Further, as regards the approximately 1100 documents that Breeze has produced to date, it would appear that few or no documents have been produced that are responsive to most of Midwest's production requests, including material issues respecting the claimed non-functionality, inherent or acquired distinctiveness, or likely or

actual consumer confusion, as related to Breeze's alleged trade dress (whether the vape or its plastic box packaging), or regarding the inventor of the patent in suit, the assignor, the prior art cited by the U.S. Patent Office, or contentions as legally limited by known prior art, as relates to Breeze's alleged patent in suit.

**B.  ESI Discovery Is Proceeding.**

12.     Midwest's counsel and Breeze's counsel have communicated several times regarding custodians from whom electronically-stored information ("ESI") should be collected, as briefly discussed above.

13.     Currently, Midwest has agreed to collect, review and produce responsive ESI from six custodians: (a) Mudassir Yasin; (b) Umair Yasin; (c) Shamiram Khamis; (d) Muhammed Imran Sadqi; (e) Dominic Lucena; and (f) former employee Zohaib Muhammad. To date, Midwest has collected most of the ESI for each of these custodians, the only exception being cell phones for some of the foregoing custodians, the imaging of which is being coordinated but is logistically challenging given the ongoing need to use the devices in question. Additionally, Midwest has developed a set of search terms to identify potentially responsive documents (from the more than 1.4 million it has collected to date), Midwest has had several discussions with its eDiscovery vendor regarding the same and related search techniques, and Midwest expects that it will proceed to review documents with hits on those search terms and produce responsive, non-privileged documents in the near future (and Midwest also is supplying a copy of its search terms to Breeze so that Breeze can advise as to any issues it has with the same).

14.     Currently, Breeze has agreed to collect, review, and produce responsive ESI from four custodians: (a) Steven Haddad; (b) Mark Faraj; (c) Scott Haddan; and (d) Rafi Kashat. To date, Breeze has not shared the search terms that it intends to use in identifying potentially

responsive documents for these custodians and has not committed to sharing those search terms with Midwest.

**C.**      **Disputed Third-Party Discovery Has Commenced.**

15.      On March 26, 2024, Breeze issued a subpoena to third-party Parkhill Properties LLC d/b/a Vape District located in Strongsville, Ohio ("Vape District"). Breeze's counsel apparently also sent a letter to Vape District contemporaneously, accusing both the NORTH and SOUTH devices of infringing Breeze's alleged trade dress and design patent, and demanding, among other things, that Vape District "immediately cease all marketing, advertising, promotion and sales of the North and South products." (*See* Dkt. No. 93)

16.      On April 19, 2024, Vape District filed a motion to quash and for protective order with respect to Breeze's subpoena. (*See* Dkt. No. 89)

17.      On May 7, 2024, Breeze filed its response to Vape District's motion. (*See* Dkt. No. 93)

18.      Per the Court's Order of April 23, 2024 (*see* Dkt. No. 92), no reply brief is allowed absent further order of Court.

19.      Regardless, in its May 7, 2024 response to the Vape District motion, Breeze makes certain disparaging accusations regarding Midwest's involvement with Vape District and discovery conduct to date that Midwest believes are inaccurate and that Midwest would welcome the opportunity to respond to briefly should the Court so allow and direct.

**D.**      **Midwest Believes Discovery Should Be Phased.**

20.      There is currently a dispute between Midwest and Breeze respecting the need at this juncture for the production of detailed information and documents regarding the identity of and contact information for Midwest's customers and suppliers (as well as the production of

purchase orders, invoices, and related financial documents), and whether the purposes for which Breeze is seeking the production of such information at this juncture are appropriate. (*See also* Ex. A.)

21.     As a result, Midwest intends in the near future to file a motion with the Court requesting that discovery, including discovery addressed to third parties who are customers and/or suppliers, be phased in such a way that such information – which to Midwest appears to be immaterial to the pending preliminary injunction motion or liability issues, but which Midwest believes is highly sensitive information sought by a competitor whose lawyers have expressly advised that they intend to use it to confront customers and suppliers in a manner that may violate the Confidentiality Order in place here, risk inadvertent disclosure, or otherwise cause undue, untimely, and/or irreparable harm – can be produced at a subsequent juncture, after rulings have been made as to the scope and protectable nature, if any, of Breeze's claimed trade dress and the scope of Breeze's design patent (which are rulings that may obviate the need for, or at least narrow the scope, of such information). Nor does Midwest believe that the Court has issued rulings in the past prohibiting or discouraging such phased discovery, and the items Breeze cites below do not support its contentions in this regard. (*See also.* Dkt. No. 88)

## II.     <u>Breeze Smoke's Position Regarding Discovery</u>

22.     On April 5, 2024, Breeze Smoke sent Midwest a letter laying out Midwest's various discovery deficiencies, including the lack of sales data produced and documents related to FDA compliance.  On April 11, 2024, the parties met and conferred telephonically to attempt to work out their various discovery disputes.  Midwest indicated that it would respond by April 26, 2024 as to whether it would produce complete sales and purchase data as well as FDA or other regulatory documents.  On April 24, 2024, the parties again had a telephonic meet and confer to continue to

try and resolve their issues, and at that meet and confer Midwest confirmed that it would not produce additional purchase or sales data and documents or purchasing data and documents for NORTH devices and that it would supplement its discovery responses regarding FDA and product safety documents for NORTH, but did not state that it would produce any such documents.

23. On April 25, 2024, Midwest produced an additional 233 documents, consisting of more alleged prior art, advertisements, apparent samples of early designs for the NORTH vapes, a brief text message string between Midwest and Breeze Smoke, and publicly available articles regarding vaping and the FDA. Midwest did not produce any other purchase or sales information or any documents related to its own FDA compliance. Midwest confirmed this refusal in the April 30, 2024, letter to Breeze Smoke, stating that it believes that production of purchase and sales data and documents should be deferred until after the Court rules on dispositive motions, even though the Court has already determined that Midwest's pending motion to dismiss should not delay discovery and such discovery is relevant to Breeze Smoke's pending motion for a preliminary injunction. Moreover, Midwest supplemented its responses regarding FDA documents on May 8, 2024 (though did not produce documents), but questions and outstanding documents still remain, including related to Midwest's FDA compliance, product testing, and safety.

24. Additionally, in February 2024, Breeze Smoke learned that Midwest was offering a SOUTH product that appears highly similar to the NORTH product, and thus, highly similar to the BREEZE PRO. Therefore, on March 8, 2024, Breeze Smoke issued its Second Requests for Production ("Second Requests") to Midwest, which, in part, requested documents related to the SOUTH product. On March 22, 2024, Breeze Smoke became aware of a TikTok video made by "Nas" of Vape District referring to NORTH and SOUTH products as the "Breeze Killer." On April 15, 2024, Midwest responded to the Second Requests and refused to produce any documents

8

or communications related to SOUTH, claiming they are irrelevant. The parties met telephonically and conferred regarding Midwest's SOUTH objections on April 24, 2024. At the meet and confer, Breeze Smoke explained that the SOUTH Requests were relevant to at least (1) Midwest's attempts to design around the BREEZE PRO; (2) to show the non-functionality of the BREEZE PRO packaging and design; and (3) because retailers were directly comparing SOUTH to the BREEZE PRO calling it the "Breeze Killer." Midwest stood on its objections and refused to produce any purchase or sales data related to SOUTH, any FDA and Product safety information related to SOUTH, any design documents related to SOUTH, and any communications related to SOUTH. In its April 30, 2024, letter, Midwest doubled-down on its objections.

25. Therefore, after these numerous meet and confers and exchange of communications between the parties, Breeze Smoke believes that the parties are at an impasse and intends to move to compel to obtain the following categories of documents:

A. Purchase Data for NORTH and SOUTH

1. Purchase orders to Midwest's supplier(s) for vape pens, packaging, and e-liquids present.
2. Invoices from suppliers for same.
3. Summary purchase data exported from Midwest's inventory or accounting system for same from beginning to present, showing at least source company location and contact information, SKU, flavor, quantity, date, unit and total price.
4. Documents sufficient to show identity / source of pens, packaging, and e-liquid if not shown on purchase orders.

B. Sales Data for NORTH and SOUTH

1. Purchase orders from Midwest's customers for vape pens.
2. Invoices to Midwest's customers for same.
3. Summary sales data exported from Midwest's inventory or accounting system for same from beginning to present, showing at least purchaser company location and contact information, SKU, flavor, quantity, date, unit and total price.

C. FDA and Product Safety

1. Any PMTAs submitted to FDA for any NORTH or SOUTH products

2. Documents showing testing of e-liquid or filled vape pen for consistency / content / safety
3. Documents related to Midwest's decision to seek or not seek FDA approval or submit PMTAs for NORTH and SOUTH products.

D. Other Product Data

1. Documents related to the design for SOUTH pen / packaging, including specifically those referencing NORTH or Breeze Smoke products in any way.
2. All communications with Midwest's supplier(s) and customers related to the SOUTH product, specifically those related to the product's design and flavors, and those referencing NORTH or Breeze Smoke products in any way.

26. Breeze Smoke continues its document collection, review, and production. Breeze Smoke disagrees with Midwest's characterization of its document production and notes that it has produced substantially more documents than Midwest. Breeze Smoke has produced 1,064 documents comprising 5,503 pages related to Breeze Smoke's advertisements and marketing material, product and packaging design, FDA compliance, consumer recognition, and trade show attendance, which are responsive to Midwest's requests. Breeze Smoke plans to produce additional documents in the coming weeks and will continue to make rolling productions. Breeze Smoke has also collected cell phone data. Breeze Smoke is very surprised to learn now for the first time that Midwest has not completed its cell phone collection. This is crucial evidence that Breeze Smoke requested several months ago and needs to be collected and produced as soon as possible.

27. Breeze Smoke has served a subpoena on third party Vape District for a few months' of its purchase and sales records for Midwest's NORTH and SOUTH brand vape pens and its communications with Midwest and its customers related to marketing those vape pens in order to ensure a full and complete record in this case. Vape District moved to quash that subpoena on April 19, 2024 (Dkt. No. 90), and Breeze Smoke filed its response on May 7, 2024 (Dkt. No. 93) Breeze Smoke disagrees that Midwest should be able to submit a brief in response to Breeze Smoke's subpoena response. As stated in Breeze Smoke's response, Midwest is funding Vape

District's subpoena opposition and Midwest's attorney is representing Vape District. Midwest has thus already had plenty to say about the subpoena to Vape District.

28. Breeze Smoke disagrees that discovery in this case should be phased. Midwest has repeatedly tried to stay discovery in this case, including by seeking a stay while its motion to dismiss is pending. This Court has already considered and rejected Midwest's request for a stay of discovery (*see, e.g.*, Dkt. Nos. 47, 59), and Midwest's continued plea for the Court to stay or even put off highly-relevant discovery that Midwest clearly does not want to provide is improper. Midwest initiated this case as the plaintiff, and must proceed with fulfilling its discovery obligations immediately.

Dated: May 9, 2024

Respectfully submitted,

<table>
<tr><td>

/s/    Drew G.A. Peel
Drew G.A. Peel
**RACHLIS DUFF & PEEL, LLC**
542 South Dearborn Street, Suite 900
Chicago, IL 60605
(312) 275-0337 (direct)
dpeel@rdaplaw.net

Stephen L. Levine (admitted *pro hac vice*)
Kelli M. Hinson (admitted *pro hac vice*)
Mark C. Howland (admitted *pro hac vice*)
**CARRINGTON, COLEMAN, SLOMAN & BLUMENTHAL, L.L.P.**
901 Main Street, Suite 5500
Dallas, TX  75202
(214) 855-3000 (gen.)
slevine@ccsb.com
khinson@ccsb.com
mhowland@ccsb.com

*Counsel for Midwest Goods Inc., dba Midwest Distribution Illinois*

</td><td>

/s/    Vikram A. Mathrani
Vikram A. Mathrani
William B. Berndt
Jenna E. Saunders
David J. Roulo
**HONIGMAN LLP**
155 N Upper Wacker Dr. Ste 3100
Chicago, IL 60606-1734
vmathrani@honigman.com
wberndt@honigman.com
jsaunders@honigman.com
droulo@honigman.com

Jeffrey K. Lamb
**HONIGMAN LLP**
660 Woodward Avenue, Ste 2290
Detroit, MI 48226-3506
jlamb@honigman.com

*Counsel for Breeze Smoke LLC*

/s/    Anthony Scarpiniti
Mason S Cole
Anthony Scarpiniti
**COLE SADKIN, LLC**
1652 W Belmont Ave, Ste 1
Chicago, IL 60657
mcole@colesadkin.com

*Counsel for Wiseman Wholesale, Inc., Worldwide Wholesale, Inc. & Light View, LLC*

</td></tr>
</table>

# Rachlis Duff & Peel, LLC

542 SOUTH DEARBORN STREET, SUITE 900
CHICAGO, ILLINOIS 60605

(312) 733-3950
FACSIMILE (312) 733-3952

*www.rdaplaw.net*

Drew G.A. Peel
(312) 275-0337
dpeel@rdaplaw.net

April 30, 2024

<u>By Email:</u>

Jeffery Lamb
HONIGMAN LLP
660 Woodward Ave., Suite 2290
Detroit, MI. 48226
jlamb@honigman.com

Vikram Mathrani
William Berndt
Jenna Saunders
David Roulo
HONIGMAN LLP
155 N. Upper Wacker Drive, Suite 3100
Chicago, IL 60606
mhyde@honigman.com
vmathrani@honigman.com
wberndt@honigman.com
jsaunders@honigman.com
droulo@honigman.com

Dear Counsel:

On behalf of my client, Plaintiff/Counterclaim Defendant Midwest Goods Inc. dba Midwest Distribution Illinois ("Midwest"), I write in response to Mr. Mathrani's email of April 26, 2024, and in further follow-up to the parties' communications relating to certain discovery issues. Please accept this letter as Midwest's continuing effort to confer with Breeze Smoke, LLC ("Breeze") in a good-faith attempt to resolve disputes regarding discovery, consistent with the applicable requirements of: (1) the Federal Rules of Civil Procedure, including, but not limited to, Rules 26, 33, 34, and 37; (2) the Local Rules for the United States District Court of the Northern District of Illinois ("Local Rules"), including, but not limited to, Local Rule 37.2; and (3) minute

Exhibit

A

and standing orders of United States District Court Judge Thomas Durkin and United States Magistrate Judge Beth W. Jantz.

For ease of reference, we will address the categories of documents and data referenced in Mr. Mathrani's April 26, 2024 email in the order in which they appear.

Before moving to that discussion, however, we believe that insofar as Breeze's purpose for demanding production of granular sales data and documents, and related, highly-sensitive competitive information, is addressed to demonstrating future entitlement to damages or other permanent or provisional remedies, then we believe these demands are premature. *See, e.g.*, *Murata Mfg. Co., Ltd. v. Bel Fuse, Ltd.*, 2004 WL 1194740 (N.D. Ill. 2004) (denying patent holder's motion to compel production of alleged infringer's customer lists due to potential competitive harm to alleged infringer's business); *Murata v. Bel Fuse, Ltd.*, 234 F.R.D. 175 (N.D. Ill. 2006) (refusing to lift protective order to permit discovery of infringer's customer lists notwithstanding assertions of changed circumstances). Indeed, please be advised that in light of these concerns, Midwest is considering moving for the staging of discovery, prioritizing in the near term discovery addressed to liability issues, while deferring to a later juncture (*e.g.*, after the patent in suit has been construed, the trade dress defined, and/or dispositive motions have been decided) discovery addressed to damages and remedy issues. Nor do we believe Judge Durkin or Jantz has foreclosed such staging of discovery in a case like this one, where discovery may be misused as an instrument to compete unfairly, and where, regardless, there is a risk of inadvertent disclosure of highly-sensitive competitive information.

A.  **Documents/Data Regarding Midwest's Suppliers/Vendors.**

In terms of the NORTH Products, Breeze's Interrogatory No. 2 asked Midwest to "[I]dentify all sources from which Midwest has purchased Accused Products" (which "Accused Products" were defined as the NORTH product referenced in Breeze's counterclaim), and, while Midwest objected on relevance grounds, it then proceeded to identify Midwest's two sources for the "Accused Products." Similarly, Breeze Production Request No. 11 asked Midwest to produce "[D]ocuments sufficient to identify each of Your source(s) for any of the Accused Products," and, in response, Midwest agreed to "produce documents sufficient to identify its source(s) for any of the Accused Products." In addition, Midwest has agreed to produce: (i) "any written agreements between Midwest Goods and any other party for the manufacturing … of the Accused Products" (Resp. to Req. No. 13); and (ii) "documents sufficient to disclose Accused Product volumes supplied by its supplier and sold to its customer" (Resp. to Req. No. 25).

In terms of the SOUTH Products, Breeze's Second Set of Production Requests asked for the production of, *inter alia*: (i) "All documents or communications referring or relating to the source of the SOUTH Vapes" (Request No. 77); and (ii) "All purchase and sales records relating to the SOUTH vapes, including but not limited to import records and invoices from Your suppliers and to Your customers" (Request No. 79). In response, Midwest objected to these and related Requests respecting the SOUTH vapes on several grounds, including that they were not addressed

to documents that are relevant to the claims and defenses currently at issue in the lawsuit, given that Breeze has not, to date, asserted that the SOUTH vapes infringe its purported trade dress or design patent.

At Breeze's request, its counsel and Midwest's counsel spoke by telephone on April 24, 2024 regarding, *inter alia*, Midwest's objections to the production of documents responsive to Breeze's Second Set Of Production Requests that were addressed to SOUTH vapes (*i.e.*, Request Nos. 70-79; hereafter, the "SOUTH Requests"). During the call, Breeze's counsel advised that they believed such documents were relevant to "design around" issues, given Breeze's belief that the SOUTH vapes were an attempt to avoid the Breeze trade dress and design patent through design changes, although Breeze did not believe that those efforts were successful and was considering asserting claims that the SOUTH vapes also infringed Breeze's trade dress and/or design patent. Midwest's counsel indicated that it would consider any case law Breeze counsel wished to provide establishing its entitlement to discovery addressed to such "design around" issues, but Breeze's counsel indicated that it would instead brief the issue to the Court. Midwest's counsel also indicated that even if such "design around" issues were relevant, then it seemed like the scope of Midwest's SOUTH Requests was overly broad and that such "design around" issues already may be encompassed by the production of documents responsive to other requests Breeze had propounded relating to the NORTH (Accused) Products.[1]

On April 26, 2024, Mr. Mathrani's email indicated that Breeze understood that Midwest was refusing to produce the following documents for both the NORTH and SOUTH Products, and that therefore disputes respecting the production of these documents were "ripe for adjudication" (presumably by means of a Breeze motion to compel):

1. Purchase orders to Midwest's supplier(s) for vape pens, packaging, and e-liquids present.
2. Invoices from suppliers for the same.
3. Summary purchase data exported from Midwest's inventory or accounting system for the same from beginning to present, showing at least source company location and contact information, SKU, flavor, quantity, date, unit and total price.
4. Documents sufficient to show identity / source of pens, packaging, and e-liquid if not shown on purchase orders.

It is ***not*** apparent to Midwest that the production of any of the aforementioned documents for either the NORTH or SOUTH Products would be relevant to any "design around" issues

---

[1] *See, e.g.*, Resp. to Req. No. 8 (subject to objections, "Midwest will produce any non-privileged documents and communications it is able to locate after a reasonable search … sufficient to show any non-privileged design efforts taken to avoid alleged infringement of the purported BREEZE PRO Packaging Trade Dress … or the purported BREEZE Product Design Trade Dress…."

currently present in the existing lawsuit, nor does Midwest believe that any "design around" issues could warrant discovery into the SOUTH Products more generally at this juncture. Nor is it apparent that any of the aforementioned documents has any relevance to Breeze's pending preliminary injunction motion or to arguments for a permanent injunction. Moreover, it is not proper to propound discovery for the purposes of a fishing expedition, to potentially find new and different as yet unpled claims to assert; rather, discovery is limited to requests for documents and information that are relevant to pled claims and defenses. *See, e.g.*, *Sirazi v. Panda Express, Inc.*, 2009 WL 4232693, at \*4 (N.D. Ill. Nov. 24, 2009) ("Indeed, the Seventh Circuit has often said that discovery is not to be used as a fishing expedition.") (internal quotation marks omitted; collecting cases).

**Notwithstanding the foregoing, if Breeze can provide an explanation as to why such documents have any relevance to the pending preliminary injunction motion or liability issues, then Midwest may consider producing additional documents such as purchase orders and invoices involving the identified suppliers. If, however, the only relevance pertains to remedies, then, per the discussion above, we think such discovery should be deferred at this juncture. Moreover, Midwest has already agreed to produce non-privileged documents responsive to Breeze's requests addressed to potential "design around" issues with respect to the NORTH Products (*i.e.*, Request No. 8), and will produce any such documents in due course.**

## B.    Documents/Data Regarding Midwest's Sales

As to the NORTH Products, Breeze's Interrogatory No. 8 asked Midwest to "State, on a month-by-month basis, Midwest's total sales of the Accused Products from date of first sale to the present, including units sold, monetary revenue, and profits derived from the sales." Midwest objected to this interrogatory on several grounds, including concerns regarding Breeze's prior tortious conduct, protecting Midwest's supply chain from harassment, and relevance and proportionality, but, subject to those objections, Midwest stated that it "will produce documents pursuant to Federal Rule of Civil Procedure 33(d) from which Midwest Goods' total sales of the Accused Products, including units sold, can be ascertained." And, consistent with this response, Midwest produced a summary of NORTH Product sales, indicating unit numbers, revenues, and broken out by time period. (*See* MIDWEST003619) And while Breeze document production requests asked for the production of "All documents and communications related or referring to the … sale … of the Accused Products" (Request No. 4) or the "sale … of the Accused Product Packaging" (Request No. 5), Midwest objected to these Requests on overbreadth and other grounds, while inviting further meet-and-confer discussions regarding the same.

Page 5

On April 5, 2024, Breeze sent a letter to Midwest, complaining of certain purported deficiencies with respect to Midwest's responses and objections to Breeze's first set of interrogatories and first set of production requests, but none of the aforementioned responses was identified in that letter as problematic.

On April 11, 2024, counsel for Breeze and Midwest discussed discovery issues raised by each party, and during that call, counsel for Breeze asserted that they should receive far more granular sales data than had been provided to date, including purchase orders, invoices, and other such documents. When Midwest asked why the production of such documents and information was required, Breeze responded that it needed this information to pursue other alleged infringers of its purported trade dress and design patent. Midwest's counsel thereafter expressed concern that insofar as Breeze intended to use documents produced in discovery and subject to the Confidentiality Order that had been stamped HIGHLY CONFIDENTIAL or CONFIDENTIAL for the purpose of pursuing other putative infringers, then that would appear to violate restrictions imposed by the Confidentiality Order entered in this case. Nevertheless, Midwest advised that it would further consider whether it would supply additional sales information and data at this juncture and report back on or before April 26, 2024.

As to the SOUTH Products, on April 15, 2024, Midwest served its responses and objections to Breeze's second set of production requests.[2] Breeze asked for "All documents or communications related to or referring to the … sale … of the SOUTH Vapes" (Request No. 70) and "the … sale … of the packaging of the SOUTH Vapes" (Request No. 71), as well as "All documents or communications referring to or relating to the sale of the SOUTH vapes, including but not limited to, invoices, purchase orders, sales receipts, and sales summaries" (Request No. 78). Midwest objected to each of these Requests on the grounds that they sought documents pertaining to SOUTH Products that were not relevant to the pled claims and defenses currently at issue in the lawsuit.

During a subsequent call of Breeze's and Midwest's counsel on April 24, 2024, Breeze again inquired with respect to sales data and information, and Midwest's counsel advised that Midwest was willing to address Breeze's request respecting geographic scope information[3] by stipulating that its sales of the NORTH Product had been nationwide but did not believe additional information, such as customer invoices, purchase orders, etc. was essential at this juncture.

On April 26, 2024, Mr. Mathrani's email identified the following sales documents and data as those that Breeze intended to file a motion to compel regarding if Breeze did not agree to produce the same:

---

[2] Midwest served corrected responses and objections on April 16, 2024, but none of the corrections pertained to the requests at issue here.

[3] Notably, at the March 7, 2024 hearing before Magistrate Judge Jantz, Breeze's lead counsel indicated, among other things, that knowing whether the sales at issue were "nationwide" was important in terms of proving harm to Breeze's goodwill and the competitive impact.

1. Purchase orders from Midwest's customers for vape pens.
2. Invoices to Midwest's customers for same.
3. Summary sales data exported from Midwest's inventory or accounting system for same from beginning to present, showing at least purchaser company location and contact information, SKU, flavor, quantity, date, unit and total price.

Given the current procedural status and stage of discovery, the only reason for Breeze insisting on the production of the foregoing documents at this juncture appears to be Breeze's desire to identify other targets of litigation with respect to claims of infringing its purported trade dress and design patent (or using the threat of the same for settlement leverage). However, as noted above, applicable rules do not sanction the use of discovery for such "fishing expeditions," nor do we believe the Confidentiality Order in place in this case would permit Breeze to use information gleaned from documents Midwest produced that are designated as CONFIDENTIAL or HIGHLY CONFIDENTIAL to pursue third parties. Moreover, Midwest has a legitimate concern that Breeze's actions in this regard are intended to tortiously interfere with Midwest's existing and expected business relationships with its customers, and thus the production of such documents would merely compound matters. *See also Murata Mfg. Co., supra*.

**Nevertheless, in an effort to compromise, Midwest stands by its proposal to stipulate that the sales information it has provided is for sales nationwide.**

**C.** **Documents/Data Regarding FDA & Product Safety**

As to the NORTH Products, Breeze Interrogatory No. 7 asks Midwest to "Identify all Premarket Tobacco Applications [PMTAs] Midwest has submitted to the FDA for the Accused Products." In response, Midwest objected that the information sought by this interrogatory is not relevant to the claims and defenses at issue. Further, Breeze Interrogatory No. 12 asks Midwest to "Identify all complaints, concerns, or other negative customer feedback that Midwest has received relating to Midwest's offer and sale of the Accused Products." In response, Midwest responded that it had no responsive information, but its investigation was ongoing and it would supplement if and when appropriate. In Breeze Request for Production No. 34 it asked for the production of "All documents and communications related or referring to complying with FDA regulations regarding the sale of the Accused Products, including but not limited to, any Premarket Tobacco Applications." In response, Midwest objected on relevance and other grounds. In Breeze Request for Production No. 35 it asked for the production of "All documents and communications with the FDA or any other state or federal regulator related or referring to the Accused Products." In response, Midwest once again objected on relevance and other grounds. And, to our knowledge, Breeze has not propounded any document production requests like Nos. 34 and 35 that are addressed to SOUTH Products.

On April 5, 2024, Breeze wrote Midwest a letter complaining about Midwest's refusal to produce documents responsive to Requests Nos. 34 and 35 and information responsive to

Interrogatory No. 7, asserting that this information was relevant to the "public harm" factor put at issue by Breeze's pending motion for preliminary injunction.

On April 11, 2024, counsel for Breeze and Midwest spoke by telephone, and Breeze's counsel again reiterated their belief that the PMTA and FDA documents and information sought were relevant to their motion for preliminary injunction, and counsel for Midwest said they would further consider their position in this regard and report back in the near future.

On April 24, 2024, counsel for Breeze and Midwest again spoke by telephone, and again reiterated the demand for PMTA and FDA documents, this time for the SOUTH Products as well.

On April 26, 2024, Mr. Mathrani's email identified the following documents as those for which it would move to compel if Midwest did not agree to produce the same:

1.  Any PMTAs submitted to FDA for any NORTH or SOUTH products
2.  Documents showing testing of e-liquid or filled vape pen for consistency / content / safety
3.  Documents related to Midwest's decision to seek or not seek FDA approval or submit PMTAs for NORTH and SOUTH Products.

Notwithstanding the foregoing, Breeze still has **_not_** identified any basis for discovery into these subjects as they pertain to SOUTH Products (which are not part of the pending case or preliminary injunction motion), or why such inquiries, clearly directed to *utilitarian* aspects of these vapes, have any relevance to Breeze claims for SOUTH (or NORTH) Products, which are legally confined to external appearances and ornamentality. Midwest believes that Breeze does not have a good-faith basis for currently demanding the production of the same – which is why its most recent set of production requests did not include a specific request for the same. Accordingly, Midwest stands on its objections with respect to the request for any of the aforementioned documents addressed to the SOUTH Products.

**As to the NORTH Product, in an effort to compromise, and without admitting that any such information is relevant to the pending preliminary injunction motion or otherwise, Midwest will: (i) supplement its Responses to Breeze Interrogatory No. 7, and mark them HIGHLY CONFIDENTIAL; and (ii) supplement its Responses to Breeze Interrogatory No. 12, mark them HIGHLY CONFIDENTIAL, and indicate in its supplement that Midwest will produce documents respecting any health and safety complaints or issues that have arisen with respect to the NORTH Products, although currently, Midwest does not believe any such documents exist although its investigation is continuing. Finally, as to its responses to Breeze Production Requests No. 34 and 35, Midwest will supplement its responses to indicate that it will produce any responsive, non-privileged documents. Further, Midwest will supplement these discovery responses on or before May 6, 2024.**

### D.    Documents/Data Regarding Other Product Data

Breeze Production Request No. 70 asks for "All documents or communications related or referring to the … design … of the SOUTH Vapes," and Request No 71 asks for "All documents or communications related or referring to the … design … of the packaging of the SOUTH Vapes." In response, Midwest objected to both Requests, *inter alia*, the grounds that they sought documents that were not relevant to the pled claims and defenses currently at issue in the lawsuit.

On April 24, 2024, counsel for Breeze and Midwest spoke further by phone, and again, the only justification[4] for propounding discovery addressed to SOUTH Products that was offered by Breeze was that it somehow was relevant to "design around" issues, although counsel for Breeze was unwilling or unable to articulate how such "design around" evidence was relevant and/or admissible with respect to any claim or defense in this case and was unwilling to provide any case law for such proposition.

On April 26, 2024, Mr. Mathrani's email identified the following documents as those for which it would move to compel if Midwest did not agree to produce the same:

1.    Documents related to the design for SOUTH pen / packaging, including specifically those referencing NORTH or Breeze Smoke Products in any way.
2.    All communications with Midwest's supplier(s) and customers related to the SOUTH product, specifically those related to the product's design and flavors, and those referencing NORTH or Breeze Smoke products in any way.

Once again, these requests on their face are not specifically focused on any "design around" issues to Midwest's knowledge. As explained during the parties' meet-and-confer, we are willing to reconsider our position on discovery of certain information relating to SOUTH Products if Breeze can provide authority for the proposition that such requests are reasonably calculated to lead to the discovery of relevant, admissible evidence. Moreover, as set forth above, Midwest already has agreed to produce any non-privileged documents respecting efforts to avoid infringement that would include any "design around" efforts involving the NORTH Products.

*    *    *

We hope that the foregoing is sufficient to resolve the parties' disputes respecting the SOUTH Products and other matters. If not, we are confident that the Court will find our positions well-supported, reasonable, and appropriate here.

---

[4] Breeze counsel also mentioned that somehow the SOUTH vape discovery would bear on the issue of functionality, but upon being asked to explain such a position by Midwest counsel, Breeze counsel had no substantive response.

Page 9

Best regards,

_Drew G.A. Peel_

*One of Midwest's Counsel*

cc. See attached service list