**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| MIDWEST GOODS INC. d/b/a MIDWEST DISTRIBUTION ILLINOIS, | |
| Plaintiff, | |
| v. | |
| BREEZE SMOKE LLC, | No. 23 C 5406 |
| Defendant. | Judge Thomas M. Durkin |
| BREEZE SMOKE LLC, | |
| Counter Plaintiff, | |
| v. | |
| MIDWEST GOODS INC. d/b/a MIDWEST DISTRIBUTION ILLINOIS; WISEMAN WHOLESALE, INC.; SPEED WHOLESALE, INC.; WORLD WHOLESALE, INC.; and LIGHT VIEW LLC, | |
| Counter Defendants. | |

**MEMORANDUM OPINION AND ORDER**

Midwest Goods Inc. filed this lawsuit seeking a declaratory judgment that Breeze Smoke LLC does not own a protectable trade dress interest in its vape pen product the "Breeze Pro." In response, Breeze Smoke filed counterclaims that Midwest's vape pen product (which is trademarked "North") infringes Breeze Smoke's design patent and trade dress rights. Breeze Smoke then filed a motion for a preliminary injunction under 15 U.S.C. § 1116(a) and 35 U.S.C. § 283, and Midwest

moved to dismiss Breeze Smoke's counterclaims for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Both motions are denied.

## Background

Here are the relevant products:



Here is Breeze Smoke's design patent compared to Midwest's product:



And here is the prior art identified by Midwest, compared against Breeze Smoke's design patent in the lower right box:



## Analysis

### I.  Motion to Dismiss

A Rule 12(b)(6) motion challenges the "sufficiency of the complaint." *Gunn v. Cont'l Cas. Co.*, 968 F.3d 802, 806 (7th Cir. 2020). A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), sufficient to provide defendant with "fair notice" of the claim and the basis for it. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "detailed factual allegations" are not required, "labels and conclusions, and a formulaic recitation of

3

the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "Facial plausibility exists 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Thomas v. Neenah Joint Sch. Dist.*, 74 F.4th 521, 523 (7th Cir. 2023) (quoting *Iqbal*, 556 U.S. at 678). In applying this standard, the Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the non-moving party. *See Hernandez v. Ill. Inst. of Tech.*, 63 F.4th 661, 666 (7th Cir. 2023).

### A.     Trade Dress Claim

"To plead a claim of trade dress infringement involving the overall appearance of a product, a plaintiff must [first] offer a precise expression of the character and scope of the claimed trade dress." *APP Grp. (Canada) Inc. v. Rudsak USA Inc.*, 2024 WL 89120, at *1 (2d Cir. Jan. 9, 2024). Having alleged a sufficiently precise trade dress claim, a plaintiff must then allege that its trade dress: "(1) is nonfunctional; (2) is either inherently distinctive or has acquired a secondary meaning; and (3) is likely to be confused with [the competing trade dress] by members of the consuming public." *One Indus., LLC v. Jim O'Neal Distrib., Inc.*, 578 F.3d 1154, 1166 (9th Cir. 2009); *see also Computer Care v. Serv. Sys. Enters., Inc.*, 982 F.2d 1063, 1067-68 (7th Cir. 1992) ("In order to prove trade dress infringement, the plaintiff must establish that: (1) its trade dress is 'inherently distinctive' or has acquired 'secondary meaning'; (2) the similarity of the defendant's trade dress to that of the plaintiff creates a 'likelihood of

confusion' on the part of consumers; and (3) the plaintiff's trade dress is "non-functional.").

Both product packaging and product design can be protectable trade dress. However, "a product's design is distinctive, and therefore protectible, only upon a showing of secondary meaning." *Wal-Mart Stores, Inc. v. Samara Bros.*, 529 U.S. 205, 216 (2000).

### 1. Expression

Midwest acknowledges that Breeze Smoke claims protectable trade dress in both its product's packaging and design. *See* R. 58 at 5. Yet, Midwest argues that Breeze Smoke's product "is not plausibly separable into two trade dresses," because the product's box is transparent plastic such that the product's design can be seen through the packaging and thus forms "a singular trade dress" with the packaging. *Id.*

Midwest has cited no authority that the use of transparent packaging collapses the trade dress analysis into a "singular trade dress," even though such analysis is customarily separated into packaging or product design. There is a categorial difference between a product's packaging and its design. And it is not uncommon for packaging to be partially transparent to display the product. Moreover, as Midwest concedes, Breeze Smoke has pled two separate trade dresses. Perhaps ultimate factual analysis will require a finding the Breeze Smoke has a "singular trade dress" as Midwest argues. But that is not a basis to find that Breeze Smoke's allegation of two separate trade dress is not plausible.

### 2. Distinctive Packaging

"In order to be inherently distinctive, the trade dress must be either arbitrary or suggestive, rather than generic or descriptive." *Computer Care*, 982 F.2d at 1069. The Seventh Circuit has explained that a "district court's determination that a plaintiff's trade dress is inherently [distinctive] is a finding of fact," *id.*, and as such is not generally amenable to dismissal on the pleadings.

This case is no exception. Breeze Smoke claims that its transparent plastic box packaging, with a wrap-around cardboard sleeve, displaying certain text and trademarks on the sleeve, is arbitrary and therefore distinctive. A plastic box with a cardboard wrapping is not uncommon. So, at that general level of description, Breeze Smoke's packaging might be described as generic. But such packaging also is not descriptive of the vape pen product. A vape pen could be packaged in any number of ways, so the transparent plastic box with a cardboard wrapping is plausibly arbitrary. Even this brief analysis of the arguments on both sides reveals why discovery is necessary to resolve these factual disputes.

Midwest cites two cases where courts granted motions to dismiss trade dress claims as not plausible. But those cases are readily distinguishable. One concerned the layout of a restaurant, which is too far afield from the trade dress of a consumer product. *See* R. 58 at 9 (citing *Plum Markets, LLC v. Compass Group USA, Inc.*, 2021 WL 323791, at *2 (N.D. Ill. Feb. 1, 2021)). In the other case, the plaintiff failed to even attach a photo of the alleged trade dress leaving the court at a loss regarding what trade dress the plaintiff was claiming. *See* R. 58 at 9 (citing *Mighty Deer Lick,*

*Inc. v. Morton Salt, Inc.*, 2020 WL 635904, at *8 (N.D. Ill. Feb. 11, 2020)). Neither of these cases suggest that Breeze Smoke's claim of distinctive trade dress is not plausible. The same is true for the case Midwest cites denying a preliminary injunction on a trade dress claim. *See* R. 58 at 10 (citing *Turtle Wax, Inc. v. First Brands Corp.*, 781 F. Supp. 1314, 1318 (N.D. Ill. 1991)). The higher standard for a preliminary injunction means that case has little relevance to the plausibility of Breeze Smoke's claims.

Midwest also argues that Breeze Smoke's packaging is too similar to the trade dresses of other competitors that pre-existed Breeze Smoke's trade dress:



| BS Product | (U.S. Patent No. D891,691; Compl. ¶¶ 53-55) | Pre-August 2021 archive |
|---|---|---|

R. 58 at 8. Midwest argues that the Court can make a finding regarding distinctiveness as a matter of law by reviewing the photos of these products and packaging. Midwest's argument may have merit, but Breeze Smoke is not obligated to address it at the pleading stage. Breeze Smoke has a right to develop a record through discovery regarding the packaging Midwest cites, as well as that of other competing products.

7

"Distinctiveness" is a question of fact made with reference to the competing products on the market. Midwest has identified products that appear favorable to its argument. But the ultimate significance of the product to the distinctiveness of Breeze Smoke's product's packaging trade dress is better analyzed in light of a full factual record after discovery.

### 3.  Distinctive Design

As mentioned, a product design can only be distinctive if it has acquired secondary meaning. "Secondary meaning is a mental association in buyers' minds between the alleged mark and a single source of the product." *Spraying Sys. Co. v. Delavan, Inc.*, 975 F.2d 387, 393 (7th Cir. 1992). Secondary meaning is generally established by evidence such as "direct consumer testimony, consumer surveys, length and manner of use, amount and manner of advertising, volume of sales, place in the market and proof of intentional copying." *Id*.

Here, Breeze Smoke alleges that it makes significant advertising expenditures and that its competitors (both Midwest and others) intentionally copy its design. *See* R. 63 at 10 (citing the complaint and associated exhibits). These allegations indicate that Breeze Smoke is a significant player in the vape pen market, such that its competitors copy its designs, and consumers reflexively compare new vape pen products to Breeze Smoke's product. These allegations are sufficient to plausibly allege that Breeze Smoke's product design has achieved secondary meaning.

Midwest argues that these allegations do not in fact establish secondary meaning, by comparing Breeze Smoke's design to other products on the market. *See*

R. 67 at 5-6. But like the Court's discussion of "distinctiveness," this sort of analysis is not appropriate at the pleading stage. Perhaps the product designs Midwest highlights will be the only evidence in the record after discovery. But Breeze Smoke is not obligated to present all of its favorable evidence at the pleading stage. The question is, rather, whether Breeze Smoke's allegations plausibly demonstrate secondary meaning, and plausibility is a relatively low bar. Having established a plausible claim, Breeze Smoke is entitled to the opportunity to take discovery and present the Court with additional facts and testimony relevant to Midwest's arguments concerning the similarities of Breeze Smoke's design to preexisting products.

### 4. Functionality

Midwest argues that Breeze Smoke's packaging and design are functional. "A product feature is considered functional and is ineligible for [Lanham Act] protection if it is essential to the use or purpose of the article or if it affects the cost or quality of the article." *Flexible Steel Lacing Co. v. Conveyor Accessories, Inc.*, 955 F.3d 632, 644 (7th Cir. 2020). Like "distinctiveness" and "secondary meaning," "[f]unctionality is a factual question." *Id.* at 643. However, "the bar for functionality is so low that it can often be decided as a matter of law." *Id.* Nevertheless, a decision as a matter of law generally comes at summary judgment on the basis of facts revealed in discovery. *See id.* (the holding that "functionality" can be decided as a matter of law was made by the Seventh Circuit in affirming a summary judgment decision).

With respect to Breeze Smoke's packaging, Midwest argues that a plastic box wrapped in cardboard is the epitome of functionality, asking the rhetorical question, "how could a rectangular clear plastic box package not be . . . utilitarian?" R. 58 at 6. But the question is not whether the packaging has a function, because all packaging performs a function. The question is whether the particular form of packaging is essential or necessary to the product, and Breeze Smoke alleges that its choice of packaging is entirely arbitrary and therefore distinct. To the extent Midwest argues otherwise, resolution of that dispute requires discovery regarding the product, the packaging, and the market of competing products.

Whether the design of Breeze Smoke's vape pen includes any non-functional aspects is a closer call. Midwest points out that all vape pens appear to be designed with an oblong rectangular body and a rounded mouthpiece, both necessary to a vape pen's function. But Breeze Smoke identifies more detailed aspects of its design that plausibly do not contribute to its function. *See* R. 63 at 3 (e.g., rounded corners, flat bottom). Whether these details are functional and whether they are sufficiently distinctive and significant to constitute protectable trade dress, can only be decided with additional factual investigation into the product's function and the designs of competing products.

Midwest encourages the Court to undertake that analysis on this motion with reference to the product designs Midwest has attached to its complaint and its motion. Midwest argues that the Court should take judicial notice of the documents showing these designs. *See* R. 58 at 8. But as the Court explained above, Breeze

10

Smoke is not under any obligation to account for this information in its pleadings. Midwest has cited no authority establishing such an obligation. Rather, trade dress (and design patent) cases often involve expert analysis of the product and markets, which assists the Court in understanding the relevant elements, including functionality. Breeze Smoke is not obligated to produce such evidence at this stage. Instead, as long as its allegations are plausible—and, as discussed, Breeze Smoke has plausibly alleged package and product design details that are plausibly non-functional—it should have the opportunity to produce additional evidence at a later stage of the case.

### 5.   Confusion

"Likelihood of confusion" is the last element of a trade dress claim. The Seventh Circuit has explained that "[i]n determining likelihood of confusion, [a court should consider] the type of trademark in issue, the similarity of the designs and the products, the identity of retail outlets and purchasers, identity of advertising media utilized, any evidence of actual confusion, and whether [the defendant] intends to pass off its product as that of [the plaintiff]." *AM Gen. Corp. v. DaimlerChrysler Corp.*, 311 F.3d 796, 805 (7th Cir. 2002).

Midwest argues that where, as here, "the brand name is prominently stressed in the label, there is not likely to be any confusion as to the source, which is the essence of trademark infringement." R. 58 at 11 (quoting *Ziebert Int'l Corp. v. After Market Assoc., Inc.*, 802 F.2d 220, 227 (7th Cir. 1986)). Perhaps this is true. But Breeze Smoke has clearly articulated the similarities between its product packaging

and design and that of Midwest. *See* R. 63 at 11-12. Breeze Smoke has also alleged that its product and Midwest's product are sold by the same retailers, often side-by-side on the shelf. Breeze Smoke has also plausibly alleged that its brand is strong with reference to the amount it spends on advertising and evidence of consumers mentioning Breeze Smoke's products in comparison to competitors. These allegations are sufficient to plausibly allege a likelihood of confusion.

Midwest argues that these allegations demonstrate merely "conceivable confusion," when "probable confusion" is required. *See* R. 58 at 12. This is true in that the Seventh Circuit has explained that ultimately proving "likelihood of confusion" requires a plaintiff to prove that confusion is "probable." *See Sorensen v. WD-40 Co.*, 792 F.3d 712, 726 (7th Cir. 2015). But this does not mean that Breeze Smoke must demonstrate that confusion is probable at this stage of the proceedings. Rather, Breeze Smoke must merely plausibly allege that confusion is probable. And like "distinctiveness" and "functionality," "likelihood of confusion" is also "a highly fact dependent inquiry." *See Specht v. Google Inc.*, 758 F.Supp.2d 570, 584 (N.D. Ill. 2010) ("The Seventh Circuit treats likelihood of confusion as a question of fact"). To the extent it can be decided as a matter of law, that occurs on summary judgment, as is exemplified by the cases Midwest cites. Breeze Smoke has plausibly alleged a likelihood of confusion, so dismissal is not appropriate prior to discovery.

## B. Design Patent Claim

To demonstrate design patent infringement, a plaintiff must demonstrate by a preponderance of the evidence that "an ordinary observer, familiar with the prior

art . . . would be deceived into believing the [accused product] is the same as the patented [product]." *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 681 (Fed. Cir. 2008). It is not unheard of for a district court to grant a motion to dismiss a design infringement claim, finding that the plaintiff has not plausibly alleged that the ordinary observer would be deceived. *See, e.g., Parker v. Kimberly-Clark Corp.*, 2012 WL 74855 (N.D. Ill. Jan. 10, 2012). But in such cases, the "the claimed design and the accused design will be sufficiently distinct that it will be clear without more that the patentee has not met its burden of proving the two designs would appear 'substantially the same' to the ordinary observer." *Egyptian Goddess,* 543 F.3d at 678; *see also Anderson v. Kimberly-Clark Corp.*, 570 F. App'x 927, 933-34 (Fed. Cir. 2014) (affirming a grant of a motion under Rule 12(b)(6) because the district court "properly concluded that '*plain differences*' exist between the accused products and the patented design") (emphasis added); *cf. Parker*, 2012 WL 74855, at *3 (granting a motion to dismiss where the court found that "an ordinary observer would *easily distinguish* the [accused design] from the [claimed design]") (emphasis added). If the claimed and accused designs are "sufficiently distinct," then the question of which "features would be significant to the ordinary observer is a question of fact," generally requiring discovery. *See International Seaway Trading Corp. v. Walgreens Corp.,* 589 F.3d 1233, 1241-42 (Fed. Cir. 2009).

Midwest does not argue that the claimed and accused designs are plainly distinct. Rather, Midwest makes arguments regarding the "elements" of each design that are shared with the prior art. *See* R. 58 at 13-14. While these arguments are

13

relevant to what elements would be significant to the ordinary observer, and thus, whether the ordinary observer would be deceived, these arguments also implicitly concede that there are similarities between the claimed and accused designs, and it is only with reference to the details of the claimed and accused designs as compared to the prior art that the significance of similarities and differences can be assessed. These similarities—the oblong body, the curved mouthpiece, etc.—are sufficient to plausibly state a claim for infringement. Whether the differences are minor or significant in light of the prior art is an analysis courts customarily perform on summary judgment after discovery, with the benefit of expert testimony regarding the design features. Thus, dismissal for failure to state a claim is not appropriate.

## II.     Preliminary Injunction

Unlike the plausibility standard of Rule 12(b)(6), a plaintiff "seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Breeze Smoke adds little to the allegations in its complaint in its attempt to demonstrate that it is likely to succeed on its claims. While those allegations are sufficient to survive Midwest's

14

motion to dismiss, the plausibility of Breeze Smoke's allegations is insufficient to establish a likelihood of success on the merits.

### A.     Design Patent Claim

"To show a likelihood of success on the merits, a patentee must show that it will likely prove infringement of the asserted [design patent] claims." *ABC Corp. I v. P'ships & Unincorporated Assocs. Id'd on Schedule "A"*, 52 F.4th 934, 942 (Fed. Cir. 2022). This means that the plaintiff must demonstrate that any defense raised "lacks substantial merit." *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1350-51 (Fed. Cir. 2001). For a design patent claim, the "estimated likelihood of success in establishing infringement is governed by Federal Circuit law." *Revision Mil., Inc. v. Balboa Mfg. Co.*, 700 F.3d 524, 526 (Fed. Cir. 2012).

As discussed with respect to Midwest's motion to dismiss, to show infringement, a plaintiff must demonstrate that "an ordinary observer, familiar with the prior art designs, would be deceived into believing that the accused product is the same as the patented design." *Crocs v. Int'l Trade Comm'n*, 598 F.3d 1294, 1303 (Fed. Cir. 2010). "Where a patented design and an accused product are not 'plainly dissimilar,' the court must conduct a three-way analysis comparing the accused product, the patented design, and the prior art." *ABC Corp*, 52 F.4th at 942 (citing *Egyptian Goddess*, 543 F.3d at 677-78). Where there is a "dominant feature" across the prior art, the patents in suit, and the accused products, "the focus of the infringement substantial similarity analysis in most cases will be on other features of the design." *Id.* In other words, the "shared dominant feature from the prior art

15

will be no more than a background feature of the design, necessary for a finding of substantial similarity but insufficient by itself to support a finding of substantial similarity." *Id.*

Here, the dominant feature is the oblong body with a contoured mouthpiece at one end. Breeze Smoke argues that the claimed and accused products share the "same overall shape and structure." R. 53 at 17. But the "overall shape and structure" is the dominant feature shared with the prior art identified by Midwest. *See* R. 66 at 7. Breeze Smoke identifies different prior art, but that does not change the fact that the prior art identified by Midwest includes the dominant feature at issue here.

Subtracting the dominant feature of the prior art reveals several differences between the accused and claimed design. Breeze Smoke's D'573 Patent shows a rounded base, whereas Midwest's product shows a square base. The D'573 Patent does not show a trademark, whereas Midwest's product does. The D'573 Patent shows a "cupped" mouthpiece, whereas the mouthpiece on Midwest's product more sharply slopes to meet the oblong body.

Breeze Smoke argues that these differences are "minor." *See* R. 72 at 11. But the Federal Circuit has explained that when the relevant designs possess the same dominant feature, the ordinary observer's attention "will be drawn to those aspects of the claimed design that differ from the [dominant feature exhibited by the] prior art." *Egyptian Goddess*, 543 F.3d at 676. Here, what Breeze Smoke characterizes as "minor" differences plausibly stand out when the dominant oblong body and mouthpiece are removed from the equation. *See ABC Corp.*, 52 F.4th at 942 ("where

a dominant feature of the patented design and the accused products . . . appears in the prior art, *the focus* of the infringement substantial similarity analysis in most cases will be on other features of the design.") (emphasis added). For these reasons, the Court finds that Breeze Smoke has not demonstrated a likelihood of success on its design patent claim.

### B.     Trade Dress Claim

Midwest's arguments that Breeze Smoke has failed to establish a likelihood of success on its trade dress infringement claim are similar to the arguments Midwest made in support of its motion to dismiss. But whereas those arguments were insufficient to undermine the plausibility of Breeze Smoke's allegations, they indicate that Breeze Smoke has not demonstrated a likelihood of success.

### 1.     Distinctive Packaging

Breeze Smoke argues that the "particular configuration of the wraparound label and rectangular box" is distinctive because it "is arbitrary and allows the consumer to recognize the product as a Breeze product." R. 72 at 4. But the only evidentiary support for this statement is the appearance of Breeze Smoke's packaging. It says nothing about the distinctiveness of the packaging in comparison to competitor's products on the market.

Breeze Smoke argues that its packaging is "inherently distinctive because it allows the consumer to instantly recognize the product as a Breeze Smoke Good or Service." R. 53 at 8-9. But the only support Breeze Smoke offers for this assertion is the declaration of Steven Haddad, who is Breeze Smoke's managing member. *See* R.

54. While Haddad likely has significant knowledge of Breeze Smoke's business, his opinion about "distinctiveness"—a legal question for the Court—carries little weight.

Breeze Smoke urges the Court to focus not on the plastic box or the cardboard wrapper alone, but their arbitrary combination. As the Court acknowledged on the motion to dismiss, the packing is arbitrary to the extent that it is not necessary to package a vape pen product. On the other hand, there is nothing unusual about a plastic box with a cardboard wrapper. It is one of many common or generic forms of packaging. And the arbitrary choice of one of many generic forms of packaging does not make the packaging distinctive. The packaging remains generic even though its choice may have been arbitrary. Additional evidence might reveal the distinctive nature of what is otherwise generic. But without more evidence, the Court cannot find that Breeze Smoke is likely to successfully prove that its packaging is distinctive.

Breeze Smoke's failure to demonstrate a likelihood of success in proving distinctive packing is a sufficient basis by itself to deny Breeze Smoke's motion for preliminary injunction, because "distinctiveness" is a necessary element of the claim. Nevertheless, the Court also finds that Breeze Smoke has failed to demonstrate a

likelihood of success in proving "secondary meaning" and "a likelihood of confusion," and so will address those issues to provide guidance to the parties.[1]

## 2. Distinctive Design

Breeze Smoke argues that its packaging and design have achieved secondary meaning for four primary reasons. One, "Breeze Smoke has spent significant amounts of money advertising the Breeze Smoke Trade Dress and generated . . . over one billion dollars in sales from the underlying product." R. 53 at 9. Two, "retailers frequently advertise that they carry Breeze Smoke's [products] alongside images displaying the Breeze Smoke Trade Dress." *Id.* Three, "customers readily associate copycat products with Breeze Smoke." *Id.* at 10. And four, Breeze Smoke's competitors intentionally copy Breeze Smoke's trade dress. *Id.*

This is all evidence that Breeze Smoke is a successful company. But "success" is not equivalent to secondary meaning. "[S]econdary meaning is acquired when in the minds of the public, the primary significance of a product feature . . . is to identify the source of the product rather than the product itself." *Thomas & Betts Corp. v. Panduit Corp.*, 138 F.3d 277, 291 (7th Cir. 1998). In other words, secondary meaning is not just success, but some primary place in the market. That is why in assessing "secondary meaning," courts generally look at "consumer testimony" and "consumer surveys" in order to ascertain the trade dress's "place in the market." *See id.* Breeze

---

[1] Whether Breeze Smoke can show that its packaging and product design is "not functional" is a closer call that is unnecessary for the Court to address for the time being.

Smoke has not presented any such evidence to the Court. Without it, the Court cannot find that Breeze Smoke is likely to successfully prove secondary meaning.

### 3. Confusion

"Likelihood of confusion" is the last and "keystone" element of a trade dress claim. *See Sorensen*, 792 F.3d at 726. The Seventh Circuit has explained that "[i]n determining likelihood of confusion, [a court should consider] the type of trademark in issue, the similarity of the designs and the products, the identity of retail outlets and purchasers, identity of advertising media utilized, any evidence of actual confusion, and whether [the defendant] intends to pass off its product as that of [the plaintiff]." *AM Gen.*, 311 F.3d at 805.

Breeze Smoke argues that it is likely to successfully demonstrate a likelihood of confusion because: (1) Midwest's packaging and design is "virtually identical" to Breeze Smoke's; (2) the products are marketed to the same consumers; (3) vape pen consumers "typically do not exercise a high degree of care in making their purchase"; (4) "Breeze Smoke Trade Dress enjoys widespread consumer Recognition" and "consumers associate the Infringing Products with Breeze Smoke"; and (5) there is evidence of actual confusion. *See* R. 53 at 13-14.

The primary problem with these arguments is that they are all based on the declaration of Breeze Smoke's managing member, Steven Haddad. As discussed, Haddad has personal knowledge of Breeze Smoke's business and marketing practices. And he has some knowledge of the characteristics of the retailers that sell Breeze Smoke products and the consumers who purchase them. But his opinion about the

20

similarity between the Breeze Smoke's and Midwest's products, or Breeze Smoke's standing with consumers, is inherently biased, and thus carries little weight with the Court. Further, his opinion is the only evidence Breeze Smoke has presented to support its argument that "consumers of disposable vaping pens do not exhibit a high degree of care when purchasing such products because they are not particularly expensive." *See* R. 54 at 16. Haddad's opinion on this point is not based on any particular evidence or data and thus is entirely conclusory, so the Court disregards it.

Lastly, Breeze Smoke's evidence of "actual confusion" is insufficient to establish that Breeze Smoke it likely to prove it. The evidence consists of the following: (1) two comments on You Tube videos; (2) a comment on Reddit; (3) five text message threads between unidentified individuals; and (4) two emails, which Breeze Smoke attributes to its customers and distributors. *See* R. 37-9; R. 37-10. Breeze Smoke highlights the statements in these communications that appear to be evidence of consumers or retailers confusing Breeze Smoke's competitors with Breeze Smoke, or seeking clarification as to which products belong to Breeze Smoke.

These statements are evidence of confusion, but the Court finds that they are insufficient to establish of a likelihood that Breeze Smoke will prove actual confusion. Breeze Smoke provides little to no context for these statements. The authenticity of statements taken from the internet cannot be established, so they carry little evidentiary value. Even if the internet comments could be verified, statements from ten individuals is not strong evidence of the market as a whole, especially without

evidence of the context in which the statements were made. Generally, "likelihood of confusion" is proven with consumer surveys or expert testimony, because that is evidence from which inferences about the entire market can be drawn. The only evidence that Breeze Smoke has presented is that these ten individuals were confused. Ten individuals, in what Breeze Smoke has characterized as a multi-million-dollar industry, *see* R. 54 at 15, is insufficient evidence for the Court to find a likelihood that Breeze Smoke will prove there is actual confusion in the market as a whole.

## Conclusion

Therefore, Midwest's motion to dismiss [57] is denied, and Breeze Smoke's motion for a preliminary injunction [52] is denied. Additionally, Midwest's motion to strike the Haddad declaration [64] is denied as moot.

ENTERED:

Honorable Thomas M. Durkin
United States District Judge

Dated: May 30, 2024