## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

MIDWEST GOODS INC., DBA MIDWEST
DISTRIBUTION ILLINOIS,

        Plaintiff,

    vs.

Breeze Smoke, LLC, And KMT Services LLC,

dba KMT Distribution,

        Defendants.

|  |
|---|
| **Case No.**: **1:23-CV-05406** |
| **Honorable Thomas M. Durkin** |
| **Honorable Beth W. Jantz** |
| **JURY TRIAL DEMANDED** |

BREEZE SMOKE LLC,

        Counter-Claimant,

    vs.

MIDWEST GOODS INC., DBA MIDWEST
DISTRIBUTION ILLINOIS, WISEMEN
WHOLESALE, INC., SPEED WHOLESALE,
INC., WORLD WHOLESALE, INC., LIGHT
VIEW LLC, UMAIR YASIN, MUDASSIR
YASIN, KAMRAN YASIN, IMRAN SADIQ,
AND SOHAIB SAKARIA

        Counterclaim Defendants.

## DEFENDANT/COUNTERCLAIM PLAINTIFF BREEZE SMOKE'S THIRD AMENDED COUNTERCLAIMS

1. Defendant/Counterclaim Plaintiff Breeze Smoke, LLC ("Counterclaim Plaintiff" or "Breeze Smoke") by way of its Third Amended Counterclaims against Midwest Goods Inc., dba Midwest Distribution Illinois ("Midwest Goods"), Wisemen Wholesale, Inc. ("Wisemen"), Speed Wholesale, Inc. ("Speed"), World Wholesale Inc. ("World"), and Light View LLC ("Light View"),

Kamran Yasin, Umair Yasin, Mudassir Yasin, Imran Sadiq, and Sohaib Sakaria states as follows. A redline reflecting changes made to Breeze Smoke's Second Amended Answer and Counterclaims is attached hereto as **Attachment A**.[1]

2.      The Counterclaims asserted herein in no way constitute any waiver of any defense asserted by Breeze Smoke.

3.      Breeze Smoke incorporates by reference its responses to the Complaint as if fully set forth herein.

### PARTIES

4.      Breeze Smoke is a limited liability company organized and existing under the laws of the State of Michigan, with its principal place of business at 4654 Lilly Ct., West Bloomfield, Michigan 48323.

5.      Upon information and belief, Plaintiff/Counterclaim Defendant Midwest Goods is a corporation organized and existing under the laws of Illinois, with its principal place of business at 1001 Foster Avenue, Bensenville, Illinois 60106.

6.      Upon information and belief, Counterclaim Defendant Wiseman is a corporation organized and existing under the laws of Illinois, with its principal place of business at 857 Industrial Drive, Bensenville, IL 60106.

---

[1] Breeze Smoke's original counterclaim against Midwest alleged willful trade dress infringement, violation of the Illinois Uniform Deceptive Trade Practices Act, and unjust enrichment in connection with the NORTH Infringing Products. (Dkt. 9.) On November 22, 2023, the day after the D'573 Patent issued, Breeze Smoke filed its First Amended Complaint and Counterclaim to add a counterclaim for infringement of the D'573 Patent. (Dkt. 37.) On August 23, 2024, Breeze Smoke filed its Second Amended Answer and Counterclaims, which alleged facts learned in early 2024 (after the filing of the First Amended Counterclaim) and added the SOUTH Infringing Products (which went on sale in April or May 2024) as accused products. (Dkt. 139.)

7. Upon information and belief, Counterclaim Defendant Speed is a corporation organized and existing under the laws of Illinois, with its principal place of business at 400 North York Road, Bensenville, IL 60106.

8. Upon information and belief, Counterclaim Defendant World is a corporation organized and existing under the laws of Illinois, with its principal place of business at 845 North Larch Avenue, Suite 3, Elmhurst, IL 60126.

9. Upon information and belief, Counterclaim Defendant Light View is a corporation organized and existing under the laws of Illinois, with its principal place of business at 845 North Larch Avenue, Suite 3, Elmhurst, IL 60126.

10. Counterclaim Defendant Umair Yasin ███████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ██████████████████████████████████

11. Counterclaim Defendant Mudassir Yasin ████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████

12. Counterclaim Defendant Kamran Yasin is an individual resident in the Northern District of Illinois, is an owner and the Chief Executive Officer of Midwest Goods, and is █████ ████████████████████████████████████████ ████████████████████████████████.

13. Upon information and belief, ████████████████████████ ████████████.

14. ██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████.

15. Counterclaim Defendant Imran Sadiq ████████████████████████████████

██████████████████████████████████████████████████████████████████

████████████████████████████████████████████.

16. ██████████████████████████████████████████████████████████████.

17. ██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████.

18. Upon information and belief, ████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

19. Collectively, Umair Yasin, Mudassir Yasin, Kamran Yasin, Sohaib Sakaria, and Imran Sadiq shall be referred to herein as the "Individual Counterclaim Defendants."

20. Collectively, Midwest Goods, the Individual Counterclaim Defendants, Wisemen, Speed, World, and Light View shall be referred to herein as "Counterclaim Defendants."

21. Upon information and belief, Counterclaim Defendants are all in the business of marketing, advertising, promoting, distributing, offering, and selling various goods and services related to electronic cigarettes, including vaping devices.

## JURISDICTION AND VENUE

22. Personal jurisdiction over Counterclaim Defendants is appropriate because Counterclaim Defendants are domiciled in and/or organized in and have their principal places of business within this State and this District.

23. These Counterclaims allege trade dress infringement and unfair competition in violation of the Lanham Act, 15 U.S.C. § 1125, common law trade dress infringement, unfair competition, and deceptive trade practices under Illinois law.

24. This Court has subject matter jurisdiction pursuant to 15 U.S.C. § 1121, 28 U.S.C. § 1331 because this case arises under the Lanham Act (15 U.S.C. § 1051, *et seq.*), and 28 U.S.C § 1338 because this case arises under the Patent Act (35 U.S.C. § 101, *et seq.*).

25. Pursuant to 28 U.S.C. § 1367(a), this Court has supplemental jurisdiction over Breeze Smoke's state law claims because all of Breeze Smoke's claims arise out of a common nucleus of operative facts.

26. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events, acts, and/or omissions giving rise to Breeze Smoke's claims occurred in this district.

27. Venue is proper in this District pursuant to 28 U.S.C. § 1400(b) because Counterclaim Defendants reside in this District, have committed acts of infringement in this District, and have a regular and established place of business in this District.

## BACKGROUND

### *Breeze Smoke's BREEZE Marks*

28. Breeze Smoke is engaged in the business of manufacturing and selling a variety of tobacco and vaping products, including disposable electronic vaping devices, under marks consisting of or containing the term "BREEZE."

29. Breeze Smoke sells both nicotine and nicotine-free disposable vaping products using its BREEZE marks.

30. Disposable vaping products are an innovative part of the vaping and tobacco industry and very popular with consumers. Disposable vaping devices are relatively inexpensive and allow consumers to simply throw away the devices when they are finished rather than having to buy a more expensive device that requires additional purchases of cartridges.

31. Breeze Smoke's disposable vaping products are closed-systems meaning that the consumer cannot add other liquids or cartridges to them. As a result, Breeze Smoke's nicotine-free disposable vaping products are not intended or reasonably expected to be used with or for the consumption of a tobacco product.

32. For years, Breeze Smoke has continuously used its BREEZE trademarks in connection with electronic cigarettes, vaping products, including disposable vaping products and related products in Illinois and throughout the United States.

33. By itself and through its predecessors in interest, Breeze Smoke has offered and sold certain vaping products in connection with its BREEZE trademarks since at least 2014.

34. Examples showing Breeze Smoke's use of its BREEZE marks are shown below:





35. In addition to its widespread and continuous use of the BREEZE trademarks, Breeze Smoke owns several United States Trademark Registrations for its BREEZE marks, as set forth on the following chart:

| | Mark | Reg. No. | Reg./App. Date(s) | Goods |
|---|---|---|---|---|
| 1 | BREEZE PLUS | 6,770,534 | Filed: October 10, 2020<br><br>Registered: June 28, 2022 | Class 34: Disposable Electronic Cigarettes |

|  | Mark | Reg. No. | Reg./App. Date(s) | Goods |
|---|------|----------|-------------------|-------|
|  |  |  | First Use Date: at least as early as March 1, 2020 |  |
| 2 | BREEZE | 6,296,005 | Filed: June 6, 2019<br><br>Registered: March 16, 2021<br><br>First Use Date: at least as early as April 6, 2020 | Class 25: Beanies; hats; hooded sweatshirts; long-sleeved shirts; shirts; sweaters; tank tops; graphic T-shirts; short-sleeved or long-sleeved T-shirts; sweat shirts; T-shirts; tee shirts; woolly hats |
| 3 | BREEZE | 6,296,004 | Filed: June 6, 2019<br><br>Registered: March 16, 2021<br><br>First Use Date: at least as early as April 6, 2020 | Class 25: Beanies; hats; hooded sweatshirts; long-sleeved shirts; shirts; sweaters; tank tops; graphic T-shirts; short-sleeved or long-sleeved T-shirts; sweat shirts; T-shirts; tee shirts; woolly hats |
| 4 | BREEZE SMOKE | 6,976,563 | Filed: June 20, 2020<br><br>Registered: February 14, 2023<br><br>First Use Date: at least as early as March 1, 2020 | Class 34: Disposable Electronic Cigarettes |
| 5 | BREEZE PRO | 6,992,438 | Filed: March 2, 2021<br><br>Registered: February 28, 2023<br><br>First Use Date: at least as early as | Class 34: Disposable Electronic Cigarettes |

| Mark | Reg. No. | Reg./App. Date(s) | Goods |
|---|---|---|---|
|  |  | August 18, 2021 |  |

36. Copies of the foregoing United States Trademark Registrations and accompanying TESS pages reflecting their current status are attached hereto as **Exhibit 1** and incorporated herein by reference.

37. Breeze Smoke also owns numerous pending United States Trademark Applications for its BREEZE marks, as set forth on the below chart.

| | Mark | Reg./App. No. | Reg./App. Date(s) | Goods |
|---|---|---|---|---|
| 1 | BREEZE SMOKE | 97/697,754 | Filed: November 30, 2022 | Class 34: Pre-rolled hemp cones and hemp wraps for smoking, all of the foregoing containing CBD derived from natural, organic hemp with a delta-9 tetrahydrocannabinol concentration of not more than 0.3 percent on a dry weight basis. |
| 2 | BREEZE PALM | 90/650,997 | Filed: April 16, 2021<br><br>Notice of Allowance Issued: November 1, 2022 | Class 34: cigarette wraps; cigarette rolling papers; wraps in the nature of tobacco wraps; tobacco wraps; pre-rolled smoking cones; rolling paper cones |
| 3 | BREEZE PRIME | 97/839,842 | Filed: March 15, 2023 | Class 34: Disposable Electronic Cigarettes |
| 4 | BREEZE | 90/256,675 | Filed: October 15, 2020 | Class 34: Ashtrays for smokers; Lighters for smokers; Tobacco grinders |

| | Mark | Reg./App. No. | Reg./App. Date(s) | Goods |
|---|---|---|---|---|
| 5 | BREEZE | 90/292,552 | Filed: November 2, 2020 | Class 14:  Ornamental lapel pins<br><br>Class 16:  Decals; Posters; Stickers; Plastic food storage bags for household use<br><br>Class 18:  Handbags; Wallets; Backpacks; Book bags; Sports bags; All-purpose reusable carrying bags<br><br>Class 21:  Containers for household use; Insulating sleeve holders for beverage cans; Plastic storage containers for domestic use; Plastic storage containers for household use; Portable coolers, non-electric<br><br>Class 34:  Cigarette rolling papers; Smokers' rolling trays |
| 6 | BREEZE | 90/292,558 | Filed: November 2, 2020 | Class 14:  Ornamental lapel pins<br><br>Class 16:  Decals; Posters; Stickers; Plastic food storage bags for household use<br><br>Class 18:  Handbags; Wallets; Backpacks; Book bags; Sports bags; All-purpose reusable carrying bags |

| | Mark | Reg./App. No. | Reg./App. Date(s) | Goods |
|---|---|---|---|---|
| | | | | Class 21: Containers for household use; Insulating sleeve holders for beverage cans; Plastic storage containers for domestic use; Plastic storage containers for household use; Portable coolers, non-electric<br><br>Class 34: Cigarette rolling papers; Smokers' rolling trays |
| 7 | BREEZE | 90/292,573 | Filed: November 2, 2020 | Class 7: Vacuum packaging machines<br><br>Class 30: Candy; Candy bars<br><br>Class 32: Bottled water |
| 8 | BR≋ZE | 90/292,568 | Filed: November 2, 2020 | Class 7: Vacuum packaging machines<br><br>Class 30: Candy; Candy bars<br><br>Class 32: Bottled water |
| 9 | BREEZE | 90/292,582 | Filed: November 2, 2020 | Class 3: Electronic cigarette liquid comprised of essential oils; to the extent any of the foregoing involves use of cannabis, such cannabis shall have a delta-9 THC concentration of not |

|  | Mark | Reg./App. No. | Reg./App. Date(s) | Goods |
|---|---|---|---|---|
|  |  |  |  | more than 0.3% on a dry weight basis<br><br>Class 5: Plant extracts for pharmaceutical purposes, namely, for the treatment of nausea, anxiety, pain, glaucoma, seizures, multiple sclerosis and Crohn's Disease; to the extent any of the foregoing involves cannabis, such cannabis shall have a delta-9 THC concentration of not more than 0.3% on a dry weight basis<br><br>Class 34: Electronic cigarette liquids comprised of flavoring in liquid form, other than essential oils, used to refill electronic cigarette cartridges; to the extent any of the foregoing involves use of cannabis, such cannabis shall have a delta-9 THC concentration of not more than 0.3% on a dry weight basis; smoking pipes; smoking pipe cleaners; electronic smoking pipes; oral vaporizers for smokers |
| 10 | BREEZE | 90/292,579 | Filed: November | Class 3: Electronic cigarette liquid |

| | Mark | Reg./App. No. | Reg./App. Date(s) | Goods |
|---|---|---|---|---|
| | | | 2, 2020 | comprised of essential oils; to the extent any of the foregoing involves use of cannabis, such cannabis shall have a delta-9 THC concentration of not more than 0.3% on a dry weight basis<br><br>Class 5: Plant extracts for pharmaceutical purposes, namely, for the treatment of nausea, anxiety, pain, glaucoma, seizures, multiple sclerosis and Crohn's Disease; to the extent any of the foregoing involves cannabis, such cannabis shall have a delta-9 THC concentration of not more than 0.3% on a dry weight basis<br><br>Class 34: Electronic cigarette liquids comprised of flavoring in liquid form, other than essential oils, used to refill electronic cigarette cartridges; to the extent any of the foregoing involves use of cannabis, such cannabis shall have a delta-9 THC concentration of not more than 0.3% on a dry weight basis; |

| | Mark | Reg./App. No. | Reg./App. Date(s) | Goods |
|---|---|---|---|---|
| | | | | smoking pipes; smoking pipe cleaners; electronic smoking pipes; oral vaporizers for smokers |
| 11 | BREEZE LIFE | 97/926,736 | Filed: May 9, 2023 | Class 34: Battery performance monitors sold as a component of electronic disposable cigarettes |
| 12 | BREEZE —SMOKE— | 97/900,128 | Filed: April 21, 2023 | Class 34: Disposable electronic cigarettes |
| 13 | BREEZE ELITE | 98/146,073 | Filed: August 23, 2023 | Class 34: Electronic disposable cigarettes |
| 14 | BREEZE ODOR | 97/010,691 | Filed: September 3, 2021 | Class 4: Candles |

38. Copies of the foregoing applications, along with printouts of the accompanying TESS pages reflecting their status are attached hereto as **Exhibit 2** and incorporated herein by reference.

39. Breeze Smoke also owns Michigan State Trademark Registrations 802,511,431 and 802,511,553 for BREEZE.

40. The Michigan BREEZE registrations were registered on August 13, 2020 and assert use in commerce since at least as early as February 4, 2020.

41. Breeze Smoke also owns Florida State Trademark Registrations T21000000916 and T21000000917 for BREEZE LABS.

42. The Florida BREEZE LABS registrations assert use in commerce since at least as early as December 31, 2014.

43. Collectively, Breeze Smoke's foregoing BREEZE registrations and applications and its longstanding common law rights in the BREEZE marks shall be referred to herein as the "BREEZE Marks."

44. Collectively, the products and services in connection with which Breeze Smoke uses its BREEZE Marks, including the goods and services identified in the foregoing applications and registrations shall be referred to herein as the "BREEZE Goods and Services."

45. The BREEZE Goods and Services sold in connection with the BREEZE Marks are promoted, offered and sold through online retail platforms as well as at a substantial number of bricks-and-mortar locations throughout Illinois and the United States.

46. Breeze Smoke has spent significant time, effort, and resources establishing its BREEZE Marks in the minds of its customers and the public via advertisements and promotions—including through online advertising and promotion—as representative of Breeze Smoke's BREEZE Goods and Services, including but not limited to, its high-quality tobacco-related and vaping products.

47. Breeze Smoke has generated substantial revenue through its offer and sale of the BREEZE Goods and Services.

48. As a result of Breeze Smoke's continuous use, extensive sales, advertising, and promotion of its BREEZE Marks, the BREEZE Marks enjoy widespread recognition and an excellent reputation, and are recognized by the public as emanating exclusively from Breeze Smoke and representative of Breeze Smoke's high quality BREEZE Goods and Services.

49. As a result of Breeze Smoke's efforts and commercial success in advertising, marketing and promoting the BREEZE Goods and Services, Breeze Smoke has generated

15

substantial and valuable goodwill in the BREEZE Marks, and the BREEZE Marks have become intangible assets of substantial commercial value to Breeze Smoke.

***Breeze Smoke's Highly Distinctive BREEZE PRO Product Design Trade Dress and BREEZE PRO Product Packaging Trade Dress***

50. Since August 18, 2021, Breeze Smoke has used a highly distinctive product packaging trade dress in connection with its BREEZE PRO products.

51. Breeze Smoke's BREEZE PRO product packaging trade dress is comprised of the overall look and feel of the BREEZE PRO product packaging and features, among others things, the following distinctive, non-functional elements:

a. A rectangular clear plastic outer box ("rectangular box");

b. A large, cardboard label that wraps around the rectangular box ("wraparound label"), wherein the back of the wraparound label extends the full length of the rectangular box and the front of the wraparound label extends only part of the length of the rectangular box, such that the top portion of the vaping device and the vertically aligned product branding is visible from the front and sides of the rectangular box;

c. On the front side of the cardboard label:

i. The wording "BREEZE," a word mark identifying the product, appears at the top in large white all capital letters;

ii. A second line of text appears underneath the wording "BREEZE" in a smaller, less emphasized font;

iii. The flavor of the vape is printed underneath the word mark and second line of text; and

d. The nicotine warning is at the bottom of the front side of the cardboard label in a white box; and

e. The flavor of the product and the number of puffs are displayed on both sides of the wraparound label

(hereinafter, the "BREEZE PRO Packaging Trade Dress").

52. Examples showing Breeze Smoke's use of its highly distinctive BREEZE PRO Packaging Trade Dress are shown below:

16



53. The BREEZE PRO Packaging Trade Dress is highly inherently distinctive.

54. The configuration of the BREEZE PRO Packaging Trade Dress, especially the wraparound label and rectangular box, is arbitrary.

55. The BREEZE PRO Packaging Trade Dress has acquired secondary meaning in the minds of consumers.

56. There are several copycat products that use, without authorization, the BREEZE PRO Packaging Trade Dress, including the NORTH Infringing Products, as well as the FREEZE BAR, B-FREEZE, and VIP FREEZE products, against all of which Breeze Smoke is enforcing its rights. Examples of copycat packaging are attached hereto as **Exhibit 3** and incorporated herein by reference.

57. The BREEZE PRO Packaging Trade Dress is non-functional.

58. Breeze Smoke's exclusive use of the BREEZE PRO Packaging Trade Dress does not and will not put competitors at a disadvantage.

59. There are endless varieties of vape packages. Examples of such varieties are shown in Counter Defendant Midwest's complaint, at Dkt. No. 1, at ¶¶ 68-72, and are attached hereto as **Exhibit 4** and incorporated herein by reference.

60. Since August 18, 2021, Breeze Smoke has also marketed and sold its BREEZE PRO device using a highly distinctive product design trade dress that consumers instantly recognize and associate exclusively with Breeze Smoke.

61. Breeze Smoke's BREEZE PRO product design trade dress consists of the overall look and feel of the BREEZE PRO product design and features, among others things, the following distinctive, non-functional elements:

   a. a black body that resembles a rectangular cylinder having rounded corners, a flattened front and back sides, and a flat bottom;

   b. the top end of the body comprises the mouthpiece that is curved, has an opening for inhalation, narrows toward the opening, and has a concave region on the front side;

   c. the front and back of the device exhibit a rounded rectangular silhouette;

   d. the bottom end of the body has a flat rectangular shaped surface having rounded corners;

   e. a rectangular label featuring a wavy design colored to match the flavor of the vape device;

   f. the wording "BREEZE," a word mark identifying the product, printed in bold, white, all-capital typeface is vertically aligned on the label nearer to the mouthpiece than the bottom;

   g. an additional smaller white print element appears immediately above the word mark; and

   h. the vaping device flavor appears on the label near the bottom end of the vape device in a smaller, white, all-capital typeface vertically aligned on the label.

(hereinafter, the "BREEZE PRO Product Design Trade Dress").

62.   Examples showing Breeze Smoke's use of its highly distinctive BREEZE PRO Product Design Trade Dress are shown below:

 

63.   The BREEZE PRO Product Design Trade Dress is highly distinctive and has acquired secondary meaning in the minds of consumers.

64.   The BREEZE PRO Product Design Trade Dress has acquired secondary meaning.

65.   Third party retailers regularly advertise the BREEZE PRO Product Design and tout "the Breeze Pro's new elegant design" as a selling point. Examples of third-party advertisements are attached hereto as **Exhibit 5** and incorporated herein by reference.

66. There are several copycat products that use, without authorization, the BREEZE PRO Product Design Trade Dress, including the NORTH and SOUTH Infringing Products, as well as the FREEZE BAR, B-FREEZE, and VIP FREEZE products, against all of which Breeze Smoke is enforcing its rights. *See* Ex. 3.

67. The BREEZE PRO Product Design Trade Dress is non-functional.

68. Exclusive use of the BREEZE PRO Packaging Trade Dress would not put competitors at a disadvantage.

69. There are endless varieties of vape designs. Examples of such varieties are shown in Counter Defendant Midwest's complaint, at Dkt. No. 1, at ¶¶ 68-72, and are attached hereto as **Exhibit 6** and incorporated herein by reference.

70. The BREEZE Goods and Services sold in connection with the BREEZE PRO Packaging Trade Dress and BREEZE PRO Product Design Trade Dress also come in a number of highly distinctive flavor combinations including but not limited to "LUSH ICE," "GUM MINT," "CHERRY LEMON," "VANILLA TOBACCO," and "TROPICAL SUMMER."

71. Consumers and the relevant public recognize these distinctive flavor combinations and associate them exclusively with Breeze Smoke.

72. The BREEZE Goods and Services sold in connection with the BREEZE PRO Packaging Trade Dress and BREEZE PRO Product Design Trade Dress are promoted, offered and sold through online retail platforms as well as at a substantial number of bricks-and-mortar locations throughout Illinois and the United States.

73. Breeze Smoke has spent significant time, effort, and resources establishing the BREEZE PRO Packaging Trade Dress and BREEZE PRO Product Design Trade Dress in the minds of its customers and the public via advertisements and promotions—including through

20

online advertising and promotion—as representative of Breeze Smoke's BREEZE Goods and Services, including but not limited to, its high quality tobacco-related and vaping products.

74. Breeze Smoke has generated substantial revenue through its offer and sale of the BREEZE Goods and Services using the BREEZE PRO Packaging Trade Dress and BREEZE PRO Product Design Trade Dress.

75. As a result of Breeze Smoke's continuous use, extensive sales, advertising, and promotion, the BREEZE PRO Packaging Trade Dress and BREEZE PRO Product Design Trade Dress enjoy widespread recognition and an excellent reputation, and is recognized by the public as emanating exclusively from Breeze Smoke and representative of Breeze Smoke's high quality BREEZE Goods and Services.

76. As a result of Breeze Smoke's efforts and commercial success in advertising, marketing and promoting the BREEZE Goods and Services, Breeze Smoke has generated substantial and valuable goodwill in the BREEZE PRO Packaging Trade Dress and BREEZE PRO Product Design Trade Dress, and the BREEZE PRO Packaging Trade Dress and BREEZE PRO Product Design Trade Dress have become an intangible assets of substantial commercial value to Breeze Smoke.

### *Breeze Smoke's Design Patent*

77. Breeze Smoke filed U.S. Application No. 29/791,735 for an ornamental design for a disposable e-cigarette on February 3, 2022.

78. On November 21, 2023, U.S. Design Pat. No. D1,005,573 (the D'573 Patent) for an ornamental design for a disposable e-cigarette issued. A copy of the D'573 Patent is attached hereto as **Exhibit 7** and incorporated herein by reference.

79. The D'573 Patent claims a priority date of February 3, 2022.

80. Because it has been issued by the United States Patent and Trademark Office, the D'573 Patent is presumed valid and enforceable.

81. The D'573 Patent is assigned the Breeze Smoke, which owns all substantial rights, interest, and title in the D'573 Patent.

82. The D'573 Patent claims an ornamental design for a disposable e-cigarette and covers any surface material or color, including an upper portion that can be opaque, transparent, or translucent.

83. The design of the D'573 Patent is commercially embodied in the BREEZE PRO disposable vaping device.

### *Counterclaim Defendants' Willful and Infringing Use of the BREEZE Trade Dress and BREEZE PRO Trade Dress with Respect to the NORTH Infringing Products*

84. In or around July 2023, Breeze Smoke became aware that Midwest Goods had begun marketing, promoting, advertising, offering, distributing, and selling disposable vaping products under the name "NORTH" using product packaging and a product design that are highly similar to the BREEZE PRO Packaging Trade Dress and BREEZE PRO Product Design Trade Dress (the "NORTH Infringing Products").

85. Breeze Smoke became aware that Wisemen, Speed, World and Light View had begun marketing, promoting, advertising, offering, distributing, and selling the NORTH Infringing Products in or around September 2023.

86. Examples of the NORTH Infringing Products next to examples bearing the BREEZE PRO Packaging Trade Dress and BREEZE PRO Product Design Trade Dress are shown below:

**BREEZE PRO Product**          **NORTH Infringing Products**




**BREEZE PRO Product**         **NORTH Infringing Products**



**BREEZE PRO Product**                    **NORTH Infringing Products**

 

**BREEZE PRO Product**          **NORTH Infringing Products**



**BREEZE PRO Product**  **NORTH Infringing Products**




**BREEZE PRO Product**  **NORTH Infringing Products**



**BREEZE PRO Product**    **NORTH Infringing Products**

 

**BREEZE PRO Product**

**NORTH Infringing Products**





30

**BREEZE PRO Product**          **NORTH Infringing Products**




**BREEZE PRO Product**  **NORTH Infringing Products**

 

87. Additional examples displaying Counterclaim Defendants' infringing uses are attached hereto as **Exhibit 8** and incorporated herein by reference.

88. The NORTH Infringing Products' product packaging is identical or virtually identical to the BREEZE PRO Packaging Trade Dress in its overall look and feel and includes at least the following overlapping elements:

    a.      A rectangular clear plastic outer box ("rectangular box");

    b.      A large, cardboard label that wraps around the rectangular box ("wraparound label"), wherein the back of the wraparound label extends the full length of the rectangular box and the front of the wraparound label extends only part of the length of the rectangular box, such that the top portion of the vaping device and the vertically aligned product branding is visible from the front and sides of the rectangular box;

    c.      On the front side of the cardboard label:

        i.      The wording "NORTH," a word mark identifying the product, appears at the top in large white all capital letters;

        ii.      A second line of text appears underneath the wording "NORTH" in a smaller, less emphasized font;

        iii.      The flavor of the vape is printed underneath the word mark and second line of text; and

    d.      The nicotine warning is at the bottom of the front side of the cardboard label in a white box; and

    e.      The flavor of the product and the number of puffs are displayed on both sides of the wraparound label.

89. The NORTH Infringing Products' product design is identical or virtually identical to the BREEZE PRO Product Design Trade Dress in its overall look and feel and includes at least the following overlapping elements:

    a.      a black body that resembles a rectangular cylinder having rounded corners, a flattened front and back sides, and a flat bottom;

    b.      the top end of the body comprises the mouthpiece, that is curved, has an opening for inhalation, narrows toward the opening, and has a concave region on the front;

c. the front and back exhibit a rounded rectangular silhouette;

d. the bottom end of the body has a flat rectangular shaped surface having rounded corners;

e. a rectangular label featuring a wavy design colored to match the flavor of the vape device;

f. the wording "NORTH," a word mark identifying the product, printed in bold, white, all-capital typeface is vertically aligned on the label nearer to the mouthpiece than the bottom;

g. an additional smaller white print element appears immediately above the word mark; and

h. the vaping device flavor appears on the label near the bottom end of the vape device in a smaller, white, all-capital typeface vertically aligned on the label.

90. As shown in the above examples set forth in Paragraph 86 as well as the additional examples set forth in **Exhibit 8**, the NORTH Infringing Products deliberately copy every, or virtually every, element of the BREEZE PRO Packaging Trade Dress and the BREEZE PRO Product Design Trade Dress. Counterclaim Defendants deliberately copied these elements in a concerted effort to trade off of the enormous goodwill that Breeze Smoke has developed in connection with its BREEZE Goods and Services.

91. As shown in the above examples set forth in Paragraph 70 as well as the additional examples set forth in **Exhibit 8**, Counterclaim Defendants even went so far as to directly copy Breeze Smoke's highly distinctive flavor combinations—including but not limited to "LUSH ICE," "GUM MINT," "CHERRY LEMON," "VANILLA TOBACCO," and "TROPICAL SUMMER"—for use in connection with the NORTH Infringing Products. In fact, at least as of the time of the filing of Breeze Smoke's original counterclaim in this litigation, all but two of the twelve flavor combinations for the NORTH Infringing Products were exactly the same as flavor combinations offered by Breeze Smoke. Counterclaim Defendants copied Breeze Smoke's highly

34

distinctive flavor combinations in a concerted effort to unfairly trade off of the enormous goodwill that Breeze Smoke has developed in connection with its BREEZE Goods and Services.

92. Counterclaim Defendants are directly competing with Breeze Smoke in that they are marketing, promoting, advertising, offering, distributing and selling virtually identical or closely similar disposable vaping products using a product packaging and product design that is virtually identical to the BREEZE PRO Packaging Trade Dress and BREEZE PRO Product Design Trade Dress to the same customers or the same or similar classes of customers as Breeze Smoke.

93. Breeze Smoke has not licensed or otherwise authorized Counterclaim Defendants to use its highly valuable and well-established BREEZE Trade Dress and BREEZE PRO Trade Dress in any manner whatsoever, except in connection with the authorized offer and sale of BREEZE Goods and Services.

94. Counterclaim Defendants knew of Breeze Smoke's prior use of the BREEZE PRO Packaging Trade Dress and BREEZE PRO Product Design Trade Dress, and were well aware of the goodwill and market value of the BREEZE PRO Packaging Trade Dress and BREEZE PRO Product Design Trade Dress, as each of them has offered, distributed and sold Breeze Smoke's BREEZE products for years and since well prior to any sales of the NORTH Infringing Products.

95. Counterclaim Defendants intentionally chose to use and to trade off the goodwill associated with the BREEZE PRO Packaging Trade Dress and BREEZE PRO Product Design Trade Dress to suggest a false affiliation between Breeze Smoke and its goods and services on the one hand and Counterclaim Defendants and their goods and services on the other, or to deliberately mislead and confuse customers about the source of the parties' respective goods.

96. Through their unauthorized and infringing uses of the BREEZE PRO Packaging Trade Dress and BREEZE PRO Product Design Trade Dress, Counterclaim Defendants are

deliberately and improperly capitalizing upon the goodwill that Breeze Smoke has built up in the BREEZE PRO Packaging Trade Dress and BREEZE PRO Product Design Trade Dress.

97. Consumers that purchase vaping products typically do not exercise a high degree of care in making their purchases because such products are relatively inexpensive and therefore consumers are likely to confuse the NORTH Infringing Products with the Breeze Smoke Goods and Services.

98. Counterclaim Defendants' offer and sale of the NORTH Infringing Products has caused actual confusion in the marketplace among distributors, retailers, and consumers alike. Examples of such confusion is attached hereto as **Exhibit 9** and **Exhibit 10** and incorporated herein by reference.

99. Counterclaim Defendants' unauthorized, unlawful, and intentional use of the BREEZE PRO Packaging Trade Dress and BREEZE PRO Product Design Trade Dress has caused, and will continue to cause, a likelihood of confusion among customers, consumers, potential consumers, and the general public as to the source or origin of the NORTH Infringing Products and the sponsorship or endorsement of those goods and services by Breeze Smoke.

100. As a direct and proximate result of Plaintiff's unauthorized conduct, Breeze Smoke has been and will continue to be damaged by likely and actual confusion among consumers and potential consumers as to Breeze Smoke's association or connection with, or endorsement or authorization of, Counterclaim Defendants and/or the NORTH Infringing Products, at least in part in ways that cannot be adequately measured or fully remedied by monetary damages.

101. As a result of their intentional misappropriation of the BREEZE PRO Packaging Trade Dress and BREEZE PRO Product Design Trade Dress for use in connection with the NORTH Infringing Products, Counterclaim Defendants have caused, and will continue to cause,

36

irreparable injury to Breeze Smoke and have substantially damaged the value of the BREEZE PRO Packaging Trade Dress and BREEZE PRO Product Design Trade Dress.

102. Counterclaim Defendants have unjustly enriched themselves at Breeze Smoke's expense by displaying, marketing, advertising, promoting, distributing, offering to sell, and selling the NORTH Infringing Products. Among the benefits that Counterclaim Defendants have gained from their unlawful and willful conduct are increased revenues from the sale of the NORTH Infringing Products.

103. In July 2023, Breeze Smoke contacted Midwest Goods' CEO Kamran Yasin to provide notice of Midwest's unlawful infringement and to demand that Midwest Goods cease any further marketing, offering, and selling of the NORTH Infringing Products and immediately remove such products from their stores and distribution channels. A copy of this letter is attached to Plaintiff's Complaint as Exhibit A and is incorporated herein by reference.

104. In September 2023, Breeze Smoke contacted Wisemen by letter to provide notice of its unlawful infringement and to demand that it cease any further marketing, offering, and selling of the NORTH Infringing Products and immediately remove such products from their stores and distribution channels. A copy of this letter is attached hereto as **Exhibit 11** and incorporated herein by reference.

105. In October 2023, Breeze Smoke contacted Speed by letter to provide notice of its unlawful infringement and to demand that it cease any further marketing, offering, and selling of the NORTH Infringing Products and immediately remove such products from their stores and distribution channels. A copy of this letter is attached hereto as **Exhibit 12** and incorporated herein by reference.

106. In September 2023, Breeze Smoke contacted World and Light View by letter to provide notice of their unlawful infringement and to demand that they cease any further marketing, offering, and selling of the NORTH Infringing Products and immediately remove such products from their stores and distribution channels. A copy of this letter is attached hereto as **Exhibit 13** and incorporated herein by reference.

107. To date, Counterclaim Defendants have not ceased selling or offering to sell the NORTH Infringing Products and continue to still offer and sell the NORTH Infringing Products.

108. With every day that passes, Counterclaim Defendants' sale of the NORTH Infringing Products compounds the irreparable harm to Breeze Smoke.

109. In or around February 2024, SMISS Technology Co., Ltd. ("SMISS"), contacted Breeze Smoke seeking to partner with Breeze Smoke on manufacturing Breeze Smoke Goods and Services[2].

110. SMISS stated that "the brand of North is from our company" and that "Breeze and North are similar to look at":

> **From:** 龚贿钧 <gong@smisscigarette.com>
> **Sent:** Wednesday, February 28, 2024 3:26 AM
> **To:** Steven Haddad <steven@breezesmoke.com>
> **Subject:** North Brand is from our company
>
> Breeze and North are similar to look at. yes The brand of North is from our company this is Smiss
> If you want to update new devices or looking for some new designs. Smiss is your one of partner
>
>
> Gong | Overseas Sales and Marketing
>  SMISS Technology Co., Ltd
> Tel&Whatsapp: +86 15016711041
> Email:Gong@smisscigarette.com
> Web:http://www.smisstech.com
> Add:  Building 2&3, Mingwei Industrial Park, No.1, Songgang Avenue,
> Baoan District, Shenzhen, China 518105.

---

[2] For well over a year, SMISS has repeatedly solicited one of Breeze Smoke's distributors in an effort to secure business manufacturing Breeze Smoke Goods and Services.

111. During these communications, SMISS sent a text message stating that they "made an excel to compare the breeze with North" and included the spreadsheet as an attachment:



112. On March 22, 2024, SMISS represented that Midwest has purchased more than $50 million worth of NORTH Infringing Products.



113. SMISS also represented that the total quantity of manufactured NORTH Infringing

Products is approximately 17 million units.



***Plaintiff's Willful and Infringing Use of the***
***U.S. Design Patent No. D1,005,573 with Respect to the NORTH Infringing Products***

114. The design of the NORTH Infringing Products is substantially similar to the claims of the D'573 Patent.

115. Examples of the NORTH Infringing Products next to the claims of the D'573 Patent are shown below:

**D'573 Patent**       **NORTH Infringing Products**



FIG. 1

**D'573 Patent**            **NORTH Infringing Products**



**FIG. 2**



**D'573 Patent**  **NORTH Infringing Products**



FIG. 3



| **D'573 Patent** | **NORTH Infringing Products** |
|:---:|:---:|



FIG. 4



| **D'573 Patent** | **NORTH Infringing Products** |
| --- | --- |
|  |  |

**FIG. 5**

| D'573 Patent | NORTH Infringing Products |
|:---:|:---:|
|  |  |
| FIG. 6 | |
|  |  |
| FIG. 7 | |

116. Breeze Smoke has not licensed or otherwise authorized Counterclaim Defendants to use the D'573 Patent in any manner whatsoever, except in connection with the authorized offer and sale of BREEZE Goods and Services.

117. To date, Counterclaim Defendants have not ceased selling or offering to sell the NORTH Infringing Products and continue to still offer and sell the NORTH Infringing Products.

118. ████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████

119. ████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
███████████████████████████████████████████████

120. ████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
██████████████████

121. ████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████
██████████████████████████████████



122. With every day that passes, Counterclaim Defendants' sale of the NORTH Infringing Products compounds the irreparable harm to Breeze Smoke.

123. In addition, with every day that passes, Midwest's, Umair Yasin's, and Mudassir Yasin's active inducement of patent infringement by Midwest's customers compounds the irreparable harm to Breeze Smoke.

### *Midwest's Release of the SOUTH Infringing Products*

124. In or around February 2024, Breeze Smoke became aware of a potential new vaping product under the name "SOUTH," which uses a product design that is highly similar to the BREEZE PRO Product Design Trade Dress (the "SOUTH Infringing Products").

125. On March 8, 2024, Breeze Smoke served requests for production on Midwest seeking information regarding the SOUTH Infringing Products, including documents referring or relating

to the time, place, and manner of Midwest's first sale (if any) in the United States of a SOUTH Infringing Product. These requests are attached hereto as **Exhibit 14**.

126. As of the filing of the Second Amended Counterclaim, Midwest had refused to produce documents responsive to these requests. (*See, e.g.*, **Exhibit 15**.)

127. On or around April 8, 2024, a sales representative from Midwest by the name of Sunny pitched the NORTH Infringing Products and SOUTH Infringing Products to Steven Haddad, who is a principal of Capital Sales Co., a nationwide distributor of vapes and tobacco products[3]. The below screenshot reflects a message from Sunny to Steven Haddad identifying himself as "Sunny from Midwest" and depicting a picture of Sunny and Steven Haddad taken on or around April 8, 2024.

---

[3] Steven Haddad is also a member and principal of Breeze Smoke.



128. During this pitch, Sunny informed Steven Haddad that the NORTH Infringing Products taste just like the BREEZE PRO because the e-liquid used in the NORTH Infringing Products is from the same factory that makes the e-liquid for BREEZE PRO. Sunny referred to this information as a "secret" he was not supposed to share.

129. ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ████████████████████████████████████████████

130. ███████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ████████████████████████████

131. On April 11, 2024, an Instagram account by the name of "midwestgoodsinc" that, on information and belief, is owned and operated by Midwest, published a post with the caption: "New In Stock SOUTH 3K Puffs Disposable" with the below image from the webpage https://www.instagram.com/midwestgoodsinc/p/C5ogr0TiBO5/, which is attached hereto as **Exhibit 16**.



132. At least as early as May 1, 2024, Midwest made the SOUTH Infringing Products available for sale on its website. (**Exhibit 17**, https://www.midwestgoods.com/south-powered-by-north-6-5ml-3k-puffs-disposable-device-with-mesh-coil-display-of-10-msrp-14-99-each/, last accessed June 3, 2024.)

133. At least as early as May 2, 2024, Counterclaim Defendant World is marketing, promoting, advertising, offering, distributing, and selling the SOUTH Infringing Products on its website. (**Exhibit 18**, https://worldvapeusa.com/south-pwd-by-north-6-5ml-3000-puffs-

disposable-vape-10ct/, last accessed June 3, 2024.).

134. At least as early as May 2, 2024, Counterclaim Defendant Speed is marketing, promoting, advertising, offering, distributing, and selling the SOUTH Infringing Products on its website. (**Exhibit 19**, https://speedwholesale.com/south-3000-puffs-disposable-vape-10ct-display.html?search=South, last accessed June 3, 2024.).

*Midwest's, the Individual Counterclaim Defendants', World's, and Speed's Willful and Infringing Use of the BREEZE PRO Trade Dress with Respect to the SOUTH Infringing Products*

135. The product design for the SOUTH Infringing Products, like the NORTH Infringing Products, is highly similar to the BREEZE PRO Product Design Trade Dress.

136. Examples of the SOUTH Infringing Products next to examples bearing the BREEZE PRO Product Design Trade Dress are shown below:

**BREEZE PRO Product**          **SOUTH Infringing Products**

          

**BREEZE PRO Product**                    **SOUTH Infringing Products**

 

**BREEZE PRO Product**          **SOUTH Infringing Products**




137. The SOUTH Infringing Products' product design is identical or virtually identical to the BREEZE PRO Product Design Trade Dress in its overall look and feel and includes at least the following overlapping elements:

i. a black body that resembles a rectangular cylinder having rounded corners, a flattened front and back sides, and a flat bottom;

j. the top end of the product comprises the mouthpiece, that is curved, has an opening for inhalation, narrows toward the opening, and has a concave region on the front;

k. the front and back exhibit a rounded rectangular silhouette;

l. the bottom end of the body has a flat rectangular shaped surface having rounded corners;

m. a label featuring a wavy design colored to match the flavor of the vape device;

n. the wording "SOUTH," a word mark identifying the product, printed in bold, white, all-capital typeface is vertically aligned on the label nearer to the mouthpiece than the bottom;

o. an additional smaller white print element appears adjacent to the word mark; and

p. the vaping device flavor appears on the label near the bottom end of the vape device in a smaller, white, all-capital typeface vertically aligned on the label.

138. As shown in the above examples set forth in Paragraph 136, the SOUTH Infringing Products deliberately copy every, or virtually every, element of the BREEZE PRO Product Design Trade Dress. Midwest, the Individual Counterclaim Defendants, World, and Speed deliberately copied these elements in a concerted effort to trade off of the enormous goodwill that Breeze Smoke has developed in connection with its BREEZE Goods and Services.

139. As shown in the above examples set forth in Paragraph 136, Midwest, the Individual Counterclaim Defendants, World, and Speed even went so far as to copy Breeze Smoke's highly distinctive flavor combinations. The SOUTH Infringing Products use the flavors "LUSH ICED,"

"CHERRY COLA," and "BLUE RAZZ," which are virtually identical, or are identical, to Breeze Smoke's flavors: "LUSH ICE," "CHERRY COLA," and "BLUE RASBERRY." Midwest, the Individual Counterclaim Defendants, World, and Speed copied Breeze Smoke's highly distinctive flavor combinations in a concerted effort to unfairly trade off of the enormous goodwill that Breeze Smoke has developed in connection with its BREEZE Goods and Services.

140. Midwest, the Individual Counterclaim Defendants, World, and Speed are directly competing with Breeze Smoke in that they are marketing, promoting, advertising, offering, distributing and selling virtually identical or closely similar disposable vaping products using a product design that is virtually identical to the BREEZE PRO Product Design Trade Dress to the same customers or the same or similar classes of customers as Breeze Smoke.

141. Breeze Smoke has not licensed or otherwise authorized Midwest, the Individual Counterclaim Defendants, World, and Speed to use its highly valuable and well-established BREEZE PRO Product Design Trade Dress in any manner whatsoever, except in connection with the authorized offer and sale of BREEZE Goods and Services.

142. Midwest, the Individual Counterclaim Defendants, World, and Speed knew of Breeze Smoke's prior use of the BREEZE PRO Product Design Trade Dress, and were well aware of the goodwill and market value of the BREEZE PRO Product Design Trade Dress, as each of them has offered, distributed and sold Breeze Smoke's BREEZE products for years and since well prior to any sales of the SOUTH Infringing Products.

143. Midwest, the Individual Counterclaim Defendants, World, and Speed intentionally chose to use and to trade off the goodwill associated with the BREEZE PRO Product Design Trade Dress to suggest a false affiliation between Breeze Smoke and its goods and services on the one

hand and Midwest, World, and Speed and their goods and services on the other, or to deliberately mislead and confuse customers about the source of the parties' respective goods.

144. Through their unauthorized and infringing uses of the BREEZE PRO Product Design Trade Dress, Midwest, the Individual Counterclaim Defendants, World, and Speed are deliberately and improperly capitalizing upon the goodwill that Breeze Smoke has built up in the BREEZE PRO Product Design Trade Dress.

145. As described in Paragraph 99 of this Counterclaim, Counterclaim Defendants' offer and sale of the NORTH Infringing Products has caused actual confusion in the marketplace among distributors, retailers, and consumers alike.

146. Midwest's, World's and Speed's websites associate the SOUTH Infringing Products with the NORTH Infringing Products, referring to them as "Powered by NORTH" in advertising materials. (*See* **Exhibits 17, 18, 19**.) For example, the below image is shown on Midwest's website:



(**Exhibit 17**, https://www.midwestgoods.com/south-powered-by-north-6-5ml-3k-puffs-

disposable-device-with-mesh-coil-display-of-10-msrp-14-99-each/, last accessed June 3, 2024.)

147. Midwest, the Individual Counterclaim Defendants, World, and Speed intentionally chose to market the SOUTH Infringing Products using an association with the NORTH Infringing Products to trade off the goodwill associated with the BREEZE PRO Product Design Trade Dress and to suggest a false affiliation between Breeze Smoke and its goods and services on the one hand and Midwest, World, and Speed and their goods and services on the other, or to deliberately mislead and confuse customers about the source of the parties' respective goods.

148. An employee of Parkhill Properties LLC dba Vape District ("Vape District")—a retailer of e-cigarettes and other products—has promoted the SOUTH Infringing Products by stating: "if you love north you're gonna [sic] love the south," and "they're calling it the Breeze Killer for a reason because it looks exactly like the breeze." (*See, e.g.*, Ex. 20 (digital media exhibit).)



149. On March 26, 2024, Breeze Smoke sent a letter to Vape District to provide notice of their unlawful infringement and to demand that they cease any further marketing, offering, and selling of the NORTH Infringing Products and SOUTH Infringing Products.

150. In response, Vape District's employee posted a TikTok where he stated that "NORTH

60

has contacted me with their counsel…they read this over and they stated that by law, I can advertise whatever the f*** I want…" (**Exhibit 21** at 0:25.)

151. Consumers that purchase vaping products typically do not exercise a high degree of care in making their purchases because such products are relatively inexpensive and therefore consumers are likely to confuse the SOUTH Infringing Products with the Breeze Smoke Goods and Services.

152. Midwest's, the Individual Counterclaim Defendants', World's, and Speed's unauthorized, unlawful, and intentional use of the BREEZE PRO Product Design Trade Dress has caused, or will cause, a likelihood of confusion among customers, consumers, potential consumers, and the general public as to the source or origin of the SOUTH Infringing Products and the sponsorship or endorsement of those goods and services by Breeze Smoke.

153. As a direct and proximate result of Midwest's, the Individual Counterclaim Defendants', World's, and Speed's unauthorized conduct, Breeze Smoke has been and will continue to be damaged by likely and actual confusion among consumers and potential consumers as to Breeze Smoke's association or connection with, or endorsement or authorization of, Midwest, World, Speed, and/or the SOUTH Infringing Products, at least in part in ways that cannot be adequately measured or fully remedied by monetary damages.

154. As a result of their intentional misappropriation of the BREEZE PRO Product Design Trade Dress for use in connection with the Infringing Products, Midwest, the Individual Counterclaim Defendants, World, and Speed have caused, or will cause, irreparable injury to Breeze Smoke and have or will substantially damage the value of the BREEZE PRO Product Design Trade Dress.

155. Midwest, the Individual Counterclaim Defendants, World, and Speed have unjustly enriched themselves at Breeze Smoke's expense by displaying, marketing, advertising, promoting, distributing, offering to sell, and selling the SOUTH Infringing Products. Among the benefits that Midwest, World, and Speed have gained from their unlawful and willful conduct are increased revenues from the sale of the SOUTH Infringing Products.

156. With every day that passes, Midwest's, the Individual Counterclaim Defendants', World's, and Speed's sale of the SOUTH Infringing Products compounds the irreparable harm to Breeze Smoke.

***Midwest's, the Individual Counterclaim Defendants', World's, and Speed's Willful and Infringing Use of the U.S. Design Patent No. D1,005,573 with Respect to the SOUTH Infringing Products***

157. The design of the SOUTH Infringing Products is substantially similar to the claims of the D'573 Patent.

158. Examples of the SOUTH Infringing Products next to the claims of the D'573 Patent are shown below:

**D'573 Patent**                    **SOUTH Infringing Products**



FIG. 1



**D'573 Patent**  **SOUTH Infringing Products**





**FIG. 2**

| **D'573 Patent** | **SOUTH Infringing Products** |
|---|---|



FIG. 3

| **D'573 Patent** | **SOUTH Infringing Products** |
| --- | --- |



**FIG. 4**



| **D'573 Patent** | **SOUTH Infringing Products** |
| :---: | :---: |
|  |  |

**FIG. 5**

| **D'573 Patent** | **SOUTH Infringing Products** |

 

**FIG. 6**

 

**FIG. 7**

159. Breeze Smoke has not licensed or otherwise authorized any Counterclaim Defendant to use the D'573 Patent in any manner whatsoever, except in connection with the authorized offer and sale of BREEZE Goods and Services.

160. To date, Midwest, the Individual Counterclaim Defendants, World, and Speed have not ceased selling or offering to sell the SOUTH Infringing Products and continue to still offer and sell the SOUTH Infringing Products.

161. ████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████

162. ████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████

163. ████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████

164. ████████████████████████████████████████████████████████████

████████████████████████████████████████████████

165. With every day that passes, Midwest's, the Individual Counterclaim Defendants', World's, and Speed's sale of the SOUTH Infringing Products compounds the irreparable harm to Breeze Smoke.

166. In addition, with every day that passes, Midwest's, Umair Yasin's, and Mudassir Yasin's active inducement of patent infringement by Midwest's customers compounds the irreparable harm to Breeze Smoke.

*Additional Details Regarding the Individual Counterclaim Defendants' Misconduct*

167. ████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

■■■■■

168. On September 10, 2025, the United States of America filed a complaint for a permanent injunction against Midwest Goods and Kamran Yasin. *See United States v. Midwest Goods Inc.*, No. 1:25-cv-10928 (N.D. Ill. Sept. 10, 2025) ("USA Complaint"). On October 8, 2025, Midwest Goods asserted that the USA Complaint is highly relevant to this lawsuit and in fact involves, in part, the NORTH and SOUTH Infringing Products. *See* Dkt. 204 at 2.

169. The USA Complaint alleges that Kamran Yasin receives and sells electronic nicotine delivery system products and that Kamran Yasin "is the owner and CEO of Midwest Goods and **the most responsible person at the firm**." *United States v. Midwest,* No. 1-25-cv-10928, Dkt. 1 at ¶ 1 (emphasis added).

170. ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

171. ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

172. ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

173. ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■



174. ███████████████████████████████████████████████

175. 

176. 

177. 

178.

[REDACTED]

179. [REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]



180. [REDACTED]

[REDACTED]



181. ████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████:





182. █████████████████████████████████████████████

████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
█████████████████████████████████████████████████

183. █████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
███████████████████████████████████████████████

184. █████████████████████████████████████████████
████████████████████████████

185. █████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████

██████████.

186. ████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████

████████████████████████████████████████████████████████

187. ████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████

188. ████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████████████

189. ████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████

████████████████████████████████████████████████████████

190.

191.

192.

193.



194.

***Defendants' Infringement has Caused Great Harm to Breeze Smoke***

195. Through their sales and marketing strategy, Counterclaim Defendants have done significant harm to Breeze Smoke's sales and have significantly harmed Breeze Smoke's goodwill.

196.

197.

198.

199.

200.

201. █████████████████████████████████████████████

██████████

██████████████

202. ██████████████████████████████████████

███████████████████████████████████████████████.

203. ██████████████████████████████████████

██████████████████████████████████████████████

█████████████████████████████████

204. ██████████████████████████████████████

███████████████████████████████

205. ██████████████████████████████████████

███████████████████████████████████████████████





206. ████████████████████████████████████████████

████████████████████████████████████████████

██

207. Due to the substantial similarity between the NORTH Infringing Products and the BREEZE PRO, a likelihood of confusion as to the source or origin of the NORTH Infringing Products and the sponsorship or endorsement of those goods and services by Breeze Smoke exists. By virtue of this likelihood of confusion, Breeze Smoke stands to suffer irreparable harm to its goodwill as a result of the inferior quality and dangers associated with the Infringing Products.

### FIRST COUNTERCLAIM

**FEDERAL TRADE DRESS INFRINGEMENT UNDER 15 U.S.C. § 1125**
(*The BREEZE PRO Packaging Trade Dress*)
**(Asserted against all Counterclaim Defendants)**

208. Breeze Smoke realleges and reincorporates by reference the allegations contained in the preceding paragraphs as is fully set forth herein.

209. This counterclaim is brought with respect to the NORTH Infringing Products.

210. This counterclaim is asserted against every Counterclaim Defendant.

211. Breeze Smoke owns valid and enforceable rights in the BREEZE PRO Packaging Trade Dress.

212. The rights of Breeze Smoke in the BREEZE PRO Packaging Trade Dress pre-date any use by Counterclaim Defendants.

213. The BREEZE PRO Packaging Trade Dress is non-functional.

214. The BREEZE PRO Packaging Trade Dress is highly inherently distinctive.

215. The BREEZE PRO Packaging Trade Dress is firmly associated in the minds of consumers and the general public with Breeze Smoke and its high quality goods and therefore has acquired secondary meaning.

216. Despite Breeze Smoke's well known prior rights in its highly distinctive BREEZE PRO Packaging Trade Dress, Counterclaim Defendants have used and continue to use in commerce without the consent of Breeze Smoke, the BREEZE PRO Packaging Trade Dress or copies, reproductions, or colorable imitations thereof in connection with the sale, offering for sale, distribution, and/or advertising of the NORTH Infringing Products. Such use is likely to cause confusion, mistake, or deception among consumers.

217. Counterclaim Defendants' actions constitute willful infringement of Breeze Smoke's exclusive rights in its trade dress in violation of 15 U.S.C. § 1125.

218. This is an exceptional case within the meaning of 15 U.S.C. § 1117(a). Counterclaim Defendants' use of the BREEZE PRO Packaging Trade Dress has been and continues to be done with the intent to cause confusion, mistake, and to deceive customers concerning the source and/or sponsorship of Counterclaim Defendants' goods and services.

219. As a direct and proximate result of Counterclaim Defendants' conduct, Breeze Smoke has suffered irreparable harm to the valuable BREEZE PRO Packaging Trade Dress and to Breeze Smoke's reputation, and other damages in an amount to be proved at trial. Unless Counterclaim Defendants are restrained from further infringement of the BREEZE PRO Packaging Trade Dress, Breeze Smoke will continue to be irreparably harmed.

220. Breeze Smoke has no adequate remedy at law that will compensate for the continued and irreparable harm it will suffer if Counterclaim Defendants' acts are allowed to continue.

<u>SECOND COUNTERCLAIM</u>

**FEDERAL TRADE DRESS INFRINGEMENT UNDER 15 U.S.C. § 1125**
**(*The BREEZE PRO Product Design Trade Dress*)**
**(Asserted against all Counterclaim Defendants)**

221. Breeze Smoke realleges and reincorporates by reference the allegations contained in the preceding paragraphs as is fully set forth herein.

222. This counterclaim is brought with respect to the NORTH Infringing Products and the SOUTH Infringing Products.

223. With regard to the NORTH Infringing Products, this counterclaim is brought against all Counterclaim Defendants.

224. With regard to the SOUTH Infringing Products, this counterclaim is brought against Midwest, the Individual Counterclaim Defendants, World, and Speed.

225. Breeze Smoke owns valid and enforceable rights in the BREEZE PRO Product Design Trade Dress.

226. The rights of Breeze Smoke in the BREEZE PRO Product Design Trade Dress pre-date any use by Counterclaim Defendants.

227. The BREEZE PRO Product Design Trade Dress is non-functional.

228. The BREEZE PRO Product Design Trade Dress is highly distinctive and firmly associated in the minds of consumers and the general public with Breeze Smoke and its high quality goods and therefore has acquired secondary meaning.

229. Despite Breeze Smoke's well known prior rights in its highly distinctive BREEZE PRO Product Design Trade Dress, Counterclaim Defendants have used and continue to use in commerce without the consent of Breeze Smoke, the BREEZE PRO Product Design Trade Dress or copies, reproductions, or colorable imitations thereof in connection with the sale, offering for sale, distribution, and/or advertising of the NORTH Infringing Products. Such use is likely to cause confusion, mistake, or deception among consumers.

230. Despite Breeze Smoke's well known prior rights in its highly distinctive BREEZE PRO Product Design Trade Dress, Midwest, the Individual Counterclaim Defendants, World, and Speed have used and continue to use in commerce without the consent of Breeze Smoke, the BREEZE PRO Product Design Trade Dress or copies, reproductions, or colorable imitations thereof in connection with the sale, offering for sale, distribution, and/or advertising of the SOUTH Infringing Products. Such use is likely to cause confusion, mistake, or deception among consumers.

231. Counterclaim Defendants' actions constitute willful infringement of Breeze Smoke's exclusive rights in its trade dress in violation of 15 U.S.C. § 1125.

232. This is an exceptional case within the meaning of 15 U.S.C. § 1117(a). Counterclaim Defendants' use of the BREEZE PRO Product Design Trade Dress has been and continues to be done with the intent to cause confusion, mistake, and to deceive customers concerning the source and/or sponsorship of Counterclaim Defendants' goods and services.

233. As a direct and proximate result of Counterclaim Defendants' conduct, Breeze Smoke has suffered irreparable harm to the valuable BREEZE PRO Product Design Trade Dress and to Breeze Smoke's reputation, and other damages in an amount to be proved at trial. Unless Counterclaim Defendants are restrained from further infringement of the BREEZE PRO Product Design Trade Dress, Breeze Smoke will continue to be irreparably harmed.

234. Breeze Smoke has no adequate remedy at law that will compensate for the continued and irreparable harm it will suffer if Counterclaim Defendants' acts are allowed to continue.

## THIRD COUNTERCLAIM

### ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT
### (815 ILCS 510/1 *et seq.*)

### (Asserted against all Counterclaim Defendants)

235. Breeze Smoke repeats and re-alleges the allegations in the preceding paragraphs as if fully set forth herein.

236. This counterclaim is brought with respect to both the NORTH Infringing Products and the SOUTH Infringing Products.

237. With regard to the NORTH Infringing Products, this counterclaim is brought against all Counterclaim Defendants.

238. With regard to the SOUTH Infringing Products, this counterclaim is brought against Midwest, World, Speed, and the Individual Counterclaim Defendants.

239. Counterclaim Defendants' actions have violated the Illinois Uniform Deceptive Trade Practices Act (815 ILCS 510/2) because Counterclaim Defendants have knowingly used and continue to use in commerce the BREEZE PRO Packaging Trade Dress and BREEZE PRO Product Design Trade Dress or reproductions, copies, or colorable imitations thereof, in connection

87

with the NORTH Infringing Products that Counterclaim Defendants manufacture, advertise, promote, and/or sell.

240. Midwest's, World's, Speed's, and the Individual Counterclaim Defendants' actions have violated the Illinois Uniform Deceptive Trade Practices Act (815 ILCS 510/2) because Midwest, World, Speed, and the Individual Counterclaim Defendants have knowingly used and continue to use in commerce the BREEZE PRO Packaging Trade Dress and BREEZE PRO Product Design Trade Dress or reproductions, copies, or colorable imitations thereof, in connection with the SOUTH Infringing Products that Midwest, World, Speed, and the Individual Counterclaim Defendants manufacture, advertise, promote, and/or sell.

241. Counterclaim Defendants' use of the BREEZE PRO Packaging Trade Dress and BREEZE PRO Product Design Trade Dress as alleged above is likely to confuse, mislead, or deceive customers, purchasers, and members of the general public as to the origin, source, sponsorship, or affiliation of Counterclaim Defendants and Breeze Smoke and/or the parties' respective goods and services, and is likely to cause such people to believe in error that Counterclaim Defendants' goods and services have been authorized, sponsored, approved, endorsed, or licensed by Breeze Smoke or that Counterclaim Defendants are in some way affiliated with Breeze Smoke.

242. Upon information and belief, Counterclaim Defendants are all longtime distributors (or are executives, directors, and/or owners of longtime distributors) of Breeze Smoke's products and therefore knew of Breeze Smoke's prior use of the BREEZE PRO Packaging Trade Dress and BREEZE PRO Product Design Trade Dress, and were well aware of the goodwill and market value of the BREEZE PRO Packaging Trade Dress and BREEZE PRO Product Design Trade Dress.

243. Upon information and belief, Counterclaim Defendants intentionally chose to use and to trade off the goodwill associated with the BREEZE PRO Packaging Trade Dress and BREEZE PRO Product Design Trade Dress to suggest a false affiliation between Breeze Smoke and its goods and services on the one hand and Counterclaim Defendants and their goods and services on the other, or to deliberately mislead and confuse customers about the source of the parties' respective goods. Counterclaim Defendants are therefore willfully engaging in a deceptive trade practice and Breeze Smoke is entitled to recover its costs and attorneys' fees under 815 ILCS 510/3. By reason of Counterclaim Defendants' actions, Breeze Smoke has suffered irreparable harm to its valuable BREEZE PRO Packaging Trade Dress and BREEZE PRO Product Design Trade Dress. Unless Counterclaim Defendants are restrained from their actions, Breeze Smoke will continue to be irreparably harmed.

244. Breeze Smoke has no remedy at law that will compensate it for the continued and irreparable harm that will be caused if Counterclaim Defendants' acts are allowed to continue.

245. As a direct and proximate result of Counterclaim Defendants' conduct, Breeze Smoke has suffered damages to the valuable BREEZE PRO Packaging Trade Dress and BREEZE PRO Product Design Trade Dress, and other damages in an amount to be proved at trial.

**FOURTH COUNTERCLAIM**
**UNJUST ENRICHMENT**
**(Asserted against all Counterclaim Defendants)**

246. Breeze Smoke repeats and re-alleges the allegations in the preceding paragraphs as if fully set forth herein.

247. This counterclaim is brought with respect to the NORTH Infringing Products and the SOUTH Infringing Products.

248. With regard to the NORTH Infringing Products, this counterclaim is brought against all Counterclaim Defendants.

249. With regard to the SOUTH Infringing Products, this counterclaim is brought against Midwest, World, Speed, and the Individual Counterclaim Defendants.

250. By misappropriating Breeze Smoke's valuable goodwill and reputation through the improper use of the BREEZE PRO Packaging Trade Dress and BREEZE PRO Product Design Trade Dress in connection with the NORTH Infringing Products, Counterclaim Defendants have been unjustly enriched to the material detriment of Breeze Smoke.

251. By misappropriating Breeze Smoke's valuable goodwill and reputation through the improper use of the BREEZE PRO Packaging Trade Dress and BREEZE PRO Product Design Trade Dress in connection with the SOUTH Infringing Products, Midwest, World, Speed, and the Individual Counterclaim Defendants have been unjustly enriched to the material detriment of Breeze Smoke.

252. Counterclaim Defendants are realizing profit and will continue to realize a profit from their improper use of the BREEZE PRO Packaging Trade Dress and BREEZE PRO Product Design Trade Dress.

253. Counterclaim Defendants' actions have directly and proximately caused irreparable harm to Breeze Smoke and its valuable goodwill and reputation, and will continue to harm Breeze Smoke unless enjoined.

254. An award of money damages alone cannot fully compensate Breeze Smoke for its injuries, and Breeze Smoke has no adequate remedy at law.

255. Breeze Smoke is entitled to compensatory damages in the form of restitution and such other and further relief as the Court deems equitable and just.

**FIFTH COUNTERCLAIM**
**DESIGN PATENT INFRINGEMENT**
**(Asserted against all Counterclaim Defendants)**

256. Breeze Smoke repeats and re-alleges the allegations in the preceding paragraphs as if fully set forth herein.

257. This counterclaim is brought with respect to the NORTH Infringing Products and the SOUTH Infringing Products.

258. With regard to the NORTH Infringing Products, this counterclaim is brought against all Counterclaim Defendants.

259. With regard to the SOUTH Infringing Products, this counterclaim is brought against Midwest, the Individual Counterclaim Defendants, World, and Speed.

260. One of Breeze Smoke's designs is shown in the D'573 Patent, entitled "Disposable E-Cigarette" and was duly issued by the United States Patent and Trademark Office on November 21, 2023, as seen in Exhibit 1.

261. The D'573 Patent is assigned to Breeze Smoke, which owns all substantial rights, interests, and title in the D'573 Patent.

262. The D'573 Patent is presumed valid and enforceable.

263. The NORTH Infringing Products that Counterclaim Defendants are using, offering to sell, and/or selling are substantially similar to the claim of the D'573 Patent and therefore infringe Breeze Smoke's patent rights under 35 U.S.C. § 271.

264. The SOUTH Infringing Products that Midwest, the Individual Counterclaim Defendants, World, and Speed are using, offering to sell, and/or selling are substantially similar to the claim of the D'573 Patent and therefore infringe Breeze Smoke's patent rights under 35 U.S.C. § 271.

265. Counterclaim Defendants do not have a license to practice the design claimed in the D'573 Patent, and are not authorized to do so except as used in connection with offering and selling

91

genuine BREEZE Goods and Services.

266. By continuing to sell the NORTH Infringing Products, Counterclaim Defendants are willfully infringing the D'573 Patent.

267. By continuing to sell the SOUTH Infringing Products, Midwest, the Individual Counterclaim Defendants, World, and Speed are willfully infringing the D'573 Patent.

268. Counterclaim Defendants' willful infringement makes this an exceptional case under 35 U.S.C. § 285.

269. As a direct and proximate result of Counterclaim Defendants' conduct, Breeze Smoke has suffered irreparable harm to the value of its patent rights.

270. Breeze Smoke has no adequate remedy at law that will compensate for the continued and irreparable harm it will suffer if Counterclaim Defendants' acts are allowed to continue.

271. Accordingly, Counterclaim Defendants have engaged in infringing acts related to the D'573 Patent with knowledge of the fact that the NORTH Infringing Products infringes the D'573 Patent. Further, Counterclaim Defendants have disregarded an objectively high likelihood of infringement of the D'573 Patent, and have acted, and continue to act, willfully, wantonly, and in deliberate disregard of Breeze Smoke's rights.

272. Midwest, the Individual Counterclaim Defendants, World, and Speed have engaged in infringing acts related to the D'573 Patent with knowledge of the fact that the SOUTH Infringing Products infringe the D'573 Patent. Further, Midwest, the Individual Counterclaim Defendants, World, and Speed have disregarded an objectively high likelihood of infringement of the D'573 Patent, and have acted, and continue to act, willfully, wantonly, and in deliberate disregard of Breeze Smoke's rights.

273. Midwest, Umair Yasin, and Mudassir Yasin also induce infringement of the D'573 Patent under 35 U.S.C. § 271(b). As discussed above, Midwest, Umair Yasin, and Mudassir Yasin have infringed and will continue to infringe the D'573 Patent by making, using, offering to sell, selling, and/or importing into the United States the NORTH and SOUTH Infringing Products. Further, Midwest, Umair Yasin, and Mudassir Yasin have had knowledge of the D'573 Patent since at least November 22, 2023. With that knowledge, Midwest, Umair Yasin, and Mudassir Yasin actively induce infringement by actively and knowingly aiding and abetting direct infringement by Midwest's customers, with specific intent to encourage infringement by Midwest's customers.

274. Midwest, Umair Yasin, and Mudassir Yasin actively induce Midwest's customers— retailers and distributors of vaping products—to use, offer to sell, and sell the NORTH and SOUTH Infringing Products, thereby inducing those customers to directly infringe the D'573 Patent.

275. Midwest's, Umair Yasin's, and Mudassir Yasin's customers have used, offered to sell, and sold the NORTH and SOUTH Infringing Products, thereby infringing the D'573 Patent.

<u>**DEMAND FOR JURY TRIAL**</u>

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Breeze Smoke demands a trial by jury on all issues present in this civil action.

<u>**PRAYER FOR RELIEF**</u>

WHEREFORE, Breeze Smoke respectfully requests and prays that the Court:

A.      Enter judgment in Breeze Smoke's favor and against Counterclaim Defendants on all counts of the Complaint and on all counterclaims;

B.  Determine that Counterclaim Defendants willfully violated the Lanham Act, that Breeze Smoke has been damaged by such violations, and that Counterclaim Defendants are liable to Breeze Smoke for such violations;

C.  Determine that Counterclaim Defendants have willfully engaged in deceptive trade practices within the meaning of the Illinois Uniform Deceptive Trade Practices Act and that Counterclaim Defendants are liable to Breeze Smoke for such willful violations;

D.  Determine that this case is "exceptional" within the meaning of 15 U.S.C. § 1117(a);

E.  Determine that Counterclaim Defendants willfully infringed the D'573 Patent, that Breeze Smoke has been damaged by such infringement, that Counterclaim Defendants are liable to Breeze Smoke for such violations, and that Breeze Smoke is entitled to damages under 35 U.S.C. § 284 and/or 35 U.S.C. § 289;

F.  Determine that this case is "exceptional" within the meaning of 35 U.S.C. § 285;

G.  Under all claims for relief, issue a preliminary and permanent injunction enjoining Counterclaim Defendants and any of their officers, employees, agents, successors and assignees, and all those in active concert and participation with the Counterclaim Defendants, and each of them who receives notice directly or otherwise of such injunctions:

  1.  from using in any manner the BREEZE PRO Packaging Trade Dress and BREEZE PRO Product Design Trade Dress and any variations thereof, or any other name, term, phrase, mark, design, device or symbol which so resembles or is similar to the BREEZE PRO Packaging Trade Dress and BREEZE PRO Product Design Trade Dress as to be likely to cause confusion, mistake or deception as to source, origin, sponsorship, approval, affiliation or the like;

  2.  from further unlawfully trading upon and misappropriating the goodwill and reputation of Breeze Smoke and competing unfairly with Breeze Smoke;

  3.  from making, using, offering to sell, or selling any device that infringes U.S. Design Patent No. D1,005,573

  4.  from inducing, encouraging, aiding, abetting, or contributing to any of the aforesaid acts; and

  5.  from making any false or misleading descriptions of fact or false or misleading representations of fact in their commercial advertising or promotion about the nature, characteristics, or qualities of their products or related commercial activities.

H. Order Counterclaim Defendants to deliver up for destruction all products, labels, signs, prints, packages, wrappers, receptacles, advertisements, or other materials in their possession, custody or control, and in the possession, custody or control of those in active concert or participation or otherwise in privity with them, which display or contain the BREEZE PRO Packaging Trade Dress and BREEZE PRO Product Design Trade Dress, or any variations thereof, or which constitute and/or bear any other device, representation or statement in violation of the injunction herein requested by Breeze Smoke, and that Counterclaim Defendants be ordered to deliver up for destruction all means of making the same;

I. Order Counterclaim Defendants to file with the Court and serve on Breeze Smoke, within thirty (30) days after service on it of such injunction (or such extended period as the Court may direct), a report in writing and under oath, setting forth in detail the manner and form in which Counterclaim Defendants have complied with the injunction;

J. In accordance with 15 U.S.C. § 1118, order Counterclaim Defendants to deliver to Breeze Smoke, at Counterclaim Defendants' expense, for destruction or other disposition, all products, including, without limitation, all labels, packaging, signs, prints, advertisements, promotional, and other materials, incorporating, bearing, or displaying the BREEZE PRO Packaging Trade Dress and BREEZE PRO Product Design Trade Dress in the possession, custody, or control of Counterclaim Defendants, as well as any reproduction, counterfeit, copy, or colorable imitation thereof, and all other materials or means of making the same;

K. Order that Counterclaim Defendants account for and pay over to Breeze Smoke all gains, profits, and advantages derived from its violation of 15 U.S.C. § 1125(a) and the common law, and also pay to Breeze Smoke the damages which Breeze Smoke has sustained by reason of such violations, together with legal interest from the date of accrual thereof;

L. Because of the willful nature of said violations and pursuant to 15 U.S.C. § 1117(a), order that Counterclaim Defendants be required to pay over to Breeze Smoke enhanced damages;

M. Order that Counterclaim Defendants be required to pay Breeze Smoke's reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1117(a);

N. Order that Counterclaim Defendants be required to pay Breeze Smoke's reasonable attorney's fees and costs pursuant to 35 U.S.C. § 285;

O. Award interest, including pre-judgment interest on the foregoing sums;

P. Award Breeze Smoke an amount of money to undertake corrective advertising; and

Q. Grant Breeze Smoke any other relief as the Court deems necessary and proper.

Dated:  December 23, 2025

Respectfully submitted,

By:  /s/ *Vikram A. Mathrani*
William B. Berndt
Vikram A. Mathrani
Jenna E. Saunders
David Roulo
Alexandra Angyalosy
HONIGMAN LLP
321 N. Clark St., Suite 500
Chicago, IL 60654
Telephone:  (312) 701-9360
wberndt@honigman.com
jsaunders@honigman.com
droulo@honigman.com
aangyalosy@honigman.com

Jeffrey K. Lamb
HONIGMAN LLP
660 Woodward Ave., Suite 2290
Detroit, MI 48226
Telephone: (313) 465-7000
jlamb@honigman.com

Sarah E. Waidelich
101 N. Main St. #850
Ann Arbor, MI 48104
Telephone: (734) 418-4217
swaidelich@honigman.com

*Attorneys for the Defendant/Counterclaim Plaintiff*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| MIDWEST GOODS INC., DBA MIDWEST DISTRIBUTION ILLINOIS,<br><br>Plaintiff,<br><br>vs.<br><br>Breeze Smoke, LLC, And KMT Services LLC,<br><br>dba KMT Distribution,<br><br>Defendants. | CASE NO. 1:23-CV-05406<br><br>HONORABLE THOMAS M. DURKIN<br><br>JURY TRIAL DEMANDED |
| BREEZE SMOKE LLC,<br><br>Counter-Claimant,<br><br>vs.<br><br>MIDWEST GOODS INC., DBA MIDWEST DISTRIBUTION ILLINOIS, WISEMEN WHOLESALE, INC., SPEED WHOLESALE, INC., WORLD WHOLESALE, INC., LIGHT VIEW LLC,<br><br>Counterclaim Defendants. | |

## INDEX OF EXHIBITS TO BREEZE SMOKE'S THIRD AMENDED COUNTERCLAIMS

| Exhibit | Description |
|---|---|
| 1 | TESS Pages for Breeze Smoke's U.S. Trademark Registrations |
| 2 | TESS Pages for Breeze Smoke's U.S. Trademark Applications |
| 3 | Examples of Copycat Products |
| 4 | Examples of Various Alternative Designs for Vape Device Product Packaging |
| 5 | Examples of Third Party Retailers Discussing the Breeze Pro's Elegant Design |
| 6 | Examples of Various Alternative Designs for Vape Device Product Design |

| Exhibit | Description |
|---|---|
| 7 | Design Patent No. D1,005,573 |
| 8 | Additional Examples of Counterclaim Defendant's Infringing Uses |
| 9 (New) | Examples of Consumer Confusion |
| 10 | Examples of Consumer Confusion |
| 11 | Cease and Desist Letter to Wisemen Wholesale, Inc. |
| 12 | Cease and Desist Letter to Speed Wholesale, Inc. |
| 13 | Cease and Desist Letter to World Wholesale Inc. and Light View LLC |
| 14 | Breeze Smoke's Second Set of Requests for Production to Midwest Goods Inc. |
| 15 | Letter from Counsel for Midwest Goods Inc. to Counsel for Breeze Smoke LLC |
| 16 | Printout of webpage https://www.instagram.com/midwestgoodsinc/p/C5ogr0TiBO5/ |
| 17 | Printout of webpage https://www.midwestgoods.com/south-powered-by-north-6-5ml-3k-puffs-disposable-device-with-mesh-coil-display-of-10-msrp-14-99-each/ |
| 18 | Printout of webpage https://worldvapeusa.com/south-pwd-by-north-6-5ml-3000-puffs-disposable-vape-10ct/ |
| 19 | Printout of webpage https://speedwholesale.com/south-3000-puffs-disposable-vape-10ct-display.html?search=South |
| 20 | Digital media exhibit – TikTok video from Parkhill Properties LLC dba Vape District employee referring to accused products as "Breeze Killer" |
| 21 | Digital media exhibit – TikTok video from Parkhill Properties LLC dba Vape District employee regarding contact with Midwest's counsel |
| 22 | FILED UNDER SEAL – WeChat produced by Midwest Goods having the Bates number MIDWEST396941, dated April 22, 2023 |
| 23 | FILED UNDER SEAL – WeChat produced by Midwest Goods beginning with the Bates number MIDWEST396946, dated April 30, 2023 |
| 24 | FILED UNDER SEAL – Meeting Memo produced by Midwest Goods beginning with the Bates number MIDWEST387465, dated May 5, 2023 |
| 25 | FILED UNDER SEAL – WeChat produced by Midwest Goods beginning with the Bates number MIDWEST397121, dated May 31, 2023 |

| Exhibit | Description |
| --- | --- |
| 26 | FILED UNDER SEAL – WhatsApp chat produced by Midwest Goods beginning with the Bates number MIDWEST397877, dated August 24, 2023 |

## CERTIFICATE OF SERVICE

I hereby certify that on December 23, 2025, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

/s/ Vikram A. Mathrani
Vikram A. Mathrani

One of the attorneys for
Defendant/Counterclaimant Breeze
Smoke LLC