# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| MIDWEST GOODS INC., dba MIDWEST DISTRIBUTION ILLINOIS, | CASE NO.: 1:23-CV-05406 |
| Plaintiff, | HONORABLE THOMAS M. DURKIN |
| | HONORABLE BETH W. JANTZ |
| v. | |
| BREEZE SMOKE, LLC, and KMT SERVICES LLC, dba KMT DISTRIBUTION, | |
| Defendants. | |
| BREEZE SMOKE LLC, | |
| Counter-Claimant, | |
| v. | |
| MIDWEST GOODS INC., dba MIDWEST DISTRIBUTION ILLINOIS, WISEMEN WHOLESALE, INC., SPEED WHOLESALE, INC., WORLD WHOLESALE, INC., LIGHT VIEW LLC, UMAIR YASIN, MUDASSIR YASIN, KAMRAN YASIN, IMRAN SADIQ, and SOHAIB SAKARIA | |
| Counterclaim Defendants. | |

**MEMORANDUM IN SUPPORT OF INDIVIDUAL COUNTERCLAIM DEFENDANTS' CONTESTED CONSOLIDATED MOTION TO DISMISS BREEZE SMOKE'S THIRD AMENDED COUNTERCLAIM**

# Table of Contents

I.    INTRODUCTION ........................................................................................................ 1

II.   FACTUAL BACKGROUND ...................................................................................... 2

    A.   Procedural History ............................................................................................ 2

    B.   Breeze and Its Alleged Intellectual Property Rights ............................................ 2

    C.   Midwest and the Individual Counterclaim Defendants ........................................ 4

    D.   Common Elements Shared Among Nearly All Third-Party Vape Products....................... 6

III.    ARGUMENT............................................................................................................. 6

    A.   The TAC Fails to State a Trade Dress Claim Against the ICDs (Counts I-II). ................... 6

       1.   Breeze Fails to Plausibly Plead a "Special Showing" for Individual Liability.............. 6

       2.   Breeze's Generalized Allegations Against the ICDs Are Insufficient to Meet the Special Showing on the Unregistered Trade Dress. ............................................................. 7

          i.   The Allegations Do Not Plausibly Allege Liability as to Kamran Yasin. ................... 9

          ii.   The Allegations Do Not Plausibly Allege Liability as to Messrs. Sadiq or Sakaria. 10

    B.   The Unregistered Trade Dress Is Functional and Therefore Not Protectable.................... 11

       1.   Breeze's Unregistered Packaging is Functional (Count I). .......................................... 12

       2.   Breeze's Unregistered Product Design is Functional (Count II). ................................. 14

    C.   The Asserted Product Packaging and Design Trade Dress are Indefinite........................ 15

    D.   Counts III (IUDTPA) and Count IV (Unjust Enrichment) Likewise Fail........................ 18

    E.   Breeze's Design Patent Claim, Count V, Likewise Fails. ............................................... 18

       1.   The Claimed and Accused Product Designs Are Sufficiently Distinct........................ 18

       2.   Breeze Insufficiently Alleges Direct Patent Infringement Against the ICDs................ 21

       3.   Breeze Fails to Plausibly Allege Active Inducement.................................................... 22

    F.   Breeze Should Not Be Given Leave to Amend Its Claims Against the ICDs................... 22

IV.   CONCLUSION......................................................................................................... 22

**Page(s)**

**Cases**

*Aaron v. Aguirre*,
    No. 06-cv-1451, 2007 WL 959083 (S.D. Cal. Mar. 8, 2007) ......................................................7

*Aero-Stream, LLC v. Septicair Aid, LLC*,
    No. 12-C-190, 2012 WL 12929555 (E.D. Wis. Aug. 10, 2012) ...............................................21

*Aleshire v. Harris, N.A.*,
    586 F. App'x 668 (7th Cir. 2013) ............................................................................................22

*Anderson v. Kimberly-Clark Corp.*,
    570 F. App'x 927 (Fed. Cir. 2014) .....................................................................................19, 21

*APP Grp. (Canada) Inc. v. Rudsak USA Inc.*,
    No. 22-1965, 2024 WL 89120 (2d Cir. Jan. 9, 2024) ..............................................................16

*Aromatique, Inc. v. Gold Seal*,
    28 F.3d 863 (8th Cir. 1994) ....................................................................................................12

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ..................................................................................................................6

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ..................................................................................................................6

*Bretford Mfg., Inc. v. Smith Sys. Mfg. Corp.*,
    419 F.3d 576 (7th Cir. 2005) ..................................................................................................11

*Brownmark Films, LLC v. Comedy Partners*,
    682 F.3d 687 (7th Cir. 2012) ....................................................................................................8

*Brunswick Corp. v. Brit. Seagull Ltd.*,
    35 F.3d 1527 (Fed. Cir. 1994) .................................................................................................14

*Century 21 Real Est., LLC v. Destiny Real Est. Props.*,
    No. 4:11-CV-38, 2011 WL 6736060 (N.D. Ind. Dec. 19, 2011) ...............................................6

*Commil USA, LLC v. Cisco Systems, Inc.*,
    575 U.S. 632 (2015) ................................................................................................................22

*Competitive Edge, Inc. v. Staples, Inc.*,
    763 F. Supp. 2d 997 (N.D. Ill. 2010) ......................................................................................19

*Dangler v. Imperial Mach., Co.*,
  11 F.2d 945 (7th Cir. 1926) ...............................................................................7, 21

*Egyptian Goddess, Inc. v. Swisa, Inc.*,
  543 F.3d 665 (Fed. Cir. 2008)...................................................................................18

*Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*,
  796 F.3d 1312 (Fed. Cir. 2015)...............................................................18, 19, 20, 21

*Facebook, Inc. v. Power Ventures, Inc.*,
  844 F.3d 1058 (9th Cir. 2016) ..................................................................................11

*Flexible Steel Lacing Co. v. Conveyor Accessories, Inc.*,
  955 F.3d 632 (7th Cir. 2020) ....................................................................................11

*FM Indus., Inc. v. Citicorp Credit Servs., Inc.*,
  No. 07 C 1794, 2007 WL 4335264 (N.D. Ill. Dec. 5, 2007) .....................................7

*Forest River, Inc. v. Winnebago Indus., Inc.*,
  No. 3:15-cv-609, 2017 WL 590245 (N.D. Ind. Feb. 14, 2017) ...............................16

*Global-Tech Appliances, Inc. v. SEB S.A.*,
  563 U.S. 754 (2011)...................................................................................................22

*Gociman v. Loyola Univ. of Chicago*,
  41 F.4th 873 (7th Cir. 2022) .......................................................................................8

*Grill Rescue LLC v. Sched. A Dfts.*,
  No. 23-CV-15984, 2026 WL 483304 (N.D. Ill. Feb. 20, 2026) ........................18, 19

*Gunn v. Cont'l Cas. Co.*,
  968 F.3d 802 (7th Cir. 2020) ......................................................................................6

*I.M. Wilson, Inc. v. Otvetstvennostyou "Grichko"*,
  500 F. Supp. 3d 380 (E.D. Pa. 2020) .........................................................................9

*Jay Franco & Sons, Inc. v. Franek*,
  615 F.3d 855 (7th Cir. 2010) ....................................................................................14

*Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*,
  58 F.3d 27 (2d Cir. 1995)..........................................................................11, 12, 14, 15

*Karling v. Samsara Inc.*,
  610 F. Supp. 3d 1094 (N.D. Ill. 2022) ........................................................................8

*Kind LLC v. Clif Bar & Co.*,
  No. 14-cv-770, 2014 WL 2619817 (S.D.N.Y. Jun. 12, 2014).................................13

*Kurapia Inc. v. Sod and Seed Inc.*,
No. 24-cv-5200, 2025 WL 35049 (N.D. Cal. Jan. 6 2025)......................................................9

*Laurel Rd. Bank v. CommonBond, Inc.*,
No. 18-cv-7797, 2019 WL 1034188 (S.D.N.Y. Mar. 5, 2019)....................................14, 15, 17

*Leatherman Tool Grp., Inc. v. Cooper Indus., Inc.*,
199 F.3d 1009 (9th Cir. 1999) ...........................................................................................14

*Life Savers Corp. v. Curtiss Candy Co.*,
182 F.2d 4 (7th Cir. 1950), *abrogated on other grounds by Qualitex Co. v.
Jacobson Prods. Co.*, 514 U.S. 159 (1995) .................................................................13, 15

*Luvert v. Chicago Hous. Auth.*,
142 F. Supp. 3d 701 (N.D. Ill. 2015) ....................................................................................6

*MacNeil IP LLC v. Harbor Freight Tools USA, Inc.*,
No. 24-cv-3767, 2026 WL 800160 (N.D. Ill. Mar. 23, 2026) ...............................................18

*Magnum Constr. Mgmt., LLC v. WSP USA Sols., Inc.*,
522 F. Supp. 3d 1202 (S.D. Fla. 2021) ..................................................................................8

*McKeon Prods. v. Flents Prods. Co.*,
No. 02-73400, 2002 U.S. Dist. LEXIS 27123 (E.D. Mich. Nov. 19, 2002)............................13

*Michaels v. Agros Trading Confectionery Spolka Akcyjna*,
No. 16-cv-01015, 2018 WL 9810847 (W.D.N.Y. Jun. 25, 2018) ..........................................12

*Nordstrom Consulting, Inc. v. M & S Techs., Inc.*,
No. 06 C 3234, 2006 WL 2931677 (N.D. Ill. Oct. 12, 2006) ..................................................7

*OddzOn Prods., Inc. v. Just Toys, Inc.*,
122 F.3d 1396 (Fed. Cir. 1997)...........................................................................................19

*Peaceable Planet, Inc. v. TY, Inc.*,
185 F. Supp. 2d 893 (N.D. Ill. 2002) ...................................................................................21

*Peaceable Planet, Inc. v. Ty, Inc.*,
362 F.3d 986 (7th Cir. 2004) ..............................................................................................10

*PIM Brands Inc. v. Haribo of Am. Inc.*,
81 F.4th 317 (3d Cir. 2023) ................................................................................................13

*Plum Markets, LLC v. Compass Grp. USA, Inc.*,
No. 20 C 6759, 2021 WL 323791 (N.D. Ill. Feb. 1, 2021)....................................................16

*Range of Motion Prods., LLC ("RoM") v. Armaid Co. Inc.*,
166 F.4th 981 (Fed. Cir. 2026) ...............................................................................19, 20, 21

*In re Reelex Packaging Sols., Inc.*,
834 F. App'x 574 (Fed. Cir. 2020) ..................................................................................13

*SEC v. Winemaster*,
529 F. Supp. 3d 880 (N.D. Ill. 2021) ................................................................................8

*Shall v. Henry*,
211 F.2d 226 (7th Cir. 1954) ..........................................................................................22

*Speare Tools, Inc. v. Klein Tools, Inc.*,
No. 13-C-324, 2014 WL 6473220 (E.D. Wis. Nov. 18, 2014)................................................12

*Specht v. Google, Inc.*,
660 F. Supp. 2d 858 (N.D. Ill. 2009) ...............................................................................18

*Storck USA, L.P. v. Farley Candy Co., Inc.*,
821 F.Supp. 524 (N.D. Ill. 1993) ....................................................................................12

*TrafFix Devices, Inc. v. Mktg. Displays, Inc.*,
532 U.S. 23 (2001)........................................................................................................9, 11

*Universal Beauty Prods., Inc. v. Maxim Beauty Prods., Inc.*,
No. 17 C 4840, 2020 WL 7241065 (N.D. Ill. Dec. 9, 2020) ................................................7, 9

*Vanwinkle v. Nichols*,
No. 1:15-cv-1082, 2015 WL 9275671 (S.D. Ind. Dec. 18, 2015) ............................................2

*Wal-Mart Stores, Inc. v. Samara Bros., Inc.*,
529 U.S. 205 (2000)........................................................................................................11, 15

*Weber-Stephen Prods. LLC v. Sears Holding Corp.*,
No. 13-cv-01686, 2013 WL 5782433 (N.D. Ill. Oct. 25, 2013) ............................................16

*Wilden Pump & Eng'g Co. v. Pressed & Welded Prod. Co.*,
655 F.2d 984 (9th Cir. 1981) ..........................................................................................10

*Wonderful Co. LLC v. Nut Cravings Inc.*,
No. 23-7540-cv, 2025 WL 212064 (2d Cir. Jan. 16, 2025)....................................................12

*Young v. Stone*,
No. 13-C-4920, 2014 WL 4271624 (N.D. Ill. Aug. 28, 2014) ..............................................19

*YZ Prods., Inc. v. Redbubble, Inc.*,
545 F. Supp. 3d 756 (N.D. Cal. 2021) ..............................................................................16

**Statutes**

15 U.S.C. § 1125(a)(3)..................................................................................................11

15 U.S.C. § 4402........................................................................................................12

35 U.S.C. § 271(a) .......................................................................................................2

35 U.S.C. § 271(b) .......................................................................................................2

**Other Authorities**

3, J. Thomas McCarthy, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION
  § 25:24 (5th ed.)......................................................................................................10

## I.  INTRODUCTION

After more than two years of litigation, three amendments to the complaint, extensive discovery, including three depositions of Midwest Goods Inc.'s ("Midwest") employees, and a failed preliminary injunction motion, Breeze Smoke LLC's ("Breeze") Third Amended Counterclaim, Dkt. 230, ("TAC") fails to plausibly allege facts that can support its claims against Kamran Yasin, Umair Yasin, Mudassir Yasin, Imran Sadiq, and Sohaib Sakaria (collectively, the "Individual Counterclaim Defendants" or "ICDs"). Breeze's TAC should therefore be dismissed.

First, the TAC fails to meet the pleading standard for alleging personal liability of the ICDs. The TAC is riddled with conclusory allegations against the ICDs collectively and is devoid of sufficient factual detail to support a plausible inference that each ICD has directly and personally engaged in or is the "moving force" behind the alleged infringing conduct. Instead, Breeze relies on insufficient allegations, asserting either that the ICDs engaged in conduct not alleged to infringe Breeze's trade dress or design patent rights, or offering only conclusory assertions that the individuals exercised decision-making authority for the alleged infringing conduct—particularly as to Kamran Yasin, Imran Sadiq, and Sohaib Sakaria.

Second, Breeze's asserted trade dress in its product packaging and product design for electronic vape devices is nothing more than a combination of quintessentially functional—and therefore unprotectable—elements. These functional features include a legally required nicotine warning label, transparent packaging designed to make the product "visible from the front and sides of the rectangular box," and text and corresponding colors to alert customers to the flavor of the products. Breeze's attempt to claim rights in the overall "look and feel" from the combination of these functional elements does not create protectable IP rights. Even if Breeze's trade dress were not functional, its identification of the purported trade dress is too vague to meet the requirement

1

that trade dress be precisely defined. Thus, the ICDs lack sufficient notice of the scope of Breeze's trade dress claim.

Third, Breeze's state law claims, Counts III (IUDTPA) and Count IV (Unjust Enrichment), are assessed under the same standard as its trade dress claims and all fail for the same reasons.

Fourth, the patent claim (Count V) against the ICDs fails because (i) the accused designs are "plainly dissimilar" from the nonfunctional aspects of the D'573 Patent design, if any; and (ii) Breeze does not plausibly allege direct infringement under 35 U.S.C. § 271(a). Breeze's induced infringement claim against Messrs. Mudassir and Umair Yasin under 35 U.S.C. § 271(b) also fails, because the TAC does not plausibly allege they knew the alleged induced acts infringe.

Accordingly, all claims against the ICDs should be dismissed with prejudice because further amendment would be futile.

## II.    FACTUAL BACKGROUND

### A.  Procedural History

On October 22, 2025, Breeze sought leave to add the ICDs to a TAC. Dkt. No. 206. Over Midwest's objection, the Court granted that request by Minute Order dated December 23, 2025. Dkt. No. 229. In doing so, the Court did not make any factual or legal findings with respect to the parties' Rule 15 futility arguments, stating that its "order does not preclude the new individual defendants from filing motions to dismiss pursuant to Rule 12." *Id.* Breeze filed the TAC the same day. Dkt. No. 230. Each of the ICDs subsequently waived service effective February 19, 2026. Dkt. Nos. 284-288. This consolidated motion to dismiss is timely filed on behalf of all ICDs.[1]

### B.  Breeze and Its Alleged Intellectual Property Rights

---

[1] The ICDs make new and/or modified arguments to the ones Midwest made in response Breeze's request to amend. Granting leave to amend under Rule 15 does not preclude the later dismissal under Rule 12(b)(6). *See, e.g.*, *Vanwinkle v. Nichols*, No. 1:15-cv-1082, 2015 WL 9275671, at *11 (S.D. Ind. Dec. 18, 2015).

Breeze manufactures, sells, and distributes tobacco and vaping products, including disposable electronic vaping devices. TAC ¶¶ 28-29. Breeze's tobacco and vaping products include Breeze's registered BREEZE trademark. TAC ¶¶ 32-35.

Breeze's Alleged Trade Dress Rights: Breeze does not own a federal trademark registration for either of its asserted trade dress marks here, the "BREEZE PRO Packaging Trade Dress" and the "BREEZE PRO Product Design Trade Dress," collectively the "Unregistered Trade Dress." TAC ¶¶ 35, 51, 61.

The BREEZE PRO Packaging Trade Dress "compris[es] the overall look and feel of the BREEZE PRO product packaging and features, among others [sic] things," including:

| Breeze's Unregistered Claimed Packaging Rights | Description of Elements |
|---|---|
| 1. Rectangular Box | A rectangular clear plastic outer box |
| 2. Wraparound Label | A large, cardboard label that wraps around the rectangular box … wherein the back of the wraparound label extends the full length of the rectangular box and the front of the wraparound label extends only part of the length of the rectangular box, such that the top portion of the vaping device and the vertically aligned product branding is visible from the front and sides of the rectangular box; |
| 3. Front Label Including BREEZE Word Mark | a. The wording "BREEZE," a word mark identifying the product, appears at the top in large white all capital letters; <br> b. A second line of text appears underneath the wording "BREEZE" in a smaller, less emphasized font; <br> c. The flavor of the vape is printed underneath the word mark and second line of text; and |
| 4. Nicotine Warning | The nicotine warning is at the bottom of the front side of the cardboard label in a white box; and |
| 5. Flavor Identification | The flavor of the product and the number of puffs are displayed on both sides of the wraparound label. |

TAC ¶ 51 (as modified). Breeze does not allege any "other things" it believes comprise its BREEZE PRO Packaging Trade Dress.

Breeze calls the BREEZE PRO Product Design Trade Dress as "the overall look and feel of the BREEZE PRO product design and features, among others [sic] things," including:

| Breeze's Unregistered Claimed Design Rights | Description of Elements |
|---|---|
| 1. **Black Body** | a black body that resembles a rectangular cylinder having rounded corners, a flattened front and back sides, and a flat bottom; |
| 2. **Mouthpiece** | the top end of the body comprises the mouthpiece that is curved, has an opening for inhalation, narrows toward the opening, and has a concave region on the front side; |
| 3. **Rounded Edges** | the front and back of the device exhibit a rounded rectangular silhouette |
| 4. **Bottom** | the bottom end of the body has a flat rectangular shaped surface having rounded corners; |
| 5. **Color Matching Wave Design** | a rectangular label featuring a wavy design colored to match the flavor of the vape device; |
| 6. **BREEZE Word Mark** | the wording "BREEZE," a word mark identifying the product, printed in bold, white, all-capital typeface is vertically aligned on the label nearer to the mouthpiece than the bottom; |
| 7. **White Lettering** | an additional smaller white print element appears immediately above the word mark; and |
| 8. **Flavor Identification** | the vaping device flavor appears on the label near the bottom end of the vape device in a smaller, white, all-capital typeface vertically aligned on the label |

TAC ¶ 61 (as modified). Breeze does not allege what "other things" it believes comprise its BREEZE PRO Product Design Trade Dress.

Breeze's Alleged Patent Rights: Asserted Design Patent No. D1,005,573 (the "D'573 Patent") issued to Breeze on November 21, 2023. The D'573 Patent purports to claim the design of an e-cigarette, allegedly embodied in the Breeze Pro vaping device. TAC ¶¶ 78, 82-83; Ex. 7.

### C. Midwest and the Individual Counterclaim Defendants

Midwest distributes tobacco and vape products. TAC ¶¶ 84-86, 136. Each of the ICDs either works for or provides services to Midwest. TAC ¶¶ 10-12, 15, 18.[2]

Kamran Yasin is the CEO of Midwest. TAC ¶ 12. Other than alleging that he: (i) received

---

[2] Breeze wrongly alleges that each ICD is an owner, executive and/or employee of Midwest. Mr. Sakaria is not a Midwest "product development executive." TAC ¶ 18. Mr. Sakaria is a consultant. The complaint also inaccurately calls Messrs. Mudassir and Umair Yasin owners. TAC ¶¶ 10-11. While these facts further undermine Breeze's claims, its allegations are treated as true for purpose of this motion.

a demand letter from Breeze (*id.* ¶ 103); (ii) delivers general instructions about job functions to employees (*id.* ¶ 171); (iii) was passively in a WhatsApp chat about Midwest's NORTH branded vape (*id.* ¶ 188); and (iv) per an allegation in an unrelated complaint, is "the most responsible person at the firm" (*id.* ¶¶ 168-69), the balance of Breeze's allegations infer that he "supervised" the alleged infringing activity merely by virtue of being CEO. *Id.* ¶¶ 12, 14, 167, 187.

Imran Sadiq is a Purchasing Manager for Midwest. TAC ¶ 15. The core non-conclusory allegations asserted against Mr. Sadiq are that he "reports directly to Mudassir Yasin" (*id.* ¶ 16) and that *subject to approval* from others at Midwest, like Mudassir Yasin, he selects vaping products and product manufacturers for Midwest to work with. *Id.* ¶¶ 17, 170, 176. Breeze also alleges that he attended meetings about the NORTH and SOUTH branded products, presented that information to others at Midwest, and that he was in a WhatsApp group about those products. *Id.* ¶¶ 173, 175-176, 179-181, 183 188, 190. Aside from these allegations, Breeze alleges without any underlying factual support that Mr. Sadiq "supervised and directed," "designed and developed," or was a "decision maker" concerning the alleged infringing activities. *Id.* ¶¶ 172, 177, 182, 187.

Breeze's allegations about Sohaib Sakaria are substantially the same as those against Mr. Sadiq. Breeze alleges that Mr. Sakaria "supervised and directed," "designed and developed," or was a "decision maker" concerning the alleged infringing activities, while at the same time acknowledging that Mr. Sakaria operated completely under the direction, supervision and control of Messrs. Umair Yasin and Mudassir Yasin. *Id.* ¶¶ 18, 172, 176-182, 182, 187, 190.

Umair Yasin and Mudassir Yasin are employees of Midwest, not owners. *Id.* ¶¶ 10-11. The TAC is rife with inaccurate, conclusory allegations that they "willfully and knowingly" carried out or induced the alleged infringement. *See id.* ¶¶ 118-121, 123, 130, 161-167, 172-178, 182-183, 187, 191-192, 273-275.

**D. Common Elements Shared Among Nearly All Third-Party Vape Products.**

Nearly all third-party product packaging for vape products comprise of: (i) a rectangular box designed to surround an electronic vape, Dkt. No. 230-4 at 2-6, 8-34, 37-44, 50-61; (ii) a label that wraps around the rectangular box, contains the product name, flavor and number of puffs, *id*. at 2-6, 8-34, 37-44, 50-61; (iii) a nicotine label on the bottom front of the packaging, *id*. at 2-26, 35-39, 43-61. Likewise, nearly all third-party products have a product design which contains: (i) a curved mouthpiece for inhalation, *id*. at 4-17, 21-34, 37-39, 43-54, 60-61; (ii) rounded edges in the front back and bottom of a rectangular silhouette, *id*. at 4-17, 21-34, 37-39, 43-54, 60-61; (iii) a product or brand name, *id*. at 1-61.

**III. ARGUMENT**

Motions under Rule 12(b)(6) challenge the "sufficiency of the complaint." *Gunn v. Cont'l Cas. Co.*, 968 F.3d 802, 806 (7th Cir. 2020). The notice pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[L]abels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Instead, the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678. The factual content the Court can consider on a Rule 12(b)(6) motion includes "the complaint itself, documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice." *Luvert v. Chicago Hous. Auth.*, 142 F. Supp. 3d 701, 705 (N.D. Ill. 2015).

**A. The TAC Fails to State a Trade Dress Claim Against the ICDs (Counts I-II).**

*1. Breeze Fails to Plausibly Plead a "Special Showing" for Individual Liability.*

Individual officers are not typically "liable for the infringement of their corporation in the absence of some special showing." *Century 21 Real Est., LLC v. Destiny Real Est. Props.*, No.

4:11-CV-38, 2011 WL 6736060, at \*6 (N.D. Ind. Dec. 19, 2011). Long established precedent explains that this "special showing" requires allegations that an officer "act[ed] willfully and knowingly" to "carry out" the alleged infringement. *Dangler v. Imperial Mach., Co.*, 11 F.2d 945, 947 (7th Cir. 1926). Recent cases applying *Dangler* require the claimant plausibly allege that each defendant directly and personally engaged in or was the "moving force" behind the conduct alleged. *Nordstrom Consulting, Inc. v. M & S Techs., Inc.*, No. 06 C 3234, 2006 WL 2931677, at \*1 (N.D. Ill. Oct. 12, 2006) (finding the "special showing" requires allegations that the defendant was "the 'moving force' behind [the defendant corporation's] alleged infringing activities" and "'willfully and deliberately induced, aided and abetted the past and continuing infringement.'") (cit. omitted); *Universal Beauty Prods., Inc. v. Maxim Beauty Prods., Inc.*, No. 17 C 4840, 2020 WL 7241065, at \*3 (N.D. Ill. Dec. 9, 2020) (finding officer's mere performance of corporate duties inadequate for liability); *FM Indus., Inc. v. Citicorp Credit Servs., Inc.*, No. 07 C 1794, 2007 WL 4335264, at \*4 (N.D. Ill. Dec. 5, 2007) ("[A] special showing must be made that they acted willfully and knowingly, and personally participated in the infringing activities or otherwise used [the company] to carry out their own deliberate infringement."). Breeze's allegations against the ICDs do not meet this standard.

### 2. Breeze's Generalized Allegations Against the ICDs Are Insufficient to Meet the Special Showing on the Unregistered Trade Dress.

Despite the benefit of extensive discovery[3], Breeze's allegations against the ICDs are conclusory and lack sufficient detail to plausibly allege that any defendant was the "moving force" behind the purportedly infringing conduct. *See Nordstrom*, 2006 WL 2931677, at \*1; *see also Aaron v. Aguirre*, No. 06-cv-1451, 2007 WL 959083, at \*16 n.6 (S.D. Cal. Mar. 8, 2007) ("[U]ndifferentiated pleading against multiple defendants is improper" because it fails to meet the

---

[3] TAC ¶¶ 14, 16-17, 170-71, 206 (containing allegations characterizing witness testimony).

notice requirement under Rule 8). Instead, the TAC relies on boilerplate, undifferentiated allegations against the ICDs. TAC ¶¶ 138-44, 147, 152-56, 160, 196, 198, 201, 230, 240, 251, 264, 267, 272. Such shotgun pleading falls far short of Breeze's obligation to put each ICD on notice of the specific actions he allegedly took to support liability as a "moving force" behind the alleged misconduct. *See SEC v. Winemaster*, 529 F. Supp. 3d 880, 907 (N.D. Ill. 2021) ("What is impermissible ... is grouping multiple defendants together and failing to set out which of the defendants made which of the fraudulent statements/conduct"); *see also Magnum Constr. Mgmt., LLC v. WSP USA Sols., Inc.*, 522 F. Supp. 3d 1202, 1206 (S.D. Fla. 2021) (dismissing complaint where key allegations grouped all defendants together). The TAC likewise fails to plead sufficient, non-conclusory facts showing which, if any, ICDs acted "willfully and knowingly."

Separately, as explained in Midwest's amended complaint, each ICD had ample reason to believe that the design and continued sale of the accused NORTH and SOUTH products were *non-infringing*.[4] As set forth in Midwest's complaint, the asserted design and packaging trade dress is not protectable under the Lanham Act or common law. Dkt. No. 212. ¶¶ 87-99. Indeed, this Court expressed skepticism regarding the protectability of Breeze's asserted design and packaging, noting that "all vape pens appear to be designed with an oblong rectangular body and a rounded mouthpiece, both necessary to a vape pen's function," Dkt. No. 99 at 10, and that "the arbitrary choice of one of many generic forms of packaging does not make the packaging distinctive." *Id.* at 18. Against that backdrop, the Court's denial of Breeze's PI motion further undermines any claim that the ICDs acted "willfully and knowingly" or were the "moving force" behind the

---

[4] The TAC references Midwest's complaint and specific allegations about alternative product packaging designs. TAC ¶¶ 59, 69, *Karling v. Samsara Inc.*, 610 F. Supp. 3d 1094, 1102 (N.D. Ill. 2022) (courts may consider "documents that are central to the complaint and are referred to in it"); *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012) (same). Even where a document is not incorporated by reference, courts may consider it on a motion to dismiss if it is integral to the complaint. *See Gociman v. Loyola Univ. of Chicago*, 41 F.4th 873, 881 (7th Cir. 2022).

allegedly infringing conduct. Rather than plead facts showing individual culpability, the TAC alleges only that the ICDs performed their ordinary duties at Midwest, which fails as a matter of law. *Universal Beauty*, 2020 WL 7241065, at *1.

Breeze also alleges that the ICDs "copied Breeze Smoke's highly distinctive flavor combinations," share the same taste and color, and that certain ICDs selected the "NORTH" and "SOUTH" trademarks. TAC ¶¶ 91, 172–73. These allegations fail as a matter of law. Breeze does not—and cannot—claim trade dress rights in product flavor combinations. Nor does Breeze use the terms "north" or "south," much less possess any trade dress rights in those words. Indeed, Breeze does not assert, because it cannot assert, a trademark infringement claim based on use of the NORTH and SOUTH names. As discussed in detail below, these alleged features are purely functional and therefore free to be copied. *TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 29 (2001). Accordingly, the TAC should be dismissed.

### i. The Allegations Do Not Plausibly Allege Liability as to Kamran Yasin.

Even if Midwest could argue that it pled sufficient factual detail to suggest that any one of the ICDs was the "moving force" behind the alleged infringement, it certainly has not met that standard as to Midwest's CEO Kamran Yasin. Apart from alleging that Mr. Yasin is the CEO of Midwest, *id.* ¶ 12, received a demand letter from Breeze roughly a month before Midwest filed its complaint, *id.* ¶ 103, and instructed employees on how to perform their job functions, *id.* ¶ 171, the TAC is silent as to his participation in the alleged infringing conduct. Specifically, the balance of the allegations against him are conclusory allegations that infer because he is CEO, he shared decision-making authority over the development and sale of the infringing products. *Id.* ¶¶ 167, 187-88. Breeze must allege more. *See Kurapia Inc. v. Sod and Seed Inc.*, No. 24-cv-5200, 2025 WL 35049, at *2 (N.D. Cal. Jan. 6 2025) (finding complaint that contained only conclusory statements and that individual defendant was the company's CEO insufficient); *I.M. Wilson, Inc.*

*v. Otvetstvennostyou "Grichko"*, 500 F. Supp. 3d 380, 411 (E.D. Pa. 2020) ("[M]erely alleging that an individual controls the operations and assets of the company is insufficient."). In this Circuit, even a sole owner and employee of a company, which Mr. Yasin is not, is not liable for infringement unless he/she "is shown to have been personally involved in the commission of the tort by his corporation, he is not jointly liable for the tort." *Peaceable Planet, Inc. v. Ty, Inc.*, 362 F.3d 986, 994 (7th Cir. 2004).

The TAC is devoid of non-conclusory allegations that Kamran Yasin personally selected or approved the allegedly infringing product designs or directly participated in their sales or marketing. At most, the TAC includes the bare legal assertion that, among other defendants, Mr. Yasin had the authority to make decisions concerning the infringing products. Thus, Counts I-II should be dismissed at least as to Mr. Kamran Yasin.

> **ii.      *The Allegations Do Not Plausibly Allege Liability as to Messrs. Sadiq or Sakaria.***

For non-officers, personal liability is typically reserved for individuals who are the "principal architect" of the trademark infringement of a corporation. 3, J. Thomas McCarthy, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 25:24 (5th ed.). Mr. Sadiq and Mr. Sakaria fall well outside this category. Neither defendant is an officer of Midwest. Moreover, Breeze explicitly alleges that Mr. Sadiq and Mr. Sakaria acted **under the direction and supervision** of Mudassir and Umair Yasin. TAC ¶¶ 16–18, 170, 176.

Courts may impose individual liability to "high ranking individuals with personal control, supervision, and direction of both the company and the [infringement]." *Wilden Pump & Eng'g Co. v. Pressed & Welded Prod. Co.*, 655 F.2d 984, 990 (9th Cir. 1981). But liability is rejected, in situations like here, where the individual is a subordinate working under another's direction. *Id.* (reversing district court's decision to impose individual liability to a manager of the company); *cf.*

*Facebook, Inc. v. Power Ventures, Inc.*, 844 F.3d 1058, 1069 (9th Cir. 2016) (affirming liability finding as to individual defendant who "controlled and directed" the relevant corporate actions, "admitted" that the tortious conduct was his idea, and because it was "undisputed" that he was "the guiding spirit and central figure" of the infringement). Because Breeze's admits that Mr. Sadiq and Mr. Sakaria's accused actions were done at the direction of and/or under the supervision of others, TAC ¶ 176, they cannot be personally liable. Accordingly, Counts I-II should be dismissed at least as to Mr. Sadiq and Mr. Sakaria.

### B. The Unregistered Trade Dress Is Functional and Therefore Not Protectable.

Breeze bears the burden of alleging plausible facts that the asserted trade dress is non-functional, 15 U.S.C. § 1125(a)(3), and there is a "statutory presumption that features are deemed functional until proved otherwise by the party seeking trade dress protection." *TrafFix Devices,* 532 U.S. at 30. "Functionality is a factual question," however, "it can often be decided as a matter of law." *Flexible Steel Lacing Co. v. Conveyor Accessories, Inc.*, 955 F.3d 632, 644 (7th Cir. 2020). The Supreme Court has cautioned against overextending trade dress protection because it "almost invariably serves purposes other than source identification." *Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 213 (2000). A product feature is considered functional and is ineligible for trademark protection "if it is essential to the use or purpose of the article or if it affects the cost or quality of the article." *Flexible Steel*, 955 F.3d at 644. "[T]he fact that a trade dress is composed exclusively of commonly used or functional elements might suggest that that dress should be regarded as unprotectable." *Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*, 58 F.3d 27, 32 (2d Cir. 1995). "Consumers should not be deprived of the benefits of competition with regard to the utilitarian and esthetic purposes that product design ordinarily serves." *Bretford Mfg., Inc. v. Smith Sys. Mfg. Corp.*, 419 F.3d 576, 579–80 (7th Cir. 2005).

11

### *1. Breeze's Unregistered Packaging is Functional (Count I).*

The elements of Breeze's purported packaging rights, *supra* § II(B), are essential to the article or legally mandated, and thus, cannot support a trade dress claim. *Milstein*, 58 F.3d at 32.

First, the inclusion of the Nicotine Warning in Breeze's claimed trade dress best exemplifies Breeze's anticompetitive overreach and purpose. 15 U.S.C. § 4402, requires smokeless tobacco (*e.g.*, vape products) to include a warning that the product contains nicotine and that nicotine is addictive. Among other requirements, the warning:

> shall be—(A) located on the 2 principal display panels of the package, and each label statement shall comprise at least 30 percent of each such display panel; and (B) in 17-point conspicuous and legible type and in black text on a white background, or white text on a black background.

*Id.* Thus, Breeze's choice of situating the warning label on the front panel in a white box is not arbitrary. It is legally required to be displayed on both principal display panels. Moreover, placing the Nicotine Warning at the bottom of the front panel is necessary to avoid completely obscuring the product. *See supra* §II.B, II.D.

Second, Breeze's Rectangular Box is also functional. Courts routinely hold that clear or transparent packaging and "windows" are functional because they "serve[] a utilitarian advantage" by "permitt[ing] the purchaser to view the product." *Speare Tools, Inc. v. Klein Tools, Inc.*, No. 13-C-324, 2014 WL 6473220, at *5 (E.D. Wis. Nov. 18, 2014); *see also Storck USA, L.P. v. Farley Candy Co., Inc.,* 821 F.Supp. 524, 529 (N.D. Ill. 1993) (transparent [] window is "clearly functional to display the individually wrapped candy pieces inside the respective packages"); *Wonderful Co. LLC v. Nut Cravings Inc.*, No. 23-7540-cv, 2025 WL 212064, at *4 (2d Cir. Jan. 16, 2025) (noting transparent window as a functional element because it "allow[s] a consumer to view the pistachios being sold"); *Aromatique, Inc. v. Gold Seal*, 28 F.3d 863 (8th Cir. 1994) (pillow-shaped cellophane bag packaging for potpourri was held functional); *Michaels v. Agros*

*Trading Confectionery Spolka Akcyjna*, No. 16-cv-01015, 2018 WL 9810847, at *2 (W.D.N.Y. Jun. 25, 2018) (finding clear packaging functional and dismissing trade dress counterclaim); *Kind LLC v. Clif Bar & Co.*, No. 14-cv-770, 2014 WL 2619817, at *3 (S.D.N.Y. Jun. 12, 2014) (holding that the use of a transparent window serves a functional purpose). The rectangular shape of Breeze's box is likewise quintessentially functional—indeed, it could "hardly be less distinctive and more utilitarian, *i.e.* functional." *McKeon Prods. v. Flents Prods. Co.*, No. 02-73400, 2002 U.S. Dist. LEXIS 27123, *23 (E.D. Mich. Nov. 19, 2002). Courts consistently recognize that box-shaped packaging facilitates stacking, transport, and protection of the product, rendering it functional. *See In re Reelex Packaging Sols., Inc.*, 834 F. App'x 574, 581 (Fed. Cir. 2020).

Third, Breeze confirms the Wraparound Label is functional: stating it as positioned so that "the top portion of the vaping device and the vertically aligned product branding is visible from the front and sides of the rectangular box." TAC ¶ 51. In other words, the transparent Wraparound Label is expressly designed to allow consumers to see the product. *Id*. The label also serves the additional utilitarian purpose of providing a surface on which to affix the legally required Nicotine Warning. Therefore, it cannot support a protectable trade dress claim.

Fourth, Breeze's claim over Flavor Identification is quintessentially functional. Courts have long recognized that communicating flavor serves a legitimate utilitarian purpose and cannot support protectable trade dress. *See PIM Brands Inc. v. Haribo of Am. Inc.*, 81 F.4th 317, 322 (3d Cir. 2023) ("Communicating the candy's flavor is a legally recognizable function"); *Life Savers Corp. v. Curtiss Candy Co.*, 182 F.2d 4, 7 (7th Cir. 1950), *abrogated on other grounds by Qualitex Co. v. Jacobson Prods. Co.*, 514 U.S. 159 (1995) (recognizing that identification of flavor is functional and not protectable). Breeze's attempt to prevent competitors from disclosing basic

product information—such as flavor or the number of puffs—would impose non-reputation-based competitive harm and improperly hinder lawful competition in the vape market.

Finally, the Front Label Including BREEZE Word Mark covers plain white sans serif text containing the word "BREEZE" (a term that Midwest's products do not use). Like the other elements, courts have found legible typeface functional because it enhances the "legibility and readability" of the text. *Laurel Rd. Bank v. CommonBond, Inc.*, No. 18-cv-7797, 2019 WL 1034188, at *7 (S.D.N.Y. Mar. 5, 2019). Like the trade dress claimant in *Laurel Road Bank*, Breeze's claimed product packaging rights seek to exclude others from using any font in white (a generic contrasting color) to identify and describe their products.[5] *Id.*

Taken as a whole, Breeze's asserted product packaging rights amount to "nothing other than the assemblage of functional parts," which cannot be combined to provide exclusive rights. *Leatherman Tool Grp., Inc. v. Cooper Indus., Inc.*, 199 F.3d 1009, 1013 (9th Cir. 1999) (holding that the "overall appearance" is nothing more than "semantic trickery" when claimed trade dress includes a combination of widely used, functional features). Apart from the BREEZE word mark— which Midwest's products do not use—each of the elements has a straightforward utilitarian purpose: to identify the product, the flavor, and a legally required warning about nicotine. Accordingly, Count I should be dismissed with prejudice.

### 2. Breeze's Unregistered Product Design is Functional (Count II).

Breeze's unregistered product design fails for the same reasons. *Milstein*, 58 F.3d at 32. "Granting [Breeze] the exclusive use of a basic element of design (shape, material, color, and so forth) impoverishes other designers' palettes." *Jay Franco & Sons, Inc. v. Franek*, 615 F.3d 855, 860 (7th Cir. 2010) (citing *Brunswick Corp. v. Brit. Seagull Ltd.*, 35 F.3d 1527, 1533 (Fed. Cir.

---

[5] Notably, Breeze also contends that packaging with non-white fonts also infringe. Dkt. No. 230-12 at 8.

1994)). Here, Breeze's claim over Black Bodies, Rounded Edges, and a Flat Bottom for vape pens are commonplace, functional elements. TAC ¶ 61. The (i) Black Body design makes it easier for the producer to apply a contrasting color to the product identifying its flavor, Dkt. No. 230-4 (showing eleven third parties whose vape pens feature a black body, rounded corners, and flat bottoms); (ii) Flat Bottom is likewise *de jure* functional as it allows the pen to stand on its end and secure to the charger; and (iii) Rounded Edges allow customers to more easily grip the vape.

The Mouthpiece element is also plainly functional. Breeze describes it as a rounded mouthpiece that follows the contour of a mouth with "an opening for inhalation." TAC ¶ 61. As Breeze admits, the mouthpiece allows customers to inhale the product. *Id*. Breeze cannot reasonably argue that the mouthpiece has no function "other that source identification." *See Wal-Mart*, 529 U.S. at 213. Thus, Breeze cannot meet its burden to demonstrate that the mouthpiece is not functional.

The Flavor Identification and Color Matching Wave Design are both functional elements, *supra* § III.B.1 (citing *Life Savers*, 182 F.2d at 7). Breeze cannot preclude competitors from using green to identify mint, red to identify cherry. *See* Dkt. 230-4 at 31-32 (green for "Cooler Mint" and red for "Black Chery Ice" flavors). Nor can Breeze preclude competitors from using contrasting White Lettering on the product. *Laurel*, 2019 WL 1034188, at *7. Taken as a whole, Breeze's asserted design rights in Count II enumerate a list of functional product features that are necessary and essential for competitors in the market for vape pens.[6]

**C. The Asserted Product Packaging and Design Trade Dress are Indefinite.**

---

[6] The Court previously found that further discovery was needed to determine whether certain elements of the product packaging and design were functional. Dkt. No. 99 at 6-7. Nearly two years and significant discovery have taken place, and Breeze still cannot articulate packaging or design, taken as a whole, that are non-functional. Breeze's asserted trade dress seeks to protect common utilitarian elements that, if permitted, would provide Breeze with an unfair non-reputational commercial advantage, in contravention of Supreme Court precedent. *See Wal-Mart*, 529 U.S. at 213; *Milstein*, 58 F.3d at 32.

15

"To plead a claim of trade dress infringement involving the overall appearance of a product, a plaintiff must [first] offer a precise expression of the character and scope of the claimed trade dress." Dkt. No. 99 at 4 (quoting *APP Grp. (Canada) Inc. v. Rudsak USA Inc.*, No. 22-1965, 2024 WL 89120, at *1 (2d Cir. Jan. 9, 2024)). "[T]he overall appearance of the trade dress comes into play only after the trade dress is first properly identified with the 'discrete elements which make up that combination ... separated out and identified in a list.'" *Weber-Stephen Prods. LLC v. Sears Holding Corp.*, No. 13-cv-01686, 2013 WL 5782433, at *3 (N.D. Ill. Oct. 25, 2013) (cit. omitted). When trade dress description is so general that many other products share the same qualities, the description is insufficient. *Plum Markets, LLC v. Compass Grp. USA, Inc.*, No. 20 C 6759, 2021 WL 323791, at *2 (N.D. Ill. Feb. 1, 2021) (dismissing trade dress claim because combination of "concrete floors, wood, stainless steel, marble and stone countertops, and glass tile with a minimalistic design aesthetic" were so common to restaurants that the description was not precise). Even providing side-by-side comparison images does not satisfy the precise expression requirement at the pleading stage. *See Forest River, Inc. v. Winnebago Indus., Inc.*, No. 3:15-cv-609, 2017 WL 590245, at *3 (N.D. Ind. Feb. 14, 2017) (dismissing claim as indefinitely defined).

Breeze attempts to suggest that its alleged Unregistered Trade Dress rights are broader than the specifically articulated elements. But Breeze fails to provide a description for the Unregistered Trade Dress that is sufficiently precise to put the ICDs on notice of the claimed rights. Both of Breeze's definitions purport to cover the overall "look and feel" "among others things" followed by a list of certain elements. TAC ¶¶ 51, 61. This language is inherently ambiguous. *See YZ Prods., Inc. v. Redbubble, Inc.*, 545 F. Supp. 3d 756, 768 (N.D. Cal. 2021).

Even Breeze's articulated features of its Unregistered Trade Dress are vague. For example, both asserted product packaging and design trade dress seek to protect the use of sans serif font in

either capital letters or small font regardless of typeface. TAC ¶¶ 51, 61. This is insufficient. *Laurel*, 2019 WL 1034188, at *7. Likewise, Breeze's Color Matching Wave Design definition is equally vague. TAC ¶ 61. Breeze's discussion of the "wavy design" as a component of the product design creates a monopoly over what colors can be used with a curved design. For example, compare Breeze's cherry lemon product (TAC at 27) with its vanilla tobacco flavor (TAC at 29). The cherry lemon product packaging has a contrasting shaded label that features a variety of shades of red on a gradient which turns yellow in the top right corner of the product. TAC at 27. By contrast, the vanilla tobacco label is predominantly dark brown with a vanilla-colored brush stroke starting in the top right corner and descending on a diagonal to the middle of the product. TAC at 29. Simply describing the label as "wavy" does not give the ICDs notice of what component of the label Breeze claims rights in.

The indefiniteness of Breeze's design trade dress can be best exemplified by applying the elements to one of the "alternative designs" Breeze identified. The Puff Products, Ex. 4 (Dkt. 230-4 at 27-34) feature "among other things" (1) a black body that resembles a rectangular cylinder having rounded corners, a flattened front and back sides, and a flat bottom; (2) mouthpiece that is curved, has an opening for inhalation, narrows toward the opening, and has a concave region on the front side; (3) front and back of the device exhibit a rounded rectangular silhouette, (4) bottom end of the body has a flat rectangular shaped surface having rounded corners; (5) a colorful wrapper matching the flavor of the product; (6) the word mark PUFF in all capital letters; (7) smaller white print element appears immediately above the word mark; and (8) the flavor appears on the label near the bottom end of the vape device in a smaller, white, all-capital typeface vertically aligned on the label. *Id.* Although it appears Breeze intended to suggest that the PUFF design was sufficiently different to constitute a non-infringing alternative, the product design

17

meets each element of Breeze's claimed rights. Trade dress descriptions so vaguely defined cannot plausibly put the Individual Defendants on notice of Breeze's claimed rights.

**D. Counts III (IUDTPA) and Count IV (Unjust Enrichment) Likewise Fail.**

Breeze's Third Counterclaim alleging violations of Illinois' Uniform Deceptive Trade Practices Act and Fourth Counterclaim for unjust enrichment rise and fall with Breeze's Lanham Act claims (Counts I-II) as to the Individual Defendants individually or collectively. *See, e.g.*, *Specht v. Google, Inc.*, 660 F. Supp. 2d 858, 866 (N.D. Ill. 2009); *MacNeil IP LLC v. Harbor Freight Tools USA, Inc.*, No. 24-cv-3767, 2026 WL 800160, at *5 (N.D. Ill. Mar. 23, 2026). Both Counts III and IV are based exclusively on alleged wrongful use of the Unregistered Trade Dress. TAC ¶¶ 236-243, 247-252. Thus, Counts III and IV fail.

**E. Breeze's Design Patent Claim, Count V, Likewise Fails.**

Breeze fails to state a claim for design patent infringement against the ICDs, TAC ¶¶ 258-59, and induced infringement against Messrs. Mudassir and Umair Yasin. *Id.* ¶¶ 123, 166, 273-74.

*1. The Claimed and Accused Product Designs Are Sufficiently Distinct.*

Under the applicable "ordinary observer" test, the accused e-cigarette designs are "sufficiently distinct" and "plainly dissimilar" from any nonfunctional ornamental aspects of the D'573 Patent design, and thus Breeze's design patent infringement claim fails as a matter of law. *Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*, 796 F.3d 1312, 1314 (Fed. Cir. 2015) (quoting *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 678 (Fed. Cir. 2008)). "To find that an ordinary observer would not be deceived, … the claimed design and the accused design will be sufficiently distinct that it will be clear without more that the patentee has not met its burden of proving the two designs would appear substantially the same to the ordinary observer." *Grill Rescue LLC v. Sched. A Dfts.*, No. 23-CV-15984, 2026 WL 483304, at *2 (N.D. Ill. Feb. 20, 2026) (quotation

omitted)). Thus, "if the claimed design and the accused design are sufficiently distinct…no comparison with the prior art is necessary." *Competitive Edge, Inc. v. Staples, Inc*., 763 F. Supp. 2d 997, 1012 (N.D. Ill. 2010).[7] "Moreover, a court can make this determination at the pleading stage" under the Rule 12(b)(6) standard. *Grill Rescue*, 2026 WL 483304, at *2; *Anderson v. Kimberly-Clark Corp*., 570 F. App'x 927, 933 (Fed. Cir. 2014) (affirming Rule 12 dismissal); *Young v. Stone*, No. 13-C-4920, 2014 WL 4271624, at *3 (N.D. Ill. Aug. 28, 2014) (dismissed).

Importantly, if "a design contains both functional and ornamental features, the patentee must show that the perceived similarity is based on the ornamental features of the design." *OddzOn Prods., Inc. v. Just Toys, Inc*., 122 F.3d 1396, 1405 (Fed. Cir. 1997). The Federal Circuit has recently reinforced that the infringement inquiry must "focus[] on the designs' overall ornamental appearance and whether 'the nonfunctional, ornamental aspects of the claimed and accused designs [are] plainly dissimilar.'" *Range of Motion Prods., LLC ("RoM") v. Armaid Co. Inc*., 166 F.4th 981, 991 (Fed. Cir. 2026) (quoting *Ethicon*, 796 F.3d at 1337). It further rejected comparisons focused only on general conceptual similarities, as "failing to ensure that functional aspects of a design do not play a role in the infringement analysis." *RoM*, 166 F.4th at 991.

Here, any recognized similarities between the patented and accused designs are limited to common conceptual and functional aspects, which must be excluded from the scope of the claimed design. *Ethicon*, 796 F.3d at 1336. When the remaining ornamental features of the claimed design, if any, "are compared, as a whole, to the corresponding ornamental features of [the NORTH and SOUTH] accused [products], the dissimilarities between the designs are plain." *Id.*

---

[7] This is a new ground for dismissal the Court has not previously considered. As the Court noted in ruling on Midwest's prior Rule 12 motion "Midwest d[id] not argue that the claimed and accused designs are plainly distinct," and the Court opined that Midwest "implicitly concede[d] that there are similarities between the claimed and accused designs." Dkt. No. 99 at 13-14. The ICDs make no such concession.

This Court previously noted two similarities between the D'573 Patent and the accused NORTH design (compared below)—an "oblong body" and "curved mouthpiece." Dkt. 99 at 14. For purposes of this motion, ICDs do not, and need not, dispute the Court's observation, or that the claimed and accused e-cigarette designs may "share a broad design concept" or look similar "at a conceptual level." *RoM*, 166 F.4th at 992. But, an "oblong body" and "curved mouthpiece" are *functional* aspects of the claimed e-cigarette design. § III.B.2, *supra*. Thus, these recognized similarities constitute "likenesses [between] the . . . functional features," which should only be considered "to the extent that they contribute to the overall ornamentation." *Id*.

| D'573 Patent Design (FIG. 2) | Accused NORTH and SOUTH Designs |
|---|---|
| FIG. 2 | |

When common functional features are properly factored out, any remaining ornamental features are sufficiently distinct. Assume, for example, that the curved/rounded base of the D'573 Patent is an ornamental aspect of the design. The corresponding base of the accused products, by contrast, is linear and squared at 90-degree angles. The rounded/curved base of the claimed design and the linear/angled base of the accused e-cigarettes are sufficiently distinct design features that "would stand out to an ordinary observer familiar with the prior art." *RoM*, 166 F.4th at 992 (affirming non-infringement ruling where "the blunter, less rounded end of the hinge apparatus in the [accused product]" differed from "the subtler, rounder curves of the hinge apparatus in the D'155 patent"); *Ethicon*, 796 F.3d at 1336 (affirming non-infringement ruling where "[t]he district court identified the most obvious difference between the claimed and accused designs as 'the

overall contoured shape' of the claimed design and the 'overall linear shape' of the accused design."). The D'573 Patent also claims five small circles arranged in a horizontal row (FIG. 2), which are not present on the base of the accused designs.

In addition, even though the claimed and accused designs both have an oblong body with rounded edges, this common design choice is dictated by function (gripping). *See* § III.B.2, *supra*. Even assuming, without conceding, there are ornamental aspects to the oblong body of the D'573 Patent design, the oblong body of the accused designs are plainly dissimilar. For example, the body of the D'573 Patent device has dual boundary lines on each side of front/flat surface (FIG. 2). In contrast, the NORTH product has a single boundary line on each side and the SOUTH product has no boundary lines at all. The *only* similarity shared between the bodies of the claimed and accused designs is that both are oblong with rounded edges. "Similarity at this conceptual level, however, is not sufficient to demonstrate infringement of the claimed designs." *Ethicon*, 796 F.3d at 1336.

These are only some of the differences between the nonfunctional, ornamental aspects of the D'573 Patent design, if any, and the accused product designs which, taken together, render the claimed and accused designs plainly dissimilar to the ordinary observer. *RoM*, 166 F.4th at 994. As a result, Breeze cannot sustain a design patent infringement claim as a matter of law. *See Anderson*, 570 F. App'x 927 at 933.

### 2. *Breeze Insufficiently Alleges Direct Patent Infringement Against the ICDs.*

Just as Breeze fails to plausibly allege individual liability for trade dress infringement under the *Dangler* standard, § III.A, *supra*, Breeze fails to state a claim against the ICDs for direct patent infringement. *See Peaceable Planet, Inc. v. TY, Inc.*, 185 F. Supp. 2d 893, 896 (N.D. Ill. 2002); *Aero-Stream, LLC v. Septicair Aid, LLC*, No. 12-C-190, 2012 WL 12929555, at *4 (E.D. Wis. Aug. 10, 2012) (applying *Dangler* to patent claim; dismissing individual defendant). Moreover, most of

the TAC's allegations as to the ICDs' allegedly infringing conduct occurred *before* the patent issued. TAC ¶¶ 84-91, 103, 172-194, 201.

### 3. *Breeze Fails to Plausibly Allege Active Inducement.*

Breeze also has not stated a claim for induced infringement against Messrs. Mudassir and Umair Yasin. Active inducement requires that the alleged infringer have actual knowledge of the patent and specific knowledge that the induced acts constitute patent infringement. *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 764-66 (2011). As to the latter prong, the Supreme Court has held that the alleged inducer cannot "know the acts were infringing" where it "reads the patent's claims differently from the [patentee], and that reading is reasonable…" *Commil USA, LLC v. Cisco Systems, Inc.*, 575 U.S. 632, 642 (2015). Here, Breeze does not plausibly allege that Messrs. Mudassir or Umair Yassin knew, or were willfully blind to the risk, that the alleged induced acts constitute infringement of the D'573 Patent, as opposed to reasonably interpreting the D'573 Patent design to be sufficiently distinct from the accused NORTH and SOUTH e-cigarette design.

### F. Breeze Should Not Be Given Leave to Amend Its Claims Against the ICDs.

While Rule 15(a)(2) sets forth a liberal standard for amending pleadings, "there must be an end sometime to applications to amend." *Shall v. Henry*, 211 F.2d 226, 231 (7th Cir. 1954). That is particularly true when a Plaintiff has "ample opportunity to assert [its] proposed claims" or where the "facts underlying the proposed new claims were known to" at the time of the filing. *Aleshire v. Harris, N.A.*, 586 F. App'x 668, 672 (7th Cir. 2013). After two years and substantial discovery, Breeze's failure to allege sufficient facts compels dismissal with prejudice.

### IV. CONCLUSION

For the foregoing reasons, the Court should grant the ICDs' Motion with prejudice.

22

Date: April 20, 2026

Respectfully submitted,

*/s/ Michael Geller*

Michael Geller
**DLA Piper LLP (US)**
444 West Lake Street, suite 900
Chicago, IL 60606
P: (312) 251-2187
E: michael.geller@us.dlapiper.com

Melissa A. Reinckens (*pro hac vice*)
**DLA Piper LLP (US)**
401 B Street Suite 1700
San Diego, CA 92101-4297
P: (619) 699-2798 )
E: melissa.reinckens@dlapiper.com

Joshua Schwartzman (*pro hac vice*)
**DLA Piper LLP (US)**
1251 Avenue of the Americas
New York, NY 10020
P: (212) 335-4671
E: joshua.schwartzman@us.dlapiper.com

Jane W. Wise (*pro hac vice*)
**DLA Piper LLP (US)**
500 Eighth Street N.W.
Washington, D.C. 20004
P: (202) 799-4149
E: jane.wise@us.dlapiper.com

*Attorneys for Umar Yasin, Mudassir Yasin, Kamran Yasin, Imran Sadiq, and Sohaib Sakaria*

## CERTIFICATE OF SERVICE

I certify that on April 20, 2026 a copy of the foregoing was electronically filed with the

Clerk of Court using the ECF system which will send notification to all counsel of record.

/s/_Michael Geller_____
Michael Geller
