**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| MIDWEST GOODS INC., DBA MIDWEST DISTRIBUTION ILLINOIS,<br><br>      Plaintiff,<br><br> v.<br><br>BREEZE SMOKE, LLC and KMT Services LLC, d/b/a KMT Distribution,<br><br>      Defendant. | Case No. 1:23-cv-05406<br><br>Honorable Thomas M. Durkin<br>Honorable Beth W. Jantz |
| BREEZE SMOKE LLC,<br><br>      Counter-Claimant,<br><br> v.<br><br>MIDWEST GOODS INC., DBA MIDWEST DISTRIBUTION ILLINOIS, WISEMEN WHOLESALE, INC., SPEED WHOLESALE, INC., WORLD WHOLESALE, INC., LIGHT VIEW LLC, UMAIR YASIN, MUDASSIR YASIN, KAMRAN YASIN, IMRAN SADIQ, AND SOHAIB SAKARIA,<br><br>      Counterclaim Defendants. | |

## BREEZE SMOKE LLC'S RESPONSE IN OPPOSITION TO THE INDIVIDUAL COUNTERCLAIM DEFENDANTS' MOTION TO DISMISS

**TABLE OF CONTENTS**

I.      INTRODUCTION .................................................................................................1

II.     STATEMENT OF FACTS ....................................................................................1

        A.      BREEZE SMOKE'S CLEARLY DEFINED TRADE DRESS ............................2

        B.      BREEZE SMOKE'S DESIGN PATENT ..................................................3

        C.      INDIVIDUAL DEFENDANTS' INFRINGING CONDUCT ..............................3

III.    ARGUMENT .......................................................................................................6

        A.      LEGAL STANDARD ........................................................................6

        B.      BREEZE SMOKE SUFFICIENTLY PLED THE "SPECIAL SHOWING"
                REQUIRED FOR INDIVIDUAL LIABILITY ...........................................7

                1.      Breeze Smoke Sufficiently Pled Kamran Yasin's Liability ........................8

                2.      Breeze Smoke Sufficiently Pled Mr. Sadiq and Mr. Sakaria's
                        Liability .................................................................................9

                3.      The IDs Concede Breeze Smoke Plausibly Alleged Umair Yasin's
                        and Mudassir Yasin's Liability ................................................11

                        a.      The IDs Improperly Make Factual Arguments Inappropriate
                                At The Pleading Stage ...................................................11

                        b.      Breeze Smoke Can Plausibly Make Collective Pleading
                                Allegations ..................................................................12

                        c.      The IDs Acted Beyond Their "Ordinary Duties" Thus
                                Justifying Liability .......................................................13

        C.      BREEZE SMOKE HAS PLAUSIBLY PLED ITS TRADE DRESS
                CLAIMS ......................................................................................13

                1.      This Court Has Already Decided That Breeze Smoke's Trade
                        Dress as Pled Is Non-Functional ..............................................14

                2.      This Court Has Already Held That Breeze Smoke's Trade Dress as
                        Pled Is Definite ....................................................................16

        D.      BREEZE SMOKE HAS PLED ITS IDUTPA AND UNJUST
                ENRICHMENT CLAIMS ...................................................................18

        E.      BREEZE SMOKE HAS SUFFICIENTLY PLED ITS PATENT CLAIMS ........18

1.    The Individual Defendants Prematurely Apply The "Ordinary Observer" Test ...................................................................................18

      a.    This Court Previously Determined Breeze Smoke Sufficiently Pled Its Design Patent Claims...................................19

      b.    The IDs Improperly Ask This Court To Apply The "Ordinary Observer" Test At The Pleading Stage.........................19

2.    Breeze Smoke Sufficiently Pled Its Direct Patent Infringement Claims Against The Individual Defendants..............................................21

3.    Breeze Smoke Properly Pled Induced Infringement Against Umair Yasin and Mudassir Yasin .......................................................21

IV.    CONCLUSION.............................................................................................22

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Kimberly-Clark Corp.*,
570 F. App'x 927 (Fed. Cir. 2014) ................................................................................. 20

*Asher Worldwide Enters. LLC v. Housewaresonly.com Inc.*,
No. 12 C 568, 2013 WL 4516415 (N.D. Ill. Aug. 26, 2013) ....................................... 8

*At World Props., LLC v. Baird & Warner Real Est., Inc.*,
No. 18-CV-01973, 2019 WL 4034636 (N.D. Ill. Aug. 27, 2019) ............................... 18

*Badger Meter, Inc. v. Grinnell Corp.*,
13 F.3d 1145 (7th Cir. 1994) ................................................................................. 14, 15

*Bambu Sales, Inc. v. Sultana Crackers, Inc.*,
683 F. Supp. 899 (E.D.N.Y.1988) .............................................................................. 10

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .............................................................................................. 6, 12

*Bodum USA, Inc. v. A Top New Casting Inc.*,
927 F.3d 486 (7th Cir. 2019) ...................................................................................... 15

*Chloe v. Queen Bee of Beverly Hills, LLC*,
No. 06 Civ. 3140, 2011 WL 3678802 (S.D.N.Y. Aug. 19, 2011) ............................... 10

*Commil USA, LLC v. Cisco Sys., Inc.*,
575 U.S. 632 (2015) ..................................................................................................... 21

*Competitive Edge, Inc. v. Staples, Inc.*,
763 F. Supp. 2d 997 (N.D. Ill. 2010) .......................................................................... 20

*David White Instruments, LLC v. TLZ, Inc.*,
No. 02 C 7156, 2003 WL 21148224 (N.D. Ill. May 16, 2003) ..................................... 7

*Desmond v. Chicago Boxed Beef Distributors, Inc.*,
921 F. Supp. 2d 872 (N.D. Ill. 2013) ............................................................................ 7

*Dynamic Fluid Control (PTY) Ltd. v. Int'l Valve Mfg., LLC*,
790 F. Supp. 2d 732 (N.D. Ill. 2011) .......................................................................... 17

*Egyptian Goddess, Inc. v. Swisa, Inc.*,
543 F.3d 665 (Fed. Cir. 2008) ..................................................................................... 19

iv

*Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*,
796 F.3d 1312 (Fed. Cir. 2015) ...................................................................................... 19

*Facebook, Inc. v. Power Ventures, Inc.*,
844 F.3d 1058 (9th Cir. 2016) ................................................................................... 10, 11

*Flexible Steel Lacing Co. v. Conveyor Accessories, Inc.*,
955 F.3d 632 (7th Cir. 2020) .......................................................................................... 14

*Forest River, Inc. v. Winnebago Indus., Inc.*,
No. 3:15-CV-609, 2017 WL 590245 (N.D. Ind. Feb. 14, 2017) ........................................ 17, 18

*Gen. Motors Acceptance Corp. v. Synergy Corp.*,
No. 90 C 3522, 1992 WL 77682 (N.D. Ill. Apr. 7, 1992) ............................................................ 9

*G.G. v. Salesforce.com, Inc.*,
76 F.4th 544 (7th Cir. 2023) ................................................................................. 6, 7, 11

*Green Dolphin Cap. LLC v. JPMorgan Chase Bank, N.A.*,
No. 19-cv-06940, 2020 WL 5545700 (N.D. Ill. Sept. 16, 2020)............................................... 13

*Gunn v. Cont'l Cas. Co.*,
968 F.3d 802 (7th Cir. 2020) ............................................................................................ 7

*Hupp v. Siroflex of Am., Inc.*,
122 F.3d 1456 (Fed. Cir. 1997) ...................................................................................... 16

*I.B. of T. Union Loc. No. 710 Pension Fund v. Flynn*,
No. 17-cv-05532, 2019 WL 1281991 (N.D. Ill. Mar. 20, 2019) ............................................. 11

*In Re Morton-Norwich Products, Inc.*,
671 F.2d 1332 (C.C.P.A. 1982).......................................................................................... 16

*Indep. Trust Corp. v. Stewart Info. Servs. Corp.*,
665 F.3d 930 (7th Cir. 2012) ...................................................................................... 6, 11

*Jaimes v. Cook County*,
No. 17 C 8291, 2019 WL 4393035 (N.D. Ill. Sept. 13, 2019) .................................................. 12

*Lecat's Ventriloscope v. MT Tool & Mfg.*,
No. 16 C 5298, 2017 WL 1362036 (N.D. Ill. Jan. 6, 2017) .................................................21-22

*Logan Graphic Prods., Inc. v. Textus USA, Inc.*,
No. 02 C 1823, 2003 WL 21011746 (N.D. Ill. May 5, 2003) .................................................. 15

v

*Lubby Holdings LLC v. Chung*,
  11 F.4th 1355 (Fed. Cir. 2021) ...............................................................................20-21

*Mickowski v. Visi-Trak Corp.*,
  36 F. Supp. 2d 171 (S.D.N.Y. 1999) ............................................................................ 19

*Microsoft Corp. v. Computer Care Ctr., Inc.*,
  No. 06-CV-1429, 2008 WL 4179653 (E.D.N.Y. Sept. 10, 2008)................................. 9

*Nordstrom Consulting, Inc. v. M & S Techs., Inc.*,
  No. 06 C 3234, 2006 WL 2931677 (N.D. Ill. Oct. 12, 2006)..................................... 13

*Novell, Inc. v. Unicom Sales, Inc.*,
  C-03-2785, 2004 WL 1839117 (N.D. Cal. Aug. 17, 2004)........................................ 10

*OddzOn Prods., Inc. v. Just Toys, Inc.*,
  122 F.3d 1396 (Fed. Cir. 1997) .................................................................................. 20

*Orthokinetics, Inc. v. Safety Travel Chairs, Inc.*,
  806 F.2d 1565 (Fed. Cir. 1986) ............................................................................ 21, 22

*Peaceable Planet, Inc. v. TY, Inc.*,
  185 F. Supp. 2d 893 (N.D. Ill. 2002)...................................................................... 8, 21

*Plum Markets, LLC v. Compass Grp. USA, Inc.*,
  No. 20 C 6759, 2021 WL 323791 (N.D. Ill. Feb. 1, 2021) ....................................... 17

*Promatek Indus., Ltd. v. Equitrac Corp.*,
  300 F.3d 808 (7th Cir. 2002) ...................................................................................... 12

*Qualitex Co. v. Jacobson Products Co., Inc.*,
  514 U.S. 159 (1995) .................................................................................................... 14

*Range of Motion Prods., LLC ("RoM") v. Armaid Co. Inc.*,
  166 F.4th 981 (Fed. Cir. 2026) .............................................................................. 19, 20

*ReceiverShip Mgmt., Inc. v. A.J. Corso & Assocs., Inc.*,
  No. 19-cv-01385, 2021 WL 1222897 (N.D. Ill. Mar. 31, 2021) ............................... 12

*Reger Dev., LLC v. Nat'l City Bank*,
  592 F.3d 759 (7th Cir. 2010) ........................................................................................ 6

*Republic Techs. (NA), LLC v. Nur Trading, Inc.*,
   No. 20 C 461, 2021 WL 1293832 (N.D. Ill. April 7, 2021) ........................................ 6

*Sanders v. W & W Wholesale Inc.*,
  No. 11 C 3557, 2011 WL 4840978 (N.D. Ill. Oct. 12, 2011)......................................................... 11

*Service Ideas, Inc. v. Traex Corp.*,
  846 F.2d 1118 (7th Cir. 1988) ....................................................................................................... 15

*Sethness-Greenleaf, Inc. v. Green River Corp.*,
  No. 89-C-9203, 1994 WL 67830 (N.D. Ill. Feb. 11, 1994)........................................................... 9

*Symbria, Inc. v. Callen*,
  No. 20 C 4084, 2024 WL 4873437 (N.D. Ill. Sept. 3, 2024) ...................................................... 12

*Tamayo v. Blagojevich*,
  526 F.3d 1074 (7th Cir. 2008) ........................................................................................................ 6

*Thomas & Betts Corp. v. Panduit Corp.*,
  138 F.3d 277 .................................................................................................................................. 15

*Tireboots by Universal Canvas, Inc. v. Tiresocks, Inc.*,
  No. 20-cv-7404, 2023 WL 8236895 (N.D. Ill. Nov. 28, 2023)...................................................... 8

*Trading Technologies Int'l, Inc. v. BCG Partners, Inc.*,
  No. 10 C 715, 2011 WL 1706136 (N.D. Ill. May 5, 2011) ......................................................... 22

*True v. Early Childcare III, LLC*, No. 25 C,
  3070, 2025 WL 2916996 ................................................................................................................. 7

*Two Pesos, Inc. v. Taco Cabana, Inc.*,
  505 U.S. 763 (1992) ...................................................................................................................... 17

*United States v. Sabbia*,
  2011 WL 1900055 (N.D. Ill. 2011) .............................................................................................. 12

*Weber-Stephen Prod. LLC v. Sears Holding Corp.*,
  No. 13-cv-01686, 2013 WL 5782433 (N.D. Ill. Oct. 25, 2013).................................................... 7

*Wilden Pump & Eng'g Co. v. Pressed & Welded Prods. Co.*,
  655 F.2d 984 (9th Cir. 1981) ........................................................................................................ 10

*Young v. Stone*,
  No. 13 C 4920, 2014 WL 4271624 (N.D. Ill. Aug. 28, 2014)...................................................... 20

**Statutes**

35 U.S.C. § 271(b) ............................................................................................................................... 22

## I. INTRODUCTION

The Individual Defendants' ("IDs") Motion to Dismiss Breeze Smoke's Third Amended Counterclaim ("TACC") represents the *fourth time* this Court is asked to decide factual issues at the pleadings stage. This time it comes from the IDs, who are all simply affiliates, executives, or owners of Midwest. This motion is a rehash of Midwest's prior arguments. And, like Midwest, the IDs conflate the pleadings stage with summary judgment. Indeed, most of IDs' cases are summary judgment decisions—not pleadings decisions—underscoring the impropriety of deciding fact issues now. This Court has already decided on multiple occasions that Midwest's premature fact-based arguments are improper. Breeze Smoke LLC ("Breeze Smoke") did what was required at the pleading stage and plausibly pled its claims in the TACC. The IDs' Motion should be denied.

*First*, Breeze Smoke plausibly pled the "special showing" required to establish individual liability for all IDs with over forty paragraphs of specified, direct, and non-conclusory allegations.

*Second*, Breeze Smoke plausibly pled its trade dress claims. As this Court has previously determined, Breeze Smoke's trade dresses as pled are non-functional and definite given their detailed elements and reference to images depicting the trade dresses.

*Third*, Breeze Smoke plausibly pled its design patent claims and established that Umair Yasin and Mudassir Yasin actively infringed and induced infringement of its Design Patent.

## II. STATEMENT OF FACTS

In August 2023, Midwest commenced this Action against Breeze Smoke. Breeze Smoke filed counterclaims (and amended counterclaims) against Midwest alleging trade dress and design patent infringement. Over the course of discovery, Midwest produced documents identifying several Midwest actors who actively participated in and directed the infringing activities. Breeze Smoke sought, and was granted, leave to add these parties (the IDs) to this case. Breeze Smoke thereafter filed its Third Amended Counterclaims, pleading in extensive detail how the IDs

personally engaged in trade dress and design patent infringement.

### A.   BREEZE SMOKE'S CLEARLY DEFINED TRADE DRESS

Beginning at least as early as August 18, 2021, Breeze Smoke has used a highly distinctive product packaging trade dress and product design trade dress (collectively, the "Breeze Smoke Trade Dresses") for its BREEZE PRO products. Dkt. 37, at ¶40; Dkt. 230, at ¶50.

The BREEZE PRO product packaging trade dress consists of the overall look and feel of the packaging, including numerous distinctive, non-functional elements, which Breeze Smoke has articulated as follows since its first counterclaims in this case:

a.   A rectangular clear plastic outer box ("rectangular box");

b.   A large, cardboard label that wraps around the rectangular box ("wraparound label"), wherein the back of the wraparound label extends the full length of the rectangular box and the front of the wraparound label extends only part of the length of the rectangular box, such that the top portion of the vaping device and the vertically aligned product branding is visible from the front and sides of the rectangular box;

c.   On the front side of the cardboard label:

i.   The wording "BREEZE," a word mark identifying the product, appears at the top in large white all capital letters;

ii.   A second line of text appears underneath the wording "BREEZE" in a smaller, less emphasized font;

iii.   The flavor of the vape is printed underneath the word mark and second line of text; and

d.   The nicotine warning is at the bottom of the front side of the cardboard label in a white box; and

e.   The flavor of the product and the number of puffs are displayed on both sides of the wraparound label.

(the "BREEZE PRO Packaging Trade Dress"). Dkt. 37, at ¶41; Dkt. 230, at ¶51. Breeze Smoke's BREEZE PRO product design trade dress features the following distinctive, non-functional elements:

2

a. a black body that resembles a rectangular cylinder having rounded corners, a flattened front and back sides, and a flat bottom;

b. the top end of the body comprises the mouthpiece that is curved, has an opening for inhalation, narrows toward the opening, and has a concave region on the front side;

c. the front and back of the device exhibit a rounded rectangular silhouette;

d. the bottom end of the body has a flat rectangular shaped surface having rounded corners;

e. a rectangular label featuring a wavy design colored to match the flavor of the vape device;

f. the wording "BREEZE," a word mark identifying the product, printed in bold, white, all-capital typeface is vertically aligned on the label nearer to the mouthpiece than the bottom;

g. an additional smaller white print element appears immediately above the word mark; and

h. the vaping device flavor appears on the label near the bottom end of the vape device in a smaller, white, all-capital typeface vertically aligned on the label.

(the "BREEZE PRO Product Design Trade Dress"). *Id.*, ¶51; Dkt. 230, at ¶51.

## B. BREEZE SMOKE'S DESIGN PATENT

In addition to Breeze Smoke's trade dresses, on November 21, 2023, the U.S. Patent and Trademark Office duly issued Breeze Smoke's U.S. Design Pat. No. D1,005,573 (the "D'573 Patent") for an ornamental design for a disposable e-cigarette. Dkt. 31, at ¶68; Dkt. 37-8; Dkt. 230, at ¶78. Breeze Smoke's BREEZE PRO product is the commercial embodiment of the D'573 Patent. Dkt. 37, at ¶72; Dkt. 230, at ¶83.

## C. INDIVIDUAL DEFENDANTS' INFRINGING CONDUCT

Despite ongoing discovery for over two years, ███████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

3

████████████████████████████████████████████████████████████ Breeze

Smoke timely filed a Motion for Leave to Amend to join the IDs. Dkt. 206; Dkt. 230.

First, *Umair Yasin* is an ██████ ████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████

*Kamran Yasin* is an owner and the Chief Executive Officer of Midwest. Dkt. 230, at ¶12.

████████████████████████████████████████████████

██████████████████████████████ In July 2023, Breeze Smoke notified

Kamran Yasin that the Infringing Products infringe Breeze Smoke's trade dress rights. Dkt. 230,

at ¶103. Breeze Smoke demanded that Midwest cease any further marketing, offering, and selling

of the NORTH Infringing Products and immediately remove such products from their stores and

distribution channels. Dkt. 230 at ¶103. Kamran Yasin refused.

Additionally, over the course of the litigation, Breeze Smoke requested that Midwest add

Kamran Yasin as a custodian. Midwest refused. ████████████████████████

████████████████████████████████████████████████

████ In September 2025, the United States filed actions against Midwest and Kamran Yasin related

---

1 ████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████

4

to Midwest's and Kamran Yasin's receipt and sale of certain Chinese flavored vaping products. *United States v. Midwest Goods, Inc.*, 1:25-cv-10928 (N.D. Ill. Sept. 10, 2025); *United States v. Undetermined Quantities of Unauthorized Electronic Nicotine Delivery System Products Identified*, 1:25-cv-10458 (N.D. Ill. Sept. 2, 2025) ("The United States Enforcement Actions"). The DOJ identifies Kamran Yasin as "the owner and CEO of Midwest Goods and the ***most responsible person at the firm***." *See United States v. Midwest Goods*, 1:25-cv-10928, Dkt. 1, ¶ 6 (emphasis added); Dkt. 230, at ¶168-69.

***Mudassir Yasin*** is an ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ Mudassir Yasin submitted a declaration in this case describing the development of the NORTH Infringing product. Dkt. 66-1. In the declaration, Mudassir Yasin provided the sketch he sent ▉▉▉▉ depicting his design of the NORTH Infringing Product. Dkt. 66-1, PageIDs.2313-14 ("In communications with and a visit to the China supplier, Midwest provided the following vape sketch").

***Imran Sadiq*** is the ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

5

███████████████████████████████████████████████████████

████████████████████████████████████████████████████

*Sohaib Sakaria* is a ███████████████████████████████████

██████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████████████████████

## III.    ARGUMENT

### A.    LEGAL STANDARD

To survive a motion to dismiss, Breeze Smoke must plead factual allegations sufficient "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007). This low bar requires Breeze Smoke to plead facts in "enough detail to give [the IDs] fair notice of what the claim is and the grounds upon which it rests, and, through [its] allegations, show that it is plausible, rather than merely speculative, that [it is] entitled to relief." *Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 764 (7th Cir. 2010) (quoting *Tamayo v. Blagojevich*, 526 F.3d 1074, 1083 (7th Cir. 2008)). "This pleading standard is not demanding, asking that plaintiffs allege 'only enough facts' to 'nudge[] their claims across the line from conceivable to plausible.'" *G.G. v. Salesforce.com, Inc.*, 76 F.4th 544, 551 (7th Cir. 2023) (quoting *Twombly*, 550 U.S. at 570); *see also Indep. Trust Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012) ("a plaintiff's claim need not be probable, only plausible"); *Republic Techs. (NA), LLC v. Nur Trading,*

6

*Inc.*, No. 20 C 461, 2021 WL 1293832, at *2 (N.D. Ill. April 7, 2021) ("the Court's role at this stage is simply to assess whether Plaintiffs have plead facts that plausibly could result in a successful outcome"); *see also True v. Early Childcare III, LLC*, No. 25 C 3070, 2025 WL 2916996, at *1-*3 (denying defendant's motion to dismiss stating "facial plausibility exists when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged") (internal citations omitted).

The court accepts as true all well-pleaded factual allegations and views them in the light most favorable to the counterclaimant. *Weber-Stephen Prod. LLC v. Sears Holding Corp.*, No. 13-cv-01686, 2013 WL 5782433, at *1 (N.D. Ill. Oct. 25, 2013). The court ***should not consider questions of fact*** on a motion to dismiss. *David White Instruments, LLC v. TLZ, Inc.*, No. 02 C 7156, 2003 WL 21148224, at *8 (N.D. Ill. May 16, 2003) (emphasis added). The moving party bears the burden of establishing the insufficiency of the allegations in the counterclaim. *Gunn v. Cont'l Cas. Co.*, 968 F.3d 802, 806 (7th Cir. 2020). "[A] complaint should survive a motion to dismiss 'even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.'" *Salesforce.com, Inc.*, 76 F.4th at 551.

**B.    BREEZE SMOKE SUFFICIENTLY PLED THE "SPECIAL SHOWING" REQUIRED FOR INDIVIDUAL LIABILITY**

An individual can be held liable for the infringement of his corporation where he "acts willfully and knowingly—that is, when he personally participates in the manufacture or sale of the infringing article other than as an officer, or when he uses the corporation as an instrument to carry out his own willful and deliberate infringements, or when he knowingly uses an irresponsible corporation with the purpose of avoiding personal liability." *Desmond v. Chicago Boxed Beef Distributors, Inc.*, 921 F. Supp. 2d 872, 886-87 (N.D. Ill. 2013).

There are multiple ways to make this "special showing," provided that the allegations show

that the individual acted willfully and knowingly, the only "scienter" required. *See, e.g., Peaceable Planet, Inc. v. TY, Inc.*, 185 F. Supp. 2d 893, 896 (N.D. Ill. 2002). For example, allegations that the individual defendant "personally participated in the manufacture or sale of the infringing article" or where the defendant "had administrative and managerial control of the defendant corporation and acted willfully and deliberately," satisfy the special showing. *Tireboots by Universal Canvas, Inc. v. Tiresocks, Inc.*, No. 20-cv-7404, 2023 WL 8236895, at *1–*2 (N.D. Ill. Nov. 28, 2023) (the linchpin of a special showing is specific activity based upon personal knowledge or wrongdoing). Breeze Smoke's allegations in the TACC satisfy the special showing.

### 1. Breeze Smoke Sufficiently Pled Kamran Yasin's Liability

Breeze Smoke more than plausibly established its claim of individual personal liability against Kamran Yasin. Breeze Smoke pled that Kamran Yasin: (1) is the owner of Midwest, (2) personally received notice of infringement █████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████

These allegations plausibly establish that Kamran Yasin is liable for infringement of the Breeze Smoke's trade dresses and design patent. *See Asher Worldwide Enters. LLC v. Housewaresonly.com Inc.*, No. 12 C 568, 2013 WL 4516415, at *3 (N.D. Ill. Aug. 26, 2013) (denying defendant's motion to dismiss where plaintiff alleged one defendant was the "owner and

president of the corporations, and [the second defendant] was the registered agent for the corporations" and where "the sheer number of infringements alleged, over 300, leads to the reasonable and credible inference that the [defendants] acted willfully and knowingly when they duplicated the product descriptions.").

### 2. Breeze Smoke Sufficiently Pled Mr. Sadiq and Mr. Sakaria's Liability

Breeze Smoke plausibly pled that Mr. Sadiq and Mr. Sakaria personally ███████████

████████████████████████████████████████████████████████

█████████████ The IDs incorrectly argue that because Mr. Sadiq and Mr. Sakaria's "accused actions were done at the direction of and/or under the supervision of others, they cannot be personally liable." Dkt. 303, at PageID.11025 (internal citations omitted). But that is not the standard to establish individual liability of non-executives or non-owners of a corporation.

An individual who supervises "infringing activity and has a financial interest in that activity, or who personally participates in that activity is personally liable for the infringement." *Sethness-Greenleaf, Inc. v. Green River Corp.*, No. 89-C-9203, 1994 WL 67830, at *7 (N.D. Ill. Feb. 11, 1994), *supplemented*, No. 89-C-9203, 1994 WL 496764 (N.D. Ill. Sept. 1, 1994), *aff'd*, 65 F.3d 64 (7th Cir. 1995). Therefore, a controlling officer or employee may be held individually liable for Lanham Act violations. *See Gen. Motors Acceptance Corp. v. Synergy Corp.,* No. 90 C 3522, 1992 WL 77682, at * 1 (N.D. Ill. April 7, 1992) (an individual defendant cannot escape Lanham Act tort liability behind the corporate veil).

Indeed, courts around the country routinely hold that employees, not just corporate officers, may be liable for the infringement if they were the "moving, active conscious force behind the infringement." *See Microsoft Corp. v. Computer Care Ctr., Inc.,* No. 06–CV–1429, 2008 WL 4179653, at *7 (E.D.N.Y. Sept. 10, 2008) ("Where the facts show that a ***corporate employee*** was the 'moving, active conscious force behind [the defendant corporation's] infringement,' personal

9

liability will attach.") (emphasis added) (citations omitted); *see also* 4 McCarthy on Trademarks and Unfair Competition § 25:24 (4th ed.) ("[M]anaging employees can be held personally liable if they are the 'moving, active, conscious forces behind' the corporation."); *Novell, Inc. v. Unicom Sales, Inc.*, C-03-2785, 2004 WL 1839117, at *17 (N.D. Cal. Aug. 17, 2004); *Bambu Sales, Inc. v. Sultana Crackers, Inc.,* 683 F. Supp. 899, 913–14 (E.D.N.Y.1988); *Chloe v. Queen Bee of Beverly Hills, LLC*, No. 06 Civ. 3140, 2011 WL 3678802, at *6 (S.D.N.Y. Aug. 19, 2011) (emphasizing that officer or director status is not a prerequisite to individual liability. Instead, "[t]he only crucial predicate to [an individual's] liability is his participation in the wrongful acts.").



Their status as "employees" does not preclude their personal liability.

IDs' own authority is either inapposite or supports Breeze Smoke's position. First, in *Wilden Pump & Engineering Co.*, the Ninth Circuit only reversed the imposition of individual liability of an office manager at the defendant's company because the plaintiff's bare assertion that the defendant was the "moving, active conscious force[] behind the appellants' infringement" was conclusory. *Wilden Pump & Eng'g Co. v. Pressed & Welded Prods. Co.*, 655 F.2d 984, 990 (9th Cir. 1981).

Unlike in *Wilden Pump*, these allegations are not conclusory. Second, *Facebook, Inc. v.*

10

*Power Ventures, Inc.*, supports Breeze Smoke, not IDs. *Facebook, Inc. v. Power Ventures, Inc.*, 844 F.3d 1058, 1069-70 (9th Cir. 2016). In *Facebook*, the defendant was personally liable for the corporation's actions where he admitted tort violations and the actions were his idea. *Id.* Likewise here, Breeze Smoke pled— ███████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████

The Court should deny the IDs' request to dismiss Imran Sadiq and Sohaib Sakaria.

### 3. The IDs Concede Breeze Smoke Plausibly Alleged Umair Yasin's and Mudassir Yasin's Liability

The IDs do not contest the plausibility of Breeze Smoke's claims against Umair Yasin and Mudassir Yasin. *See, e.g.*, Dkt. 303, PageIDs. 11020-11025 (no argument that Breeze Smoke did not plead individual liability for Umair Yasin and Mudassir Yasin); Dkt. 230, at ¶¶167-94 (Breeze Smoke's allegations against Umair Yasin and Mudassir Yasin). Thus, Breeze Smoke's claims against them should not be dismissed. *I.B. of T. Union Loc. No. 710 Pension Fund v. Flynn*, No. 17-cv-05532, 2019 WL 1281991, at *5 (N.D. Ill. Mar. 20, 2019) (claims cannot be appropriately dismissed where a party makes no argument that the claim is otherwise facially implausible).

#### a. The IDs Improperly Make Factual Arguments Inappropriate At The Pleading Stage

As an initial matter, the IDs' motion to dismiss—like Midwest's motion before it— improperly argues factual issues. But to state its claims against the IDs, Breeze Smoke only needed to put each ID on notice of his infringing acts, alleging "only enough facts to nudge their claims across the line from conceivable to plausible." *Indep. Trust Corp.*, 665 F.3d at 935; *Salesforce.com, Inc.*, 76 F.4th at 551. Breeze Smoke's allegations are sufficient. Whether the evidence proves the allegations is a question of fact that is not appropriate for decision at the motion to dismiss stage. *Sanders v. W & W Wholesale Inc.,* No. 11 C 3557, 2011 WL 4840978, at *2 (N.D. Ill. Oct. 12,

11

2011) (citing *United States v. Sabbia,* No. 10 C 5967, 2011 WL 1900055, at *6 (N.D. Ill. 2011)). The Court should reject IDs' efforts to undermine the Rule 12(b)(6) standard with cherry-picked language from this Court's preliminary injunction opinion. *Promatek Indus., Ltd. v. Equitrac Corp.*, 300 F.3d 808, 811 (7th Cir. 2002) (likelihood of success on the merits standard); *c.f.*, *Twombly*, 550 U.S. at 547 (2007) (plausibility standard); *see also* Dkt. 303, at PageIDs. 11022-23.

In sum, Breeze Smoke has more than plausibly pled how each ID was a ███████

████████████████████████████████████████████ ██

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████

As such, the IDs' motion to dismiss the individual claims against them should be denied.

### b. Breeze Smoke Can Plausibly Make Collective Pleading Allegations

In addition to its specific allegations, Breeze Smoke made collective allegations against the IDs as a whole where appropriate. A plaintiff may collectively plead allegations where corporate structures are intertwined with shared employees and where defendants collectively engage in infringement. *Symbria, Inc. v. Callen*, No. 20 C 4084, 2024 WL 4873437, at *15 (N.D. Ill. Sept. 3, 2024) (denying defendant's motion to dismiss and finding collective pleading permissible in certain circumstances, like trade secret and copyright infringement). Courts in this District further permit collective pleading "when a plaintiff directs its allegations 'at all of the defendants.'" *Jaimes v. Cook County*, No. 17 C 8291, 2019 WL 4393035, at *4 (N.D. Ill. Sept. 13, 2019); *see also ReceiverShip Mgmt., Inc. v. A.J. Corso & Assocs., Inc.*, No. 19-cv-01385, 2021 WL 1222897, at *11 (N.D. Ill. Mar. 31, 2021) (finding pleading directed to "Each Defendant to all of the

12

Defendants" or "Defendants" is specific collective pleading that puts each defendant on notice of the claims); *Green Dolphin Cap. LLC v. JPMorgan Chase Bank, N.A.*, No. 19-cv-06940, 2020 WL 5545700, at *2-*3 (N.D. Ill. Sept. 16, 2020) (denying motion to dismiss based upon group pleading where plaintiff grouped JPMorgan affiliates together because it remained plausible that each affiliate could have been involved in the alleged wrongdoing). Here, Breeze Smoke's allegations that the IDs collaborated to be the "moving forces" behind the infringement are entirely appropriate given their collective actions. Dkt. 230, at ¶¶167-94.

### c. The IDs Acted Beyond Their "Ordinary Duties" Thus Justifying Liability

The IDs also argue that each ID is not individually liable because they performed only their "ordinary duties at Midwest." Dkt. 303, at PageID.11023. But this argument fails for the reasons described above. ███████████████████████████████████████

███████████████████████████████████████████████████████████

███████████ And, as the IDs' own authority shows, where a plaintiff asserts facts showing that the defendant was "the 'moving force' behind [the defendant's corporation's] alleged infringing activities "and willfully and deliberately induced, aided and abetted the past and continuing infringing," it has made the necessary "special showing." Doc. 303, PageID.11021 (citing to *Nordstrom Consulting, Inc. v. M & S Techs., Inc.*, No. 06 C 3234, 2006 WL 2931677, at *2-*3 (N.D. Ill. Oct. 12, 2006) (*denying* defendant's motion to dismiss stating plaintiff provided sufficient allegations to establish personal liability of the individual defendant)).

### C. BREEZE SMOKE HAS PLAUSIBLY PLED ITS TRADE DRESS CLAIMS

The IDs' motion to dismiss again asks this Court to require Breeze Smoke to prove its trade dress case at the pleadings stage. For the reasons below and largely already briefed to—and

decided by—this Court on Midwest's prior motion to dismiss (Dkt. 63, at 6-11), Breeze Smoke plausibly pled that its trade dress is not functional and is definite.

### 1. This Court Has Already Decided That Breeze Smoke's Trade Dress as Pled Is Non-Functional

This Court has already decided *multiple times* in this case that Breeze Smoke plausibly pled that its trade dress is non-functional. *See* Dkt. 99 at 5–14 (holding Midwest's Motion to Dismiss arguments inappropriately raised factual issues); Dkt. 138 (rejecting Midwest's futility arguments on Breeze Smoke's Motion to Amend as "largely the same arguments the Court rejected in denying Midwest's initial motion to dismiss."); Dkt. 99, at 11 ("Breeze Smoke is not obligated to produce such evidence [expert analysis] at this stage. Instead, as long as its allegations are plausible – and as discussed, Breeze Smoke has plausibly alleged package and product design details that are plausibly non-functional – it should have the opportunity to produce additional evidence at a later stage of the case"); *id.*, at 9-11 (e.g., rounded corners, flat bottom). For this reason alone, the Court should deny the IDs' motion.

Even if the Court had not already ruled on the issue multiple times—again, it has—Breeze Smoke's as-pleaded trade dress is not functional. Trade dress is functional if "it is essential to the use or purpose of the article or if it affects the cost or quality of the article, that is, if exclusive use of the feature would put competitors at a significant non-reputation-related disadvantage." *Qualitex Co. v. Jacobson Products Co., Inc.*, 514 U.S. 159, 165 (1995) (internal citations and quotations omitted). Trade dress can be protectable even where it contains non-protectable functional elements if the *combination* of elements is not functional. *See, e.g., Badger Meter, Inc. v. Grinnell Corp.*, 13 F.3d 1145, 1154 (7th Cir. 1994). Like "distinctiveness" and "secondary meaning," "[f]unctionality is a *factual question*." *Flexible Steel Lacing Co. v. Conveyor Accessories, Inc.*, 955 F.3d 632, 643-44 (7th Cir. 2020) (emphasis added).

14

The IDs' focus on the individual elements of Breeze Smoke's trade dress incorrectly ignores that it is the ***combination***—rather than individual elements—that must be functional. *See Badger Meter*, 13 F.3d at 1154 (combination of elements is not functional); *Bodum USA, Inc. v. A Top New Casting Inc.*, 927 F.3d 486, 492-95 (7th Cir. 2019) (finding the design of a French press non-functional and emphasizing that an item having some functionality does not preclude its ***overall design*** from being non-functional); *see also Service Ideas, Inc. v. Traex Corp.*, 846 F.2d 1118, 1122-23 (7th Cir. 1988) (finding that the correct test is ***whether the overall combination comprising trade dress is non-functional***); 1 McCarthy on Trademarks and Unfair Competition § 7:76 (5th ed.) ("Thus, ***an overall design combination of individually functional items is protectable*** because while the pieces are individually functional, this particular combination of those pieces is not functional. Almost all courts adhere to this view") (internal citations omitted) (emphasis added). Here, Breeze Smoke asserts rights in the overall look and feel of its Breeze Smoke Trade Dresses, including a combination of elements that together comprise non-functional and protectable trade dress.  Dkt. 230, at ¶¶51-61.

Additionally, the availability of alternative designs supports non-functionality. *Logan Graphic Prods., Inc. v. Textus USA, Inc.*, Case No. 02 C 1823, 2003 WL 21011746, at *4 (N.D. Ill. May 5, 2003). As Midwest's own complaint demonstrates, there are ***numerous*** alternatives for vape packaging and designs. Dkt. 1, at ¶¶68-70, 72 (providing examples of other packaging designs); Dkt. 230, at ¶59 (providing examples of other packaging designs); *Id.*, at ¶59 (further examples of other product packaging designs); *Id.* at ¶69 (providing examples of other product designs); *see also* Dkt. 1, at ¶¶ 68-70, 72 (same).

Further, Breeze Smoke's Trade Dress is purely ornamental. *See Thomas & Betts Corp. v. Panduit Corp.*, 138 F.3d 277, 297 (7th Cir. 1998) (a feature is not functional if it is "ornamental,

15

fanciful, decorative"). Breeze Smoke has plausibly alleged that it designed its trade dresses to have unique, distinctive, designs and to enable consumers to instantly recognize the product as a BREEZE Good and Service. Dkt. 53, at PageID.1955; Dkt. 230, at ¶60. There is no functional reason for the designs. Further, "[t]hird party retailers regularly advertise the BREEZE PRO Product Design and tout 'the Breeze Pro's new elegant design' as a selling point." Dkt. 230, at ¶65; *see also Hupp v. Siroflex of Am., Inc.*, 122 F.3d 1456, 1460 (Fed. Cir. 1997) ("[I]t is relevant whether functional considerations demand only this particular design or whether other designs could be used, such that the choice of design is made for primarily aesthetic, non-functional purposes."). And Breeze Smoke provides detailed allegations that the IDs intentionally copied its trade dress, thus, strongly suggesting they are source identifying features, and not functional. Dkt. 230, at ¶¶167-94.

Finally, Breeze Smoke's design patent creates a presumption of non-functionality. *In Re Morton-Norwich Products, Inc.*, 671 F.2d 1332, 1342 n.3 (C.C.P.A. 1982) ("[A] design patent . . . 'presumptively[] indicates that the design at issue is not de jure functional'").

For all of these reasons, the Court should reject IDs' functionality arguments.

### 2. This Court Has Already Held That Breeze Smoke's Trade Dress as Pled Is Definite

The IDs attempt to resurrect Midwest's prior argument that Breeze Smoke "fails to provide a description for the Unregistered Trade Dress that is sufficiently precise to put the IDs on notice of the claimed rights." Dkt. 303, at 16; Dkt. 99, at 5-12. But this Court has already decided this issue and found that Breeze Smoke's pleaded trade dress is sufficiently definite. Dkt. 99, at 5-12.[2]

---

[2] The IDs also incorrectly suggest that Breeze Smoke's trade dress is indefinite because other vapes may be covered under the trade dress descriptions. Dkt. 303, at 17. Even if that is the case—a fact Breeze Smoke does not concede—it does not make Breeze Smoke's articulation of its trade dress indefinite, and this case does not concern those other vapes in any event. Moreover, this argument urges the Court to undertake exactly the type of fact-based analysis that is inappropriate at this stage.

Since the very beginning of this case, Breeze Smoke has articulated ***in detail*** its two trade dresses by listing the individual elements that its product packaging trade dress and product design trade dress includes, along with images showing the Breeze Smoke Trade Dresses. Dkt. 9, PageID.410, 411-13; Dkt. 230, at ¶¶ 51-2, 61-2. Breeze Smoke's detailed descriptions and pictures of the trade dresses are more than sufficiently definite.[3] *See Dynamic Fluid Control (PTY) Ltd. v. Int'l Valve Mfg., LLC*, 790 F. Supp. 2d 732, 737 (N.D. Ill. 2011) (finding elements of the trade dress with photographs is "sufficient to put Defendants on notice as to what [Plaintiff] believes is protected").

Like Midwest, the IDs invoke *Plum Market* for the purported proposition that the Breeze Smoke Trade Dresses are somehow indefinite. Dkt. 303, PageID.11030. But this Court already found this case to be distinguishable. Dkt. 99, at 6 ("[*Plum Markets* is] readily distinguishable. [It] concerned the layout of a restaurant, which is too far afield from the trade dress of a consumer product"). Further, in *Plum Market*, unlike here—where Breeze Smoke has provided detailed descriptions and pictures of its trade dresses—the plaintiff gave only generic descriptions of its trade dress. *Plum Markets, LLC v. Compass Grp. USA, Inc.*, No. 20 C 6759, 2021 WL 323791, at *2 (N.D. Ill. Feb. 1, 2021); Dkt. 99, at 6; Dkt. 211, Ex. A, ¶¶ 50–52, 60–62; Dkt. 230, at ¶¶ 51-2, 61-2. The IDs' reliance on *Plum Market* is therefore misplaced.

The IDs' reliance on *Forest River, Inc.* fares no better. There, the court dismissed the plaintiff's trade dress claims as indefinite because it made vague claims to the "shape, layout, patterns, colors, and 'visual image'" of its products. *Forest River, Inc. v. Winnebago Indus., Inc.*,

---

[3] The IDs distract by arguing that Breeze Smoke cannot allege the IDs copied Breeze Smoke's highly distinctive flavor combinations nor can it assert anything related to the NORTH and SOUTH logos. Dkt. 303, at 8. But this is a fundamental misunderstanding of trade dress protection. Trade dress protects the product's *entire appearance and image* and includes features such as size, shape, color, graphics, packaging and label. *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 746 n.1 (1992). Thus, Breeze Smoke is not asserting that Midwest infringes the *flavors per se*; it asserts the flavor combinations on the packaging and location of those flavor combinations and logos are the same.

No. 3:15-CV-609, 2017 WL 590245, at *2 (N.D. Ind. Feb. 14, 2017). The court found the plaintiff's reliance on such vague terms insufficient because they "are generic terms, and [Plaintiff] hasn't identified with any specificity the particular features of its trade dress that would be protected." *Id*. The court opined that "discrete elements which make up [the trade dress] combination should be separated out and identified in a list." *Id.* Here, Breeze Smoke did just that—i.e., it described specific features of its trade dresses with reference to a list of the discrete elements each includes, and provided photographs that align with and illustrate the description of the trade dresses. *Forest River* is therefore inapt.

For these reasons, the Court should reject the IDs' arguments regarding definiteness.

**D.     BREEZE SMOKE HAS PLED ITS IDUTPA AND UNJUST ENRICHMENT CLAIMS**

The IDs argue that Breeze Smoke's state law claims "rise and fall" with the Lanham Act claims. But, as discussed in depth above, Breeze Smoke sufficiently pled its Lanham Act claims, so its state law claims are likewise adequately pled. *See At World Props., LLC v. Baird & Warner Real Est., Inc.*, No. 18-CV-01973, 2019 WL 4034636, at *3 n.3 (N.D. Ill. Aug. 27, 2019) (finding claims arising under state law and the Illinois Deceptive Trade Practices Act "must rise or fall based on the Lanham Act claim"); *see also* Dkt. 230, at ¶¶ 235-55.

**E.     BREEZE SMOKE HAS SUFFICIENTLY PLED ITS PATENT CLAIMS**

Breeze Smoke has sufficiently pled design patent infringement against the IDs, and sufficiently pled its induced infringement claims against Umair Yasin and Mudassir Yasin.

**1.     The Individual Defendants Prematurely Apply The "Ordinary Observer" Test**

Once again, this Court is asked to determine design patent questions of fact that are not only premature, but one which this Court has decided before are improper.

18

### a. This Court Previously Determined Breeze Smoke Sufficiently Pled Its Design Patent Claims

This Court already held that Breeze Smoke's design patent pleadings "are sufficient to plausibly state a claim for infringement." Dkt. 99, at 14 ("[t]hese similarities – the oblong body, the curved mouthpiece, etc. – are sufficient to plausibly state a claim for infringement. Whether the differences are minor or significant in light of the prior art is an analysis courts customarily perform on summary judgment after discovery, with the benefit of expert testimony regarding the design features."). In fact, this Court emphasized that Midwest "concede[s] that there are similarities between the claimed and accused designs." Dkt. 99, at 13-14. The IDs' rehash of these arguments disregard this Court's prior ruling and should be denied.[4]

### b. The IDs Improperly Ask This Court To Apply The "Ordinary Observer" Test At The Pleading Stage

The standard for determining design patent infringement (the "ordinary observer test") is a **question of fact**. *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 682 (Fed. Cir. 2008). Therefore, it is untimely, at the pleading stage, to decide how to apply the "ordinary observer test." The IDs' motion to dismiss should be denied on this point for this reason alone.

Indeed, this Court already held, "[w]hether the differences are minor or significant in light of the prior art is an analysis courts customarily perform on summary judgment after discovery, with the benefit of expert testimony regarding the design features." Dkt. 99, at 14. And the majority of the IDs' authority concerns **summary judgment**. *See, e.g., Ethicon Endo-Surgery, Inc. v.*

---

[4] The IDs contend that Midwest's admission of similarity does not apply to the IDs. Dkt. 303, at PageID.19 n.4. ████████████████████████████████ and have been a part of this litigation since the inception and the admissions are about the same Infringing Products. Midwest's admissions are imputed on the IDs. *Mickowski v. Visi-Trak Corp.*, 36 F. Supp. 2d 171, 176 (S.D.N.Y. 1999), *aff'd*, 230 F.3d 1379 (Fed. Cir. 2000) (individual defendants were bound by the admission of the corporate defendant that personal jurisdiction and venue were proper, thus dismissing the individual defendants' attempt at raising personal jurisdiction and venue defenses).

*Covidien, Inc.*, 796 F.3d 1312, 1314 (Fed. Cir. 2015) (decided at summary judgment); *Range of Motion Prods., LLC ("RoM") v. Armaid Co. Inc.*, 166 F.4th 981, 984 (Fed. Cir. 2026) (same); *Competitive Edge, Inc. v. Staples, Inc.*, 763 F. Supp. 2d 997, 1002 (N.D. Ill. 2010) (same); *OddzOn Prods., Inc. v. Just Toys, Inc.*, 122 F.3d 1396, 1399 (Fed. Cir. 1997) (same). And the two cases cited concerning the pleading stage are inapposite because the design patent and accused products were quite different, unlike here where this Court has already found that "similarities…are sufficient to plausibly state a claim for infringement." Dkt. 99, at 14; *Anderson v. Kimberly-Clark Corp.*, 570 F. App'x 927, 933 (Fed. Cir. 2014) (*pro se* plaintiff case where "differences [between design patent and accused product] are markedly apparent"); *Young v. Stone*, No. 13 C 4920, 2014 WL 4271624, at *3 (N.D. Ill. Aug. 28, 2014) ("obvious differences" include incline vs. washer ball trap, differences in the bottom feet and bolt, and different flag placement design).

Similarly, any analysis regarding whether certain elements of the D'573 Patent are functional require further fact development and claim construction. The IDs' own authority states that "[w]here a design contains both functional and non-functional elements, *the scope of the claim must be construed* in order to identify the non-functional aspects of the design as shown in the patent." *OddzOn*, 122 F.3d at 1405 (emphasis added). Here, claim construction has not occurred. And the "recent[]" Federal Circuit case that the IDs rely on, *Range of Motion*, further confirms this and considered functionality at *summary judgment* and *after claim construction*. 166 F.4th at 987. Thus, this issue is premature for the pleading stage. Breeze Smoke pled that the D'573 Patent covers an "ornamental" design (which by its very nature is not functional), and issued design patents are presumed to be non-functional. Dkt. 230, at ¶¶ 77-78. Dismissal is not warranted.

### 2. Breeze Smoke Sufficiently Pled Its Direct Patent Infringement Claims Against The Individual Defendants

"Corporate officers can be personally liable for their own acts of infringement, even if those acts were committed in their corporate capacity." *Lubby Holdings LLC v. Chung*, 11 F.4th 1355, 1358 (Fed. Cir. 2021). Individuals are personally liable for "participating in, inducing, and approving acts of patent infringement." *Orthokinetics, Inc. v. Safety Travel Chairs, Inc.*, 806 F.2d 1565, 1579 (Fed. Cir. 1986). The "special showing" standard for personal liability applies to design patent infringement as well. *See Peaceable Planet,* 185 F. Supp. at 896-97. Thus, and as discussed in depth in Section III.B., Breeze Smoke satisfied the "special showing" required to hold all IDs liable at the pleading stage.[5]

### 3. Breeze Smoke Properly Pled Induced Infringement Against Umair Yasin and Mudassir Yasin

Umair Yasin and Mudassir Yasin both had actual knowledge of Breeze Smoke's D'573 Patent and specific knowledge that the induced acts constituted patent infringement.

The IDs again rely on factual arguments, asserting (with no support) that even though Umair Yasin and Mudassir Yasin both knew about the D'573 Patent, they may or may not have believed they infringed. Dkt. 303, at PageIDs. 11032-11036. But this contention requires extensive fact discovery on the IDs' part, making this analysis inappropriate at the pleading stage. In *Commil USA, LLC*, cited by the IDs, the Supreme Court vacated and remanded a jury verdict and established that a defendant's ***belief*** regarding patent validity is not a defense to a claim of induced infringement. *Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 643 (2015). And still, that decision came after a trial; not at the pleading stage. Therefore, the IDs' motion should be denied.

---

[5] The IDs contend that some of the allegations occurred before the D'573 Patent issued. But the IDs continue to sell the Infringing Products, infringing ***even to this day***. And the SOUTH Infringing Products, which the IDs designed, were released after the D'573 Patent issued.

21

The appropriate standard is that at the pleading stage, induced infringement requires the Plaintiff to allege "factual content 'plausibly showing that [defendant] specifically intended [its] customers to infringe . . . and knew that the customer's acts constituted infringement." *Lecat's Ventriloscope v. MT Tool & Mfg.*, No. 16 C 5298, 2017 WL 1362036, at *5 (N.D. Ill. Jan. 6, 2017); *see also Trading Technologies Int'l, Inc. v. BCG Partners, Inc.*, No. 10 C 715, 2011 WL 1706136, at *4 (N.D. Ill. May 5, 2011); *see also Orthokinetics,* 806 F.2d at 1579 (emphasizing that under 35 U.S.C. § 271(b), individuals who actively assist with their corporation's patent infringement may be personally liable as an infringer regardless of whether there is evidence to justify piercing the corporate veil). Breeze Smoke met this pleading standard through its allegations that ████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████

For example, Breeze Smoke alleges that ████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████ Umair and Mudassir Yasin knew their acts infringed and encouraged their customers to infringe. Breeze Smoke plausibly pled induced infringement.

## IV. CONCLUSION

For the reasons stated, this Court should respectfully deny the IDs' Motion to Dismiss.

22

Dated**:** May 21, 2026

Respectfully submitted,

By: */s/ Vikram A. Mathrani*

Vikram A. Mathrani (Attorney No. 6318690)
Mary A. Hyde (Attorney No. 6322004)
Molly K. McGinley (Attorney No. 6285809)
David J. Roulo (Attorney No. 6342637)
Alexandra Angyalosy (Attorney No. 6348773)
HONIGMAN LLP
321 N. Clark St.
Suite 500
Chicago, IL 60654
Telephone:  312-701-9300
vmathrani@honigman.com
mhyde@honigman.com
mmginley@honigman.com
droulo@honigman.com
aangyalosy@honigman.com

Jeffrey K. Lamb (Attorney No. 6289998)
HONIGMAN LLP
2290 First National Building
660 Woodward Avenue
Detroit, MI 48226-3506
Telephone:  313-465-7000
jlamb@honigman.com

Sarah E. Waidelich (Attorney No. 5196142)
HONIGMAN LLP
101 Main Street, Suite 850
Ann Arbor, MI 48104
Telephone: (734) 418-4200
swaidelich@honigman.com

23

## CERTIFICATE OF SERVICE

I certify that on May 21, 2026 a copy of the foregoing was electronically filed with the

Clerk of Court using the ECF system which will send notification to all counsel of record.

/s/ Vikram A. Mathrani

*One of the Attorneys for Breeze Smoke LLC*

24