# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

MIDWEST GOODS INC., DBA MIDWEST
DISTRIBUTION ILLINOIS,

   Plaintiff,

  v.

BREEZE SMOKE, LLC and KMT Services LLC,
d/b/a KMT Distribution,

   Defendants.

---

BREEZE SMOKE LLC,

   Counter-Claimant,

  v.

MIDWEST GOODS INC., DBA MIDWEST
DISTRIBUTION ILLINOIS, WISEMEN
WHOLESALE, INC., SPEED WHOLESALE,
INC., WORLD WHOLESALE, INC., LIGHT
VIEW LLC, UMAIR YASIN, MUDASSIR
YASIN, KAMRAN YASIN, IMRAN SADIQ,
AND SOHAIB SAKARIA,

   Counterclaim Defendants.

**CASE NO. 1:23-CV-05406**

HONORABLE THOMAS M. DURKIN

HONORABLE BETH W. JANTZ

**JURY TRIAL DEMANDED**

---

**SPECIAL MASTER'S RULING GRANTING BREEZE SMOKE LLC'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS RESPONSIVE TO RFP NOS. 138-141[1]**

Before the Special Master is Breeze Smoke LLC's Motion to Compel Production of

Documents responsive to Requests for Production of Documents ("RFP") Nos. 138-141,

submitted by letter dated June 1, 2026. Midwest opposed the motion by letter dated June 8,

---

[1] This Order is entered and filed with the Court pursuant to Paragraph 6 of the Order Appointing Special Master (Dkt. No. 318). The Special Master has determined that this Order does not disclose information designated Confidential or Highly Confidential under the Agreed Confidentiality Order (Dkt. No. 71).

2026.[2] The requests seek sales summaries for four NORTH-branded products: the NORTH FT12000, Handshake, NORTH Stellar, and NORTH Delta Diamonds (the "Other NORTH Products"). For the reasons that follow, the Motion is GRANTED.

## I.  BACKGROUND

On June 1, 2026, Breeze filed a letter brief in support of its Motion, seeking sales summaries for four NORTH-branded products that are not accused of infringement in this action. RFP No. 138 is representative of the other RFPs.

> **Request No. 138:** Documents sufficient to show Your total revenue, income, and number of units sold, on a month-by-month basis, from selling the NORTH FT12000, from the date of first sale to the present.

Breeze contends that the requested information is relevant to its anticipated rebuttal of Midwest's obviousness defense to Breeze's asserted D'573 design patent.

Midwest objected to the Motion in a letter brief filed on June 8, 2026.  Midwest objects to production of the sales summaries for the identified non-accused NORTH-branded products on the grounds that the requested information is irrelevant and disproportionate and, thus, does not satisfy the requirements of Federal Rule of Civil Procedure 26(b)(1). Midwest argues that the subject NORTH Products are not accused products, do not embody the patented design, and bear insufficient similarity to the D'573 patent to establish the required nexus between commercial success and the patented design.

## II.  APPLICABLE LEGAL PRINCIPLES

Midwest asserted that the D'573 patent is invalid as obvious under 35 U.S.C. §103 in its Answer to Breeze's Third Amended Counterclaims. (Dkt. 245 at PageID 10619.) Breeze

---

[2] Pursuant to Paragraph 6 of the Order Appointing Special Master, the parties' letter briefs and supporting submissions are maintained in the Special Master's record. They are available to the Court in the event objections to this Ruling are filed under Fed. R. Civ. P. 53(f).

responds that the patent is nonobvious and relies upon commercial success as objective evidence of non-obviousness. (Breeze Letter at 3.)

A patent challenger asserting obviousness must establish that the claimed invention would have been obvious to a person of ordinary skill in the relevant art in view of the prior art. A patentee may rebut an obviousness challenge through objective indicia of non-obviousness, sometimes referred to as secondary considerations. Such considerations may include commercial success, industry praise, copying, and similar marketplace evidence. *LKQ Corp. v. GM Global Tech Operations LLC*, 102 F.4th 1280, 1300 (Fed. Cir. 2024).

The Federal Circuit has repeatedly recognized that commercial success may constitute evidence supporting non-obviousness. However, for such evidence to carry substantial weight, the patentee ordinarily must establish a nexus between the claimed invention and the alleged commercial success. Put differently, the commercial success must be attributable, at least in meaningful part, to the patented invention rather than to unrelated factors such as marketing, branding, functionality, pricing, distribution, or other market forces. *Oren Tech LLC v. Proppant Express Investment LLC*, 2021 WL 3120819, at *6 (Fed. Cir. July 23, 2021).

Federal Circuit authority further recognizes that a patentee may be entitled to a presumption of nexus where the patentee demonstrates that the objective evidence is tied to a product embodying the claimed invention. *Id. See also Campbell Soup Co. v. Gamon Plus, Inc.*, 10 F.4th 1268, 1276-79 (Fed. Cir. 2021) (the type of patent at issue is not material; a nexus is presumed if the objective indicia evidence is tied to a specific product that is "coextensive" with the claimed invention, meaning that the product "*is* the invention disclosed and claimed.").

That presumption is not conclusive and may be rebutted by evidence showing the objective indicia are attributable to factors other than the patented invention. *Oren Tech,* 2021 WL 3120819, at * 6. When presumed nexus is disputed or rebutted, courts may consider

additional evidence bearing on the relationship between the patented invention and marketplace success. *Id.*

The Special Master is not asked to determine whether Breeze will ultimately establish a nexus, whether a presumption of nexus applies, whether any such presumption has been rebutted, or whether Breeze's commercial-success evidence will ultimately be admissible at trial. The only issue before the Special Master is whether Breeze has shown that the requested discovery is relevant to those issues and proportional under Rule 26(b)(1). The merits and evidentiary questions remain for the Court.

The question presented is considerably narrower: whether the requested sales summaries fall within the scope of discovery permitted by Rule 26(b)(1).

### III. ANALYSIS

Rule 26(b)(1) requires the moving party to show that the information sought is relevant and proportional.

> The scope of discovery in federal court is broad.[15] Parties may obtain information that is relevant to the claims and defenses at issue. Relevance—and not admissibility—is the initial touchstone, with Rule 26(b)(1) providing for such discovery even if it is ultimately not admissible as evidence.
>
> And yet, discovery is not without bounds. Since December 1, 2015, the scope of discovery is expressly conditioned by a second touchstone, proportionality. As a result, parties may only obtain relevant information if they establish that it is "proportional to the needs of the case." Rule 26(b)(1) specifically identifies six proportionality factors, which are as follows: "[T]he importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."

*Deal Genius, LLC v. O2COOL, LLC*, 682 F. Supp. 3d 727, 732-33 (N.D. Ill. 2023)(*citations omitted*).

Relevance and proportionality will each be addressed in turn.

*A. Relevance*

The Special Master concludes that Breeze has shown the requested sales summaries are relevant to a claim or defense. Midwest has asserted multiple grounds for invalidity of the D'573 patent, including that the patent is invalid as obvious under 35 U.S.C. § 103. Breeze seeks the requested discovery in connection with its anticipated response to that obviousness defense.

Obviousness is ultimately a question of law based upon underlying factual determinations. *Campbell Soup*, 10 F.4th at 1275. The Federal Circuit has explained that the obviousness inquiry requires consideration of the four *Graham* factors: "(1) the scope and content of the prior art; (2) the differences between the claims and the prior art; (3) the level of ordinary skill in the art; and (4) objective indicia of non-obviousness, such as commercial success, long felt but unsolved needs, and failure of others." *Id.*, citing *Graham v. John Deere Co.*, 383 U.S. 1, 17–18, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966). For purposes of the present Motion, only the fourth *Graham* factor is at issue.

Assuming that Midwest disputes or rebuts the presumption of nexus, Breeze argues that "one type of evidence to show nexus is the commercial success of the Accused Products." Breeze's Letter at 3-4 (citing *Brown & Williamson Tobacco Corp. v. Philip Morris Inc.,* 229 F.3d 1120, 1130 (Fed. Cir. 2000) ("Our case law provides that the success of an infringing product is considered to be evidence of the commercial success of the claimed invention"); and *ArcelorMittal France v. AK Steel Corp.,* 700 F.3d 1314, 1326 (Fed. Cir. 2012) (comparison evidence is important for determining whether the commercial success of the accused products is greater than products of the same type distributed by the accused brand). Breeze's theory is that the requested sales summaries of the four, non-accused "Other NORTH Products" will show whether the commercial success of the accused products exceeds that of the non-accused

products, thereby permitting an inference that some factor other than brand recognition is responsible.

Midwest's principal argument is that the "Other NORTH Products" (non-accused) do not embody the D'573 patent and therefore cannot establish the required nexus between commercial success and the patented design. *See* Midwest's Letter at 2-3. Midwest argues that Breeze's theory is contrary to the holding in *Campbell Soup*, because the proof of commercial success which establishes the nexus between the patent and the products at issue is limited to the "ornamental features" of those two products, rather than non-patented features like branding. *See* Midwest Letter at 2.

> The relevant question is whether consumers bought products embodying the claimed design because of their *ornamental design uniqueness* — not how unrelated products performed in the market. Comparing accused products to products with entirely different designs, different functional capabilities, and different price points sheds no light on whether the patented design drove commercial success.

*Id.* at 3 (emphasis added).

Midwest correctly argues that the Other NORTH Products do not embody the D'573 design and therefore do not themselves establish the requisite nexus between the patented design and commercial success. The Special Master does not understand Breeze to contend otherwise. Rather, Breeze seeks the requested sales summaries as comparator evidence. According to Breeze, the accused products allegedly incorporate or copy the design claimed in the D'573 patent, whereas the Other NORTH Products do not. Breeze contends that the Other NORTH Products possess a variety of commercially desirable features, including higher puff counts, display screens, adjustable airflow capabilities, lock functions, and other characteristics that consumers may find attractive. Under Breeze's theory, if the accused products materially outperform the Other NORTH Products despite the latter's additional functional features, such evidence could support an inference that consumer demand for the accused products was driven,

at least in part, by the patented design rather than by brand recognition or other non-design product attributes.

Whether that inference is ultimately persuasive is not presently before the Court. The only question presently before the Special Master is whether the requested information bears sufficiently on Breeze's anticipated nexus and commercial-success arguments to fall within the scope of Rule 26(b)(1). The Special Master concludes that it does. The sales summaries are therefore relevant because they bear directly on Breeze's contention that the commercial success of the accused products is attributable to the patented design rather than to brand recognition or other non-design product attributes.

Midwest correctly observes that the proposed comparisons may be affected by numerous variables, including differences in functionality, pricing, product category, marketing, timing, consumer preferences, and market positioning. Such differences may ultimately diminish the probative value of any comparison. But they may also provide fertile ground for expert criticism, cross-examination, motions in limine, and other evidentiary challenges.

In the end, Midwest's concerns go principally to weight rather than discoverability. At the discovery stage, Rule 26 does not require Breeze to establish that the requested information will ultimately prove nexus or survive every evidentiary objection. It requires only a showing that the information is relevant to a claim or defense. The Special Master finds that showing has been made.

### B. *Proportionality*

The second factor of proportionality is also satisfied. Rule 26(b)(1) requires evidence from which the Special Master can conclude that RFP Nos. 138-141 are proportional to the needs of the case. The Special Master finds that the four sales summaries Breeze requests for the Other North Products are proportional based on several significant circumstances.

First, the requests are narrowly focused. Breeze seeks sales summaries concerning only four specifically identified products.

Second, Breeze expressly represents that it seeks only four sales summaries—one for each identified product. Breeze disclaims any request for underlying invoices or broader transactional sales records and represents that similar sales summaries have already been exchanged during discovery.

Third, Breeze represents that Midwest has already produced comparable sales summaries for the accused products. Midwest does not dispute that such summaries have previously been produced, does not contend that the requested summaries do not exist, and does not explain why comparable summaries for the four identified products cannot be produced. Courts routinely find limited sales reports and summaries to be discoverable where they bear on issues in dispute and the burden of production is minimal. See *The Homesteader's Store, Inc. v. Kubota Tractor Corp.*, 2025 WL 4276949, at *3 (W.D. Wis. Feb. 6, 2025) (finding sales reports to be "relevant information that is proportional to the needs of the case").

Fourth, although Midwest argues that the requests would require it to compile and summarize information, Midwest offers no specific evidence concerning the burden involved, the time required, the cost of production, the unavailability of the requested information, or any technical difficulty associated with producing the requested summaries.

The Special Master recognizes Midwest's substantial discovery efforts to date, but the volume of discovery already produced does not, standing alone, establish that these particular requests are disproportionate. On the present record, the likely burden associated with producing four sales summaries is modest and outweighed by the potential relevance of the information to issues that Midwest, itself, has injected into the case through its obviousness defense.

## IV. CONCLUSION

The Special Master expresses no opinion regarding whether Breeze will ultimately establish a nexus between the D'573 patent and any alleged commercial success; whether a presumption of nexus applies; whether any such presumption may be rebutted; whether the requested sales information will ultimately be admissible; or the weight that should be accorded to any resulting evidence. Those issues remain for expert testimony, dispositive motions, motions in limine, and trial. At this stage, however, Breeze has shown that the sales summaries are relevant to the issue of obviousness raised by Midwest, and Midwest has not demonstrated that the requested discovery is unduly burdensome or disproportionate.

Accordingly, Breeze's Motion to Compel Production of Documents Responsive to Requests for Production Nos. 138-141 is **GRANTED**.[3] Midwest shall produce the requested summaries within fourteen (14) days of the date of this Order, absent a court order otherwise.[4]

**IT IS SO ORDERED.**

Dated: June 25, 2026

**Hon. Mildred E. Methvin (Ret.)**
**Special Master**

---

[3] Pursuant to the Order Appointing Special Master ("ASM," Dkt. No. 318), the parties retain the right to object to this Order with the District Court within the time specified in ¶ 7 and Fed. R. Civ. P. 53(f)(2).

[4] Because this Order contains no information protected by the Agreed Confidentiality Order (Dkt. No. 71), it will be filed on CM/ECF pursuant to ¶ 6 of the ASM. A copy will be retained by the Special Master in the JAMS file.